**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| MOTOROLA MOBILITY, INC. and GENERAL INSTRUMENT CORPORATION<br><br>           Plaintiffs,<br><br>vs.<br><br>TIVO INC.,<br><br>           Defendant. | Civil Action No. _____<br><br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT
AND DECLARATORY JUDGMENT**

Plaintiffs Motorola Mobility, Inc. ("Motorola Mobility") and General Instrument

Corporation ("General Instrument") (collectively "Plaintiffs") file this Complaint For Patent

Infringement and Declaratory Judgment against Defendant TiVo Inc. ("TiVo"), and in support of

their Complaint allege as follows:

**INTRODUCTION**

1.     General Instrument, a subsidiary of Motorola Mobility, owns multiple patents that

disclose and claim fundamental inventions related to digital video recorders ("DVRs"), which

are now ubiquitous in American households.  These fundamental DVR patents include patents

for inventions from the mid 1990s by a group of former General Instrument engineers who went

on to found Imedia Corporation ("Imedia").  General Instrument subsequently acquired all of the

assets of Imedia, including the Imedia DVR patents.  Among the patents the Imedia engineers

were awarded for their inventions are United States Patent Nos. 5,949,948 ("the '948 Patent");

6,304,714 ("the '714 Patent"); and 6,356,708 ("the '708 Patent") (collectively "the Imedia Patents").

2.      The Imedia Patents were filed with the Patent Office beginning in April 1995. More than two years later, TiVo was founded and began to develop a DVR product.  In July 1998, more than three years after the Imedia Patents were first filed with the Patent Office, TiVo filed a patent application for what it dubbed a "Multimedia Time Warping System."  From that 1998 application, TiVo obtained United States Patent Nos. 6,233,389 ("the '389 Patent") and 7,529,465 ("the '465 Patent) (collectively "the TiVo Patents"), among others.  The TiVo Patents disclose and claim the same technology the Imedia engineers invented years before.

3.      TiVo currently is seeking to enforce its patents in this Court against Motorola Mobility customer Verizon Communications, Inc. ("Verizon").  In *TiVo Inc. v. Verizon Comms., Inc., et al.*, 2:09-cv-257-DF (E.D. Tex.) (the "Verizon Lawsuit"), TiVo has accused various QIP set-top boxes of infringing certain claims of the TiVo Patents.  Motorola Mobility and General Instrument supply the accused QIP set-top boxes to Verizon.

4.      Therefore, Plaintiffs now bring this action to:  (1) seek all available remedies for TiVo's willful infringement of the Imedia Patents; (2) obtain a declaratory judgment that the claims of the TiVo Patents are anticipated and/or rendered obvious by the Imedia Patents and Imedia inventions, thus rendering the TiVo Patents invalid; and (3) obtain a declaratory judgment that the accused QIP set-top boxes do not infringe, directly or indirectly, literally or under the doctrine of equivalents, claims 31 and 61 of the '389 Patent or any claim of the '465 Patent.

## THE PARTIES

5.      Motorola Mobility is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048.

6.      General Instrument is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 101 Tournament Drive, Horsham, Pennsylvania 19044.  General Instrument is a wholly-owned subsidiary of Motorola Mobility. General Instrument designs and supplies the QIP set-top boxes that Motorola Mobility sells and supplies to Verizon.

7.      On information and belief, Defendant TiVo is a corporation organized and existing under the laws of Delaware with a principal place of business at 2160 Gold Street, Alviso, California 95002.  TiVo can be served with process through its registered agent for service, Corporation Service Company, d/b/a CSC Lawyers Incorporated, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves a claim arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.,* and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

9.      Personal jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. §§ 1391, 1391 and/or 1400, because TiVo resides in this state and district and does business in this state and district, has committed acts of infringement in this district, and has availed itself of this forum by repeatedly commencing litigation in this district on the TiVo Patents.

## FACTUAL BACKGROUND

### A.    The Imedia Patents

10.    On September 7, 1999, the United States Patent and Trademark Office duly and lawfully issued the '948 Patent, entitled "Method and Apparatus for Implementing Playback Features for Compressed Video Data" to Dr. Edward A. Krause, Paul Shen and Dr. Adam S. Tom.  A true and correct copy of the '948 Patent is attached to this Complaint as Exhibit A. General Instrument owns the entire right, title and interest in and to the '948 Patent.  The '948 Patent was filed on November 20, 1995.

11.    On October 16, 2001, the United States Patent and Trademark Office duly and lawfully issued the '714 Patent, entitled "In-Home Digital Video Unit With Combine Archival Storage and High-Access Storage" to Dr. Krause, Dr. Jerrold Heller, Dr. Tom and Mr. Shen.  A true and correct copy of the '714 Patent is attached to this Complaint as Exhibit B.  General Instrument owns the entire right, title and interest in and to the '714 Patent.  The '714 Patent claims priority to application number 08/425,896, filed on April 21, 1995.

12.    On March 12, 2002, the United States Patent and Trademark Office duly and lawfully issued the '708 Patent, entitled "Method and Apparatus for Implementing Playback Features for Compressed Video Data" to Dr. Krause, Mr. Shen and Dr. Tom.  A true and correct copy of the '708 Patent is attached to this Complaint as Exhibit C.  General Instrument owns the entire right, title and interest in and to the '708 Patent.  The '708 Patent is a division of application number 08/560,732, filed on November 20, 1995, now the '948 Patent.

### B.    The TiVo Patents

13.    On May 15, 2001, the United States Patent and Trademark Office issued the '389 Patent, entitled "Multimedia Time Warping System" to James M. Barton, Roderick James

McInnis, Alan S. Moskowitz, Andrew Martin Goodman, Ching Tong Chow and Jean Swey Kao. A true and correct copy of the '389 Patent is attached to this Complaint as Exhibit D.  TiVo has alleged that it owns the '389 Patent.

14.     On May 5, 2009, the United States Patent and Trademark Office issued the '465 Patent, entitled "System for Time Shifting Multimedia Content Streams" to James M. Barton, Roderick James McInnis, Alan S. Moskowitz, Andrew Martin Goodman, Ching Tong Chow and Jean Swey Kao.  A true and correct copy of the '465 Patent is attached to this Complaint as Exhibit E.  TiVo has alleged that it owns the '465 Patent.

**C.     General Instrument Is a Pioneer in Digital Television.**

15.     General Instrument is a pioneer in the field of communication systems and is responsible for many groundbreaking innovations in television set-top box technology.  In 1990, General Instrument proposed the world's first all-digital HDTV (high-definition television) technical standard.

16.     Until 1994, the inventors of the Imedia Patents were employed by General Instrument developing technology that is still used in set-top boxes today, including those supplied by General Instrument, Motorola Mobility, TiVo and others.  For example, Dr. Krause helped invent three patented technologies while at General Instrument that the MPEG LA licensing organization determined were essential to the MPEG-2 compression standard.  On information and belief, TiVo subsequently licensed Dr. Krause's patented inventions through the MPEG LA licensing pool.  As another example, in 1996 Dr. Krause was awarded an Emmy by the Academy of Television Arts and Sciences for creating the DigiCipher system while working at General Instrument.  The winning DigiCipher technology was used to demonstrate digital TV transmitted over satellite and cable channels.

17.     In early 2000, Motorola, Inc. and General Instrument merged, which positioned Motorola as a leader in the convergence of voice, video and data technologies.  General Instrument is now a wholly-owned subsidiary of Motorola Mobility.  The combined company continues to focus on broadband solutions that deliver interactive television, the Internet and telephone services over wired and wireless networks.

**D.     The Imedia Engineers Invented the DVR in the Mid 1990s.**

18.     In March 1994, Dr. Krause, Dr. Tom and Mr. Shen left General Instrument to found Imedia and were joined soon thereafter by Dr. Heller.  Turning down an offer from General Instrument to set up a separate division, the four engineers instead started their own company in a spare room in Dr. Krause's home in San Diego, California.

19.     Imedia quickly became a success, developing innovative products that enabled cable operators to select and customize their program lineup for viewer preferences, including the highly successful Cherry Picker product.  While at Imedia, the Imedia engineers conceived of their DVR invention and filed a series of patent applications covering various aspects of their invention.  They marketed their DVR invention as the "Home Video Server," which featured digital random-access storage of television programming, full trick-mode playback, and easy-to-use content manager that allowed selective capturing of television programs.

20.     Each of the Imedia Patents was originally assigned to Imedia.  In or about 1999, Imedia was acquired by Terayon Communications Systems, Inc. ("Terayon") for a reported $100 million.  With the acquisition, the Imedia Patents were assigned to Terayon.  Terayon later was merged into General Instrument, making General Instrument the successor in interest to all right and title to the Imedia patents.

E.     **TiVo Obtained Patents on its DVR Product and Sued the Industry.**

21.     On information and belief, in or around 1997, TiVo was founded and began to develop its DVR product.  In July 1998—more than three years after the Imedia Patents were first filed—TiVo submitted a patent application for what it dubbed a "Multimedia Time Warping System."  That application eventually matured into the '389 Patent and '465 Patent, among others.  The TiVo Patents disclose and claim the same technology the Imedia engineers invented years earlier.

22.     On January 5, 2004, TiVo filed a patent infringement lawsuit in the United States District Court for the Eastern District of Texas against EchoStar Communications, Case No. 04-cv-00001 (DF) (the "EchoStar Lawsuit").  In the EchoStar Lawsuit, TiVo asserted that EchoStar infringed the '389 Patent by making, using, offering to sell and/or selling digital recording devices, digital video recording device software and/or personal television services falling within the scope of one or more claims of the '389 Patent.

23.     On August 26, 2009, TiVo filed a patent infringement lawsuit in the Eastern District of Texas against AT&T Inc., Case No. 09-cv-00259 (DF) (the "AT&T Lawsuit").  In the AT&T Lawsuit, TiVo asserted that AT&T infringed the TiVo Patents by making, using, offering for sale, selling and/or importing products and/or processes falling within the scope of one or more claims of the TiVo Patents, including AT&T's U-verse product and/or service.

24.     On August 26, 2009, TiVo filed the Verizon Lawsuit.  On February 2, 2010, TiVo filed an amended complaint in the Verizon Lawsuit adding Verizon Services Corp. and Verizon Corporate Resources Group, LLC as defendants (all defendants in the Verizon Lawsuit are referred to collectively as "Verizon").  In the Verizon Lawsuit, TiVo asserted that Verizon's digital recording devices, digital video recording device software and personal television services

Case 5:11-cv-00053-DF -CMC   Document 1   Filed 02/25/11   Page 8 of 17

infringed the TiVo Patents.  On February 24, 2010, Verizon answered TiVo's amended

complaint.  On or about April 4, 2010, TiVo identified certain QIP set-top boxes as accused

instrumentalities in the Verizon Lawsuit.

25.     On or about August 27, 2010, TiVo served a subpoena on Motorola, Inc. seeking

documents related to the design, operation and sale by Motorola, Inc. to Verizon of "all DVRs

manufactured or otherwise produced for or sold to Verizon by Motorola, including the following

models:  Motorola QIP 27xx Series Standard-Definition Watch and Record DVR, Motorola

QIP6200/QIP64xx Series, and Motorola QIP7200 Series."  On October 8, 2010, Motorola, Inc.

served its objections to TiVo's subpoena.  On January 4, 2011, Motorola Mobility ceased being a

subsidiary of Motorola, Inc.  On January 14, 2011, TiVo served a substitute subpoena on

Motorola Mobility, seeking documents related to the QIP set-top boxes.  On February 2, 2011,

Motorola Mobility served its objections to TiVo's substitute subpoena and produced various

documents.  TiVo has requested production of Motorola source code related to the accused QIP

set-top boxes, and Motorola Mobility currently is in the process of meeting and conferring with

TiVo regarding producing that source code for inspection.

26.     As a result of TiVo's accusations of infringement and the Verizon Lawsuit,

Verizon has demanded that Motorola Mobility defend and/or indemnify Verizon against TiVo's

claims of patent infringement related to the QIP set-top boxes.  In light of TiVo's aggressive

litigation history, TiVo's accusations of infringement against QIP set-top boxes, TiVo's requests

for detailed Motorola technical information related to the accused QIP set-top boxes and

Verizon's indemnification demand, an actual controversy exists between Plaintiffs and TiVo

regarding questions of infringement and validity of the TiVo Patents.

8

## FIRST CAUSE OF ACTION

### (TiVo's Infringement of the '714 Patent)

27.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

28.     General Instrument is the sole holder of the entire right, title and interest in the '714 Patent.

29.     TiVo has infringed and continues to infringe, directly and indirectly by contributing to and inducing the infringement of others, one or more claims of the '714 Patent by making, using, importing, selling, and/or offering to sell DVR devices, DVR software, DVR accessories and related services that are covered by the claims of the '714 Patent.

30.     On information and belief, TiVo has been on notice of and aware of the '714 Patent since at least October 2005.

31.     On information and belief, TiVo has actively induced, and continues to actively induce, the infringement of one or more claims of the '714 patent by, among other things, instructing its customers to operate the accused products in a manner that infringes the claims of the '714 patent.  TiVo intends that its customers will use its DVR devices, DVR software and DVR accessories in a manner that infringes the '714 patent.

32.     On information and belief, TiVo has contributorily infringed and continues to contributorily infringe the '714 patent by offering to sell and/or selling within the United States and/or importing into the United States one or more components of a machine, manufacture, or combination covered by the '714 patent that constitute a material part of the invention, which is not a staple article or commodity of commerce suitable for substantial noninfringing use.  On information and belief, TiVo knows that the component and/or apparatus is especially made or especially adapted for use in infringing the '714 patent.

33.     On information and belief, TiVo has been on notice of and aware of the '714 Patent since at least October 2005 and has nevertheless continued to infringe, despite an objectively high likelihood that its actions constitute infringement of the '714 patent. Accordingly, TiVo's infringement has been and continues to be willful.

34.     As a result of TiVo's infringement of the '714 Patent, General Instrument is suffering irreparable harm for which it has no adequate remedy at law.  Unless enjoined by this Court, this infringement will continue and will result in further irreparable harm to General Instrument.

35.     General Instrument is entitled to recover damages from TiVo not less than a reasonable royalty adequate to compensate for the infringement.

## SECOND CAUSE OF ACTION

### (TiVo's Infringement of the '948 Patent)

36.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

37.     General Instrument is the sole holder of the entire right, title and interest in the '948 Patent.

38.     TiVo has infringed and continues to infringe, directly and indirectly by contributing to and inducing the infringement of others, one or more claims of the '948 Patent by making, using, importing, selling, and/or offering to sell DVR devices, DVR software, DVR accessories and related services that are covered by the claims of the '948 Patent.

39.     On information and belief, TiVo has been on notice of and aware of the '948 Patent since at least October 2005.

40.     On information and belief, TiVo has actively induced, and continues to actively induce, the infringement of one or more claims of the '948 patent by, among other things,

instructing its customers to operate the accused products in a manner that infringes the claims of the '948 patent. TiVo intends that its customers will use its DVR devices, DVR software and DVR accessories in a manner that infringes the '948 patent.

41. On information and belief, TiVo has contributorily infringed and continues to contributorily infringe the '948 patent by offering to sell and/or selling within the United States and/or importing into the United States one or more components of a machine, manufacture, or combination covered by the '948 patent that constitute a material part of the invention, which is not a staple article or commodity of commerce suitable for substantial noninfringing use. On information and belief, TiVo knows that the component and/or apparatus is especially made or especially adapted for use in infringing the '948 patent.

42. On information and belief, TiVo has been on notice of and aware of the '948 Patent since at least October 2005 and has nevertheless continued to infringe, despite an objectively high likelihood that its actions constitute infringement of the '948 patent. Accordingly, TiVo's infringement has been and continues to be willful.

43. As a result of infringement of the '948 Patent, General Instrument is suffering irreparable harm for which General Instrument has no adequate remedy at law. Unless enjoined by this Court, this infringement will continue and will result in further irreparable harm to General Instrument.

44. General Instrument is entitled to recover damages from TiVo not less than a reasonable royalty adequate to compensate for the infringement.

### THIRD CAUSE OF ACTION

### (TiVo's Infringement of the '708 Patent)

45. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

46.     General Instrument is the sole holder of the entire right, title and interest in the '708 Patent.

47.     TiVo has infringed and continues to infringe, directly and indirectly by contributing to and inducing the infringement of others, one or more claims of the '708 Patent by making, using, importing, selling, and/or offering to sell DVR devices, DVR software, DVR accessories and related services that are covered by the claims of the '708 Patent.

48.     On information and belief, TiVo has been on notice of and aware of the '708 Patent.

49.     On information and belief, TiVo has actively induced, and continues to actively induce, the infringement of one or more claims of the '708 patent by, among other things, instructing its customers to operate the accused products in a manner that infringes the claims of the '708 patent.  TiVo intends that its customers will use its DVR devices, DVR software and DVR accessories in a manner that infringes the '708 patent.

50.     On information and belief, TiVo has contributorily infringed and continues to contributorily infringe the '708 patent by offering to sell and/or selling within the United States and/or importing into the United States one or more components of a machine, manufacture, or combination covered by the '708 patent that constitute a material part of the invention, which is not a staple article or commodity of commerce suitable for substantial noninfringing use.  On information and belief, TiVo knows that the component and/or apparatus is especially made or especially adapted for use in infringing the '708 patent.

51.     On information and belief, TiVo has been on notice of and aware of the '708 Patent and has nevertheless continued to infringe, despite an objectively high likelihood that its

actions constitute infringement of the '708 patent.  Accordingly, TiVo's infringement has been and continues to be willful.

52.     As a result of infringement of the '708 Patent, General Instrument is suffering irreparable harm for which General Instrument has no adequate remedy at law.  Unless enjoined by this Court, this infringement will continue and will result in further irreparable harm to General Instrument.

53.     General Instrument is entitled to recover damages from TiVo not less than a reasonable royalty adequate to compensate for the infringement.

## FOURTH CAUSE OF ACTION

### (Invalidity of the '389 Patent)

54.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

55.     Claims 31 and 61 of the '389 Patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. §§ 102, 103 and/or 112.

56.     As a result of the acts described in the foregoing paragraphs, there exists a substantial and actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Plaintiffs and TiVo of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

57.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding claims 31 and 61 of the '389 Patent.

## FIFTH CAUSE OF ACTION

### (Invalidity of the '465 Patent)

58.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

59.     The claims of the '465 Patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. §§ 102, 103 and/or 112.

60.     As a result of the acts described in the foregoing paragraphs, there exists a substantial and actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Plaintiffs and TiVo of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

61.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '465 Patent.

## SIXTH CAUSE OF ACTION

### (Noninfringement of the '389 Patent)

62.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

63.     The QIP set-top boxes do not infringe directly, indirectly, or otherwise, either literally or equivalently, claim 31 or 61 of the '389 Patent.

64.     As a result of the acts described in the foregoing paragraphs, there exists a substantial and actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Plaintiffs and TiVo of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

65.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding claims 31 and 61 of the '389 Patent.

## SEVENTH CAUSE OF ACTION

### (Noninfringement of the '465 Patent)

66.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

14

67.     The QIP set-top boxes do not infringe, directly, indirectly, or otherwise, either literally or equivalently, any valid claim of the '465 Patent.

68.     As a result of the acts described in the foregoing paragraphs, there exists a substantial and actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Plaintiffs and TiVo of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

69.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '465 Patent.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to enter judgment in its favor against TiVo and grant the following relief:

A.     Judgment that the '714, '948 and '708 Patents are each valid, enforceable, and infringed by TiVo;

B.     A preliminary and permanent injunction enjoining TiVo, its officers, agents, servants, employees, subsidiaries and affiliated companies, and those persons acting in active concert or participation therewith, from engaging in the aforesaid unlawful acts of patent infringement;

C.     An award of damages arising out of each of TiVo's acts of patent infringement, together with pre-judgment and post-judgment interest;

D.     Judgment that the damages be trebled in accordance with 35 U.S.C. § 284;

E.     Judgment declaring that claims 31 and 61 of the '389 Patent are invalid under 35

U.S.C. §§ 102, 103 and/or 112;

F.      Judgment declaring that each of the claims of the '465 Patent are invalid under 35 U.S.C. §§ 102, 103 and/or 112;

G.      Judgment declaring that neither claim 31 nor claim 61 of the '389 Patent has been infringed by Plaintiffs, directly or indirectly, literally or equivalently, by the making, using, selling, offering to sell, and/or importing of QIP set-top boxes;

H.      Judgment declaring that no valid claim of the '465 Patent has been infringed by Plaintiffs, directly or indirectly, literally or equivalently, by the making, using, selling, offering to sell, and/or importing of QIP set-top boxes;

I.      Declaring this case exceptional and awarding Plaintiffs their attorneys' fees and costs incurred in this action, pursuant to 35 U.S.C. § 285; and

J.      Granting Plaintiffs such other, further and different relief as the Court may deem just and proper.

Dated:  February 25, 2011          By: */s/ Brian Erickson*
                                        John Allcock (*pro hac vice* app. pending)
                                        john.allcock@dlapiper.com
                                        Sean Cunningham (*pro hac vice* app. pending)
                                        sean.cunningham@dlapiper.com
                                        Erin Gibson (*pro hac vice* app. pending)
                                        erin.gibson@dlapiper.com
                                        DLA Piper LLP (US)
                                        401 B Street, Suite 1700
                                        San Diego, CA 92101
                                        Telephone:  619-699-2700
                                        Facsimile:  619-699-2701

                                        Wayne Harding
                                        Texas Bar No. 08978500
                                        wayne.harding@dlapiper.com
                                        Brian Erickson
                                        Texas Bar No. 24012594
                                        brian.erickson@dlapiper.com
                                        John Guaragna

Texas Bar No. 24043308
john.guaragna@dlapiper.com
DLA Piper LLP (US)
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone:  512-457-7000
Facsimile:  512-457-7001

Attorneys for Plaintiffs
MOTOROLA MOBILITY, INC. and
GENERAL INSTRUMENT CORPORATION