IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| MOTOROLA MOBILITY, INC. AND GENERAL INSTRUMENT CORPORATION,<br><br>        Plaintiffs,<br><br>v.<br><br>TIVO INC.,<br><br>        Defendant,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>        Intervenor. | Civil Action No. 5:11-00053-JRG<br><br>JURY TRIAL DEMANDED |

**MICROSOFT CORPORATION'S COMPLAINT IN INTERVENTION**

For its Complaint in Intervention, Intervenor Microsoft Corporation ("Microsoft"), on personal knowledge of its own acts and upon information and belief as to the acts of others, states as follows:

**I.      PARTIES**

1.      Microsoft is a corporation organized under the laws of the State of Washington, with its principal place of business at One Microsoft Way, Redmond, Washington 98052.

2.      Plaintiff Motorola Mobility, Inc. ("Motorola") claims to be a corporation organized under the laws of the State of Delaware, with a principal place of business in Libertyville, Illinois.

3. Plaintiff General Instrument Corp. ("General Instrument") claims to be a subsidiary corporation of Motorola organized under the laws of the State of Delaware, with a principal place of business in Horsham, Pennsylvania.

4. Defendant TiVo Inc. ("TiVo") claims to be a corporation organized under the laws of the State of Delaware, with a principal place of business in Alviso, California.

5. Counterclaim Defendants Time Warner Cable Inc. and Time Warner Cable LLC (collectively "Time Warner") are alleged, respectively, to be a corporation organized under the laws of the State of Delaware, with a principal place of business in New York, New York and a limited liability corporation organized under the laws of the State of Delaware, with a principal place of business in New York, New York.

## II. JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. The Court has personal jurisdiction over Motorola, General Instrument, TiVo, and Time Warner, which have submitted to the jurisdiction of this Court.

8. Based on the underlying allegations of the claims and counterclaims asserted by Motorola, General Instrument and TiVo, venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400.

## III. BACKGROUND

9. In *TiVo Inc. v. AT&T Inc., et al.*, Case No. 2:09-cv-00259 ("the *AT&T* case"), TiVo alleged that AT&T and certain of its subsidiaries infringed TiVo's patents by distributing DVR set-top boxes that run Microsoft's Mediaroom software. Mediaroom is an IPTV (Internet Protocol TV) software platform that Microsoft developed independently. Microsoft successfully intervened in the *AT&T* case to defend its software and produced hundreds of thousands of

pages of source code, detailed design information and other proprietary technical and business documents regarding Mediaroom.  Several Microsoft engineers were deposed regarding that Mediaroom information.  TiVo's and Microsoft's experts prepared reports and gave deposition testimony regarding the infringement claims and non-infringement defenses that incorporated and referenced the Mediaroom information.  All of the Mediaroom documents, deposition testimony and other discovery were produced, disclosed or provided pursuant to restrictions on use and disclosure set out in the Stipulated Protective Order ("the Protective Order") entered by Judge David Folsom on May 18, 2010 in the *AT&T* case.

      10.     Microsoft understands that the patent infringement claims in this case are directed to various DVR set top boxes that Motorola supplies to Verizon and to Time Warner.  Microsoft's Mediaroom software is not installed on the DVR set-top boxes at issue in this case.  Microsoft does not license Mediaroom for use by the subscribers of Verizon or Time Warner and does not supply Mediaroom code for deployment by Motorola on the accused set-top boxes.  Microsoft is informed and believes that at least some of the competing software that runs on the accused set-top boxes at issue in this case was developed by Motorola.

      11.     Microsoft is informed and believes that Motorola has served discovery requests seeking to require TiVo to list and potentially produce all the documents, contentions, expert reports and deposition transcripts in TiVo's possession from the *AT&T* case.  As a result, Motorola is potentially seeking access to all the highly confidential Mediaroom information in TiVo's possession that Microsoft produced or provided in reliance on Judge Folsom's protective order throughout the two years of the litigation in the *AT&T* case.

12.     On information and belief, Time Warner and General Instrument may also seek to require TiVo to produce the highly confidential Mediaroom information from the *AT&T* case during discovery in this action.

### IV.     MICROSOFT'S RESPONSES AND OBJECTIONS TO DEFENDANTS' DISCOVERY REQUESTS

13.     Microsoft has intervened in this case for the limited purpose of preventing or limiting the production or disclosure of confidential Microsoft information produced and disclosed in the prior *AT&T* case in reliance on Judge Folsom's protective order. Motorola has moved to compel TiVo to list and potentially to produce such information. Subject to the exceptions noted below, Microsoft asks the Court to deny Motorola's requests for discovery of confidential trade secret information related to Microsoft's proprietary Mediaroom Software on the grounds that Mediaroom is not relevant to the current case and the disclosure of such information risks significant competitive harm to Microsoft that far outweighs any marginal benefit that production could conceivable provide to Defendants. To the extent such production or disclosure is ordered, however, Microsoft seeks to control the scope of such production or disclosure or to participate in the drafting and be made an express beneficiary of any protective order under which such information may be produced in this case.

**A.     Microsoft Has Consented to TiVo's Production of All Discovery Related to Prior Art and Invalidity Defenses Asserted in the *AT&T* Case.**

14.     During the *AT&T* case, Microsoft and the other parties to that case produced, generated or provided tens of thousands of pages of documents, source code, contentions, expert reports, and deposition testimony regarding prior art and invalidity defenses. Much of that discovery was subject to Judge Folsom's protective order. To the extent that it was, Microsoft has communicated its consent to TiVo and Motorola for TiVo to provide such discovery material in TiVo's possession to the Defendants in this action.

**B.     Microsoft Has Consented to TiVo's Production of Redacted Damages Reports.**

15.     During the *AT&T* case, AT&T and TiVo generated and produced expert reports and deposition testimony regarding TiVo's damages demands. That discovery was subject to Judge Folsom's protective order. To the extent that it was, and to the extent that such discovery encompasses confidential Microsoft information, Microsoft has communicated its consent to TiVo's production in this case, subject to specified restrictions, of redacted damages expert reports.

**C.     Microsoft Has Consented to TiVo's Production of Redacted Infringement and Non-infringement Reports Subject to Specified Conditions.**

16.     During the *AT&T* case, TiVo, AT&T and Microsoft generated, produced or provided documents, contentions, expert reports and deposition testimony directed to the infringement and non-infringement positions of the parties. Most of that discovery was provided in reliance on Judge Folsom's protective order in the *AT&T* case, and virtually all of that discovery encompassed highly confidential and trade secret information about Mediaroom software that belongs to Microsoft.

17.     By letter dated July 30, 2012, TiVo advised Microsoft that Motorola had stated it would move to compel the production by TiVo of the infringement and non-infringement expert reports from the *AT&T* case. During the first three weeks of August, Microsoft communicated and reinforced its objects to the disclosure and use in this case of the source code and other highly confidential Mediaroom information contained in those expert reports. Microsoft further engaged in extensive meet and confer efforts with Motorola to find a mutually-acceptable compromise. Ultimately, Microsoft agreed to prepare redacted expert reports that would eliminate technical and source code details while permitting Motorola to understand the nature of the infringement and non-infringement theories advanced by TiVo, AT&T and Microsoft and to

provide those redacted reports to TiVo for production to Motorola pursuant to (i) the protective order in force in this case and (ii) further restrictions on disclosure and use contained in an August 29, 2012 letter agreement signed by TiVo, Motorola and Microsoft. Pursuant to that agreement, Microsoft prepared and delivered the redacted expert reports to TiVo for production to Motorola on September 5, 2012.

### D. Microsoft Has Consented to TiVo's Production of the TiVo-Microsoft Dismissal Agreement Subject to Specified Conditions

18. By email dated September 4, 2012, TiVo asked Microsoft whether it would consent to TiVo's production in this case of the agreement between Microsoft and TiVo to dismiss the *AT&T* case. By email dated September 11, 2012, Microsoft communicated the restrictions under which Microsoft would consent to the requested production.

### E. Microsoft Objects to Defendants' Requests Seeking Broader Access to Confidential Information About Microsoft's Proprietary Mediaroom Software.

19. Microsoft understands that Motorola has filed in this case a motion to compel discovery from TiVo. [Dkt. 131] Because the motion was filed under seal, Microsoft was unaware until receiving a copy of Motorola's public reply in support of the motion (Dkt. 144) that Motorola seeks broad discovery from TiVo related to all documents, contentions, expert reports and deposition testimony from the *AT&T* case. Before obtaining a copy of the reply, Microsoft believed that its agreement to consent to the production by TiVo of the above redacted infringement and non-infringement expert reports would resolve Motorola's interest in obtaining discovery material from the *AT&T* case that contains Microsoft's highly confidential and trade secret Mediaroom information. Motorola's reply, however, suggests that Motorola potentially seeks broader discovery of Microsoft's Mediaroom information, including, for example, deposition transcripts and related exhibits of Microsoft's engineers and 30(b)(6) designees,

detailed infringement and non-infringement contentions specifying source code details of the Mediaroom software and other Mediaroom documents that may be in TiVo's possession.

20. Aside from the items to which Microsoft has consented to TiVo's limited and restricted production as set out in paragraphs 14 to 18 above, Microsoft objects to the production of any further discovery material from the *AT&T* case that contains Microsoft's highly confidential and trade secret information regarding Mediaroom software. Although the *AT&T* case has ended, it is generally understood "that a protective order issued by a court, either state or federal, which on its face survives the underlying litigation, continues to have full force and effect on the parties subject to it even after final resolution of the underlying case." *See Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499 (D. Md. 2000) (*citing Public Citizen v. Liggett Group*, 858 F.2d 775, 780-82 (1st Cir.1988) and *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990)). Paragraph 25 of the Protective Order expressly provides that "[a]ll the provisions of this Protective Order shall survive the conclusion of this Action, and shall continue to be binding after the conclusion of this Action unless subsequently modified by agreement among the Parties or further order of the Court." Microsoft therefore asks the Court to uphold the provisions of the Protective Order and prevent the disclosure of Microsoft's confidential materials in TiVo's custody, control, or possession to Motorola or the other Defendants. Such disclosure is expressly restricted by the terms of Judge Folsom's protective order.

21. Motorola's reply in support of its motion to compel argues that Judge Folsom's protective order permits TiVo to produce discovery information from the *AT&T* case that was designated for treatment under that order on the theory that no other party from that case has sought to intervene after having more than 10 days notice of Motorola's requests. In the case of

Microsoft and the requested discovery that contains highly confidential Mediaroom information, that argument is mistaken. Paragraph 21 of Judge Folsom's protective order forbids disclosure beyond the terms of the order, unless (i) the producing party "consents to such disclosure," (ii) "the Court, after notice of all affected persons, allows such disclosure," or (iii) the receiving party of information designated for treatment under the protective order becomes obligated to disclose it under a lawful subpoena and provides 10 days notice to the producing party to intervene and seek judicial protection from enforcement of the subpoena. None of those conditions applies to Microsoft's Mediaroom information because (a) Microsoft does not consent, (b) Microsoft had no prior notice that Motorola would seek Mediaroom information beyond the redacted expert reports to which Microsoft has consented to production, and (c) TiVo is not subject to a subpoena or order to produce the information; moreover, Microsoft has intervened to protect its Mediaroom information from unwarranted and unnecessary disclosure in this action.

### F. Microsoft's Mediaroom Information Is Not Discoverable in the Current Case

22. The withheld Mediaroom information is not subject discovery in this case because Mediaroom software is not relevant to any claim or defense at issue and the disclosure of Microsoft's highly confidential and trade secret information risks considerable competitive harm to Microsoft.

23. Generally, materials and information are discoverable only if they are "relevant to any party's claim or defense" or if they "appear[ ] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, courts have recognized that "while it is true that relevance in discovery is broader than that required for admissibility at trial, 'the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue.'" *See Korotney v. Sears Roebuck & Co.*, No. 4:07-cv-

127, 2008 WL 4361247, at *1 (E.D. Tex. Sept. 19, 2008) (quoting *Piacenti v. Gen. Motors Corp.*, 173 F.R.D. 221, 223 (N.D.Ill.1997)) (denying motion to compel discovery of materials, in personal injury case, related to another accident that had occurred eight days earlier in the same store); *see also MacLean v. McCarroll*, No. 4:08-cv-059, 2009 WL 1586680, at *2 (E.D. Tex. June 5, 2009) (quoting the same passage in *Piacenti* and denying in part motion to compel production on grounds that requests were overbroad and sought irrelevant documents). And many Fifth Circuit cases have noted that the threshold burden of demonstrating that the discovery sought is reasonably calculated to lead to the discovery of admissible evidence rests with the party seeking the discovery. *See, e.g.*, *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2-08-cv-158-TJW, 2010 WL 547478, at *2 (E.D. Tex. Feb. 10, 2010); *Gauthier v. Union Pac. R.R. Co.*, No. 1:07-CV-12 (TH/KFG), 2008 WL 2467016, at *3 (E.D. Tex. June 18, 2008); *Spiegelberg Mfg., Inc. v. Hancock*, No. 3-07-CV-1314-G, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007); *E.E.O.C. v. Renaissance III Org.*, No. 3-05-CV-1063-B, 2006 WL 832504, at *1 (N.D. Tex. Mar. 30, 2006) (Kaplan, J.), *citing Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 650 (N.D. Ill. 1994) ("To place the burden of proving that the evidence sought is not reasonably calculated to lead to the discovery of admissible evidence on the opponent of discovery is to ask that party to prove a negative. This is an unfair burden, as it would require a party to refute all possible alternative uses of the evidence, possibly including some never imagined by the proponent.").

24.     Moreover, as Judge Ward noted in *SSL Services*, Fed. R. Civ. P. 26(b)(2) requires that "[c]ourts must limit discovery if 1) the discovery sought is shown to be unreasonably cumulative or duplicative, or is more easily obtainable from another, more convenient source; 2) the party seeking discovery has had ample opportunity to obtain the information sought; or 3) the

burden or expense of the discovery outweighs its likely benefit." *See SSL Services*, 2010 WL 547478, at *2 (refusing to compel production of deposition testimony given by experts retained by a non-party in a different case and subject to a protective order in that case); *see also Renaissance III Org.*, 2006 WL 832504, at *1 (finding privacy interest far outweighed likely benefit to party seeking production of confidential employment records, even though discovery sought could lead to discovery of admissible evidence in case). *See also Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324-25 (Fed. Cir. 1990) (district court abused its discretion by ordering discovery from nonparties for purposes of establishing damages claim).

25.     When dealing with requests for trade secrets or other confidential information (as is the case with the withheld Mediaroom information), courts employ a burden shifting analysis to determine if discovery should be limited or denied. If the party from which discovery is sought can demonstrate that the material sought is confidential and that harm would result from its disclosure, the burden shifts to the party seeking discovery to show that the material sought is both relevant and necessary to its case. *See Am. Standard, Inc. v. Pfizer Inc.*, 828 F. 2d 734, 739-40 (Fed. Cir. 1987) (affirming district's denial of discovery of non-party's confidential information); *see also R & D Bus. Sys. v. Xerox Corp.*, 152 F.R.D. 195, 197 (D. Colo. 1993) (finding that the potential harm of disclosure of confidential information to competitors far outweighed benefit of disclosure). In analyzing the issue of the harm of disclosure, courts have presumed that disclosure to a competitor, is more harmful than disclosure to a noncompetitor. *Am. Standard Inc.*, 828 F.2d at 741; *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 299 (D. Del. 1985); *see United States v. United Fruit Co.*, 410 F.2d 553, 556 (5th Cir. 1969), *cert. denied*, 396 U.S. 820, 90 S. Ct. 59 (1969). Also, some courts have considered nonparty

status, which Microsoft has in this case, to weigh against disclosure. *See, e.g.*, *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) (and cases cited therein).

26.   Motorola has not made a sufficient showing that the discovery material containing Microsoft's Mediaroom information is relevant to any claim or defense in the case or that Motorola's need for such information outweighs the substantial risk of harm to Microsoft from the disclosure of that information to a competitor.  To the extent that Motorola later attempts to make such a showing, Microsoft requests an opportunity to respond.

## IV.   CONCLUSION

Microsoft asks that the Court take appropriate measures to protect Microsoft's trade secrets and other highly sensitive, confidential business information from unwarranted disclosure to competitors or the public. Whereas Microsoft can identify genuine competitive harm that would result from such disclosure, Motorola and Defendants are unable to provide any concrete explanation as to why Microsoft's confidential business information is purportedly necessary to enable them to defend their products and services against Plaintiff's claims—especially given that Microsoft's Mediaroom software is not implicated in any way in this case. Accordingly, the withheld Mediaroom information should not be required to be produced to Motorola or Defendants.

Dated:  September 19, 2012     Respectfully submitted,

GILLAM & SMITH, LLP

By: */s/ Harry L. Gillam, Jr.*
 Harry L. Gillam, Jr.
 303 South Washington Avenue
 Marshall, Texas 75670
 Telephone:  (903) 934-8450
 Facsimile:  (903) 934-9257

PERKINS COIE LLP

By: /s Chad S. Campbell
 Chad S. Campbell (*Admitted Pro Hac Vice*)
 2901 North Central Avenue, Suite 2000
 Phoenix, AZ  85012-2788
 Telephone:  602.351.8393
 Facsimile:  602.648.7193
 cscampbell@perkinscoie.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 19th day of September 2012, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission and/or first class mail.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Harry L. Gillam, Jr.*
　　　　　　　　　　　　　　　　　　　　　　Harry L. Gillam