IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MOTOROLA MOBILITY, INC. and GENERAL INSTRUMENT CORPORATION,<br>    Plaintiffs,<br><br>v.<br><br>TIVO INC.,<br>    Defendant.<br>_____<br><br>TIVO INC.,<br>    Counterclaim Plaintiff,<br><br>v.<br><br>MOTOROLA MOBILITY, INC., GENERAL INSTRUMENT CORPORATION, TIME WARNER CABLE INC., and TIME WARNER CABLE LLC,<br>    Counterclaim Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § | Case No. 5:11-cv-053-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant and Counterclaim Plaintiff TiVo Inc.'s ("TiVo") Motion to Dismiss and Strike Motorola's Fourth, Fifth, Eighth, and Ninth Causes of Action, filed May 17, 2012 (Dkt. No. 88) (the "Motion"). The Court having considered the same finds that the Motion should be **DENIED** for the reasons set forth below.

**I.   Factual and Procedural Background**

Motorola Mobility, Inc. and General Instrument Corp. (collectively "Motorola") instituted this action against TiVo on February 25, 2011, alleging that TiVo infringed U.S. Patents Nos. 5,949,948, 6,304,714, and 6,356,708 (collectively, the "Imedia Patents"). Motorola also seeks a declaratory judgment that Motorola did not infringe two TiVo patents. The two TiVo patents at

1

issue regarding declaratory judgment are U.S. Patents Nos. 6,233,389 (the "'389 patent") and 7,529,465 (the "'465 patent"). Motorola's declaratory judgment claims relate to its set-top digital video recorder ("DVR") boxes having a "QIP" designation (the "QIP boxes"). On April 30, 2012, Motorola filed its Amended Complaint (Dkt. No. 86).

Motorola alleges that beginning in January 1995 the named inventors of the Imedia Patents (the "Imedia Inventors") met with Mr. Geoff Yang of Institutional Venture Partners, a Silicon Valley venture capital firm, seeking investments in Imedia Corporation ("Imedia").[1] (Dkt. No. 86 ¶¶ 1, 6, 71.) Imedia ultimately selected a different funding source. (*Id.* ¶ 71.) Thereafter, "Mr. Yang led an investment that purchased 2,000,000 shares of TiVo stock on or about September 24, 1997, and became a Director of TiVo," which was founded as Teleworld in August 1997. (*Id.* ¶ 72.) Motorola alleges that, "[o]n information and belief, Mr. Yang communicated the Imedia inventors' conception of the DVR to the named inventors of the '389 patent" and that "[t]hrough the communication by Mr. Yang, the named inventors of the '389 patent derived the subject matter claimed in the '389 patent from the Imedia inventors." (*Id.* ¶ 73.)

Relevant here are Motorola's Fourth, Fifth, Eighth, and Ninth Causes of Action. Motorola's Fourth Cause of Action alleges that claims 31 and 61 of the '389 Patent are invalid. (Dkt. No. 86 ¶¶ 54-57.) Motorola's Fifth Cause of Action alleges that the claims of the '465 Patent are invalid. (*Id.* ¶¶ 58-61.) Motorola's Eighth Cause of Action seeks correction of inventorship under 35 U.S.C. § 256 and ownership under 35 U.S.C. § 262 in relation to the '389 Patent. (*Id.* ¶¶ 70-76.) Motorola's Ninth Cause of Action alleges unjust enrichment in relation to the '389 Patent. (*Id.* ¶¶ 77-81.) TiVo filed the present Motion seeking to dismiss and strike these causes of action under Federal Rules of Civil Procedure 12(b)(6) and 12(f).

---

[1] In our about 1999, Terayon Communications Systems, Inc. ("Terayon") acquired Imedia. Terayon was later merged into General Instrument.

## II.     Legal Standards

By written motion, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss are purely procedural questions to which the Federal Circuit applies the law of the regional circuit. *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *E.g., Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). A "patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007). Indeed, Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts have generally defined each of the terms redundant, immaterial, impertinent, and scandalous as follows:

> Redundant matter consists of allegations that constitute a needless repetition of other averments in the pleading. Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. Immateriality is established by showing that the challenged allegations can have no possible bearing upon

3

the subject matter of the litigation. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question; while scandalous matter is that which improperly casts a derogatory light on someone, most typically on a party to the action.

*Marceaux v. Lafayette Consol. Gov't*, 2012 U.S. Dist. LEXIS 150922, 2012 WL 5197667, at *1 (W.D. La. Oct. 18, 2012) (citations and quotations omitted); *see, e.g.*, *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 645 (N.D. Tex. 2007) (citing *Cobell v. Norton*, 224 F.R.D. 266, 280 (D.D.C. 2004)).

Motions to strike are generally disfavored. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1058 (5th Cir. 1982). Indeed, striking portions of pleadings is a "drastic remedy" and is "often sought by a movant simply as a dilatory tactic." *See, e.g.*, *Am. Southern Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 626 (E.D. Tex. 2010). "[T]he action of striking a pleading should be sparingly used by the courts" and "motion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012).

### III.   Analysis

####   a.   Motorola's Eighth Cause of Action

TiVo argues that Motorola's Eighth Cause of Action does not present any cognizable issue of inventorship or ownership. TiVo further argues that Motorola's Eighth Cause of Action is also time barred. The Court addresses each in turn.

#####      i.   *Motorola's Action to Correct Inventorship and for a Declaration of Joint Ownership*

Section 256 of Title 35 provides for the correction of the named inventor of an issued patent. TiVo contends that Motorola's Eighth Cause of Action does not present a cognizable issue of inventorship under 35 U.S.C. § 256 because Motorola's Amended Complaint asserts two separate, non-overlapping sets of dates for the Imedia Inventors' conception and the TiVo

4

inventors' conception. TiVo relies upon *Credle v. Bond*, 25 F.3d 1566 (Fed. Cir. 1994) and argues that it stands for the proposition that "individuals cannot be considered co-inventors of a patent if their alleged conception periods cover 'two entirely separate, non-overlapping sets of dates . . . .'" (Dkt. No. 88 at 5 (quoting *Credle*, 25 F.3d at 1574).) Motorola responds that Mr. Yang's communications to TiVo provide the "overlap" that was missing in *Credle*. The Court finds that Motorola has sufficiently pled overlapping sets of dates—via Mr. Yang's communications with Imedia and TiVo—of the Imedia Inventors' conception and the TiVo inventors' conception. While TiVo further argues that Motorola's claims are presumptively barred by laches, such a presumption alone "will not support judgment on the pleading under Rule 12(b)(6)." *See, e.g.*, *Advanced Cardiovascular Sys. v. SciMed Life Systems*, 988 F.2d 1157, 1163 (Fed. Cir. 1993). Accordingly, TiVo's motion to dismiss Motorola's Eighth Cause of Action (to correct inventorship under § 256) should be **DENIED**.

Relatedly, TiVo's argues that Motorola's ownership claim is entirely derivative of, and should fall with, its inventorship theory. The Court having denied TiVo's motion to dismiss Motorola's claim to correct inventorship finds that TiVo's motion to dismiss Motorola's ownership claim should also be **DENIED**. To the extent TiVo argues that Motorola's Eighth Cause of Action lacks factual merit, the Court finds it improper and not timely to consider such arguments while ruling on a 12(b)(6) motion to dismiss.

### ii. *Statute of Limitations*

TiVo contends that Motorola's Eighth Cause of Action falls outside any statutes of limitations that might apply. Claims for a declaration of patent ownership generally are matters of state law. *Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 583 F.3d 832, 846 (Fed. Cir. 2009). Normally, a claim accrues when the events giving rise to the

claim have all occurred. *See, e.g.*, *Via NET v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006); *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999). Where the nature of the injury incurred is "inherently undiscoverable," however, the discovery rule may defer the running of the limitations period until the plaintiff knows, or by exercising reasonable diligence, should have known of the facts giving rise to the cause of action. *See, e.g.*, *Via NET v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006); *Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999) ("[The discovery rule] postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."). Motorola does not dispute TiVo's assertion that, under either Texas law (where this Court is located) or California law (where Imedia, Mr. Yang, and TiVo are located), a four-year limitations period governs the ownership issue here. *See* Tex. Civ. Prac. & Rem. Code § 16.051; Cal. Code Civ. P. § 343.

The parties dispute when Motorola (or its predecessors) discovered, or through reasonable diligence should have discovered, the nature of its injury. TiVo first argues that, because the issuance of a patent and recordation in the Patent Office constitutes notice to the world of its existence, Motorola was constructively placed on notice of its ownership claims upon the issuance of the '389 Patent on May 15, 2001. In the alternative, TiVo argues that Motorola was placed on notice of its ownership claims upon TiVo's lawsuit against EchoStar for infringing the '389 Patent, during which EchoStar served a subpoena on Motorola in March of 2005.

Motorola responds that constructive notice of a patent in and of itself may not place a plaintiff on notice of facts supporting the plaintiff's alleged claims. Motorola further notes that by the time the '389 Patent issued in 2001, Terayon had acquired Imedia and all of its assets, and all four of the Imedia Inventors had left the company. Additionally, Motorola had not yet acquired Terayon when EchoStar served Motorola with a subpoena in the *EchoStar* case.

Motorola argues that this demonstrates that no interested party knew the facts that (1) the Imedia Inventors communicated their DVR invention to Mr. Yang in 1995 and (2) Mr. Yang passed the Imedia confidential information to the TiVo inventors.

To dismiss a complaint under Rule 12(b)(6) as barred by the statute of limitations, "the face of the complaint must show 'beyond doubt that the statute of limitations period has run.'" *MedioStream, Inc. v. Microsoft Corp.*, 749 F. Supp. 2d 507, 511-12 (E.D. Tex. 2010) (quoting *La Porte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1255 (5th Cir. 1986)).  Here, TiVo has not demonstrated "beyond doubt" that the limitations period has run.  Although circumstances may exist where issuance of a patent may suffice to place a party on notice of its injury, *see, e.g.*, *Versata Software, Inc. v. Internet Brands, Inc.*, 2012 WL 588790, at *5 (E.D. Tex. Feb. 22, 2012) (J. Bryson, sitting by designation), Motorola sufficiently pleads facts that permit an inference that the discovery rule <u>may</u> defer the running of the limitations period to a later date.  In this regard, Motorola specifically pleads that "[e]ach of the Imedia inventors was unaware of TiVo's patent-related activities" and that "[t]he Imedia inventors assigned the Imedia Patents and the inventions disclosed therein to Imedia."  (Dkt. No. 86 ¶¶ 74, 75.)  Motorola further pleads that Terayon then acquired all of Imedia's interest in the Imedia Patents and inventions disclosed therein, and that by the time the '389 Patent application was published on May 15, 2001, each of the Imedia inventors had left Terayon.  (Dkt. No. 86 ¶ 75.)

Thus, Imedia may have had knowledge of the communication from the Imedia Inventors to Mr. Yang, but because the '389 Patent had not yet issued before Terayon acquired Imedia, Imedia arguably did not have had knowledge of the alleged communication from Mr. Yang to the TiVo inventors.  Conversely, even if Terayon may have had knowledge of some communication from Mr. Yang to the TiVo inventors once the '389 Patent issued, the Imedia Inventors had left Terayon

7

before then and, thus, Terayon arguably did not have had knowledge of the communication from the Imedia Inventors to Mr. Yang.

Similarly, even if the *EchoStar* subpoena put Motorola on notice of the invention disclosed in the '389 Patent, Motorola's Amended Complaint does not show that Motorola gained knowledge of the Imedia Inventors' communications to Mr. Yang on a date that would place its claims outside of any applicable statute of limitations. TiVo argues that a principal is charged with the knowledge of the agent, but that suggests only that Imedia is charged with the knowledge of the Imedia Inventors. TiVo does not suggest and does not offer any authority to support a proposition that knowledge held by an acquired company (Imedia) is necessarily imputed to the acquiring company (Terayon/Motorola).

At this stage of litigation, it is not clear from the face of the complaint that the statute of limitations has run. That is the test today. However, should discovery produce evidence otherwise, a motion for summary judgment may be appropriate in the future, and nothing about the Court's instant ruling forecloses that prospect. TiVo's motion to dismiss Motorola's Eighth Cause of Action is **DENIED**. Such denial is without prejudice to TiVo, in effect, renewing its motion as a motion for summary judgment at a future date.

      b. <u>Motorola's Ninth Cause of Action</u>

TiVo presents three arguments in support of its motion to dismiss Motorola's Ninth Cause of Action. TiVo's first two arguments repeat its arguments above regarding (1) its perceived flaw in Motorola's inventorship theory and (2) that the statute of limitations has run. For the same reasons set forth above, the Court finds that TiVo's perceived flaw in Motorola's inventorship theory and its assertion that Motorola's Ninth Cause of Action falls outside the statute of limitations is without merit.

TiVo also argues that 35 U.S.C. § 262 preempts an alleged joint patent owner's claim against other alleged joint owner for unjust enrichment. In support, TiVo argues that *Ultra-Precision Mfg., Ltd. V. Ford Motor Co.*, 411 F.3d 1369 (Fed. Cir. 2005) stands for the proposition that "where a plaintiff claims that it was omitted as a co-inventor or co-owner of a patent, the plaintiff 'cannot claim' that the defendant obtained an unjust benefit, because the defendant's 'ability to use the invention claimed in the [] patent is unencumbered by the existence of any co-inventors.'" (Dkt. No. 88 at 12-13 (quoting *Ultra-Precision*, 411 F.3d at 1381).) The plaintiff in *Ultra-Precision*, however, "[had] not claimed breach of a confidential relationship and [had] withdrawn its contract claim." 411 F.3d at 1381. While Motorola has not claimed the breach of a confidential relationship as a cause of action, it does allege in its Ninth Cause of Action that "[t]he Imedia inventors communicated their conception to Mr. Yang under a nondisclosure agreement." (*See* Dkt. No. 86 ¶ 79.) It further claims that "Mr. Yang violated the nondisclosure agreement and his obligations of confidentiality by communicating the Imedia inventors' conception of the DVR to one or more named inventors of the '389 patent." (Dkt. No. 86 ¶ 80.) Motorola has pleaded facts that infer that Motorola's unjust enrichment claim "springs not from an attempt to enforce intellectual property rights [as a co-inventor], but instead from [TiVo's] alleged wrongful use of the [Imedia inventors' conception]." *See, e.g.*, *University of Colo. Found., Inc. v. American Cyanamid Co.*, 196 F.3d 1366, 1371-1372 (Fed. Cir. 1999) (finding that federal patent law did not preempt state law claim of unjust enrichment). Based on these authorities, the Court concludes that TiVo's motion to dismiss Motorola's Ninth Cause of Action should be **DENIED**.

    c. <u>Motorola's Claims for Declaratory Judgment of Invalidity</u>

TiVo moves to dismiss Motorola's Fourth and Fifth Causes of Action to the extent that Motorola bases these claims on a theory of derivation under 35 U.S.C. § 102(f). Section 102(f)

states that a person is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." "To prove derivation under § 102(f), 'the party asserting invalidity must prove both prior conception of the invention by another and communication of that conception to the patentee' by clear and convincing evidence." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003) (quoting *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997)). "The communication must be sufficient to enable one of ordinary skill in the art to make the patented invention." *Id.* (citing *Gambro Lundia AB*, 110 F.3d at 1578). Motorola alleges that Imedia disclosed to Mr. Yang "the technology and inventions embodied in the Imedia Patents." (Dkt. No. 86 ¶ 71.) TiVo argues that such an allegation does not establish that the communication was "sufficient." TiVo asserts that this is particularly true because the Patent Office and the jury in the EchoStar trial determined that the Imedia patents did not anticipate the '389 Patent or render it obvious. The prior verdict in EchoStar notwithstanding, the Court finds that here Motorola alleges (1) prior conception of the invention by another (*see, e.g.*, Dkt. No. 86 ¶¶ 18-20), (2) communication of that conception to the patentee (*see, e.g.*, Dkt. No. 86 ¶¶ 71-73), and (3) that the communication enabled one of ordinary skill in the art to make the patented invention (*see, e.g.*, Dkt. No. 86 ¶¶ 73 ("Through the communication by Mr. Yang, the named inventors of the '389 patent derived the subject matter claimed in the '389 patent from the Imedia inventors."), 81 ("TiVo . . . obtained the '389 patent based on the inventions conceived of by the Imedia inventors . . . .")). Such pleading is adequate to defeat TiVo's motion to dismiss. Accordingly, for the reasons cited above, TiVo's motion to dismiss Motorola's Fourth and Fifth Causes of Action is **DENIED**.

      d. TiVo's Motion to Strike Under Rule 12(f)

TiVo argues that Motorola's allegations that Mr. Yang breached a nondisclosure

agreement with Imedia and that TiVo derived its work from the Imedia inventors are "intended to smear and harass." (Dkt. No. 88 at 14.) Such allegations, TiVo continues, are "classic examples" of redundant, immaterial, impertinent, or scandalous matter that Fed. R. Civ. P. 12(f) authorizes the Court to strike. (*Id.* at 13-14.) Motorola responds that its "allegations are factual statements and reasonable inferences based on the evidence known to Motorola to-date and are necessary to a statement of Motorola's claims for invalidity, correction of inventorship and ownership, and unjust enrichment." (Dkt. No. 104 at 14.) The Court agrees.

TiVo's conclusory assertions fail to provide any authority to demonstrate how such are a "classic example" of redundant, immaterial, impertinent, or scandalous matter. TiVo does cite two cases in support of its position, but both have little to no application to the present case. First, TiVo asserts that similar pleadings in *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325 (5th Cir. 1993) were found to be libel *per se*. There, the defendant counterclaimed for libel after the plaintiff issued a press release accusing the defendant of "international theft," "industrial espionage," and "international piracy." *Id.* at 1328. The elements of libel, however, have no bearing on whether the pleading to be stricken has any "possible relation to the present controversy." *See United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012).

TiVo's second offering, *In re Moody*, 105 B.R. 368 (S.D. Tex 1989), deals with a bankruptcy court which struck certain pleadings under Rule 12(f), finding that the party "frequently veers off the course of her purported 'Motions' to indulge in scurrilous, quasi-paranoidal personal attacks on various federal and state judges, parties and attorneys in this action and third parties." *Id.* at 370-71. Such material "[was] not germane to the substance of the motions." *Id.* at 371. This case does not relate to Motorola's specific allegations. Nowhere does TiVo show that Motorola's pleadings rise to anything like the level of maliciousness and

immateriality as presented in *Moody*.  Far from redundant, immaterial, or impertinent, Motorola's allegations that Mr. Yang breached a nondisclosure agreement with Imedia, and that TiVo derived its work from the Imedia inventors, both bear directly on Motorola's claims regarding invalidity, inventorship, ownership, and unjust enrichment.  Similarly, "although the disputed pleadings might 'offend[] the sensibilities' of [TiVo and its] attorneys, those pleadings are not scandalous because they are directly relevant to the controversy at issue and are minimally supported in the record."  *See Coney*, 689 F.3d at 379-380 (quoting *In re Gitto Global Corp.*, 422 F.3d 1, 12 (1st Cir. 2005)).  TiVo has not shown that the pleadings it moves to strike have no possible relation to the present controversy.  Accordingly, TiVo's motion to strike should be **DENIED**.

## IV.   Conclusion

For all the reasons stated herein, the Court finds that TiVo's Motion to Dismiss (Dkt. No. 88) should be and is hereby **DENIED.**

**So ORDERED and SIGNED this 24th day of January, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE