# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| MOTOROLA MOBILITY, INC. and GENERAL INSTRUMENT CORPORATION, | ) ) ) ) |
| | ) Case No. 5:11-cv-053-JRG |
| Plaintiffs, | ) ) |
| | ) JURY TRIAL DEMANDED |
| vs. | ) ) |
| TIVO INC., | ) ) ) |
| Defendant. | ) ) |
| _____ | ) ) |
| TIVO INC., | ) ) |
| Counterclaim Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| MOTOROLA MOBILITY, INC., GENERAL INSTRUMENT CORPORATION, TIME WARNER CABLE INC., and TIME WARNER CABLE LLC, | ) ) ) ) ) |
| Counterclaim Defendants. | ) ) ) |
| _____ | ) |

## TIVO'S PROPOSED FINAL JURY INSTRUCTIONS

## I.      INTRODUCTION[1]

Members of the Jury:

You have now heard the evidence in this case.  I now instruct you on the law that you must apply to that evidence. It is your duty to follow the law as I give it to you. However, as I have said previously, you the jury are the judges of the facts.   Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

The attorneys will soon make their closing arguments.  The closing arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist you in recalling and understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it and sign it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

You are to perform your duty without bias or prejudice to any party.  The law does not permit jurors to be governed by sympathy or prejudice.  The court and the parties expect you will carefully and impartially consider all of the evidence, follow the law as I will give it to you, and reach a just verdict.

---

[1] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

## II.        CONSIDERING WITNESS TESTIMONY[2]

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have introduced them.  You may also consider any stipulations or agreements of the parties in this case.

By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.  As stated before, you are the sole judges of the credibility of all witnesses and what weight and effect to give to all the evidence in this case.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess and talking to them when you were out of the courtroom.  This happened because often during a trial, something comes up that does not involve the jury.  You should not speculate on what was said during such discussions that took place outside of your presence.

Certain testimony in this case has been presented to you through depositions.  A deposition is the sworn, recorded answers to questions asked to a witness in advance of the

---

[2] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

trial.  If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition.   Before this trial, attorneys representing the parties in this case questioned these deposition witnesses under oath. A court reporter was present and recorded the testimony.   Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand.   Accordingly, you should judge the credibility of and weigh the importance of deposition testimony, to the best of your ability, just as if the witness had testified in court in person.

## III.      HOW TO EXAMINE THE EVIDENCE[3]

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.   In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

---

[3] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

## IV.        DIRECT AND CIRCUMSTANTIAL EVIDENCE[4]

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case.  One is direct evidence—such as testimony of an eyewitness.   The other is indirect or circumstantial evidence that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.   As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aides." Demonstrative exhibits are not evidence.

---

[4] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

## V.       EXPERT WITNESS[5]

When knowledge of a technical subject may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters.   However, you are not required to accept that opinion.   As with any other witness, it is solely up to you to decide whether to rely upon it or not.

---

[5] *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

## VI.        BURDEN OF PROOF[6]

Before the evidence in this case began, I gave you some preliminary instructions.  In those instructions, I explained that there are two standards of proof that you will apply in this case—the first is the "preponderance of the evidence" standard and the second is the "clear and convincing" standard.  In these instructions, I will tell you the standard that applies to particular claims or defenses.

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more likely true than not true.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must have an abiding conviction that the claim or defense is highly probable.  Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof and is used only in criminal cases. It does not apply to this case, and you should, therefore, put it out of your mind.

In determining whether any fact has been proved in this case, by either of these standards, you should base your decision on all of the evidence, regardless of which party presented it.

---

[6] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

## VII.   THE PARTIES AND THEIR CONTENTIONS[7]

The parties to this case are TiVo, Motorola Mobility Inc. and its subsidiary General Instrument Corporation, Time Warner Cable, Inc. and Time Warner Cable LLC.  During the trial you have heard Motorola Mobility and General Instrument referred to as "Motorola" and Time Warner Cable, Inc. and Time Warner Cable LLC referred to as "Time Warner Cable," or "Time Warner" or "TWC."

TiVo seeks damages from Motorola and Time Warner Cable for allegedly infringing claims 31 and 61 of U.S. Patent No. 6,233,389 ("the '389 Patent"), claims 8, 13 and 17 of U.S. Patent No. 7,529,465 ("the '465 Patent"), and claims 58, 60, 64, 75 and 77 of U.S. Patent No. 6,792,195 ("the '195 Patent").  I may refer to these patents individually by their last three numbers or collectively as the TiVo patents in suit.  The claims that TiVo contends have been infringed have been referred to as the "Asserted Claims."  Specifically, TiVo contends that Motorola and Time Warner Cable infringe the TiVo Asserted Claims by making, using, selling, and/or offering for sale digital video recorders and related devices, that incorporate TiVo's patented technology.  TiVo also argues that Motorola and Time Warner Cable have induced others' infringement of the Asserted Claims, and have contributed to others' infringement of the Asserted Claims.  TiVo also contends that this infringement has been willful and deliberate. TiVo seeks damages in the form of lost profits and a reasonable royalty.

Motorola and Time Warner Cable deny TiVo's allegations of infringement of the Asserted Claims of the TiVo patents-in-suit.  Motorola and Time Warner Cable deny they have induced or contributed to the infringement of others.  Motorola and Time Warner Cable also

---

[7] Adapted from Federal Circuit Bar Association, Model Patent Jury Instructions, Instructions A.2 and B.1 (2012).

deny they have infringed willfully.  Furthermore, Motorola and Time Warner Cable contend that TiVo's Asserted Claims are invalid on one or more grounds.

Motorola seeks damages from TiVo for allegedly infringing claims 6 and 20 of U.S. Patent No. 5,949,948 ("the '948 Patent"), claims 1, 2, 3, 4, 9 and 10 of U.S. Patent No. 6,304,714 ("the '714 Patent"), and claims 1 and 11 of U.S. No. Patent 6,356,708 ("the '708 Patent").  I may refer to these patents individually by their last three numbers or collectively as the Motorola patents in suit.   The claims that Motorola contends have been infringed have been referred to as the "Asserted Claims."  Specifically, Motorola claims that TiVo infringes the Motorola Asserted Claims by making, using, selling, and/or offering for sale digital video recorders that incorporate Motorola's patented technology.   Motorola also argues that TiVo has induced others' infringement of the Asserted Claims, and has contributed to others' infringement of the Asserted Claims.   Motorola also contends that TiVo's infringement has been willful.   Motorola seeks damages in the form of a reasonable royalty.

TiVo denies Motorola's allegations of infringement of the Asserted Claims of the Motorola patents-in-suit.  TiVo denies that it has induced or contributed to the infringement of others.  TiVo denies that it has infringed willfully.  Furthermore, TiVo contends that Motorola's asserted claims are invalid.

Your job is to decide whether the asserted claims have been infringed and whether any of the Asserted  Claims are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide what amount of money damages, if any, are to be awarded as compensation for the infringement that you have found.  You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that

decision should not affect the amount of any damage award you make.  You do not need to find willfulness to find damages.  I will take willfulness into account later.

## VIII.    THE ROLE OF CLAIMS OF A PATENT[8]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends on what each of its claims covers.  You will need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.

---

[8] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.2 (2012).

## IX.  WHAT A CLAIM COVERS[9]

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence.  If a device or method satisfies each of these requirements in that sentence, then it is covered by the claim.

There can be several claims in a patent.  A claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as the "claim elements" or "claim limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  In this example, the tabletop, legs, and glue are each separate limitations (or requirements) of the claim.

If you decide that an accused device or method includes all the requirements or steps in an asserted claim, the claim is infringed.  This is true even if the accused product or method includes components or steps in addition to those requirements.

---

[9] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *Convovle, Inc. v. Dell Inc.*, Case No. 2:08-CV-244-DF (E.D. Tex.).

2812440

## X.        INDEPENDENT AND DEPENDENT CLAIMS[10]

This case involves two types of patent claims:  referred to as independent claims and dependent claims.

An "independent claim" sets forth all the requirements that must be met in order to be covered by that claim.  An independent claim does not refer to any other claim of the patent.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claims 31 and 61 of the TiVo '389 Patent are independent claims, as is claim 58 of the TiVo '195 patent, and claims 1 and 10 of the Motorola '714 Patent, and claim 1 of the Motorola '708 patent.

The remainder of the Asserted Claims are called "dependent claims."  A dependent claim refers to at least one other claim in the patent for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the other claim to which it refers, as well as the additional limitations recited in the dependent claim itself.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim or claims to which it refers.  A product or method must meet all the requirements of both the dependent claim and the claim(s) to which it refers to be covered by that dependent claim.

---

[10] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.2, 2.2a (2012).

## XI.       CLAIM INTERPRETATION[11]

The law says that it is my role to define the terms of the claims, and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims, and I have provided to you my definitions of certain claim terms. These are in your juror notebooks. Rather than take the time to read each definition out loud at this time, I'll again point you to the claim term definitions in your juror notebooks. Also, you are each being provided with a hard copy of these instructions, which also contain a list of my claim term definitions. You may refer to these during your deliberations.

**[INSERT CLAIM TERM DEFINITIONS]**

**[CLAIM DEFINITIONS NOT READ OUT LOUD]**

You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including both of the issues of infringement and invalidity. For claim terms that I have not construed or defined, you are to use the ordinary meaning of the term in the context of the patent.

---

[11] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

## XII.     OPEN-ENDED OR "COMPRISING" CLAIMS[12]

The beginning portion, or preamble, of certain Asserted Claims uses the word "comprising."  "Comprising" means "including" or "containing but not limited to."  When "comprising" is used in the preamble, a device that includes all the limitations of the claim is covered by the claim even if the device contains additional elements. For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.  Similarly, in the case of a method claim, the word "comprising" means that the claim is infringed if all the claimed steps are performed, even if additional steps are also performed.

---

[12] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691); *Convovle, Inc. v. Dell Inc.*, Case No. 2:08-CV-244-DF (E.D. Tex.)

# XIII.     "MEANS PLUS FUNCTION" CLAIM ELEMENTS[13]

Certain claim elements in this case are written in a format that recites a "means for" performing a particular function.  Claim 58 of the TiVo '195 patent contains the phrases "cache access means," "synchronization means" and "cache control means" for performing certain functions specified in the claims.  Claim 10 of the Motorola '714 patent contain the phrases "means for receiving," "means for transferring," and "means for selecting," "means for maintaining the level of fullness," and "means for interleaving"; and claims 5, 6, and 16 of the Motorola '948 patent contains the phrase "table maintenance means." This "means for" language has a special meaning in patent law.  It is called a "means-plus-function" requirement.  It does not cover any structures that could perform the function set forth in the claim.  Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to the structure(s) described in the patent for performing that function. The issue of whether two structures are identical or equivalent is for you to decide.

For purposes of this case, I have identified the structure(s) described in the patents that performs the function set forth in the claims.  This is set forth in the definitions that I have provided you.  You should apply my definition of the function and the corresponding structures described in the patents-in-suit for performing that function as you would apply my definition of any other claim term.

---

[13] Adapted from Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.2, 2.3a (2012).

## XIV.    INFRINGEMENT GENERALLY[14]

A patent owner has the right to stop others from using the invention covered by its patent claims in the United States during the life of the patent.  If any person makes, uses, sells or offers to sell within the United States or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

I will now instruct you on how to decide whether or not TiVo or Motorola has proven by a preponderance of the evidence that one or more of the asserted claims of the Asserted Patents is infringed.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another claim in an Asserted Patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare the asserted patent claims, as I have defined each of them, to the accused products or methods, and determine whether or not there is infringement.  You should not compare the accused products or methods with any specific example set out in the patent or with the patent holder's commercial products or with the prior art.  Practicing the prior art is not a defense to infringement.  The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

In this case, TiVo alleges that Motorola and Time Warner Cable infringe claims 31 and 61 of the '389 patent, claims 8, 13, and 17 of the '465 Patent, and claims 58, 60, 64, 75 and 77 of the '195 patent.  It is your responsibility to determine whether or not TiVo has proven by a preponderance of the evidence that Motorola and/or Time Warner Cable has infringed any of these Asserted Claims.  Likewise, Motorola alleges that TiVo infringes claims 6 and 20 of the

---

[14] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *Paice LLC v. Toyota Motor Corp.*, Case No. 2:04-CV-211-DF (E.D. Tex.), (Dkt. No. 198); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691); *Convovle, Inc. v. Dell Inc.*, Case No. 2:08-CV-244-DF (E.D. Tex.).

'948 patent, claims 1, 2, 3, 4, 9 and 10 of the '714 patent, and claims 1 and 11 of the '708 patent. It is your responsibility to determine whether or not Motorola has proven by a preponderance of the evidence that TiVo has infringed any of these Asserted Claims.

A patent claim can be infringed both directly and indirectly.  I will first tell you about direct infringement, then I will tell you about indirect infringement.

## XV.     DIRECT INFRINGEMENT—EVERY CLAIM ELEMENT MUST BE PRESENT EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS[15]

In order to infringe a patent claim, it must be proved by a preponderance of the evidence that the product or method of use includes each and every limitation of the asserted claim.  A claim limitation may be present in an accused product or method either literally or under what is known as the doctrine of equivalents.  In determining whether an accused product or method of use infringes one or more of the asserted claims in this case, you must compare the accused product or method of use with each and every one of the requirements of the claim to determine whether an accused product or method contains each and every requirement recited in a claim.

### A.     Literal Infringement[16]

A claim element is literally infringed if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, according to the ordinary meaning in the context of the patent.

### B.     Literal Infringement Of Means Plus Function Elements[17]

As I have previously explained, certain claims of the patents-in-suit include requirements that are in means-plus-function form.

---

[15] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *Paice LLC v. Toyota Motor Corp.*, Case No. 2:04-CV-211-DF (E.D. Tex.), (Dkt. No. 198); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

[16] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *Paice LLC v. Toyota Motor Corp.*, Case No. 2:04-CV-211-DF (E.D. Tex.), (Dkt. No. 198); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

[17] *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.3, 3.1b (2012).

A product or a process meets a means-plus-function requirement of a claim if: (1) it has a structure or a set of structures that perform the identical function recited in the claim, and (2) that structure is either identical or "equivalent" to the structures I have identified that perform the specific claimed function.  If the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim.  Alternatively, even if the product has a structure that performs the function recited in the claim but the structure is not either identical or "equivalent" to the structures that I defined to you and performing this function, the product does not literally infringe the asserted claim.

A structure may be found to be "equivalent" to one of the structures I have defined if a person having ordinary skill in the field of technology of the particular patent-in-suit either would have considered the differences between them to be insubstantial at the time that patent issued or if that person would have found the structures performed the function in substantially the same way to accomplish substantially the same result.  In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures.  Interchangeability itself is not sufficient; in order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been known to persons of ordinary skill in that art at the time the patent issued.  The fact that a structure is known now and is "equivalent" is not enough.  The structure must also have been available at the time the patent-in-suit issued.

In order to prove direct infringement by literal infringement of a means-plus-function limitation, the patent holder must prove the above requirements are met by a preponderance of the evidence.

### C.    Infringement Under The Doctrine of Equivalents[18]

A claim element may also be infringed under the doctrine of equivalents, if the differences between the claim element and the allegedly equivalent structure or step are insubstantial.   One way to determine this is to look at whether or not the accused structure or step performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claim element.   Another way is to consider whether or not people of ordinary skill in the field of the invention believe that the structure of the accused product, or the performance of a particular accused step is interchangeable with the structure or step recited in the patent claim element. Equivalency is determined by what was known at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the patent issued.   Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the claim element.   Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

### D.    Infringement Determined Separately For Each Claim[19]

---

[18]  Adapted from *Paice LLC v. Toyota Motor Corp.*, Case No. 2:04-CV-211-DF (E.D. Tex.), (Dkt. No. 198); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

[19]  Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.3, 3.1a (2012).

You must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule and that concerns "dependent" claims. If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the accused product or method meets additional requirements of any claims that depend from the independent claim, thus, whether those claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.   A patent may also be directly infringed even though the accused infringer believes in good faith that what it is doing is not an infringement of the patent.   Infringement does not require that a party copied from the patent holder.

## XVI.    INDIRECT INFRINGEMENT[20]

A  patent  claim  can  also  be  indirectly  infringed.    There  are  two  types  of  indirect infringement  at  issue  in  this  case:  active  inducement  and  contributory  infringement. Encouraging  or  inducing  someone  else  to  directly  infringe  a  patent  is  called  "inducing infringement."   Contributing  to  someone  else's  direct  infringement  of  a  patent,  such  as  by supplying  them  with  a  component  for  use  in  the  patented  invention,  is  called  "contributory infringement."

As  with  direct  infringement,  you  must  determine  indirect  infringement  on  a  claim-by-claim basis.

### A.    Inducing Infringement

An  alleged  infringer  is  liable  for  inducement  of  infringement  of  an  Asserted  Claim  if  the patent  holder  proves  by  a  preponderance  of  the  evidence  that:

(1)    acts  are  actually  carried  out  by  the  alleged  infringer's  customers that  directly  infringe  that  claim;

(2)    the  alleged  infringer  took  action  during  the  time  the  asserted patent-in-suit  was  in  force  intending  to  cause  the  infringing  acts  by  the  alleged infringer's  customers,  such  as  by  encouraging  or  instructing  its  customers  on  how to  use  a  product  or  perform  a  process  in  a  way  that  infringes  at  least  one  patent claim;

(3)    the  alleged  infringer  was  aware  of  the  asserted  patent-in-suit  and knew  that  the  acts,  if  taken,  would  constitute  infringement  of  those  patents,  or the  accused  infringer  believed  there  was  a  high  probability  that  the  acts,  if  taken,

---

[20] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.3, 3.2 (2012).

would constitute infringement of the asserted patents but deliberately avoided confirming that belief.

In order to establish inducement of infringement, it is not sufficient that the accused infringer was aware of the acts that directly infringe the claim.   Rather, in order to find inducement of infringement, you must find that the inducer specifically intended its customers to infringe the asserted patent or believed there was a high probability that its customers would infringe the asserted patents, but remained willfully blind to the infringing nature of its customer's acts..

## B.     CONTRIBUTORY INFRINGEMENT[21]

An alleged infringer is liable for contributory infringement of a claim if the patent holder proves by a preponderance of the evidence that:

(1)     the alleged infringer sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process, during the time the asserted patent are in force;

(2)     the component or apparatus has no substantial, non-infringing use;

(3)     the component or apparatus constitutes a material part of the invention;

(4)     the alleged infringer is aware of the asserted patent and knows that the products or processes, for which the component or apparatus has no other substantial use, may be covered by a claim of the asserted patent or may satisfy a claim of the asserted patent under the doctrine of equivalents; and

(5)     that use directly infringes the claim.

In order to prove contributory infringement, the patent holder must prove each of the above requirements is met.    This proof of each requirement must be supported by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

---

[21] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.3, 3.3 (2012).

## XVII.    WILLFUL INFRINGEMENT[22]

If you have decided that an alleged infringer has infringed a valid claim of an asserted patent, you must then address the additional issue of whether or not its infringement was willful.  Willfulness requires you to determine by clear and convincing evidence that the alleged infringer acted recklessly.  To prove that the alleged infringer acted recklessly, the patent holder must prove by clear and convincing evidence that the alleged infringer actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether the alleged infringer had this state of mind, consider all the facts, which may include, but are not limited, to:

(1)    Whether or not the infringer acted in accordance with the standards of commerce for its industry;

(2)    Whether or not the infringer intentionally copied a product of the patent holder that is covered by an asserted patent;

(3)    Whether or not there is a reasonable basis to believe that the alleged infringer did not infringe or had a reasonable defense to infringement;

(4)    Whether or not the alleged infringer made a good-faith effort to avoid infringing the asserted claims of the asserted patents, for example, whether the alleged infringer attempted to design around the asserted claims; and

(5)    Whether or not the alleged infringer tried to cover up its infringement.

---

[22] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.3, 3.8 (2012).

None of these factors are determinative, and this list of factors is not an exhaustive list of things you should consider.  Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during the trial.

## XVIII.    INVALIDITY – BURDEN OF PROOF[23]

I will now instruct you on the rules you must follow in deciding whether or not the parties have proven that the Asserted Claims of the asserted patents are invalid.  An issued patent is accorded a presumption of validity based on the presumption that the United States Patent Office acted correctly in issuing the patent.   Patent invalidity is a defense to patent infringement.  To prove that any claim of a patent is invalid, the party challenging the validity of the patent must persuade you by clear and convincing evidence that the claim is invalid.

Even if the party challenging the validity of the patent presents items of prior art that may not have been before the Patent Office, the presumption of validity of the patent remains intact and the clear and convincing standard does not change.  Even though the Patent Office examiner has allowed the claims of a patent, and those patents are presumed to be valid, you have the ultimate responsibility for deciding whether the asserted claims of a patent are valid.

Validity is determined on a claim-by-claim basis.  If one claim of a patent is invalid, this does not mean any other claim is necessarily invalid.  Claims are construed the same way for determining infringement as for determining invalidity.

---

[23] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.4, 4.1 (2012).

## XIX.    WRITTEN DESCRIPTION[24]

The patent law contains certain requirements for the part of the patent called the specification.  Motorola and Time Warner Cable contend that the Claim 58 of the TiVo '195 patent is invalid because the specifications of that patents is alleged not to contain an adequate written description of the invention.  TiVo contends that the Asserted Claims of the Motorola '714 patent are invalid because the specifications of the patent is alleged not to contain an adequate written description of the invention.  To succeed, the party challenging the validity of the patent must show by clear and convincing evidence that the specification of the patent in question fails to meet the law's requirements for the written description of the invention.

The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.  In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of the technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application.  The full scope of a claim or any particular requirement in a claim need not be expressly disclosed

---

[24] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.4, 4.2a (2012).

in the original patent application if a person having ordinary skill in the field of the technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

## XX.   ENABLEMENT[25]

TiVo contends that the Asserted Claims of the Motorola '714 patent are invalid for failing to satisfy the enablement requirement.  A patent fails to satisfy the enablement requirement where the patent's specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention.  To succeed on this defense, TiVo must show by clear and convincing evidence that the Motorola patents do not contain a sufficiently full and clear description of the claimed invention.  To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the patent application was filed.  This is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of filing without having to conduct undue experimentation.   However, some amount of experimentation to make and use the invention is allowable.  In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1)      the time and cost of any necessary experimentation;

(2)      how routine any necessary experimentation is in the field of digital video recorder technology;

(3)      whether the patent discloses specific working examples of the claimed invention;

---

[25] Adapted from Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.4.2, 4.2b (2012).

(4)     the amount of guidance presented in the patent;

(5)     the nature and predictability of the field of digital video recorder technology;

(6)     the level of ordinary skill in the field of digital video recorder technology; and

(7)     the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not in the context of this invention and the state of the art at the time of the application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

## XXI.     PRIOR ART[26]

The following instructions on "anticipation" and "obviousness" refer to the term "prior art."  Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have been made, known, used, published, or patented before the invention was made or more than one year before the filing date of the patent application.  However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

For an Asserted Claim to be invalid because it is not new, the party challenging the validity of the patent must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single, previous printed publication or patent. We call these types of prior art "anticipating prior art." To anticipate the invention, the anticipating prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, that is, either stated expressly or implied to a person having ordinary skill in the art of the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

---

[26] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.4.3, 4.3a (2012).

## XXII.      DATE OF INVENTION[27]

You have heard me refer to what is called the "date of invention" in these instructions. The date of invention of a patent can affect whether a particular reference is, or is not, prior art to a patent.  Since the date of invention of all of the asserted patents other than the TiVo '195 patent is in dispute in this case, you must determine the date of invention.

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, the inventor's testimony in this regard must be corroborated by additional evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

---

[27] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *Data Treasury Corp. v. U.S. Bank, N.A.,* Case No. 2:06-CV-72-DF (E.D. Tex.); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.4.3, 4.3a (2012).

A claimed invention is "reduced to practice" when it has been constructed/used/tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application. An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.

In this case, the application filing date of TiVo's '389 Patent is July 30, 1998, the effective application filing date for the '465 Patent is also July 30, 1998 because the '465 Patent is a continuation of the '389 Patent, and the effective filing date for the '195 Patent is October 10, 1997.  These application filing dates are considered the dates of invention unless you find that TiVo has established an earlier date of invention.  The date of invention for the '195 patent is October 10, 1997, when TiVo filed a provisional patent application.  TiVo contends that the date of invention for the '389 patent is not later than November 24, 1997 and that the date of invention for the '465 patent is October 10, 1997.

## XXIII.    ANTICIPATION[28]

In order for someone to be entitled to a patent, the invention must actually be "new."  In general, inventions are new when the identical product or process has not been made, used, or disclosed before.  For a claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed inventions, or must have been described in a single previous publication or patent that predates the claimed invention. To succeed on an anticipation defense, the party challenging the patent must prove with clear and convincing evidence that the Asserted Claim was anticipated by a prior art reference. Anticipation must be determined on a claim-by-claim basis.

Motorola and Time Warner Cable contend that the Asserted Claims of the TiVo '389 patent and TiVo '465 patent are invalid because the claimed inventions in those patents are anticipated.  TiVo contends that all the Asserted Claims of the Motorola patents-in-suit are invalid because the claimed invention is anticipated.  Again, anticipation must be shown by clear and convincing evidence.

 Here is a list of ways that a party challenging a patent can show that a patent claim is not new:

1.      If the claimed invention was known to or used by others in the United States before the date of invention.  An invention is known when the information about it was reasonably accessible to the public on that date.

2.      If the claimed invention was already patented or described in a printed publication, anywhere in the world, more than one year before the effective filing date of the patent.  I have identified the effective filing dates for the patents earlier in these instructions.

---

[28] Adapted from *DDR Holdings LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.4.3, 4.3b (2012); *Amkor Tech., Inc. v. Int'l Trade Commission*, 692 F.3d 1250, 1258 (Fed. Cir. 2012).

3.      If the claimed invention was already patented or described in a printed publication, anywhere in the world before the date of the invention.  To qualify as a prior art reference, a "printed publication" must be reasonably accessible to those interested in the field, even if it is difficult to find.  An electronic publication, including an on-line or internet publication is a "printed publication" if it is reasonably accessible to those interested in the field, even if it is difficult to find;

4.      If the claimed invention was made in the United States by another before the inventors of the patents-in-suit made the claimed invention, and the other person has not subsequently abandoned, suppressed, or concealed their prior invention; or

5.      If the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before the effective date for a patent claim.  The date of invention for the patent claims is irrelevant to this category of prior art.  If the sale or offer for sale is more than one year before the effective filing date, then the product or method is prior art, regardless of the date of the invention.  An invention was publicly used when it was either accessible to the public or commercially available.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, that is, it was actually built, or the inventor had prepared drawings or other a descriptions of the claimed invention that were sufficiently detailed to enable one having ordinary skill in the field of the invention to make and use the claimed invention, even if it was not yet reduced to practice.

Keep in mind that an accused infringer may not establish anticipation by arguing that the accused product practices the prior art, or by comparing the accused products to a prior art reference.  Instead, anticipation is established by clear and convincing evidence that each element of the asserted claim, properly construed, is found in a single prior art reference.

If you find by clear and convincing evidence that a patent claim is not new as explained above, you should find that claim invalid. Evidence establishing that there might have been a prior conception is not sufficient to meet the clear and convincing burden needed to invalidate a patent.

## XXIV.  OBVIOUSNESS[29]

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Motorola and Time Warner Cable contend that the Asserted Claims of the asserted TiVo patents are invalid as obvious.  TiVo contends that the Asserted Claims of the asserted Motorola patents are invalid as obvious.  A party challenging the validity of a patent may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the claimed invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether a person having ordinary skill in the field would have been motivated to combine the known elements in a way that the claimed invention does, taking into account the following factors: (1) whether the claimed invention was merely the predictable result of

---

[29] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.4.3, 4.3c (2012).

using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements in the claimed inventions; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combination of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.  To find that prior art rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately.  You must be careful not to determine obviousness using hindsight. Many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

> (1)   Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market pressure, advertising or similar activities);

(2)      Whether the invention satisfied a long-felt need;

(3)      Whether others had tried and failed to make the invention;

(4)      Whether others invented the invention at roughly the same time;

(5)      Whether others copied the invention:

(6)      Whether there were changes or related technologies or market needs contemporaneous with the invention;

(7)      Whether the invention achieved unexpected results;

(8)      Whether others in the field praised the invention;

(9)      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(10)      Whether others sought or obtained rights to the patent from the patent holder; and

(11)      Whether the inventor proceeded contrary to accepted wisdom in the field.

## XXV.     LEVEL OF ORDINARY SKILL[30]

In deciding what the level of ordinary skill in the field is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventors and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

---

[30] *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.4.3, 4.3c(i) (2012).

## XXVI.   SCOPE AND CONTENT OF THE PRIOR ART[31]

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.   The scope and content of prior art for deciding whether the invention was obvious includes prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine if familiar so as to solve the problem, like fitting together the pieces of a puzzle. When a party attacking the validity of a patent relies on prior art which was specifically considered by the Examiner during the prosecution of the application leading to the issuance of the patent, that party bears the burden of overcoming the deference due a qualified government agency official presumed to have performed his or her job.

---

[31] *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.4.3, 4.3c(ii) (2012).

## XXVII.  DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART[32]

In determining the differences between the inventions covered by the asserted claims of the patents-in-suit and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims. You should consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question posed is: Would someone reading the prior art be discouraged from following the path taken by the inventor?

---

[32] *TiVo Inc. v. EchoStar Commc'ns Corp.*, No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691); *Paice LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DF (E.D. Tex.), (Dkt. No. 198).

## XXVIII. DAMAGES[33]

I will now instruct you as to the determination of damages if you find that TiVo or Motorola has met its burden on any of its claims.  Even though I am instructing you on how you should determine damages, this should not be taken to mean that I believe that any alleged infringer has infringed or that the patent is valid.  These are issues for you to resolve under the instructions I have given you.  I am instructing you on damages only so that you will have guidance should you decide that one of the parties, or both, is entitled to recover.

If you find that any of the accused systems or methods have infringed any valid claim of any of the Asserted Claims of the patents-in-suit, you must then consider the amount of money that the patent holder should receive as damages.

The damages you award must be adequate to compensate the patent holder for the infringement you find. Damages are not meant to punish an infringer. Your damages award, if you reach this issue, should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred.

The patent holder has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that the patent holder established that it more likely suffered than not.  The determination of a damage award is not an exact science, and the amount need not be proven with unerring precision.  You may approximate, if necessary, the amount to which the patent owner is entitled.  In such case, while the damages may not be determined by mere speculation or guess, it is proper to award a damages amount if the evidence shows the extent of the

---

[33] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *TiVo Inc. v. EchoStar Commc'ns Corp.*, No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.6, 6.1 (2012).

damages as a matter of just and reasonable inference. There are different types of damages that a patent holder may be entitled to recover.  In this case, TiVo seeks damages in the form of lost profits and a reasonable royalty.  Motorola seeks damages in the form of a reasonable royalty.  Lost profits consist of any actual reduction in business profits that the patent holder suffered as a result of the infringement. A reasonable royalty is defined as the money amount a patent holder and an alleged infringer would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

I will give more detailed instructions regarding damages, but note that a patent holder is entitled to recover no less than a reasonable royalty for each infringing sale or act.

## XXIX.    LOST PROFITS[34]

I will first instruct you about lost profits damages.  Simply stated, lost profits damages are the profits TiVo lost because of the infringement.  They are not the profits Motorola and Time Warner Cable made.

TiVo says that it lost profits because Motorola and Time Warner Cable's infringement took away sales that TiVo would have made.  This is called lost profits due to lost sales.  TiVo has the burden to show that it was more probable than not that it would have made additional profits if Motorola and Time Warner Cable had not infringed.

Lost sales are those sales the patent owner lost because of the infringement.  To prove that it lost sales, TiVo must prove that it was more probable than not that it would have made the additional sales if Motorola and Time Warner Cable had not made the sales or carried out the activities you find to be an infringement.

TiVo may receive damages for lost sales only on those products that are sufficiently similar to compete with Motorola and Time Warner Cable's products that you find to infringe.  Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.  TiVo may not receive lost profits damages for other products or services that might be sold along with the competing product for convenience or business advantage, but may receive lost profits on products or services that are functionally part of the competing product.

In deciding whether TiVo lost sales, you should consider whether or not TiVo proved that it had the manufacturing capacity and the marketing capability to make the sales it says it lost.  TiVo must prove that it was more probable than not that it could have made, or could have

---

[34] *TiVo Inc. v. EchoStar Commc'ns Corp.*, No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

had someone else make for it, the additional products it says it could have sold but for the infringement.  TiVo also must prove that it had the capability to market and sell the additional products.  You must also consider whether or not, if Motorola and Time Warner Cable's infringing product was not available, some or all of the people who bought from Motorola and Time Warner Cable would have bought a different, acceptable substitute from Motorola and Time Warner Cable or from somebody else, rather than buy from TiVo.

In order to be an acceptable substitute, the product must have the advantages of the patented invention that were important to customers.  If, however, the realities of the marketplace are that competitors other than TiVo would likely have captured some or all of the sales made by the infringer, even despite a difference in the products, then TiVo is not entitled to lost profits on those sales.  A non-infringing substitute is a product that is or can be sold competitively in the marketplace, but which does not infringe the patent.  A product does not infringe a patent when it either (a) is sold based on a license under that patent or (b) does not include all the limitations required by the patent.  An acceptable non-infringing substitute is available if, during the damages period, a competitor or the defendant had readily available all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and consumers would have accepted the substitute such that Motorola and Time Warner Cable could have sold such substitute instead of its infringing sales at the time those infringing sales were made.  If you determine that Motorola and Time Warner Cable's customers would just as likely have purchased a non-infringing acceptable product, then TiVo has not shown it lost that sale but for Motorola and Time Warner Cable's infringing sales.

In order to assess whether there is an absence of acceptable non-infringing substitutes, you must consider whether non-infringing substitutes existed that were acceptable to the specific

purchasers of the infringing products, not "purchasers" generally.  In deciding whether or not people who bought from Motorola and Time Warner Cable would have bought a non-infringing product, you should consider whether or not there was such a demand for the patented aspects of the infringing product that purchasers would not have bought a non-infringing product.

It is not necessary for TiVo to prove that TiVo and Motorola and Time Warner Cable were the only two suppliers in the market for TiVo to demonstrate entitlement to lost profits.  If the realities of the marketplace are such that "acceptable non-infringing substitutes" were available from suppliers who would have made only some, but not all, of the sales that were made by Motorola and Time Warner Cable, then TiVo may be entitled to lost profits on a portion of the infringing sales.  The burden is on TiVo, however, to show a reasonable probability that it would have sold that portion if Motorola and Time Warner Cable's product had never existed. By the same token, even if you find that TiVo and Motorola and Time Warner Cable were the only two suppliers of products having the advantages of the patented product, it does not necessarily mean that TiVo would have made all Motorola and Time Warner Cable's sales.  The burden is on TiVo to show that its product competed in the same market with Motorola and Time Warner Cable's product and that it would have made a percentage of those sales if the infringement had not occurred.

If TiVo has proved that it lost profits due to infringement by Motorola and Time Warner Cable, then you are to find the amount of profits that it lost.  TiVo must prove the amount of its lost profits to a reasonable probability.  The amount of lost profits damages should not include amounts that are merely speculation.

## XXX.     REASONABLE ROYALTY[35]

---

[35] Adapted from *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D.

If you find that a patent holder has established infringement, the patent holder is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that TiVo has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award TiVo a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place between them at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from this hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

---

Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.6, 6.6 (2012).

"'

## XXXI.    REASONABLE ROYALTY – RELEVANT FACTORS[36]

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

(2)    The rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

(4)    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

(5)    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(6)    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales;

---

[36] *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Federal Circuit Bar Association, Model Patent Jury Instructions, Instruction B.6, 6.7 (2012).

(7)     The duration of the patent and the term of the license;

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity;

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

(11)     The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

(13)     The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14)     The opinion and testimony of qualified experts and of the patent holder; and

(15)     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee-who desired, as a

business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention-would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

## XXXII.   DELIBERATION INSTRUCTIONS[37]

I would now like to provide you with a few final instructions before you begin your deliberations.  These instructions are given to you as a whole, and you are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  You have heard all of the evidence in the case and you have heard the argument of counsel.  The Court has given you the charge in this case.  When you retire to the jury room, select one of your members to act as a foreperson, and begin performing the function for which you have been chosen and for which you have been empaneled, in accordance with the oath you took as jurors.

You will remember that at the beginning of the trial, the Court admonished you not to discuss the case with each other until it was submitted to you.  Now is the time for you to begin your discussion, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth, and which does justice to all parties without favor, bias or prejudice in any particular, either for or against any party to this lawsuit.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion if convinced it is erroneous.  But, do not surrender your honest conviction as to the weight or effect of the evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Your verdict will be in the form of Interrogatories for you to answer.  I will hand the Interrogatories to the Security Officer, and you will take these Interrogatories to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your

---

[37] Adapted from *SSL Servs., LLC v. Citrix Sys., Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *Paice LLC v. Toyota Motor Corp.*, Case No. 2:04-CV-211-DF (E.D. Tex.), (Dkt. No. 198); *TiVo Inc. v. EchoStar Commc'ns Corp.*, Case No. 2:04-CV-1-DF (E.D. Tex.), (Dkt. No. 691).

foreperson fill in, date and sign the form and then advise the Security Officer that you have reached a verdict.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly.   Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Office, and I will send that exhibit or exhibits to you. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.   After you have reached your verdict, your Foreperson is to fill in on the verdict form your unanimous answers to the questions.   Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on

the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.   I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.