Exhibit B

*Motorola v. TiVo*, No. 5:11-cv-53 (E.D. Tex.)
**TiVo's Statement Regarding Its Objections to Motorola's and TWC's Trial Exhibits
and Its Responses to Motorola's and TWC's Objections to TiVo's Trial Exhibits**

The Court made clear in requesting each party's objections, a short explanation of those objections, and the other party's response that it wanted to be in a position to resolve the parties' objections at the pretrial conference on June 5.  Because of the number of issues Motorola has indicated it may raise at trial, as well as the nineteen witnesses that it has stated it intends to call live at trial, both parties have a large number of exhibits on their exhibit lists (only after it had received TiVo's finalized objections last night did Motorola cut its exhibit list in half).  To narrow the issues for the Court, in lodging exhibit objections, TiVo has endeavored to limit its objections to issues that it feels must be addressed by the Court, and to explain them in detail in advance of the parties' meet and confer.  That way, not only could the parties discuss the objections and reach potential compromise, Motorola could respond to TiVo's positions in writing for the benefit of the Court.

Motorola, on the other hand, has failed throughout this process to provide either detailed objections or adequate explanations.  It has instead targeted hundreds of exhibits under a few broad objections, leaving TiVo (and the Court) with little to no information about what is actually at issue—and little hope of getting the issues resolved.  Every one of Motorola's objections are made under Federal Rules of Evidence 402 and 403, *i.e.*, that TiVo's trial exhibits are irrelevant and prejudicial.  For over a third of the exhibits to which Motorola has objected, relevance is the only ground asserted.  Due to the volume and timing of Motorola's objections, TiVo has been unable to fully address Motorola's positions prior to this filing and may need to supplement this filing and/or raise additional issues at the hearing on exhibit objections.  Motorola insisted on exchanging explanations of objections on Sunday, June 2, 2013.  At first Motorola failed to provide its explanations, instead

identifying groupings of hundreds of exhibits with vague, single-sentence titles, *e.g.,*

Motorola objected to over 230 exhibits as "Irrelevant and prejudicial because it relates to

irrelevant third parties," with no other information provided.   Motorola provided some

additional detail about it categories on Sunday night.  But it was not until Monday, June 3,

2013, just after 5:00 p.m. Court time that Motorola for the first time provided its objection

explanations.  The explanations accompanied a substantially revised disclosure that added

trial exhibits to Motorola's objections, added objections to individual exhibits that Motorola

had not previously asserted, and continued to lump together hundreds of exhibits under

broad, vague objections.  To the extent possible, TiVo has tried to respond to Motorola's

vague and voluminous objections in the time provided as recorded below.

*Motorola v. TiVo*, No. 5:11-cv-53 (E.D. Tex.)
**Chart of Motorola and TWC's Objections to TiVo's Trial Exhibits**

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| 73-74, 90-94, 103-104, 108, 131, 144-146, 152, 161, 169-170, 173, 180-187, 259, 314, 315, 648-650, 951, 1400, 1401, 1486, 1803, 1868, 2094, 2275, 2289, 2548, 2562-2568, 2623, 2626 | **1.  Exhibits relating to TiVo's prior and ongoing litigations:  MIL No. 1, FRE 402/403, 802**<br>TiVo is attempting to create an inference of infringement in this case by introducing multiple exhibits relating to its past litigation with EchoStar and other prior cases.  Its list includes the EchoStar settlement agreement – which is subject to Plaintiffs' Motion in Limine No. 1 – as well as TiVo's complaint in its ongoing litigation adverse to Cisco.  TiVo also seeks to introduce documents and emails discussing prior litigations between TiVo and third parties, such as AT&T and Verizon.<br><br>As discussed in Motorola and TWC's Motion *in Limine* No. 1, these exhibits should be excluded as irrelevant and unfairly prejudicial, and as inadmissible hearsay.  Fed. R. Evid. 402, 403, 802.  TiVo should not be allowed to substitute evidence of its prior claims of infringement for evidence on liability and damages in this case.  In particular, the admission of exhibits relating to the EchoStar litigation will severely prejudice to Motorola and Time Warner Cable by suggesting to the jury that they should reach a similar verdict here based on the earlier outcome in an unrelated case, rather than the evidence presented at trial.  Additionally, TiVo should not be allowed to compound the unfair prejudice by not only introducing documents from prior litigations, but also third-party commentary about those earlier cases. | Motorola argues that dozens of exhibits relating to TiVo's prior litigation with EchoStar should be excluded as irrelevant and prejudicial.  As the Court is no doubt aware, Motorola has already filed a motion *in limine* seeking to exclude evidence related to the outcomes of TiVo's past litigations against EchoStar, AT&T, and Verizon.  That motion remains pending as to the EchoStar litigation.  The Court has already denied the motion with respect to both the AT&T and Verizon cases.  Evidence of all three of TiVo's past suits enforcing the '389 patent is highly relevant to several issues pending in this case, including willfulness, inducement, and damages, and documents relating to TiVo's litigation with EchoStar should not be excluded.  TiVo TX 131 is the EchoStar settlement discussed in TiVo's damages expert reports.<br><br>The willfulness analysis in this case requires a two-part inquiry:  first, whether Motorola faced an objectively high risk of infringing TiVo's valid patent; and second, whether Motorola knew or should have known of that risk.  The EchoStar documents that Motorola seeks to exclude are highly relevant to both parts of the analysis.<br><br>As set forth in TiVo's opposition to Motorola's motion *in limine* (Dkt. No. 433), the history and outcome of the EchoStar litigation firmly establish that Motorola and TWC both faced an objectively high risk of infringing TiVo's valid '389 patent.  The fact that the EchoStar jury |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | found that the '389 patent was valid and infringed by EchoStar's DVRs, as well as the fact that EchoStar subsequently tried to design around the '389 patent and was ultimately held in contempt, confirm the strength of the '389 patent and the high risk Motorola faced of infringing TiVo's valid patent by selling DVRs without paying licensing fees to TiVo.  Documents from the EchoStar litigation, including orders issued by this Court and the Federal Circuit, are crucial to this analysis and should not be excluded.<br><br>The fact that the EchoStar litigation was well-publicized establishes that the objectively high risk of infringing TiVo's valid patent was so obvious that it should have been known to Motorola.  Given publicly available information about the EchoStar litigation, a reasonable person in Motorola's circumstances would have appreciated that continuing to sell DVRs without paying license fees to TiVo – just as EchoStar did – presented a high risk of infringing TiVo's patent.  TiVo's press releases relating to the EchoStar litigation, as well as emails from news services containing updates on the EchoStar litigation, are highly relevant to this analysis and should not be excluded.<br><br>The fact that employees of both Motorola and TWC themselves circulated articles about the EchoStar litigation – sometimes with commentary – establishes that the objectively high risk of infringing TiVo's valid patent was not only so obvious that it should have been known to Motorola and TWC, but that the risk was, in fact, known to both parties.  Motorola and TWC |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | employees regularly forwarded emails about the EchoStar litigation to their colleagues, demonstrating that employees of both companies were aware that the EchoStar litigation had significant implications for them. Often, Motorola and TWC employees would circulate articles about the EchoStar case with their own commentary about the implications of the EchoStar litigation, such as "Huge" or "Not good." *See, e.g.*, TiVo TX-103, TiVo TX-173.  Motorola's and TWC's internal correspondence relating to the EchoStar litigation is critical to the willfulness analysis in this case, and those documents should not be excluded.<br><br>The EchoStar evidence Motorola seeks to exclude is also highly relevant to other issues, such as Motorola's intent to induce infringement of TiVo's patent, the reasonableness of TiVo's conduct in business negotiations with Motorola, and the reasonableness of TiVo's alleged delay in bringing infringement claims against Motorola.  In addition, as set forth in TiVo's opposition to Motorola's motion *in limine*, the EchoStar settlement agreement is one of only three bare patent licenses to the '389 and '465 patents in existence.  As such, the EchoStar settlement agreement is absolutely critical to the determination of the proper royalty rates in this case and should not be excluded.<br><br>Motorola's objections are overbroad.  For example, Motorola objects to TiVo TX-951 and TiVo TX-1803, TiVo 10-K filings from the years 2009 and 2004, presumably because those filings mention TiVo's litigation against EchoStar.  TiVo's SEC filings are |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | relevant to numerous issues in this case, however, including the appropriate measure of damages.  Indeed, Motorola has included numerous TiVo 10-K filings on their own exhibit list.  *See* PX-860, PX-861, PX-862, PX-863, PX-949, PX-950, PX-951, PX-952, PX-954, PX-956, PX-957, PX-959, PX-960, PX-961, PX-1052, PX-1403, PX-1665.  These documents should not be excluded merely because they mention the EchoStar litigation.<br><br>The Cisco complaint is relevant to damages (TiVo TX 1486).  Motorola has argued that Cisco boxes are a non-infringing alternative.  The Cisco complaint is evidence to the contrary.<br><br>In another desperate bid to exclude highly relevant evidence relating to TiVo's past patent litigations, Motorola also seeks to exclude dozens of documents relating to TiVo's prior litigations with EchoStar, AT&T, and Verizon as inadmissible hearsay.  None of the documents Motorola seeks to exclude are hearsay.  First, TiVo is not offering the documents as proof of the matters asserted therein.  Second, many of the documents constitute party admissions and/or are business records exempt from Federal Rule of Evidence 802.<br><br>Many of the documents Motorola seeks to exclude are public documents relating to the EchoStar, AT&T, and Verizon litigations, including press releases issued by TiVo, news articles, and emails sent by cable and legal news services to Motorola employees containing updates on the progress and outcome of the cases.  That evidence |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | is not being offered for the truth of the matters asserted therein.  Instead, the documents are offered to show what information about TiVo's patent litigation and the '389 patent was available to Motorola, so that the jury can determine whether a reasonable person in Motorola's circumstances would have appreciated a high risk of infringing the '389 patent. |
| | | Motorola and Time Warner Cable also seek to exclude their *own* documents, clearly created in the course of business at Motorola, relating to TiVo's prior litigations. *See, e.g.*, TiVo TX-108; TiVo TX-2548; TiVo TX-648, TiVo TX-649, TiVo TX-650, TiVo TX-259; TiVo TX-108.  Those documents, which constitute both party admissions under Rule 801(d)(2) and business records under Rule 803(6), should not be excluded.  Indeed, Motorola's exhibit list contains numerous similar, TiVo-created emails and presentations. |
| | | Motorola seek to exclude a handful of business records from TiVo and Verizon relating to TiVo's prior litigation, including two TiVo 10-K filings (TiVo TX-951, TiVo TX-18030), TiVo's settlement and patent license agreement with EchoStar (TiVo TX-131, TiVo TX-2094), and a Verizon document reflecting Verizon DVR revenues (TiVo TX-1400).  These documents are clear business records under Rule 803(6) and should not be excluded. |
| | | Finally, Motorola seeks to exclude two documents relied on by TiVo's damages expert, Dr. Ryan Sullivan, in his analysis.  These documents are admissible under Federal |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | Rule of Evidence 1006, and Dr. Sullivan will testify about the documents at trial.  The documents are not hearsay. |
| 253, 1840, 2547-2555 | **2.  Exhibits relating to Motorola and Time Warner Cable's overall revenues, size, or acquisition price: MIL No. 2, FRE 402/403**<br>TiVo's exhibit list contains documents precluded under Motorola and Time Warner Cable's Motion *in Limine* No. 2, which sought to exclude the acquisition price of companies, total profits and revenues from the parties, and overall size of Motorola and Time Warner Cable relative to TiVo.  For example, TiVo TX-1840 relates to Time Warner Cable's purchase of Insight Communications for $3 billion.  This transaction has no relevance to any issue in this case and is meant to suggest that Time Warner Cable can pay a large damages award.  Other documents include exhibits related to Arris' acquisition of Motorola Home business for $2.35 billion.  *See, e.g.*,, TiVo TX-2552.  Again, the inclusion of this exhibit serves no purpose other than to unfairly prejudice Motorola and Time Warner Cable by presenting the jury with large numbers and creating the implication that TiVo's damages claims are reasonable relative to Motorola's size and profits.  Consistent with the Court's earlier ruling (4/23/13 Pretrial Hearing Tr. 70:16-71:11), these exhibits should be excluded under Federal Rule of Evidence 402 and 403. | Motorola objects to exhibits relating to its sale of Motorola Home business unit (of which DVR sales make up a predominant amount) to Arris in April 2013 (TiVo TX-1840, 2547–55) on the basis of Motorola's Motion *in Limine* No. 2 (relating to the "Total Revenue" of Motorola and the acquisition prices of business units) and that these documents "involve third party valuation of the damages in this case, and their responses to this case."  These documents provide the background and detail regarding Motorola's sale of its DVR business (TiVo TX-1840 (press announcement of sale); TiVo TX-2552 (acquisition agreement); TiVo TX-2553 (Motorola presentations on the business)).  In particular, these documents include an indemnity provision that caps Arris' liability for this case at $50 million.  If Motorola raises the issue of the sale to Arris at trial, TiVo should be allowed to present the details of that transaction to the jury.  Moreover, TiVo should be allowed to use these documents for other purposes with the purchase price redacted.<br><br>TiVo TX 253 relates to Motorola's consideration of purchasing another company in digital recorders, Digeo.  This document was discussed by TiVo's damages expert in his report. |
| 53-56, 1282-1283, 1565, 2083, 554, 568, 840, 843, 948, 1181, 1188, 1190, 1207, 1259, 1265, 1267- | **3.  Exhibits relating to alleged awards and praise for TiVo:  MIL No. 6, FRE 402/403**<br>TiVo seeks to offer several dozen exhibits that contain third party commentary about the quality, utility, and | Motorola objects to this category of exhibits based on an incorrect application of this Court's ruling on Motorola's Motion *In Limine* No. 6 (Dkt. 408).  Motorola objects to all evidence related to praises of TiVo products, |

6

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| 1268, 1275, 1278, 1279, 1282-1284, 1297, 1300, 1337, 1351-1352, 1360, 1369, 1374, 1565, 1820, 1826-1828, 1834, 1836-1838, 1840, 1853, 1868, 2014, 2023, 2047, 2062, 2083, 2088, 2089-2093, 2099-2103,  2106-09, 2111-24, 2126, 2133, 2135, 2150, 2156, 2170-2172, 2174-2175, 2178, 2181-2183, 2188, 2241, 2276, 2281-2282, 2285, 2404, 2423, 2544, 2547, 2569, 2571-2572, 2583, 2586, 2595, 2608-2611, 2613, 2634 | desirability of TiVo's products.  These exhibits are unfairly prejudicial and are irrelevant because they relate to awards and praise that lack the necessary nexus to the technology covered by the asserted claims.  *Western Union Co. v. Moneygram Payment Sys., Inc.*, 626 F.3d 1361, 1372–73 (Fed.Cir.2010) ("Our case law clearly requires that the patentee must establish a nexus between the evidence of commercial success and the patented invention."); *Inventio AG v. Otis Elevator Co.*, 497 F. App'x 37, 42-43 (Fed. Cir. 2012) ("[The evidence] also failed to establish a nexus between the patented invention and either commercial success or industry praise . . . . In particular, Inventio did not link the sales or praise ***directly to the patented feature*** as opposed to destination dispatching more generally.")(emphasis added). Consistent with the Court's rationale in granting in part Motorola and TWC's Motion *in Limine* No. 6 (4/23/13 Pretrial Hearing Tr. at 89:11-24), those exhibits are inadmissible.<br><br>For example, TiVo TX-2120 is a *Sports Illustrated* column in which Rick Reilly, a sports commentator, proclaims his love for TiVo with hyperbole meant to entertain his audience of sports fans.  For example, Mr. Reilly states that if TiVo were to go broke, he "would shrivel up into a lump of Limburger mold and die," and calling TiVo the greatest invention since beer, the thong, Viagra, and Halle Berry.  These statements are highly prejudicial and wholly irrelevant.  Furthermore, this article points to DVR functionality that is not at issue in this case, such as the number of hours the hard drive can store, or whether you need tapes to record | including exhibits the Court specifically allowed at the pretrial hearing—TiVo TX-1283, TiVo TX-2119, andTiVo TX-2172 (relating to the USPTO's exhibit on the nation's most influential inventions featuring TiVo). Transcript of April 23, 2013 Pretrial Conference, at 89:22–24.  Motorola recognized that the Court's ruling applied to these exhibits at the meet and confer on exhibit objections, yet inexplicably maintains its frivolous objections before this Court.<br><br>Moreover, arguing that the Court's ruling limits the scope of admissible documents on this subject matter, Motorola maintains its objection to all other exhibits related to praises of TiVo products.  The Court's ruling, however, is not limited to the examples discussed at the pretrial hearing.  The Court specifically stated that "*praise of the device as a whole* covers the components that are in the claim that are at issue, even if they're not specified.  *And I think that gets them in.*" *Id.* at 90:1–6.<br><br>Ignoring the Court's instruction, Motorola objects to many exhibits that are praises of TiVo's DVR product as a whole, such as TiVo TX-1275 (survey showing 80% of DVR users cannot live without it); TiVo TX-2112 and TiVo TX-2178 (TiVo awarded an Emmy for its creation, development and advancement of DVR technology and services); TiVo TX-2113 (TiVo listed as a top 10 product by CNET); TiVo TX-2114 (TiVo listed as a top 50 greatest gadgets of the past 50 years); and TiVo TX-2611 (TiVo founders inducted into the Consumer Electronics Hall of Fame for developing the first commercial DVR). |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
|  | television.  Thus, the nexus between the praise and the technology of the asserted claims is wholly lacking.<br><br>TiVo also seeks to introduce several newspaper articles from publications such as the New York Times, Wall Street Journal, and USA Today.  As an example, TiVo apparently plans to offer TiVo TX-2122, an article entitled "FCC Chief Calls TiVo 'God's Machine.'"  The FCC Chief's opinion of TiVo does not constitute the narrow type of praise that is relevant to non-obviousness, and the reference to TiVo's product as "God's machine" is unfairly prejudicial to Motorola and Time Warner Cable.  The FCC Chief did not mention that he considered TiVo's product to be "God's machine" because of the claimed technology.  Rather, his comment is hyperbole, and, given his position, the FCC Chief's comments would unduly influence the jury.  The same could be said of reputed journalists and bloggers whose writings are on TiVo's exhibit list.<br><br>To the extent that any of these exhibits arguably praise technology covered by the asserted claims, the praise is presented in an unfairly prejudicial way, like the above examples.  Thus, these exhibits should be excluded. | Yet some more exhibits simply do not belong in the category "that contain third party commentary about the quality, utility, and desirability of TiVo's products."  For example, TiVo TX-0554 is an email circulated within Motorola showing Motorola's early awareness of TiVo's DVR products and technology; TiVo TX-0568 is an email about Motorola's DVR strategy circulated within Motorola; TiVo-TX-840 is a presentation of results from a DVR subscriber survey prepared for Motorola; TiVo-948 is a presentation TiVo prepared for Time Warner Cable containing  an update on TiVo's technology and business; TiVo TX-2609 is a list of bugs found during ReplayTV's product testing; TiVo TX 2404 is an email sent to a Time Warner Cable executive showing early awareness of TiVo's patents; TiVo TX-2404 is an internal email thread at Time Warner Cable about acquiring and reviewing a newly released TiVo DVR product; TiVo TX-2547 is an email sent to an employee of Arris, the recent purchaser of Motorola's DVR unit, raising awareness to this litigation.<br><br>For all the above reasons, Motorola's objection to this category of exhibits should be overruled. |
| 801, 1267, 2627 | **4.  Exhibits relating to pre-judgment interest: MIL No. 7, FRE 402/403**<br>These exhibits relate to the calculation of pre- judgment interest, an issue that the Court ruled would not be determined by the jury.  (4/23/13 Pretrial Hearing Tr. at 95:21-23).  TiVo TX-801 and 1267 are articles about the prime interest rate, a subject squarely precluded by the | TiVo TX 2627 is a proper summary of TiVo's damages analysis in this case.  FRE 1006.  While a column related to prejudgment interest is included, the exhibit summarizes much more than that.  TiVo will redact the column relating to prejudgment interest. |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | Court's resolution of Motorola and Time Warner Cable's Motion *in Limine* No. 7. Similarly, TiVo TX 2627 is an attachment to the expert report of TiVo's damages expert that sets forth calculation of pre-judgment interest. | |
| 122-125, 139, 140, 151, 153, 154, 167, 170, 173, 206, 213, 225, 239, 628, 650, 754, 772, 773, 778, 779, 780-792, 967, 968, 969, 970, 971, 972, 973, 1237, 1243, 1325, 1329, 1331, 1332, 1354, 1355, 1356, 1357, 1388, 1389, 1390, 1392, 2152, 2287, 2290, 2351, 2364, 2370 | **5. Exhibits relating to third-party product development agreements: FRE 402/403** <br> TiVo's exhibit list includes product development agreements and related documents between TiVo and third parties, including Gemstar, Verizon, Cox, Charter, RCN, Suddenlink, HUMAX, Grande, Comcast, Cable ONE, GCI Communications, Mediacom, Midcontinent, Cequel. It appears that TiVo seeks to introduce these documents in support of its damages claims against Motorola and Time Warner Cable. But because these documents relate to product development agreements, not patent licenses, they are not relevant to the hypothetical negotiation and the amount that the parties would negotiate as a reasonable royalty in this case. <br><br> It is well established that a reasonable royalty may be determined by considering a hypothetical negotiation between the parties for a non-exclusive license to the asserted patents at the time of first alleged infringement. *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Comparable license agreements may be considered as part of the reasonable royalty analysis. *Id.* But the Federal Circuit has recently cautioned that license agreements that are not comparable to the circumstances at the hypothetical negotiation are not admissible. *LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 79 (Fed. Cir. 2012)(holding that "when relying on licenses to prove a | Motorola objects to dozens of exhibits as irrelevant "development agreements." It is apparent that Motorola is actually seeking a belated motion in limine regarding licenses on which TiVo's damages expert relies. Alongside these varied documents that are unrelated to the stated objection, Motorola lists a number of TiVo's agreements with Pay TV providers. TiVo TX-772, TiVo TX-773, TiVo TX-778, TiVo TX-779, TiVo TX-780, TiVo TX-781, TiVo TX-782, TiVo TX-783, TiVo TX-784, TiVo TX-785, TiVo TX-786, TiVo TX-787, TiVo TX-788, TiVo TX-791, TiVo TX-792, TiVo TX-816, TiVo TX-839, TiVo TX-953, TiVo TX-1050, TiVo TX-1052, TiVo TX-1054, TiVo TX-1061, TiVo TX- TiVo TX-1062, TiVo TX-1068, TiVo TX-1071, TiVo TX-1079, TiVo TX-1118, TiVo TX-1119, TiVo TX-1184, TiVo TX-1186, TiVo TX-1187, TiVo TX-1398, TiVo TX-1399, TiVo TX-1400, TiVo TX-1473, TiVo TX-1474, TiVo TX-1475, TiVo TX-1487, TiVo TX-1488, TiVo TX-1758, TiVo TX-2595, TiVo TX-2608. As described in the expert report of Dr. Ryan Sullivan, such agreements are highly relevant to the hypothetical negotiation that is the focus of reasonable royalty damages analysis. Sullivan Rpt. ¶¶ 301-312. Dr. Sullivan carefully apportions these agreements with respect to the value of the patents-in-suit. Sullivan Rpt. ¶¶ 345-371. These agreements with such companies as DirecTV, Cox, and Suddenlink serve as important benchmarks for the hypothetical negotiation in that they |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | reasonable royalty, alleging a loose or vague comparability between different . . . licenses does not suffice"); *ResQNet.com, Inc. v. Lansa*, 594 F.3d 860, 869 (Fed. Cir. 2010)(holding that "any evidence unrelated to the claimed invention does not support compensation for infringement"); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 13259 (Fed. Cir. 2009)(rejecting patentee's reliance on licenses because "some of the license agreements [were] radically different from the hypothetical agreement under consideration.").<br><br>Here, TiVo's product development agreements involve far more complicated relationships and different rights to more than just the TiVo patents in suit. As such, these agreements do not reflect the circumstances of the hypothetical negotiation, and therefore, are irrelevant and unfairly prejudicial with respect to the determination of a reasonable royalty in this case. | involve licenses to the very patents at issue in this litigation, while also serving to demonstrate a competitive relationship between TiVo and Motorola. Furthermore, these agreements are relevant to the non-obviousness inquiry as indicia of commercial success. In short, this is a substantive argument by Motorola, not an evidentiary one.<br><br>Motorola also seeks to exclude documents related to TiVo's negotiations with both Motorola and Time Warner. TiVo TX-122, TiVo TX-123, TiVo TX-124, TiVo TX-125, TiVo TX-139, TiVo TX-140, TiVo TX-151, TiVo TX-153, TiVo TX-151, TiVo TX-154, TiVo TX-167, TiVo TX-170, TiVo TX-173, TiVo TX-206, TiVo TX-225, TiVo TX-239, TiVo TX-754, TiVo TX-2287, TiVo TX-2290, TiVo TX-2351, TiVo TX-2364, TiVo TX-2370. Aside from the fact that these documents are not related to any development agreement, they are relevant to this litigation in a number of ways—not least of which is their tendency to establish knowledge of TiVo's DVR patents on the part of Motorola and Time Warner. |
| 1764 | **6.  Documents relating to pleadings and fact discovery in this litigation:  FRE 402/403**<br>TiVo seeks to introduce exhibits that consist of discovery requests and attorney communications from this litigation. These exhibits are not evidence. For example, TiVo TX-2345 is an email between the attorneys in this case regarding TWC and Motorola's 30(b)(6) witnesses, and TiVo TX-2371 is TiVo's second 30(b)(6) notice of deposition to Motorola. | Motorola objects to its own Complaint, containing binding party admissions (TiVo TX 1764 ) including a recitation of alleged facts relating to this case. |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| 749, 1868, 2147, 2574, 2614-2630 | **7.  Exhibits appended to expert reports that do not qualify as summaries of voluminous data:** <br> **FRE 402/403, 1006** <br> TiVo also seeks to introduce attachments to its expert reports that are summaries of voluminous data, in violation of FRE 1006.  For example, TiVo TX-2627 does not qualify as a summary of voluminous data or information.  Rather, it merely reflects Dr. Sullivan's calculations of lost profits based on various sources.  In addition, TiVo TX-2622 is a list of excerpts taken out of context from various sources, featuring quotes about DVR technology that TiVo's expert has deemed favorable.  This list is not a true and accurate summary of voluminous documents, but rather distorts the substance of the cited documents by compiling selected quotes out of context. | Motorola objects to videos of the Grass Valley devices on which it relies in operation (TiVo TX 2147 and 2574). Motorola was present at the inspection and taping of these videos which are necessary to show the operation of the Grass Valley devices. <br><br> TiVo TX 749 and 2621 are logs of overflow usage in TiVo devices submitted as rebuttal evidence as part of TiVo's rebuttal non-infringement report (Ex. H-I).  These exhibits are not improper evidence or summaries. <br><br> Motorola makes similar unfounded objections on the damages front objecting to summaries of the parties financials prepared by TiVo's damages expert in this case (TiVo TX 2622-26) (FRE 1006) as well as evidence from TiVo's survey expert regarding the survey he conducted (TiVo TX 2628-2630).  For example, Motorola's objection to TiVo TX-2627, which includes charts summarizing Dr. Sullivan's damages calculations, is unfounded.  Charts that pull together data from an inordinate number of sources, as is the case here, are routinely admitted under Rule 1006.  *See, e.g., Fireman's Fund Ins. Co. v. United States*, 92 Fed. Cl. 598, 700-01 (Fed. Cl. 2010) ("[T]he court rules that the exhibit [summarizing damages] qualified as a Rule 1006 summary and constitutes substantive evidence of plaintiffs' damages" where plaintiffs "made all the predicate showings (voluminous documentation, presentation in the form of a chart or calculation, delivery of copies of originals to the other party).").  Motorola makes a conclusory objection to TiVo TX-2622 as a summary out of context .  Motorola 's argument boils down to a problem with the documents |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | rather than the summary – namely, that the material is unfavorable to its position.  Motorola fails to elaborate on even a single example to demonstrate to this Court how TiVo's quotations "distort[] the substance" of the cited documents.<br><br>Motorola also objects to TiVo's damages analysis (TiVo TX 1868) attached to the expert report of Ryan Sullivan in the *Verizon* case.  The Court has already rules that TiVo's agreement with Verizon is admissible.  Dr. Sullivan should be allowed to explain to the jury how the amounts paid correlate to Verizon's sales using summaries of Verizon's voluminous sales data, and how such amounts are consistent with his analysis in this action.  FRE 1006.  TiVo's validity and infringement experts provide similar summaries because of the voluminous nature of the related documents and source code (TiVo TX 2614-2620).  *See Symbol Technologies, Inc. v. Opticon, Inc*., 935 F.2d 1569, 1575-76 (Fed. Cir. 1991) (approving the use of claim charts and interplay with FRE 705). |
| 85, 155, 103, 160, 170, 173, 260, 281, 297, 383, 554, 292-293, 755, 1206, 1377, 1764, 1770, 1820, 1826-1828, 1834, 1836-1838, 1840, 2014, , 2099-2103, 2152, 2276, 2281-2282, 2288, 2337, 2368, 2423, 2429-2432, 2449, 2462-2467-2368, 2469, 2473, 2474, 2480, 2483, | **8.  Exhibits concerning cableCARD, tuning adapting, and switched digital video technology:  FRE 402/403**<br>TiVo's exhibit list contains numerous documents regarding the development of cableCARD, tuning adaptor, and switched digital video technology that are not relevant to the parties' claims or defenses in this case.  These documents include correspondence between TiVo, Motorola, and Time Warner Cable, as well as internal communications, regarding CableCARD, tuning adaptor and switched digital video technology.  These documents are not relevant to infringement or invalidity in that they | All of the documents Motorola seeks to exclude are relevant to active issues in this case, such as willfulness and damages.  The fact that some of the documents may *also* relate to technology or products not at issue in the case is not a reason to exclude them.  Moreover, Motorola confirmed at the meet and confer on these objections that it intends to raise these technologies in its case, but still maintains its objections because it feels that TiVo "goes to far."<br><br>At the outset, many of the documents lumped into this |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| 2485, 2561 | to not relate to the technology of the asserted patents or the accused functionality on any accused TiVo DVR. Likewise, the development of these technologies is not relevant to any issue relating to the parties' contentions on reasonable royalty or lost profits damages. Thus, these documents should be excluded as irrelevant and likely to cause unfair prejudice. | category do, in fact, relate to the exact technology and products involved in this case:  TiVo's, Motorola's, and TWC's DVRs.  For example, several of the documents Motorola seeks to exclude relate to Motorola's and TWC's practices of analyzing TiVo's set-top boxes and, in some cases, even taking the physical boxes apart to study them.  *See, e.g.*, TiVo TX-0085 (Motorola email chain distributing picture of TiVo's "on board tuner solution"); TiVo TX-2423 (TWC email chain suggesting getting a TiVo set-top box "in house" to "review it with the right cast of characters so we can decide if we want to include some of the features in our next DVR release"); TiVo TX-2368 (Motorola email comparing TiVo DVRs to Motorola's, noting that TiVo DVR had "[b]etter technology" and "better quality").  This evidence is critical to TiVo's willfulness case.  Motorola also seeks to exclude several documents relevant to Motorola's knowledge of TiVo's successful litigation against EchoStar, which involved the precise DVR technology (and one of the same DVR patents) involved in this action.  *See, e.g.*, TiVo TX-0103; TiVo TX-0170.  These emails, too, are critical to TiVo's willfulness case.<br><br>Motorola also seeks to exclude a host of documents relied upon by TiVo's industry expert, James Trautman, discussing the value of the DVR technology involved in this case.  *See, e.g.*, TiVo TX-1820, TiVo TX-1826, TiVo TX-1828, TiVo TX-1834, TiVo TX-1836, TiVo TX-1837, TiVo TX-1838, TiVo TX-1840.  These documents are important elements in determining the appropriate royalty rate and total damages in this case.  In addition, Motorola seeks to exclude documents relied |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | upon by TiVo's survey expert, Dr. William Wecker, in evaluating the soundness of the survey results submitted by Motorola and TWC's rebuttal expert, Martin Buncher. *See* TiVo TX-2014, TiVo TX-2282, TiVo TX-2281, TiVo TX-2276.  Those documents are important in determining the appropriate measure of lost profits and total damages in this case. |
| | | Motorola also seeks to exclude dozens of emails related to TiVo and TWC's efforts to develop a "tuning adapter" that would allow TiVo subscribers to access TWC channels distributed through Switched Digital Video. These documents provide valuable context in assessing the history of TiVo and TWC's business negotiations and TWC's decision not to pay TiVo for a license to its technology.  Indeed, Motorola's own rebuttal expert on willfulness, Carl Silverman, discussed TiVo and TWC's collaboration on the tuning adapter technology in detail in his report, arguing that TWC's "tremendous effort" in making the tuning adapter work well was a "significant aspect" of TiVo and TWC's dealings over the years.  *See* Silverman Rpt. ¶¶ 133-147.  Moreover, Motorola and TWC's own exhibit list contains numerous entries relating to the tuning adapter and CableCARD technologies.  *See, e.g.*, PX-1205; PX-1244; PX-1232; PX-1258; PX-1260; PX-1274; PX-1281; PX-1285; PX-1287; PX-1288. |
| | | Many of the tuning adapter-related documents Motorola and TWC seek to exclude demonstrate that (i) for several years, TWC continued business negotiations with TiVo solely to obtain TiVo's support in the FCC's enforcement action against Switched Digital Video, and not with any |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | goal of reaching a business arrangement; (ii) TWC in fact put very little effort into making the tuning adapter at all user-friendly.  *See, e.g.*, TiVo TX-260 (email from TWC CEO Glenn Britt circulating article related to inquiry into Switched Digital Video, and noting "FYI for all who think that the Tivo conversation is a waste of time!!"); TiVo TX-1377 (email referring to tuning adapter as "one of the great kluges of all times"); TiVo TX-0293 (letter to TWC subscribers in Hawaii offering to replace TiVo boxes with TWC DVRs to ease transition to Switched Digital Video).  The fact that, for several years, TWC continued business negotiations with TiVo without seriously contemplating paying TiVo for its technology is relevant to the willfulness analysis in this case, and this evidence should be considered by the jury as part of the "totality of the circumstances" in evaluating the recklessness of TWC's behavior. |
| 979-990, 1302-1303 | **9.  Exhibits regarding "Net Present Value" (NPV): FRE 402/403**<br>TiVo seeks to rely on net present value ("NPV") data to establish the amount of its damages claims.  But NPV is an unreliable measure of TiVo's alleged profitability.  Indeed, Naveen Chopra, TiVo's CFO and Senior Vice President of Corporate Development and Strategy, testified that NPV calculations are not used for any accounting purposes and are not reported in any filing with the SEC.  1/22/13 Chopra Dep. Tr. at 201:16-202:8.  As such, TiVo's NPV calculations are unrelated to TiVo's actual profitability.  Therefore, these exhibits are irrelevant to any issue on damages, and are unfairly prejudicial to the extent they suggest TiVo is a profitable company, when in fact, it is not. | This is also a motion in limine disguised as an objection under the Federal Rules of Evidence.  Motorola is making incorrect merits arguments about the contents of the NPV documents, rather than any evidentiary objection.  Moreover, Motorola's arguments fail substantively.<br><br>The only NPV documents on TiVo's exhibit list pertain to the profitability of standalone TiVo boxes sold through retail and direct channels.  At deposition, TiVo's Chief Financial Officer, Naveen Chopra, testified that this type of NPV analysis is based on known information:  "If the question is what is the NPV of a subscriber that we sell or, I should say that we  acquire, through Best Buy by pricing a box at, you know, 22 $200 |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | and pricing our service at $20 a month*, you have all the information you need there to do that analysis*."  Chopra Tr. 201:19 to 201:23 (emphasis added).  Mr. Chopra provided an example of one such TiVo product: |

11 So, for instance, if you asked what is the NPV of, you
12 know, the sale of a Series 4 Premier TiVo DVR through
13 TiVo's website today, we can answer that question
14 without much speculation at all because we know how
15 those things are priced. We know what a reasonable
16 discount rate is. We know what the expected life of
17 that subscriber is. So we can answer that question.
18 So I don't really see it as one of speculation
19 as much as you tell us what the assumptions are and we
20 can do the analysis.

Chopra Tr. 203:11 to 203:20.  Mr. Chopra further described an NPV analysis of a product that has already been sold as the "simplest scenario":

1 [T]hat's the simplest scenario. And if someone were to
2 ask us how profitable is the sale of a TiVo -- the TiVo
3 boxes you sold through Best Buy in 2010, we could go
4 count all of those devices; we could go look at the
5 exact price that they were sold at; we could look at the
6 service revenue that we received from those. And based
7 on that, we can calculate an NPV.

Chopra Tr. 226:1 to 226:7.  Mr. Chopra added that an NPV analysis is "the best indication, to some extent kind of an industry standard indication of the profitability of each of those sales."  Chopra Tr. 226:8 to 226:10.  He further affirmed that "the assumptions on which an NPV is based ... typically appear on the spreadsheet."  Chopra Tr. 203:21 to 203:23.

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | The calculation of lost profits damages requires the profitability of incremental sales as an input.  TiVo's damages expert, Dr. Ryan Sullivan, uses TiVo's NPV reports as a cornerstone of his lost profits analysis.  Dr. Sullivan determined the TiVo documents provided the best measure of incremental profitability based, in part, on interviews with Pavel Kovar, TiVo's Corporate Controller.  Sullivan Rpt. ¶¶ 301-312. |
| *See* subsections below for specific exhibits. | **10.  Exhibits concerning unrelated third parties and products:  FRE 402/403**<br>TiVo's exhibit list includes over 150 exhibits discussing third party products, technologies, business relationships, transactions, studies, correspondence, and litigations that have nothing to do with the issues in this case.  Not only are these documents irrelevant under FRE 402, but their prejudicial effect substantially outweighs any negligible probative value pursuant to FRE 403.  These documents will only serve to mislead the jury, waste time, and confuse the actual issues in dispute.<br><br>Additional details regarding specific categories of these third party documents are set forth in the subsections below.  Exhibits that fall within more than one subcategory have been separately listed in each subsection. | Motorola provides blanket assertions of relevance, prejudice and hearsay to hundreds of TiVo exhibits.  Without a particularized explanation of the objections, TiVo is unable to address Motorola's blanket objections with any specificity.<br><br>Of note, Motorola has objected to large categories of documents when Motorola has also included similar categories of documents on its own exhibit list.  TiVo has tried to narrow its objections to only those issues that are of high importance at trial, but respectfully submits that similar categories of documents should be treated the same regardless of the offering party.<br><br>TiVo remains open to discussing potential compromises regarding these categories of documents. |
| 103, 170, 173, 554, 567, 772-773, 778-788, 791-792, 801, 816, 836, 839, 1050, 1052, 1054, 1061, 1062, 1068, 1071-1072, 1074, 1079, 1114-1115, | **(a)  Documents regarding third party products, pricing and financial information:  FRE 402/403, 802**<br>TiVo's exhibit list contains numerous inadmissible documents related to third party products, pricing and financial information. Fed. R. Evid. 402, 403, 802.  These documents are authored by third parties that it | Motorola objects that a portion of TiVo's exhibits reflect impermissible hearsay.  The documents objected to include a wide array of material, such as court orders and opinions from previous TiVo litigation, documents produced by Motorola and TWC, documents and videos from websites, and documents produced by Motorola |

17

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| 1118-1119, 1121-1124, 1126-1127, 1181, 1184, 1186, 1187, 1207, 1259, 1265, 1267-1268, 1275, 1278, 1279, 1282-1284, 1297, 1300, 1337, 1351-1352, 1360, 1369, 1374, 1394-1401, 1473-1475, 1486-1488, 1525, 1565, 1717, 1720, 1732, 1743, 1758, 1820, 1826-1828, 1834, 1836-1838, 1840, 1853, 1868, 2014, 2023, 2047, 2062, 2083, 2088, 2089-2093, 2099-2103, 2106-2124, 2126, 2133, 2135, 2150, 2156, 2170-2172, 2174-2175, 2178, 2181-2183, 2188, 2241, 2276, 2281-2282, 2368, 2404, 2547, 2571-2572, 2583, 2586, 2595, 2608-2611, 2613 | appears will be offered to establish the truth of the matter asserted.  In many of these documents, TiVo seeks to introduce information from third parties about product offerings and pricing.  For example, TiVo TX-2595 is a spreadsheet with information on AT&T's "U-Verse/Lightspeed" service.  Not only is this document regarding AT&T's financial information irrelevant, it is incomprehensible.  In many cases, these exhibits are nothing more than spreadsheets of numbers with no explanations of the data or the parameters in which it was collected.  These documents are prime examples of inadmissible hearsay.  These documents are offered without context, explanation, or the possibility of cross examination.  They are also irrelevant, confusing, and a waste of time, and for these reasons, should be excluded. | customers.  It is not clear on what basis Motorola is objecting to each sub-set of documents.  In any event, Motorola's objections to documents produced by Motorola customers like AT&T, Charter, Cox and Verizon are without merit because (1) they bear sufficient "distinctive characteristics" that satisfy authenticity, and (2) clearly fall under the residual hearsay exception due to "circumstantial guarantees of trustworthiness" and because they are more probative than any other evidence TiVo can reasonably get on the issues for which they will be used.  *See, e.g.*, TiVo TX-0836, 0839, 1394-95, 1397-99, 1400-01, 1717, 1720, 1732, 1743, 1758, 2583, 2586, 2595, 2608.  *See also* Fed. R. Evid. 807(a), 901(b)(4).<br><br>Documents produced by Motorola or TWC are admissions of party opponents.  *See, e.g.*, TiVo TX-0103, 0554, 0567, 2368, 2547.  *See also* Fed. R. Evid. 801(d).  To the extent documents produced by Motorola or TWC include articles, there is no hearsay issue because the article are being offered to show the speaker's or reader's intent, awareness, or state of mind.  *See, e.g.*, TiVo TX-0103 (article discussed in email), 0170 (same), 0173 (same), 1207 (Barrington research report), 2150 (newspaper article produced by Motorola).  Court orders and opinions from previous TiVo litigation are public records that are not hearsay.  *See, e.g.*, TiVo TX-2563–68.  *See also* Fed. R. Evid. 803(8). |
| 1374, 1394, 1395, 1397, 1717, 1720, 1743, 2583 | **(b)  Documents regarding non-accused, third-party technology:  FRE 402/403**<br> TiVo's exhibit list identifies several third party internal presentations regarding non-accused technologies.  These | Documents relating to DVR subscriber studies (TiVo TX-1374) are relevant in demonstrating the market for DVRs, the importance of certain features, and the acceptance of alleged alternative technologies. |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | third parties include Scientific Atlanta, Verizon, and AT&T.  The internal reports of these companies, regarding products not at issue, have no bearing on any claim or defense, and therefore, will only mislead the jury at trial. | The Court has already allowed discussion of the Verizon and AT&T agreements with TiVo.  Documents relating to Verizon's sales and DVR products (TiVo TX-1394, 1395, 1397, 1717, 1720, 1743) and AT&T sales and DVR products (TiVo TX-2583) are thus relevant in explaining the products subject to the licenses and the importance of TiVo's DVR technology to these companies. |
| 2547-49 | **(c)  Third-party Arris documents:  FRE 402/403** TiVo's exhibit list includes discussions between Arris employees, including opinions, comments, and speculation about this litigation and about Arris' acquisition of Motorola Home.  The commentary of Arris employees is irrelevant, highly prejudicial, and hearsay. Arris is not a party to this case.  The statements and opinions of its employees are not relevant to any claim or defense and will only serve to confuse the jury and suggest that these statements are attributable to Motorola and Time Warner Cable, when they are not. | Documents relating to the Arris acquisition are relevant to show, among other issues, willfulness.  For example, TiVo TX-2547–49 illustrate that this litigation was of paramount concern to Arris and that Arris communicated those concerns to Motorola during the sale of Motorola's DVR business unit. |
| 105, 110, 160, 297, 2010 | **(d)  Documents regarding business relationships with third parties:  FRE 402/403** TiVo's exhibit list contains Motorola and Time Warner Cable documents discussing business relationships with third parties regarding technologies not at issue in this case.  These third parties include Digeo, Slingbox, Microsoft, Comcast, and Seamless Mobility.  These documents are irrelevant under FRE 402 and would cause unfair prejudice under FRE 403 by confusing the issues and wasting time. | Motorola next argues that five documents relating to Motorola's business relationships with third parties should be excluded as "irrelevant" because those documents contain references to technologies not at issue in this case.  All five documents contain references to TiVo that bear directly on Motorola's and TWC's state of mind with respect to TiVo and its patents.  These documents are highly relevant to the willfulness analysis in this case and should not be excluded.  The willfulness analysis in this case requires a two-part inquiry:  first, whether Motorola and TWC faced an |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
| --- | --- | --- |
| | | objectively high risk of infringing TiVo's valid patent; and second, whether Motorola and TWC knew or should have known of that risk.  The documents Motorola seeks to exclude here bear on whether Motorola or TWC did, in fact, know that they faced a high risk of infringing TiVo's '389 patent.<br><br>For example, TiVo TX-0105 is an internal Motorola email chain discussing Motorola's contemplated acquisition of Digeo, a company that offered, among other things, a DVR with the brand name "Moxi."  While Digeo's products are not at issue in this case, TiVo TX-0105 and other exhibits demonstrate that Motorola contemplated acquiring Digeo in part because acquiring Digeo's patent portfolio might assist Motorola in defending against infringement allegations from TiVo.  In an internal discussion of the contemplated acquisition, Mark Depietro, a Senior Vice President of Strategy at Motorola, wrote:  "We should not let this deal slip from our grasp.  With the TiVO situation, the IP value alone justifies doing the deal."  TiVo TX-0105.  The fact that Motorola anticipated that it might need to defend itself against infringement allegations from TiVo is highly relevant to whether Motorola knew or should have known that it faced a high risk of infringing TiVo's valid patent.<br><br>All five of the documents Motorola and TWC seek to exclude here are highly relevant to the willfulness analysis in this case.  The fact that the documents happen to refer to third parties not involved in this case is not a reason to exclude them. |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| 333, 1702, 1122, 1123, 1124, 1127, 2090, 2091, 2092, 2610 | **(e)  Documents regarding business relationships between non-parties:  FRE 402/403** TiVo seeks to introduce documents related to business relationships between non-parties, including between Rovi and Comcast, ReplayTV and DirecTV, Rio and SonicBLUE, among others.  These documents have no probative value on any disputed issue in this case, and are therefore, irrelevant and unfairly prejudicial. | These exhibits, which trace the trajectory of TiVo's first main competitor, ReplayTV, are relevant both to the validity of TiVo's patents and to damages calculations. *See, e.g.* TiVo-TX-1123 (SonicBlue buys struggling ReplayTV); TiVo TX-1124 (SonicBlue files for bankruptcy and sells ReplayTV to D&M); TiVo TX-1127 (D&M sells ReplayTV to DIRECTV).  ReplayTV's (and ReplayTV's successors') failure in the DVR field is objective evidence of the non-obviousness of TiVo's invention. *See, e.g.*, TiVo TX-2610 ("ReplayTV's membership never gained much traction."). Additionally, ReplayTV's failure explains why a 2001 ReplayTV-General Instrument agreement cited by Motorola is not an appropriate baseline for determining TiVo's damages.  These exhibits are probative of important issues in the case, and admitting them works no unfair prejudice to Motorola. Motorola's objection that TiVo TX-0333 is irrelevant makes no sense.  It is a document about Rovi's guide software, which is deployed on certain of the accused Motorola DVR products. |
| 772, 773, 778, 779, 780, 781, 782, 783, 784, 785, 786, 787, 788, 791, 792, 816, 839, 953, 1031, 1050, 1052, 1054, 1061, 1062, 1068, 1071, 1079, 1118, 1119, 1126, 1184, 1186, 1187, 1398, 1399, 1400, 1401, 1473, 1474, 1475, | **(f)  Documents regarding non-accused, third-party technology:  FRE 402/403** TiVo seeks to introduce a voluminous collection of documents relating to third party products, pricing, and financial data.  These third parties include Comcast, Cox, Charter, Flextronics, DirecTV, ReplayTV, Verizon, SonicBLUE, Dish, and AT&T.  These documents set forth information that is not relevant to any accused product in this case, and as such, are likely to confuse | Motorola identifies dozens of documents as "non-accused third-part technology."  These documents are associated with a wide range of third parties linked to the accused products in very different ways.  For example, alongside documents relating to Pay TV providers TiVo TX-772, TiVo TX-773, TiVo TX-778, TiVo TX-779, TiVo TX-780, TiVo TX-781, TiVo TX-782, TiVo TX-783, TiVo TX-784, TiVo TX-785, TiVo TX-786, TiVo TX-787, TiVo TX-788, TiVo TX-791, TiVo TX-792, |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| 1487, 1488, 1525, 1758, 2089, 2135, 2174, 2175, 2275, 2595, 2608, 2609 | and mislead the jury on both liability and damages issues. | TiVo TX-816, TiVo TX-839, TiVo TX-953, TiVo TX-1050, TiVo TX-1052, TiVo TX-1054, TiVo TX-1061, TiVo TX- TiVo TX-1062, TiVo TX-1068, TiVo TX-1071, TiVo TX-1079, TiVo TX-1118, TiVo TX-1119, TiVo TX-1184, TiVo TX-1186, TiVo TX-1187, TiVo TX-1398, TiVo TX-1399, TiVo TX-1400, TiVo TX-1473, TiVo TX-1474, TiVo TX-1475, TiVo TX-1487, TiVo TX-1488, TiVo TX-1758, TiVo TX-2595, TiVo TX-2608, Motorola identifies 10-K forms for TiVo's main supplier, Flextronics TiVo TX-1031 and TiVo TX-1525.  Motorola has itself questioned TiVo's capacity to supply the volume of DVRs TiVo claims it would have sold in the absence of Motorola's infringement; thus, information relating to the finances and capacity of TiVo's main supplier is undoubtedly linked to disputed issues in this case.<br><br>Pay TV providers, including Cox, Comcast, Charter, and other Motorola customers, are linked to the accused products in the most direct of ways:  they use the accused products in order to make money.  This infringing use not only supplants TiVo as a supplier of DVR service, but would also affect the parties' relative positions in the hypothetical negotiation:  *Georgia-Pacific* factor number eight relates to the established profitability, commercial success, and current popularity of the accused product. Motorola's damages expert notes that "the royalty for licensed technology important to the functionality of profitable, successful and popular products will be higher than one that is not."  Hosfield Rebuttal Rpt. at 103.<br><br>Finally, Motorola also identifies documents relating to |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | ReplayTV and its one-time parent company, SonicBlue Inc.  TiVo TX-1126, TiVo TX-2089, TiVo TX-2135.  Motorola has itself argued that ReplayTV constitutes a commercially viable alternative to TiVo's patented DVR technology.  TiVo's use of the identified documents to question ReplayTV's commercial viability is entirely proper is responding to this argument. |
| 1732, 1853, 2586 | **(g)  Documents regarding industry studies on non-accused functionalities and products:  FRE 402/403** TiVo's exhibit list includes third party industry studies featuring discussions of non-accused functionalities and products.  These studies have little, if any, probative value.  And they are unfairly prejudicial in that they will confuse the jury regarding the liability and damages issues in this case. | Documents relating to DVR subscriber studies (1853 (DVR usage), 1732 (VOD), 2586 (DVRs in general) are relevant in demonstrating the market for DVRs, the importance of certain features, and the acceptance of alleged alternative technologies. |
| 2102, 2103, 2108, 2241, 2370 | **(h)  Press articles regarding non-accused products and non-parties:  FRE 402/403** TiVo's exhibit list contains press coverage of non-accused products and non-parties, including Microsoft, ITV, OpenCable.  These articles are irrelevant and will only confuse the jury and waste time at trial. | TiVo TX-2370 is relevant to the determination of damages.  TiVo TX-2370 is an internal Motorola email offered only to show the state of mind of Motorola employees—namely, that TiVo is in "direct . . . competition" with Motorola.  This is exhibit is admissible because it is not offered for the truth of the "press coverage" discussed in the email. TiVo TX-2102, 2103, 2108, and 2241 are relevant to determining the validity of TiVo's patents because they evidence secondary considerations of nonobviousness.  These articles show both a long felt need for interactive television, and how other companies tried to meet the need and failed.  *See, e.g.*, TiVo TX-2108 (article questioning whether interactive TV "will ever arrive"); TiVo TX-2012 (identifying interactive TV as one of the "7 Biggest Microsoft Flops Ever").  As such, these |

| Exhibits | Motorola's Objection Explanation | TiVo's Objection Response |
|---|---|---|
| | | exhibits are admissible. |