# Exhibit 5 to Exhibit A

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
PAUL SHEN, 30(b)(6) - 1/18/2013

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

--oOo--

```
MOTOROLA MOBILITY, INC. and       )
GENERAL INSTRUMENT                )
CORPORATION,                      )
              Plaintiffs,         )
         vs.                      ) No. 5:11-0053-JRG
TIVO, INC.,                       )
              Defendant.          )
_____)
TIVO, INC.,                       )
              Counterclaim        )
              Plaintiff,          )
         vs.                      )
                                  )
MOTOROLA MOBILITY, INC.,          )
GENERAL INSTRUMENT                )
CORPORATION, TIME WARNER CABLE    )
INC., and TIME WARNER CABLE       )
LLC,                              )
                                  )
              Counterclaim        )
              Defendants.         )
_____)
```

VIDEOTAPED 30(b)(6) DEPOSITION OF MOTOROLA

AND PERSONAL DEPOSITION OF PAUL SHEN

_____

JANUARY 18, 2013

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY


REPORTED BY:  SARAH LUCIA BRANN, CSR 3887

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
PAUL SHEN, 30(b)(6) - 1/18/2013

Page 10

```
09:10:07   1      Q.  What kind?
09:10:08   2      A.  Go back to -- portable live transmission
09:10:11   3   devices.
09:10:19   4      Q.  Can you elaborate on that?
09:10:21   5      A.  Okay.  You know news van, satellite news
09:10:26   6   van?  Whenever it's breaking news, people send out a
09:10:29   7   news van.  And instead of using a big news van, we
09:10:35   8   create a small backpack and transmit the same live
09:10:38   9   video signal, HD signal, back to the TV station.
09:10:44  10      Q.  Is this a product that's available to be
09:10:46  11   purchased by --
09:10:49  12      A.  All the major networks, from ABC, CBS,
09:10:52  13   NBC, CNN, all using this product.  It's deployed
09:10:59  14   over 60 countries.  Over 2,000 units have been
09:11:02  15   deployed.
09:11:02  16         (Clarification requested by reporter.)
09:11:02  17         THE WITNESS:  60 countries.
09:11:03  18         MR. YORKS:  Q.  Is this a privately held
09:11:06  19   company?
09:11:06  20      A.  Yes.
09:11:17  21      Q.  I am sorry.  I didn't catch the name.  The
09:11:21  22   new company is Tune?
09:11:22  23      A.  TVU --
09:11:24  24      Q.  TVU.  I am sorry.
09:11:25  25      A.  -- Networks.  Right here.
```

Page 11

```
09:11:37   1      Q.  Does TVU have any type of relationship
09:11:39   2   with Motorola?
09:11:40   3      A.  No.
09:12:01   4      Q.  Have you been retained by Motorola or
09:12:05   5   Motorola's counsel in this matter?
09:12:07   6      A.  No.  Just for this, finding this
09:12:15   7   information.
09:12:16   8      Q.  You haven't been retained as a consultant
09:12:18   9   by Motorola or Motorola's counsel?
09:12:22  10      A.  I have to ask --
09:12:28  11      Q.  Are you being paid for your time today,
09:12:30  12   sir?
09:12:30  13      A.  I am being paid for today's time as a --
09:12:35  14   yeah, for this case.  Not -- just specific for this
09:12:38  15   case, yes.
09:12:39  16      Q.  And is there an hourly rate that you are
09:12:41  17   charging?
09:12:42  18      A.  Yes.
09:12:42  19      Q.  What is the hourly rate?
09:12:44  20      A.  I don't remember.  It's a flat -- it was a
09:12:47  21   flat -- it's a flat -- a number of consulting hours.
09:12:54  22      Q.  Oh, there is a flat fee?
09:12:57  23      A.  For a certain number of hours.
09:12:59  24      Q.  And how many hours?
09:13:00  25      A.  I don't remember the exact number.
```

Page 12

```
09:13:02   1      Q.  Do you remember roughly what the fee was?
09:13:04   2      A.  Roughly about $70,000.
09:13:06   3      Q.  $70,000?
09:13:07   4      A.  Yeah.
09:13:14   5      Q.  Is there any type of bonus or --
09:13:18   6      A.  No.
09:13:19   7      Q.  -- additional payment if the case goes
09:13:22   8   Motorola's way?
09:13:24   9      A.  No.
09:13:24  10         (Deposition Exhibit 1
09:13:24  11          was marked for identification.)
09:13:57  12         MR. YORKS:  Q.  Sir, you have been handed
09:13:59  13   what's been marked as Exhibit Number 1, which is
09:14:01  14   titled "TiVo's Second Notice of Deposition of
09:14:07  15   Motorola Pursuant to Rule 30(b)(6)."
09:14:10  16         Have you ever seen this document before?
09:14:16  17      A.  Yes, I believe so.
09:14:18  18      Q.  And if you look at page nine of the
09:14:35  19   document, there's a heading "Topics for
09:14:38  20   Examination."
09:14:42  21         Do you see that?
09:14:43  22      A.  Yes.
09:14:44  23      Q.  And then if you go to page 19, there's
09:14:56  24   topics.  And is it your understanding -- or do you
09:15:01  25   understand that you have been designated by Motorola
```

Page 13

```
09:15:03   1   to testify regarding topics 81 through 83, 85
09:15:10   2   through 89, 93 through 97, and 111?
09:15:15   3      A.  Yes.
09:15:19   4      Q.  Do you understand you have also been
09:15:20   5   noticed for a deposition individually, so that you
09:15:24   6   are to testify about any knowledge that you have
09:15:25   7   personally?
09:15:26   8      A.  Yes.
09:15:26   9         (Deposition Exhibit 2 and Exhibit 3
09:15:26  10          were marked for identification.)
09:16:17  11         MR. YORKS:  Q.  Sir, you have been handed
09:16:19  12   two documents.  The first one has been marked
09:16:21  13   Exhibit Number 2, and it's US Patent Number
09:16:24  14   6,304,714.  And the second document has been marked
09:16:28  15   as Exhibit Number 3, and it is US Patent Number
09:16:32  16   5,949,948.
09:16:35  17         And let's start with the Exhibit Number 2.
09:16:38  18   And if it's okay, I am going to refer to this patent
09:16:41  19   as the '714 patent, which is the last three digits.
09:16:46  20   Is that okay?
09:16:47  21         Have you ever seen this patent before,
09:16:49  22   sir?
09:16:49  23      A.  Yes.
09:16:53  24      Q.  When is the last time that you reviewed
09:16:55  25   this patent?
```

Merrill Corporation - Los Angeles
800-826-0277                                         www.merrillcorp.com/law

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
PAUL SHEN, 30(b)(6) - 1/18/2013

### Page 50

```
10:28:06   1    much has been implemented.  But we did something,
10:28:12   2    just didn't finish it.
10:28:13   3         Q.  So, to your knowledge, Imedia never had a
10:28:18   4    prototype which could receive an incoming broadcast
10:28:22   5    program, store it on the drive, and then play back
10:28:26   6    that program and perform trick modes in the
10:28:29   7    prototype?
10:28:30   8         A.  That's correct.
10:28:38   9         Q.  When did Imedia first learn about TiVo?
10:28:51  10         A.  I don't remember exactly the date.  I
10:28:52  11    remember I read some newspaper articles.
10:29:04  12         Q.  Did you have any impression or thought
10:29:05  13    about the TiVo products relative to Imedia?
10:29:16  14         A.  I remember I said, "Gee, exactly what we
10:29:19  15    want to do."
10:29:19  16             And also we were saying -- comment -- I
10:29:24  17    was commenting about Geoffrey Yang.  He, at the time
10:29:29  18    when we pitched to him, he doesn't think it's a big
10:29:36  19    deal, and kind of like his investing.
10:29:37  20             THE REPORTER:  He doesn't think it's?
10:29:37  21             THE WITNESS:  It was a big deal.  He did
10:29:38  22    not believe -- say it was a big market, an easy
10:29:44  23    market for the consumer product.
10:29:47  24             MR. YORKS:  Q.  Did Imedia believe that
10:29:53  25    TiVo infringed its patents?
```

### Page 51

```
10:29:57   1             MR. CUNNINGHAM:  Objection.
10:29:57   2             THE WITNESS:  Yes.
10:29:58   3             MR. CUNNINGHAM:  Calls for a legal
10:29:59   4    conclusion.  You can answer.
10:30:00   5             THE WITNESS:  We believe so, yes.
10:30:02   6             MR. YORKS:  Q.  And when did you believe
10:30:04   7    that TiVo infringed patents?
10:30:07   8         A.  We -- when we heard that they funded that
10:30:11   9    company, we said, you know, we have the patent.
10:30:16  10    That's exactly what we thought it was.
10:30:18  11         Q.  Would that be approximately 1999?
10:30:23  12         A.  I don't remember exact date.
10:30:25  13         Q.  Roughly?
10:30:25  14         A.  When we saw the press release or some news
10:30:30  15    articles.  I don't remember exactly.
10:30:38  16         Q.  Did Imedia ever approach TiVo about
10:30:43  17    licensing Imedia patents?
10:30:48  18         A.  I wasn't involved on that side anymore, on
10:30:51  19    the legal side, so...
10:30:54  20         Q.  Who would that have been?
10:30:56  21         A.  I don't -- it has to be Efi Arazi, the
10:31:03  22    CEO.
10:31:04  23             (Clarification requested by reporter.)
10:31:04  24             THE WITNESS:  Efi Arazi, E-f-i, Arazi,
10:31:05  25    A-r-a-z-i.
```

### Page 52

```
10:31:08   1             MR. YORKS:  Q.  And was there a Peter
10:31:10   2    Vandergracht at Imedia?
10:31:12   3         A.  Yes.
10:31:13   4         Q.  And who was he?
10:31:16   5         A.  He was brought in as replacement for Efi
10:31:26   6    Arazi.
10:31:27   7         Q.  So he became the CEO of Imedia?
10:31:30   8         A.  Yes.
10:31:31   9         Q.  Replacing Efi Arazi?
10:31:34  10         A.  Yes.
10:31:35  11         Q.  Do you recall whether Efi Arazi, I mean,
10:31:37  12    Peter Vandergracht ever approached TiVo about
10:31:41  13    licensing or infringement of Imedia patents?
10:31:45  14         A.  Not that I am aware of.  Efi -- I mean, he
10:31:48  15    is not telling -- he didn't tell me everything he
10:31:51  16    was doing, so...
10:31:52  17             (Deposition Exhibit 10
10:32:05  18             was marked for identification.)
10:32:13  19             MR. YORKS:  Q.  Mr. Shen, you have been
10:32:14  20    handed what's been marked Exhibit Number 10, Bates
10:32:18  21    TIVO-T53-MOT-0007292.  This is an email to a Stewart
10:32:29  22    Alsop, and then there is a cc to Peter Vandergracht,
10:32:32  23    Imedia.  Is that the Peter Vandergracht you just
10:32:37  24    testified about?
10:32:40  25         A.  Hmm?
```

### Page 53

```
10:32:41   1         Q.  Is that the Peter --
10:32:43   2         A.  Yes.
10:32:44   3         Q.  The Peter Vandergracht here, is that the
10:32:47   4    CEO of Imedia?
10:32:49   5         A.  Yes.
10:32:56   6         Q.  The email states, "We are investors in a
10:32:58   7    company called Imedia that enables extreme video
10:33:03   8    compression.  Thought that there might be synergies
10:33:07   9    with TiVo," period.  Do you see that?
10:33:10  10         A.  Yes.
10:33:10  11         Q.  Do you recall any discussions in Imedia
10:33:13  12    about synergies with TiVo?
10:33:17  13         A.  No.
10:33:22  14         Q.  You don't recall any discussions at Imedia
10:33:23  15    about TiVo?
10:33:25  16         A.  No.  Peter came in very short.  Really,
10:33:33  17    they don't know much about the company.
10:33:41  18         Q.  Now, you said that, when you saw the press
10:33:43  19    release on TiVo, that you thought that TiVo may be
10:33:53  20    infringing the Imedia patent; is that correct?
10:33:55  21         A.  Yes.
10:33:55  22         Q.  And were you employed at Imedia at that
10:33:56  23    time?
10:33:57  24         A.  Yes.
10:33:57  25         Q.  You testified that you left Imedia in
```

14 (Pages 50 to 53)

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
PAUL SHEN, 30(b)(6) - 1/18/2013

Page 74

```
11:14:40   1   belief; is that correct?
11:14:42   2       A.  Either direction, whether he provided or
11:14:44   3   he didn't provide.  I don't know.
11:14:59   4       Q.  Did Imedia ever contemplate filing a
11:15:06   5   lawsuit against TiVo?
11:15:15   6       A.  We were so focused on the cable StatMux
11:15:21   7   CherryPick product, we didn't have any attention at
11:15:30   8   the time on the PVR side.  So we know they violate
11:15:46   9   our patent, but we did not, say, actively go after
11:15:50  10   them.
11:15:51  11           And it's a big distraction.  The company
11:15:53  12   did not have a lot of money to do anything, so we
11:16:00  13   never sought out that.
11:16:06  14       Q.  So Imedia never bothered with filing any
11:16:13  15   type of action against TiVo, because it was focused
11:16:16  16   on a different product?
11:16:18  17       A.  At the time, yes.
11:16:19  18           MR. CUNNINGHAM:  Objection.  Form.
11:16:21  19           MR. YORKS:  Q.  This is in 1999, roughly;
11:16:23  20   correct?
11:16:23  21       A.  Yes.
11:16:36  22       Q.  Was the belief that TiVo may infringe the
11:16:44  23   Imedia patents communicated to Terayon?
11:16:49  24       A.  I don't recall.  It was too short, so I
11:16:51  25   really didn't have a chance to sit down, discuss all
```

Page 75

```
11:16:54   1   the detail, what intellectual property TVU had.  Not
11:17:03   2   TVU.  Imedia at the time.
11:17:06   3       Q.  Do you know whether there was any type of
11:17:09   4   legal analysis on whether TiVo infringed any of the
11:17:13   5   Imedia patents?
11:17:18   6       A.  I -- not that I am aware of.
11:17:38   7           MR. YORKS:  Okay.  I have no further
11:17:40   8   questions for this witness.
11:17:42   9           MR. CUNNINGHAM:  Okay.  I just have a few.
11:17:44  10           And this is Sean Cunningham again.
11:17:46  11           I have got a box here --
11:17:53  12           MR. YORKS:  Wait.  Sorry.  I have one more
11:17:54  13   question.
11:17:55  14           MR. CUNNINGHAM:  Okay.  Go ahead.
11:17:56  15           MR. YORKS:  This relates to maybe
11:17:57  16   authentication.
11:17:59  17       Q.  The prototype that you testified earlier,
11:18:01  18   is it still around?
11:18:05  19       A.  You know, we -- I do not know.  Terayon
11:18:13  20   should have it.  And I think I would say it was an
11:18:15  21   acquisition, and we had an office in San Francisco.
11:18:18  22   Where it is, I do not know.  It just goes through
11:18:21  23   that process.
11:18:21  24           We were talking about, at the time when we
11:18:23  25   finished with it, we should put -- encase in -- make
```

Page 76

```
11:18:27   1   a coffee table, in a glass, encased.  But I don't
11:18:32   2   know where it is.
11:18:33   3       Q.  But do you think it exists?
11:18:35   4       A.  I -- you know, once it goes through two
11:18:39   5   hands, three hands, no, I don't know where it is.
11:18:42   6       Q.  Oh, because it went to Terayon and
11:18:45   7   Motorola?
11:18:45   8       A.  Yeah, exactly.  Now Google.  And who knows
11:18:47   9   where it is?  Lots of excess movement.  Not many
11:18:52  10   people really understand, because you see like a PC,
11:18:54  11   computer, so...
11:18:56  12       Q.  But you understand that the code relative
11:18:58  13   to the Imedia prototype was produced in this case?
11:19:02  14       A.  Yes.
11:19:04  15       Q.  Okay.  And I guess that must have been
11:19:11  16   kept, then, from Imedia to Terayon; is that correct?
11:19:14  17       A.  No, I --
11:19:16  18       Q.  Do you know where that code came from?
11:19:18  19       A.  I have archived tapes.
11:19:21  20       Q.  You do?
11:19:22  21       A.  I do.
11:19:22  22       Q.  Which is probably what you are going to be
11:19:24  23   discussing.
11:19:29  24           Okay.  Can you tell me -- these tapes that
11:19:32  25   you have, you have kept them personally all these
```

Page 77

```
11:19:35   1   years?
11:19:35   2       A.  Yes.
11:19:42   3       Q.  And these tapes include code from the
11:19:44   4   Imedia prototype that we have been discussing today?
11:19:47   5       A.  Yes.
11:19:52   6       Q.  Why did you keep these tapes?
11:19:55   7       A.  I have each reel from my graduate school.
11:20:03   8   I'm archiving all this work I do.
11:20:03   9       Q.  So you are a pack rat?
11:20:06  10       A.  Yeah, right.  I have one storage house.
11:20:08  11   All the stuff is there.
11:20:17  12           MR. YORKS:  All right.  No further
11:20:17  13   questions, then.
11:20:25  14           EXAMINATION BY MR. CUNNINGHAM
11:20:26  15           MR. CUNNINGHAM:  Q.  Okay.  So I will just
11:20:29  16   pick up where you left off.  Would you please look
11:20:34  17   in this box, Mr. Shen, and tell me what's in it?
11:20:35  18       A.  Archiving tapes and disks and a CD.
11:20:39  19       Q.  Where were these tapes found?
11:20:40  20       A.  Our garage.
11:20:41  21       Q.  Your garage?
11:20:42  22       A.  Yes.
11:20:42  23       Q.  What do they contain, just generally?
11:20:45  24       A.  It's a backup.  It essentially is all
11:20:48  25   backup of my other -- other than -- one is the
```

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
PAUL SHEN, 30(b)(6) - 1/18/2013

```
                                                  Page 78
11:20:54   1   backup of the initial movie, burned on a wire.
11:20:57   2        Q.  Burned on a wire?
11:20:59   3        A.  Yeah.
11:20:59   4        Q.  Okay.
11:20:59   5        A.  And also one floppy disk is the decoder
11:21:04   6   chip we use in the device driver, the development
11:21:07   7   kit for the decoder chip.
11:21:10   8        Q.  And did you provide all of these backup
11:21:13   9   tapes and disks to counsel for Motorola?
11:21:15  10        A.  Yes, I did.
11:21:17  11             MR. CUNNINGHAM:  Counsel, I will make
11:21:18  12   copies of this after the deposition, but take a look
11:21:20  13   at it.  It's the chain-of-custody form.  I just want
11:21:23  14   to show it to him and ask him a couple of questions.
11:21:40  15   And it bears my signature as of today.
11:21:43  16             MR. YORKS:  Well, chain of custody -- oh,
11:21:46  17   from the time -- it starts at 2011?
11:21:53  18             MR. CUNNINGHAM:  Yes.
11:21:53  19             MR. YORKS:  And then what's the next
11:21:54  20   entry?  2000 --
11:21:56  21             MR. CUNNINGHAM:  That should be 2011 also.
11:21:58  22             MR. YORKS:  So this is post-suit custody.
11:22:01  23             MR. CUNNINGHAM:  Correct.
11:22:03  24        So let's mark this as Shen Exhibit 15,
11:22:05  25   please.

                                                  Page 79
11:22:05   1             (Deposition Exhibit 15
11:22:05   2              was marked for identification.)
11:22:18   3             MR. CUNNINGHAM:  Q.  Now, Mr. Shen, just
11:22:19   4   look at the first page there, the listing that's at
11:22:21   5   the top of the page.  Can you verify that that's an
11:22:24   6   accurate high-level description of what's on these
11:22:26   7   backup tapes?
11:22:48   8        A.  Yeah.
11:22:49   9        Q.  Yes?
11:22:49  10        A.  Yes.
11:22:50  11        Q.  And to your knowledge, since you stored
11:22:57  12   these backup tapes in your garage, have they ever
11:23:00  13   moved from your garage since the time you stored
11:23:04  14   them there to the time that you handed them over to
11:23:07  15   Motorola's counsel?
11:23:08  16        A.  I moved from one house to the next.
11:23:11  17        Q.  Okay.
11:23:11  18        A.  That's -- that's all.
11:23:12  19        Q.  Okay.  And you moved the tapes when you
11:23:14  20   moved?
11:23:14  21        A.  Yes.
11:23:15  22             MR. CUNNINGHAM:  All right.  Okay.  Thank
11:23:16  23   you.
11:23:18  24             MR. YORKS:  Can I see the tapes?
11:23:19  25             MR. CUNNINGHAM:  You can take as long a

                                                  Page 80
11:23:22   1   look as you like.
11:23:23   2        For the record, I just handed the box
11:23:25   3   across the table to counsel.
11:23:27   4        Can I proceed while you are doing that?
11:23:29   5             MR. YORKS:  Sure.
11:23:31   6             MR. CUNNINGHAM:  Okay.
11:23:31   7        Q.  I want you to take a look at one other
11:23:33   8   document, Mr. Shen.  This is -- was previously
11:23:36   9   marked at the deposition of Geoff Yang as
11:23:39  10   Exhibit 17, so that's how I am going to refer to it.
11:23:42  11        This is titled "Business Projections for
11:23:44  12   Imedia Corporation," dated January 1995.  Do you see
11:23:47  13   that?
11:23:47  14        A.  Yes.
11:23:48  15        Q.  Did you have a role in preparing this
11:23:50  16   business projection?
11:23:51  17        A.  Yes.
11:23:51  18        Q.  You will see at the top of each page it
11:23:54  19   says, "Copy: IVP."  Do you see that?
11:23:55  20        A.  Yes.
11:23:56  21        Q.  Is this a document that was provided to
11:23:58  22   IVP in the course of Imedia's exchange of materials
11:24:01  23   with IVP?
11:24:02  24        A.  Yes.  This -- I believe this likely would
11:24:08  25   be the one.

                                                  Page 81
11:24:09   1             MR. CUNNINGHAM:  Okay.  Those are all the
11:24:11   2   questions I have.
11:24:12   3             MR. YORKS:  Follow-up questions, now that
11:24:14   4   we have these tapes.
11:24:15   5             EXAMINATION BY MR. YORKS
11:24:24   6             MR. YORKS:  Q.  How do you know that these
11:24:25   7   are code from the '94-'95 time period?
11:24:30   8        A.  Let me -- this is not code.  I put a
11:24:36   9   notation on it.  This is burned-on-a-wire tape,
11:24:40  10   specific time interval.
11:24:43  11        Q.  What is burned on a wire?  You mean a
11:24:45  12   movie?
11:24:46  13        A.  Movie, yes.  This is the content.  So all
11:24:48  14   the tape, I put a notation on it what this tape is
11:24:54  15   backup as.
11:24:55  16        Q.  Oh, maybe I misunderstood.  Is any of the
11:24:58  17   code, software code --
11:24:59  18        A.  One of them --
11:25:00  19        Q.  Let me finish.
11:25:01  20        Is any of the software code for the
11:25:03  21   prototype that we have been discussing for the
11:25:05  22   virtual VCR in these tapes or disks?
11:25:11  23        A.  I believe so.
11:25:15  24        Q.  What do you mean, you believe so?
11:25:17  25        A.  It has a complete backup.
```

21 (Pages 78 to 81)