```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
 2                      MARSHALL DIVISION

 3   MOTOROLA MOBILITY, INC. and * Civil Docket No.
     GENERAL INSTRUMENT CORP.    * 5:11-CV-53-JRG
 4                               * Marshall, Texas
     -VS-                        *
 5                               *
     TIVO, INC.                  *
 6   _____

 7   TIVO, INC.                  *
                                 *
 8   -VS-                        *
                                 *
 9   MOTOROLA MOBILITY, INC.,    *
     GENERAL INSTRUMENT          *
10   CORPORATION, TIME WARNER    *
     CABLE, INC., AND TIME       * June 5, 2013
11   WARNER CABLE, LLC           * 9:00 A.M.

12
               ************************************
13              TRANSCRIPT OF PRETRIAL CONFERENCE
               BEFORE THE HONORABLE RODNEY GILSTRAP
14                 UNITED STATES DISTRICT JUDGE
               ************************************
15

16   APPEARANCES:

17

     FOR MOTOROLA MOBILITY, INC., GENERAL INSTRUMENT
18   CORPORATION, TIME WARNER CABLE, INC., AND TIME WARNER
     CABLE, LLC:
19
                  MR. JAMES MARK MANN
20                THE MANN FIRM
                  300 West Main
21                Henderson, Texas  75652

22                MS. JENNIFER HALTOM DOAN
                  HALTOM & DOAN
23                6500 Summerhill Road
                  Crown Executive Center, Suite 100
24                Texarkana, Texas  75505

25
```

```
 1   APPEARANCES (CONTINUED):

 2   FOR MOTOROLA MOBILITY, INC., GENERAL INSTRUMENT
     CORPORATION, TIME WARNER CABLE, INC., AND TIME WARNER
 3   CABLE, LLC:

 4           MR. EDWARD J. DeFRANCO
             MR. ROBERT B. WILSON
 5           MR. MATTHEW A. TRAUPMAN
             QUINN, EMANUEL, URQUHART & SULLIVAN, LLP —
 6           NEW YORK
             51 Madison Avenue, 22nd Floor
 7           New York, New York  10010

 8           MR. DAVID AARON NELSON
             QUINN, EMANUEL, URQUHART & SULLIVAN, LLP —
 9           CHICAGO
             500 West Madison Street, Suite 2450
10           Chicago, Illinois  60661

11           MR. CHARLES K. VERHOEVEN
             QUINN, EMANUEL, URQUHART & SULLIVAN, LLP —
12           SAN FRANCISCO
             50 California Street, 22nd Floor
13           San Francisco, California  94111

14           MS. MARISSA DUCCA
             MR. ALAN WHITEHURST
15           QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
             1299 Pennsylvania Avenue NW
16           Suite 825
             Washington, DC  20004
17
             MR. SEAN CUNNINGHAM
18           DLA PIPER US, LLP — SAN DIEGO
             401 B Street, Suite 1700
19           San Diego, California  92101

20

21

22

23

24

25
```

1    **APPEARANCES (CONTINUED):**

2    **FOR TIVO, INC.:**

3            **MS. JENNIFER TRUELOVE**
             **McKOOL SMITH – MARSHALL**
4            104 East Houston Street, Suite 300
             Post Office Box O
5            Marshall, Texas  75670

6            **MR. RICHARD M. BIRNHOLZ**
             **MR. MORGAN CHU**
7            **MR. ANDREI IANCU**
             **MR. JOSEPH M. LIPNER**
8            **MR. CRAWFORD MACLAIN WELLS**
             **MS. TALIN GORDNIA**
9            **MR. THOMAS C. WERNER**
             **MS. MELISSA RABBANI**
10           **IRELL & MANELLA – LOS ANGELES**
             1800 Avenue of the Stars, Suite 900
11           Los Angeles, California  90067-4276

12   **COURT REPORTER:**        **MS. MELISSA J. CARSON, CSR**
                                Deputy Official Court Reporter
13                              Post Office Box 551628
                                Dallas, Texas  75355-1628
14                              214.346.3434

15   (Proceedings recorded by mechanical stenography,
     transcript produced on a CAT system.)
16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

09:19AM  COURT SECURITY OFFICER:  All rise.

09:19AM  THE COURT:   Be seated, please.

09:19AM  All right.  This is a continuation of the
09:19AM  Pretrial Hearings in regard to Motorola, et al., versus
09:19AM  TiVo.  This is Civil Action 5:11-CV-53.

09:19AM  Let me call for announcements this
09:19AM  morning.  Who is here on behalf of Motorola?

09:19AM  MR. MANN:   Your Honor, Mark Mann, here
09:19AM  for Motorola and Time Warner Cable and General
09:19AM  Instruments.  And there are a number of other lawyers
09:19AM  and if it's okay with the Court, we'll just let them
09:19AM  announce as they come before the podium.

09:19AM  THE COURT:   That will be fine.
09:20AM  Announcements for TiVo.

09:20AM  MS. TRUELOVE:   Thank you, Your Honor.
09:20AM  Good morning.  Jennifer Truelove here for TiVo.

09:20AM  At Counsel table I have Mr. Morgan Chu,
09:20AM  Mr. Andrei Iancu, Joseph Lipner, and Mr. Richard
09:20AM  Birnholz.  And additionally we'll have likely other
09:20AM  attorneys that argue as well.

09:20AM  THE COURT:   Well, I understand that's
09:20AM  the case.  And just for clarity of the record, whether
09:20AM  you've been introduced as a part of these announcements
09:20AM  or not, if you participate in the hearing, you go to

09:20AM   1   the podium, in which each participant will speak.  Then

09:20AM   2   if you'll begin by identifying yourselves for the

09:20AM   3   record, that will be helpful.

09:20AM   4              All right.  We've previously taken up

09:20AM   5   certain matters and we'll continue with the unaddressed

09:20AM   6   Motions In Limine.  We'll continue with the Motorola

09:21AM   7   Motions In Limine.  I have carried the Motion In Limine

09:21AM   8   with regard to the EchoStar license and I will give the

09:21AM   9   parties a ruling on that before the end of this week.

09:21AM  10              The other two Motions In Limine I believe

09:21AM  11   I have already dealt with.  The AT&T and Verizon

09:21AM  12   matters I've said are in.  We've dealt with the one on

09:21AM  13   Motion In Limine on total revenues and sizes of the

09:21AM  14   parties.  I think that -- I think we've dealt with all

09:21AM  15   the other Motorola related Motions In Limine; is that

09:22AM  16   correct?  Are there any -- other than the EchoStar

09:22AM  17   matter, are there any other Motions In Limine for

09:22AM  18   Motorola that I've not already dealt with that you're

09:22AM  19   aware of, Counsel?

09:22AM  20              MR. VERHOEVEN:  No, Your Honor.

09:22AM  21              THE COURT:  Okay.  Then let's move to

09:22AM  22   the Motions In Limine raised by TiVo.

09:22AM  23              First one is whether the Court should

09:22AM  24   preclude any reference to Irell & Manella.  I think

09:22AM  25   I've granted that previously, have I not?

09:22AM 1      MR. VERHOEVEN:   Your Honor, I think

09:22AM 2 we're on No. 3, according to my notes.

09:22AM 3      THE COURT:   Yes, that's correct.  Let's

09:22AM 4 take up TiVo Motion In Limine 3, whether the Court

09:22AM 5 should exclude Motorola or Time Warner's expert, for

09:22AM 6 which Notice was not provided.  Let me hear from TiVo

09:22AM 7 on this.

09:22AM 8      MR. BIRNHOLZ:   Good morning, Your Honor.

09:22AM 9 Richard Birnholz of Irell & Manella.

09:22AM 10     THE COURT:  Good morning.

09:22AM 11     MR. BIRNHOLZ:   Motion In Limine No. 3

09:23AM 12 was a brief, vanilla motion that the Court should order

09:23AM 13 that the experts are limited to the matters for which

09:23AM 14 notice was provided and disclosed in their -- the other

09:23AM 15 side and there was -- it was not directed at a

09:23AM 16 particular issue, so I didn't believe that MIL No. 3

09:23AM 17 was a controversial motion.

09:23AM 18     THE COURT:   All right.  Well, now I'll

09:23AM 19 hear from opposing Counsel.  Typically the Court does

09:23AM 20 get, from time to time, what I consider to be

09:23AM 21 follow-the-rules Motions In Limine where basically a

09:23AM 22 party asks the other side be ordered to follow the

09:23AM 23 rules.  Typically I deny those because we're going to

09:23AM 24 follow the rules in the trial whether there's a Motion

09:23AM 25 In Limine or not.

```
09:23AM   1              So if you've got something specific to
09:23AM   2    take up, we'll certainly get into that, but if it's of
09:23AM   3    a general, broad, as you say, vanilla nature, that's
09:23AM   4    typically how I've handled them.  But let me hear
09:24AM   5    briefly a response from the other side.
09:24AM   6              MR. DeFRANCO:  Good morning, Your Honor.
09:24AM   7    Ed DeFranco for Motorola.
09:24AM   8              Your Honor, that -- that's exactly right.
09:24AM   9    When this issue came up we said, well, that -- that
09:24AM  10    sounds like you're asking us to play by the rules and
09:24AM  11    this should be a two-way street of course, that both
09:24AM  12    parties certainly expect that the Court will require
09:24AM  13    them to play by the rules with respect to expert
09:24AM  14    testimony that is, that opinions are either explicitly
09:24AM  15    disclosed in reports or in deposition testimony.
09:24AM  16              And we anticipate, I believe under Your
09:24AM  17    Honor's procedures, there may be some objections in
09:24AM  18    that regard that we'll take up the morning before or
09:24AM  19    the day before an expert takes the stand so we resolve
09:24AM  20    any such objections, but TiVo hasn't raised any yet and
09:24AM  21    we have no problem with what's in their motion because
09:24AM  22    they're saying both sides should follow the rules, as
09:24AM  23    Your Honor just explained.
09:24AM  24              THE COURT:   All right.  Well, without
09:24AM  25    more and based on the Court's explanation, I'll deny
```

09:25AM 1    TiVo's Motion In Limine No. 3 because we will follow

09:25AM 2    the rules in this trial whether there's a Motion In

09:25AM 3    Limine granted or not.

09:25AM 4            And again, for everyone's benefit let me

09:25AM 5    reiterate that a Motion In Limine, a ruling by the

09:25AM 6    Court on a Motion In Limine is not a permanent,

09:25AM 7    dispositive, substantive ruling on the nature of the

09:25AM 8    matter, it's simply a requirement that you must

09:25AM 9    approach the bench and obtain leave before you go into

09:25AM 10   that matter before the Jury.

09:25AM 11           There are times when, based on the

09:25AM 12   context has been developed in the trial, I'm going to

09:25AM 13   grant leave even though I've previously entered a

09:25AM 14   Motion In -- granted a Motion In Limine.  Many times

09:25AM 15   I'm not, but it just requires you to approach and seek

09:25AM 16   leave before going into it.

09:25AM 17           It doesn't necessarily say forever and

09:25AM 18   forever it's out; forever and ever it's in.  I think

09:25AM 19   everyone understands that, but I just want to make that

09:25AM 20   abundantly clear.

09:26AM 21           All right.  Let's go to TiVo's Motion In

09:26AM 22   Limine No. 4, the late disclosed license defense based

09:26AM 23   on the Horizon Developer Agreement.  I'll hear from

09:26AM 24   TiVo on this.

09:26AM 25           MR. LIPNER:   Good morning, Your Honor.

| | | |
|---|---|---|
| 09:26AM | 1 | Joseph Lipner of Irell & Manella. |
| 09:26AM | 2 | THE COURT:  Good morning. |
| 09:26AM | 3 | MR. LIPNER:  We brought this motion |
| 09:26AM | 4 | because we are facing a license defense that was never |
| 09:26AM | 5 | disclosed in discovery.  It has shown up in a summary |
| 09:26AM | 6 | judgment motion, which is also on the Court's docket, |
| 09:26AM | 7 | and we made this argument in response to the summary |
| 09:26AM | 8 | judgment motion as well. |
| 09:26AM | 9 | The -- the license defense is based on an |
| 09:26AM | 10 | agreement between TiVo and Motorola under a Horizon |
| 09:26AM | 11 | Agreement, which was an agreement in which TiVo and |
| 09:26AM | 12 | Motorola worked together on a specific narrow project. |
| 09:26AM | 13 | There is no disclosure in the pleadings by Motorola |
| 09:26AM | 14 | that they are going to rely on this for a license |
| 09:26AM | 15 | defense and that is in contrast to their pleadings |
| 09:27AM | 16 | which do call out a license defense based on the |
| 09:27AM | 17 | Comcast Agreement, based on the Verizon Agreement and |
| 09:27AM | 18 | based on the AT&T Agreement.  So there's no disclosure |
| 09:27AM | 19 | in the pleadings. |
| 09:27AM | 20 | There's no disclosure in any discovery |
| 09:27AM | 21 | responses.  We had a specific request that they explain |
| 09:27AM | 22 | the basis of their affirmative defenses, including |
| 09:27AM | 23 | their affirmative defense on licensing, and they said |
| 09:27AM | 24 | nothing about the Horizon Agreement, they simply |
| 09:27AM | 25 | referred back to their pleadings which said nothing |

09:27AM  1    about the Horizon Agreement.

09:27AM  2                    So we had no disclosure of this during

09:27AM  3    discovery.  Four days after the close of the fact

09:27AM  4    discovery period, Motorola supplemented its response to

09:27AM  5    its interrogatory matters as affirmative defense and

09:27AM  6    disclosed the Horizon Agreement as a covenant.

09:27AM  7                    Now, there are two things I want to

09:27AM  8    address.  First of all, TiVo has been prejudiced by

09:28AM  9    this late disclosure because had they raised a

09:28AM  10   licensing defense based on the Horizon Agreement, that

09:28AM  11   would have opened up a whole new front of discovery

09:28AM  12   that we would have pursued vigorously.  Even as I stand

09:28AM  13   here today, I'm not a hundred percent sure I understand

09:28AM  14   their reading of the covenant which they claim gives

09:28AM  15   them a complete defense in this lawsuit, so we haven't

09:28AM  16   gotten the full explanation of that.

09:28AM  17                   We would have taken discovery from the

09:28AM  18   people who negotiated that agreement on the Motorola

09:28AM  19   side and asked about the covenant.  We would have

09:28AM  20   looked for the negotiation documents relating to that

09:28AM  21   covenant, but we didn't pursue this because until the

09:28AM  22   very end of discovery and afterwards, we didn't know

09:28AM  23   that there was going to be a Horizon licensing defense.

09:28AM  24                   Now, they rely on a few things in their

09:29AM  25   opposition that I want to address, because we didn't

09:29AM 1    get a reply brief.  They rely on a few things where

09:29AM 2    they say we gave you notice earlier than the close of

09:29AM 3    discovery.  One place they say they gave us notice is

09:29AM 4    in response to Interrogatory No. 24, which simply asks

09:29AM 5    for all their agreements that have any rights about

09:29AM 6    DVRs and among what I think is about 10 or more

09:29AM 7    agreements mostly not having to do with TiVo, they

09:29AM 8    listed the Horizon Agreement among the other

09:29AM 9    agreements.  There were about 494 pages.

09:29AM 10            That interrogatory was really directed at

09:29AM 11   the question of whether there are other comparable

09:29AM 12   licenses that our expert should be looking at in the

09:29AM 13   DVR space for reasonable royalty purposes.  Them

09:29AM 14   listing the Horizon Agreement among nine other, 10

09:29AM 15   other agreements that had nothing to do with TiVo,

09:29AM 16   doesn't give us any notice that they're going to rely

09:29AM 17   on it for the basis of a license defense.

09:30AM 18            They also talk about some testimony given

09:30AM 19   by the 30(b)(6) deponent, Mr. Robinson, when asked

09:30AM 20   about this agreement and he said -- he gave basically

09:30AM 21   general testimony about the purpose behind this clause

09:30AM 22   of the agreement.  But when TiVo specifically asked him

09:30AM 23   in his -- in his deposition, and he was the 30(b)(6) on

09:30AM 24   Motorola's licensing, when we asked him:  Is it

09:30AM 25   Motorola's view that the covenant bars TiVo's claim

09:30AM 1   with respect to any Motorola DVR products in the case,

09:30AM 2   there was an attorney-client privilege objection, and

09:30AM 3   he answered:  Yeah, I think that information would be

09:30AM 4   privileged.

09:30AM 5          And then when we -- when TiVo asked him:

09:30AM 6   Are you familiar with any Motorola boxes other than the

09:30AM 7   Motorola boxes on which TiVo software was loaded, which

09:30AM 8   involved the sort of interface that is the subject of

09:30AM 9   this covenant?

09:31AM 10         Mr. Robinson answered:  I don't know.

09:31AM 11         In other words, when asked whether the

09:31AM 12   wide swath of DVRs were subject to the covenant,

09:31AM 13   Motorola's own designee on licensing didn't know.  So

09:31AM 14   that's the discovery we got during the discovery

09:31AM 15   period.

09:31AM 16         This is very simply a late disclosed

09:31AM 17   defense that should not be part of the trial.

09:31AM 18         THE COURT:  All right.  Let me hear a

09:31AM 19   reply from Motorola, Time Warner.

09:31AM 20         MR. CUNNINGHAM:  Morning, Your Honor.

09:31AM 21   Sean Cunningham, DLA Piper for Motorola.

09:31AM 22         Your Honor, I want to make three points

09:31AM 23   in response to this Motion In Limine.  First of all,

09:31AM 24   this -- this isn't really a Motion In Limine in the

09:31AM 25   sense that this evidence will come before the Jury.

09:31AM 1  The license defense is a matter for Your Honor.  We

09:32AM 2  anticipate that the license defense would likely be

09:32AM 3  heard following the Jury trial to the extent it's

09:32AM 4  necessary, but this is not testimony or evidence that

09:32AM 5  should come before the Jury because the interpretation

09:32AM 6  of these unambiguous contracts is for Your Honor.

09:32AM 7            So we don't feel that this belongs as a

09:32AM 8  Motion In Limine.  It may be a Motion to Exclude, but

09:32AM 9  it's not something that should come before the Jury, in

09:32AM 10 any event.  And furthermore, because it is a pure

09:32AM 11 question of law based on the four corners of these

09:32AM 12 various agreements, it doesn't require discovery.

09:32AM 13           Now, TiVo has done a lot of digging to

09:32AM 14 try and put into the record certain extrinsic evidence,

09:32AM 15 including testimony by its 30(b)(6) witness, about the

09:32AM 16 operation of these agreements, but we contend that that

09:32AM 17 evidence is both unnecessary and irrelevant under the

09:32AM 18 parol evidence rule.

09:33AM 19           The second point is as -- as TiVo's

09:33AM 20 Counsel said, this is an agreement between TiVo and

09:33AM 21 Motorola.  It has existed since 2005.  So this is not

09:33AM 22 something that popped out of nowhere, some agreement

09:33AM 23 between Motorola and a third party or TiVo and a third

09:33AM 24 party.  This is an agreement that has been in both

09:33AM 25 companies' files since well before this lawsuit began.

09:33AM 1          Third and most importantly, there was
09:33AM 2  plenty of notice of this agreement and -- and
09:33AM 3  Motorola's intent to rely on it during the fact
09:33AM 4  discovery period.  The agreement itself was produced in
09:33AM 5  December of 2012 and there was a -- an amendment a
09:33AM 6  month later to the Interrogatory No. 24, which asked
09:33AM 7  Motorola to list all of its licenses relating to DVRs
09:33AM 8  and that -- and that agreement was included then.
09:33AM 9          But I think more importantly, when TiVo's
09:33AM 10 30(b)(6) witness was deposed by Motorola, he was
09:34AM 11 asked -- he was -- this agreement was put in front of
09:34AM 12 him and he was asked whether it was TiVo's position
09:34AM 13 that the covenant not to assert in Section 6.3, that's
09:34AM 14 the relevant provision of this agreement, applies to
09:34AM 15 this litigation and he answered, I don't know or he
09:34AM 16 declined to answer.  He said that would be a question
09:34AM 17 for the lawyers.
09:34AM 18         So it certainly was the case as of his
09:34AM 19 deposition that TiVo was on notice that we were
09:34AM 20 pursuing a defense based on that covenant not to
09:34AM 21 assert.  Then later Motorola's 30(b)(6) witness was
09:34AM 22 deposed on the same agreement, same agreement was put
09:34AM 23 in front of him, he was asked to turn to the covenant
09:34AM 24 not to assert, Section 6.3, and he did give testimony,
09:34AM 25 very detailed testimony; in fact, for a layperson, I

| | |
|---|---|
| 09:34AM | 1 |
| 09:34AM | 2 |
| 09:35AM | 3 |
| 09:35AM | 4 |
| 09:35AM | 5 |
| 09:35AM | 6 |
| 09:35AM | 7 |
| 09:35AM | 8 |
| 09:35AM | 9 |
| 09:35AM | 10 |
| 09:35AM | 11 |
| 09:35AM | 12 |
| 09:35AM | 13 |
| 09:35AM | 14 |
| 09:35AM | 15 |
| 09:35AM | 16 |
| 09:35AM | 17 |
| 09:35AM | 18 |
| 09:35AM | 19 |
| 09:35AM | 20 |
| 09:36AM | 21 |
| 09:36AM | 22 |
| 09:36AM | 23 |
| 09:36AM | 24 |
| 09:36AM | 25 |

think he did a fairly decent job of describing the
operation of the covenant not to assert and that
testimony was quoted at page 6 of our response to
TiVo's Motions In Limine.

And so the fact that there was a second
interrogatory response that was not supplemented until
four days after the close of fact discovery, we think
is -- is -- should not prevent a serious and -- and
potentially case dispositive defense from being heard
by Your Honor.

That's all I have.

THE COURT:  So your position, Mr.
Cunningham, is that your clients expressly disclosed to
TiVo before the end of discovery that they intended to
rely on this license as a defense to liability?

MR. CUNNINGHAM:  Yes, Your Honor.  All
through the pleadings and in the production of the
agreement itself and in the questioning of multiple
deponents.  Absolutely.

THE COURT:  Well, I'm not so much
concerned about the production of documents because as
you well know, there are thousands and thousands of
pages of documents produced in a case like this and to
reach back and say aha, here it is and pull the needle
out of the haystack and say therefore you knew and our

09:36AM 1   late response after the discovery cutoff doesn't

09:36AM 2   matter, that doesn't carry a whole lot of weight.

09:36AM 3          I'm not -- I'm not that moved by the

09:36AM 4   deposition representation because in a similar vein,

09:36AM 5   there's an awful lot that gets said in a deposition and

09:36AM 6   there are an awful lot of depositions that are taken in

09:36AM 7   a case of this magnitude and to reach back and to pull

09:36AM 8   something out and say this is why they knew.  It's your

09:36AM 9   burden.  If it's your -- if it's an affirmative defense

09:37AM 10  you intend to use, it's your burden to formally

09:37AM 11  disclose it.

09:37AM 12         Now, my understanding was the status of

09:37AM 13  the actual pleading was there was a general allegation

09:37AM 14  of a licensed defense, but not a specific reference in

09:37AM 15  the pleadings to this Horizon matter prior to the

09:37AM 16  cutoff of discovery; is that correct?  I mean, is

09:37AM 17  that --

09:37AM 18         MR. CUNNINGHAM:   That is correct, Your

09:37AM 19  Honor.  The -- the defense itself was a general

09:37AM 20  we're -- you know, we have license defense.  The

09:37AM 21  counterclaims --

09:37AM 22         THE COURT:   That doesn't put notice --

09:37AM 23  that may -- that really doesn't put anybody on notice

09:37AM 24  of this particular matter.

09:37AM 25         MR. CUNNINGHAM:   Right.  And -- and the

09:37AM 1   reason that we know that TiVo had notice of this

09:37AM 2   defense is they were able to go to the deposition of

09:37AM 3   our 30(b)(6) witness, put this agreement in front of

09:37AM 4   them, turn to the exact provision that's at issue, this

09:37AM 5   Section 6.3 of the covenant not to assert, and ask

09:37AM 6   multiple detailed questions about it.  There is no

09:37AM 7   question that TiVo knew that we were pursuing this as a

09:38AM 8   defense.

09:38AM 9           THE COURT:   Well I mean, it sounds like

09:38AM 10  from the argument that prior to the discovery cutoff,

09:38AM 11  Motorola and Time Warner had identified this perhaps

09:38AM 12  for royalty purposes, but not for an affirmative

09:38AM 13  defense as an affirmative license defense.  I mean, if

09:38AM 14  it's in -- if it's -- if the notice has been given for

09:38AM 15  another matter, calculation of damages, it's completely

09:38AM 16  reasonable that the other side would have gone into it

09:38AM 17  and looked at it in a deposition or otherwise.

09:38AM 18          The question is not did you give notice,

09:38AM 19  but did you give notice that you intended it to be an

09:38AM 20  affirmative defense to infringement.  The fact that you

09:38AM 21  may have given notice that it was going to be one of

09:38AM 22  the many factors considered at calculating reasonable

09:38AM 23  royalty, they're apples and oranges.

09:38AM 24          MR. CUNNINGHAM:   Well Your Honor, the

09:38AM 25  covenant not to assert in Section 6.3 doesn't have any

09:38AM  1   applicability to whether this license has anything to

09:38AM  2   do with a reasonable royalty.  The covenant not to

09:39AM  3   assert has to do with whether TiVo can sue Motorola.

09:39AM  4   And that's the point that we've been trying to make by

09:39AM  5   producing the agreement, questioning their witness, and

09:39AM  6   allowing our witness to be questioned on that topic and

09:39AM  7   also, obviously, filing a summary judgment motion

09:39AM  8   making that very argument.

09:39AM  9              THE COURT:   Right.  And I -- I do tend

09:39AM  10  to agree with you, that this is, perhaps, a little bit

09:39AM  11  out of place as a Motion In Limine, but the issue's

09:39AM  12  teed up as to whether the license, whether it's in the

09:39AM  13  Motion In Limine, whether you consider it a Motion to

09:39AM  14  Exclude, whether it was part of the motion for summary

09:39AM  15  judgment, it's teed up as to its timeliness and its

09:39AM  16  appropriateness to come in in the trial.

09:39AM  17             Let me hear any additional position from

09:39AM  18  TiVo.

09:39AM  19             MR. CUNNINGHAM:   Thank you, Your Honor.

09:39AM  20             THE COURT:  Thank you, Mr. Cunningham.

09:39AM  21             MR. LIPNER:  Just a few comments, Your

09:39AM  22  Honor.  The -- it was helpful to hear, first of all,

09:40AM  23  that Motorola says that it's not planning on placing

09:40AM  24  this in front of the Jury, which was not the position

09:40AM  25  that we've had in recent days as they've submitted

09:40AM 1    proposed Jury instructions on the Horizon agreement.

09:40AM 2              With respect to the argument that the

09:40AM 3    Horizon agreement is just unambiguous so you don't need

09:40AM 4    discovery, that doesn't make any sense.  Your Honor

09:40AM 5    knows the law of many jurisdictions.  This Horizon

09:40AM 6    agreement is governed by New York law and obviously

09:40AM 7    discovery into the negotiations would be highly

09:40AM 8    relevant.  And I -- I think you would -- if you look at

09:40AM 9    the provision, it's not a clear provision, to put it

09:40AM 10   mildly.  It's a very complicated and complex provision

09:40AM 11   and obviously discovery and parol evidence would have

09:40AM 12   to be considered under New York law, whether ultimately

09:40AM 13   it's taken into account or not.

09:40AM 14             In terms of the disclosure, it's very

09:41AM 15   clear that till the very last day of discovery and

09:41AM 16   beyond, we did not know that they were asserting this.

09:41AM 17   There were a -- there was a question or two by them in

09:41AM 18   a deposition.  There were questions by us to their

09:41AM 19   30(b)(6) witness in which, as I told you, Your Honor,

09:41AM 20   the 30(b)(6) witness said he did not know Motorola's

09:41AM 21   position as to the scope of the covenant and he did not

09:41AM 22   know and he would not testify on attorney-client

09:41AM 23   privilege grounds on that subject as well.

09:41AM 24             And the most basic rules of this Court

09:41AM 25   and of litigation is that we needed to have notice that

| | | |
|---|---|---|
| 09:41AM | 1 | they were actually asserting this defense so that we |
| 09:41AM | 2 | could take all the actions we needed to.  Until they |
| 09:41AM | 3 | filed their Summary Judgment Motion, I assumed that |
| 09:41AM | 4 | they were not going to pursue it, given that it didn't |
| 09:41AM | 5 | seem to support their position and the -- the little |
| 09:41AM | 6 | discovery on the issue did not turn up anything.  So |
| 09:42AM | 7 | Your Honor, this shouldn't be part of this litigation. |
| 09:42AM | 8 | There was no notice. |
| 09:42AM | 9 | THE COURT:   All right.  Anything |
| 09:42AM | 10 | further, Mr. Cunningham? |
| 09:42AM | 11 | MR. CUNNINGHAM:   No, Your Honor. |
| 09:42AM | 12 | THE COURT:   I'll give you the last word. |
| 09:42AM | 13 | You don't want it?  Okay. |
| 09:42AM | 14 | MR. CUNNINGHAM:   No thanks. |
| 09:42AM | 15 | THE COURT:   All right.  The Court is |
| 09:42AM | 16 | convinced that Motorola and Time Warner have failed to |
| 09:42AM | 17 | meet their obligation to formally disclose this to the |
| 09:42AM | 18 | other side within the time limits imposed on the |
| 09:42AM | 19 | parties.  That is a bright line rule of litigation, |
| 09:42AM | 20 | this in every other Federal Court that I know of.  What |
| 09:42AM | 21 | you might have said in some of the context, what might |
| 09:42AM | 22 | have been produced but wasn't identified, that doesn't |
| 09:42AM | 23 | excuse the affirmative obligation on the party |
| 09:42AM | 24 | asserting the defense to clearly make the other side |
| 09:42AM | 25 | aware of it so they can prepare and defend against that |

09:43AM 1   assertion.

09:43AM 2            I'm going to grant the Motion In Limine

09:43AM 3   to the extent that's necessary.  And with regard to

09:43AM 4   Motorola's summary judgment under document 349, to the

09:43AM 5   extent that motion urges the granting of summary

09:43AM 6   judgment based on the Horizon Developer Agreement or

09:43AM 7   license, I'm going to deny that motion of summary

09:43AM 8   judgment to that extent.  I understand it asserts other

09:43AM 9   bases for summary judgment, we'll take that up at a

09:43AM 10  later time.

09:43AM 11           All right.  If you'll next move to TiVo's

09:43AM 12  Motion In Limine 5 regarding undisclosed contentions,

09:43AM 13  etcetera, etcetera.

09:43AM 14           MS. GORDNIA:  Good morning, Your Honor.

09:43AM 15  Talin Gordnia of Irell & Manella for TiVo.

09:43AM 16           THE COURT:  Let me stop you before you

09:43AM 17  get started.  It looks like to me this is, in effect,

09:43AM 18  an attack on several identified specific exhibits.

09:43AM 19           MS. GORDNIA:  Right.

09:43AM 20           THE COURT:  If it's more than that, I'll

09:44AM 21  hear from you on it.  If it really is a discover -- or

09:44AM 22  a dispute as to exhibits, I'd rather take those up at

09:44AM 23  the time we take up the disputed exhibits in the case.

09:44AM 24  I think it's more appropriate to handle it as an

09:44AM 25  exhibit dispute rather than a Motion In Limine, unless

09:44AM   1    there's more here than I'm aware of.  So tell me --

09:44AM   2    tell me what your position is.

09:44AM   3                    MS. GORDNIA:  We can wait, Your Honor.

09:44AM   4                    THE COURT:   Well, if there's not more

09:44AM   5    here than an actual attack on certain exhibits, then

09:44AM   6    we'll take that up and let those rise or fall

09:44AM   7    separately when we go through the exhibits.

09:44AM   8                    I'm going to deny No. 5 for purposes of

09:44AM   9    Motion In Limine and we'll deal with all the identified

09:44AM   10   exhibits in this Motion In Limine under our exhibit

09:44AM   11   dispute section of the pretrial.

09:44AM   12                   All right.  No. 6 is TiVo's Motion In

09:44AM   13   Limine with regard to claim construction.

09:44AM   14                   MR. IANCU:  Good morning, Your Honor.

09:45AM   15   Andrei Iancu from Irell & Manella on behalf of TiVo.

09:45AM   16                   Motion In Limine No. 6 relates to claim

09:45AM   17   construction and of course experts and the parties

09:45AM   18   should be held to the Court's claim constructions

09:45AM   19   across the board.  We do have a specific example of

09:45AM   20   where we believe Motorola's experts and Time Warner's

09:45AM   21   expert will attempt to deviate from the Court's claim

09:45AM   22   construction and that would be improper.  We outlined

09:45AM   23   that in our papers and deals with the Court's

09:45AM   24   construction of the term object.

09:45AM   25                   The Court construed that term as a

09:45AM 1   collection of data and operations in this case, in the

09:45AM 2   Verizon case, in the AT&T case, and in the EchoStar

09:45AM 3   case and this construction was actually affirmed by the

09:45AM 4   Federal Circuit.  In this case, Motorola actually

09:46AM 5   advanced the definition that included the concept of,

09:46AM 6   quote, a functionally interrelated set of data and

09:46AM 7   operations, close quote.  The Court expressly rejected

09:46AM 8   that.  The Court rejected that this term needs to

09:46AM 9   include a relationship functionally interrelated.

09:46AM 10          Now, in discovery we found out that the

09:46AM 11  expert for the other side is specifically going back on

09:46AM 12  this issue and saying things like, quote, the

09:46AM 13  collection means something and I think it means a

09:46AM 14  relationship, close quote.  That is specifically what

09:46AM 15  this Court denied at claim construction.

09:46AM 16          The other side relies on statements made

09:46AM 17  during prosecution history by TiVo that is an exact

09:46AM 18  issue that was raised during the claim construction

09:47AM 19  period and this Court denied that.  Your Honor said on

09:47AM 20  balance, TiVo's discussion during the second

09:47AM 21  reexamination of words appearing in the Court's

09:47AM 22  construction of object did not further limit the term.

09:47AM 23  That is still the case and Motorola's experts should

09:47AM 24  not be allowed to do an end run around the Court's

09:47AM 25  instruction.

09:47AM 1          THE COURT:   All right.  Let me have a

09:47AM 2  response.

09:47AM 3          MR. NELSON:   Morning, Your Honor.  Dave

09:47AM 4  Nelson on behalf of --

09:47AM 5          THE COURT:  Good morning.

09:47AM 6          MR. NELSON:   -- I'm from Quinn -- from

09:47AM 7  Motorola and TWC.

09:47AM 8          So we agree, you know, we actually have

09:47AM 9  some of our own Motions In Limine, I think Your Honor

09:47AM 10 said maybe we should take those up in connection with

09:47AM 11 some of the Dauberts, and certainly those are some of

09:47AM 12 the Daubert issues with respect to TiVo's experts

09:47AM 13 concerning this idea of testifying inconsistent with

09:48AM 14 the claim construction.  But we don't have that case

09:48AM 15 here.

09:48AM 16         So I think what TiVo is referring to is

09:48AM 17 there was some additional, I think it was Dr.

09:48AM 18 Villasenor, during some of the second reexamination,

09:48AM 19 there were some statements about what object means and

09:48AM 20 that's this functioning interrelated thing that -- that

09:48AM 21 Counsel said, agree with all that.  But what the Court

09:48AM 22 did during Markman in this particular case is just

09:48AM 23 said, well, that's consistent, right, with my earlier

09:48AM 24 definition.  There's no need to change the earlier

09:48AM 25 definition.  It doesn't further limit.  So there wasn't

09:48AM  1   a situation, as we have in some of our Motions In

09:48AM  2   Limine, where the Court specifically said, hey, that's

09:48AM  3   not what this means, right?

09:48AM  4            So what we have is a situation now where

09:48AM  5   the expert, consistent with what Dr. Villasenor, which

09:48AM  6   is TiVo's invalidity expert, position he's taken and,

09:48AM  7   in fact, has what's been put before him was exactly

09:49AM  8   that definition that he offered in the reexamination,

09:49AM  9   you'll see that in the papers, Your Honor, he said,

09:49AM  10  yes, that is my understanding.  That's what this --

09:49AM  11  this object means that the collection of data is.

09:49AM  12           So what -- what Dr. Gray is doing and

09:49AM  13  what Plaintiff's objecting to is applying the meaning

09:49AM  14  that the Court's given it consistent with his

09:49AM  15  understanding of the -- the Court's meaning, which is

09:49AM  16  the second half, right.  We have two steps to claim

09:49AM  17  construction.  We've got Markman where the Court

09:49AM  18  construes the claim, but we've got to get to the second

09:49AM  19  half where there is expert testimony and the

09:49AM  20  application of the claims of the facts of the case.

09:49AM  21           So what Dr. Gray is doing is not saying,

09:49AM  22  well, this is the definition provided by the Court,

09:49AM  23  functionally interrelated.  What he's saying is in

09:49AM  24  order for it to be a collection of data and operations,

09:49AM  25  I need to see some relationship there, right?  I need

09:49AM 1   to -- I can't just draw a random circle around various

09:50AM 2   functions and say, hey, there's a collection of data

09:50AM 3   and operations.

09:50AM 4           Now, that may be a factual dispute

09:50AM 5   between the experts, Your Honor, they may -- their

09:50AM 6   expert may come in and say, and I suspect based upon

09:50AM 7   the depositions and the expert report that he will,

09:50AM 8   yes, that can be a collection.  But that's a factual

09:50AM 9   dispute for the Jury to resolve in that instance.  It's

09:50AM 10  not an issue of claim construction because it's not a

09:50AM 11  position that the Court has rejected and said, no, this

09:50AM 12  is not what the claim means, that's not consistent with

09:50AM 13  the -- with the scope of the claim.

09:50AM 14          And furthermore, in connection with Dr.

09:50AM 15  Villasenor, this is again TiVo's invalidity expert, he

09:50AM 16  was asked whether he was applying his understanding

09:50AM 17  that was expressed during the reexamination, this

09:50AM 18  functionally interrelated, I forget exactly the -- the

09:50AM 19  full term, but that's the -- the magic language, Your

09:51AM 20  Honor, he said yes, that's exactly what I did when I

09:51AM 21  did my analysis in this case is apply that

09:51AM 22  understanding to the Court's claim construction.  So

09:51AM 23  the experts necessarily need to do that and all Dr.

09:51AM 24  Gray has said, Your Honor, is that collection, when you

09:51AM 25  say collection of data and operations, that means

09:51AM 1   something.  The term collection means something and

09:51AM 2   this is how I'm applying it in this instance.

09:51AM 3             Now, the Jury may disagree with that and

09:51AM 4   that's -- that's a factual issue, but that is a factual

09:51AM 5   issue to be resolved by the Jury.

09:51AM 6             THE COURT:   All right.  Thank you,

09:51AM 7   Counsel.

09:51AM 8             Mr. Iancu, do you have anything else?

09:51AM 9             MR. IANCU:   Briefly, Your Honor.  The

09:51AM 10  expert should not interpret the Court's interpretation,

09:51AM 11  should not construe the Court's construction and in

09:51AM 12  particular, they shouldn't do so by advancing a

09:51AM 13  position that was expressly rejected by the Court

09:52AM 14  during the Court's -- during the construction period.

09:52AM 15            The -- the Court expressly rejected the

09:52AM 16  relationship language.  And here Mr. Gray, he's not a

09:52AM 17  doctor by the way, Mr. Gray, their expert, specifically

09:52AM 18  says as one of their noninfringement arguments that we

09:52AM 19  don't infringe because the code is not related.  It

09:52AM 20  doesn't have functional interrelationship.  Well, that

09:52AM 21  goes exactly against the Court's construction and it

09:52AM 22  will miss -- it -- it -- it will misguide the Jury.

09:52AM 23            With respect to Dr. Villasenor, that's

09:52AM 24  another expert.  Each expert should be held to the

09:52AM 25  Court's claim construction.  We shouldn't start

09:52AM  1   comparing one expert's position to another expert's

09:52AM  2   position on that.  The only construction that should be

09:52AM  3   applied by all experts is the Court's construction.

09:52AM  4             And Dr. Villasenor, if we're going to

09:52AM  5   talk about him, he expressly did just that, is applying

09:52AM  6   only the Court's claim construction.

09:53AM  7             THE COURT:   All right.  Mr. Nelson, do

09:53AM  8   you have anything to add?

09:53AM  9             MR. NELSON:   Just briefly, Your Honor.

09:53AM  10  So as Mr. Gray, and I apologize, I didn't mean to

09:53AM  11  elevate him, Your Honor.

09:53AM  12            THE COURT:   That's all right.

09:53AM  13            MR. NELSON:   The --

09:53AM  14            THE COURT:   There are a lot of moving

09:53AM  15  parts in this case.

09:53AM  16            MR. NELSON:   Exactly.  And I'm new to

09:53AM  17  this, Your Honor.  The -- what Mr. Gray applied, and

09:53AM  18  you can see from his report, and there's nothing

09:53AM  19  inconsistent during the motion, was the Court's claim

09:53AM  20  construction.  Necessarily any time that you're

09:53AM  21  applying the claim construction to the facts to look to

09:53AM  22  see is this found in the operation of the accused

09:53AM  23  products, there's -- you have to apply your

09:53AM  24  understanding of those words because we still have

09:53AM  25  words, but what -- and so he did that in his expert

| | | |
|---|---|---|
| 09:53AM | 1 | report. |
| 09:53AM | 2 | What they are pointing to was a question |
| 09:53AM | 3 | that was asked doc -- Mr. Gray, excuse me, during his |
| 09:54AM | 4 | deposition where he said:  Do you believe the Court's |
| 09:54AM | 5 | construction required that the data and operations be |
| 09:54AM | 6 | related to be an object? |
| 09:54AM | 7 | And his answer was:  I think that one of |
| 09:54AM | 8 | the measures of collection is that these entities -- |
| 09:54AM | 9 | entities be related to one another in some meaningful |
| 09:54AM | 10 | way. |
| 09:54AM | 11 | And so I think that's part, that's one of |
| 09:54AM | 12 | the things that I thought about a collection.  That's |
| 09:54AM | 13 | one of the things that I think about that's got to be |
| 09:54AM | 14 | related to one another.  It can't be unrelated things |
| 09:54AM | 15 | that I just happen to draw a circle around.  The |
| 09:54AM | 16 | collection means something and I think it means |
| 09:54AM | 17 | relationship. |
| 09:54AM | 18 | So what you can see, what he's doing, |
| 09:54AM | 19 | he's not saying, well, I'm going to go with a different |
| 09:54AM | 20 | claim construction.  He's applying his understanding, |
| 09:54AM | 21 | he's, in fact, explained what that is.  So this may be |
| 09:54AM | 22 | cross-examination because their expert wants to say, |
| 09:54AM | 23 | no, a collection of data and operations doesn't have to |
| 09:54AM | 24 | be related in any way at all.  It can be any random set |
| 09:54AM | 25 | of things I point to. |

09:54AM   1          But Mr. Gray has to be allowed to apply

09:54AM   2   his analysis of the Court's claim construction;

09:55AM   3   otherwise, what we have is simply an expert getting up

09:55AM   4   on the stand and saying, no, it's not found and another

09:55AM   5   expert saying, yes, it is, which isn't helpful to the

09:55AM   6   Jury whatsoever.

09:55AM   7          THE COURT:   Well, as a general rule, the

09:55AM   8   Court's claim construction order is binding on all the

09:55AM   9   parties.  We're not going to reopen it.  It's not a

09:55AM  10   matter for the Jury, it's a matter for the Court.

09:55AM  11   We're not going to go back into it.  I'm not going to

09:55AM  12   allow witnesses or experts to reinterpret my

09:55AM  13   construction.

09:55AM  14          That being said, it appears to me that

09:55AM  15   this particular dispute is probably one that is best

09:55AM  16   determined once we get to that point in the trial and

09:55AM  17   the context is developed.  I'm not going to unduly

09:55AM  18   hamstring an expert, but I am going to draw a very

09:56AM  19   bright line if an expert attempts to directly or

09:56AM  20   indirectly contradict the claim construction order.

09:56AM  21          The Jury is going to have a copy of the

09:56AM  22   claim construction terms and the Court's definitions in

09:56AM  23   their Jury notebooks.  My initial instructions to them

09:56AM  24   are going to be that they are bound to those

09:56AM  25   definitions and they must apply those definitions as I

09:56AM 1  have given them to them and I'm not going to allow

09:56AM 2  somebody to come up and muddy the water in that regard.

09:56AM 3  However, at this point I don't -- I don't think it's

09:56AM 4  the most effective approach to grant a blanket Motion

09:56AM 5  In Limine.

09:56AM 6           To a certain extent this Motion In Limine

09:56AM 7  again falls into the let's comply with the rules

09:56AM 8  category.  As a general matter clearly construction of

09:56AM 9  the Court is going to remain as is and not be

09:56AM 10  challenged directly or indirectly by any expert.

09:56AM 11  However, that being said, I'm going to deny the Motion

09:56AM 12  In Limine.

09:57AM 13           But if Mr. Gray or anybody else during

09:57AM 14  the course of the trial steps across that line, I'm

09:57AM 15  going to expect the other side to object.  If I'm

09:57AM 16  convinced at that point in the development of the case

09:57AM 17  and the presentation of the evidence that what's

09:57AM 18  actually been said does, in fact, contradict in any

09:57AM 19  manner the claim construction of the Court, I'm going

09:57AM 20  to grant the objection.  I'm going to instruct the Jury

09:57AM 21  to disregard it and I'm going to tell the Jury I

09:57AM 22  believe that the expert is trying to do just that.

09:57AM 23           So I think that's a pretty big penalty

09:57AM 24  that should deter that kind of conduct.  But I don't

09:57AM 25  think at this point in advance of the trial starting, I

09:57AM  1    can stand back and say based on your arguments this is

09:57AM  2    or isn't.  I'm going to wait until the context

09:57AM  3    develops.

09:57AM  4               So I'm going to deny the Motion In

09:57AM  5    Limine, but I want everybody on notice the claim

09:57AM  6    construction order is not going to be reargued or

09:58AM  7    disputed or attacked directly or indirectly by any

09:58AM  8    witness.

09:58AM  9               MR. NELSON:   Understood, Your Honor.

09:58AM  10              THE COURT:   If somebody goes there,

09:58AM  11   they're going to pay a price for it from the Jury.

09:58AM  12              MR. NELSON:   Understood.

09:58AM  13              THE COURT:   All right.  For the record,

09:58AM  14   No. 6 is denied.

09:58AM  15              MR. NELSON:   Thank you.

09:58AM  16              THE COURT:   All right.  Next is TiVo's

09:58AM  17   Motion In Limine 7 regarding comparing the accused

09:58AM  18   products to a preferred embodiment.

09:58AM  19              MR. IANCU:   Your Honor, Andrei Iancu

09:58AM  20   again.  This one is quite straight forward.  It's black

09:58AM  21   letter law that the accused device can only be compared

09:58AM  22   to the claims as construed by the Court.  There cannot

09:58AM  23   be a noninfringement argument raised by the Defendants

09:58AM  24   through the comparison of the accused device to a

09:58AM  25   commercial embodiment of the product, of the -- of the

| | | |
|---|---|---|
| 09:58AM | 1 | patent, so they cannot compare the Motorola DVRs to |
| 09:59AM | 2 | TiVo's DVRs to argue noninfringement.  Neither can they |
| 09:59AM | 3 | compare the accused device to other products out there; |
| 09:59AM | 4 | therefore, they cannot compare Motorola's DVRs to |
| 09:59AM | 5 | EchoStar products to argue noninfringement.  Nor can |
| 09:59AM | 6 | they compare it to a -- to a preferred embodiment in |
| 09:59AM | 7 | the patent.  The only appropriate comparison is between |
| 09:59AM | 8 | the accused device and the claims. |
| 09:59AM | 9 | Motorola's argument in opposition, in |
| 09:59AM | 10 | their opposition papers is quite unclear.  They seem to |
| 09:59AM | 11 | now be saying that they're not going to do that, but I |
| 09:59AM | 12 | would like to if they -- hear what they have to say |
| 09:59AM | 13 | here in court.  If they're not going to do that, |
| 09:59AM | 14 | then -- |
| 09:59AM | 15 | THE COURT:  You're going to get that |
| 09:59AM | 16 | opportunity in a minute. |
| 09:59AM | 17 | MR. IANCU:  Right.  If they're not going |
| 09:59AM | 18 | to do that, then I suppose that -- that that resolves |
| 09:59AM | 19 | this motion.  To the extent they argue that the |
| 09:59AM | 20 | evidence of TiVo's product is relevant to other issues |
| 09:59AM | 21 | in the case, well sure, there's no dispute about that. |
| 10:00AM | 22 | But it cannot be for a comparison to the accused device |
| 10:00AM | 23 | of the Motorola product and it certainly cannot be for |
| 10:00AM | 24 | them to argue noninfringement of our claims. |
| 10:00AM | 25 | THE COURT:  Well, let's hear from |

| | | |
|---|---|---|
| 10:00AM | 1 | Motorola and then I'll give you a chance to respond |
| 10:00AM | 2 | based on what they say. |
| 10:00AM | 3 | MR. IANCU:  Thank you. |
| 10:00AM | 4 | MR. DeFRANCO:  Morning again, Your Honor. |
| 10:00AM | 5 | Well, let me -- let me start by answering that question |
| 10:00AM | 6 | and also by saying this -- this seems to be another |
| 10:00AM | 7 | two-way street motion.  We are not, Motorola is not, |
| 10:00AM | 8 | going to present noninfringement theories by saying |
| 10:00AM | 9 | that, you know, we -- we -- based on the comparison of |
| 10:00AM | 10 | the accused products, either to TiVo's commercial |
| 10:00AM | 11 | products or preferred embodiment in the patent, that's |
| 10:00AM | 12 | not what this is all about.  They say it's black letter |
| 10:00AM | 13 | law that you can't do that; we don't disagree with |
| 10:00AM | 14 | that.  We don't -- we expect them to follow that law as |
| 10:00AM | 15 | well on their side of the case.  So let me make that |
| 10:01AM | 16 | clear, that's not -- |
| 10:01AM | 17 | THE COURT:  Sounds like you're agreeing |
| 10:01AM | 18 | to the Motion In Limine as long as it's applied |
| 10:01AM | 19 | mutually. |
| 10:01AM | 20 | MR. DeFRANCO:  That's point number one, |
| 10:01AM | 21 | Your Honor, yes, as long as it's applied mutually, we |
| 10:01AM | 22 | think that should be a two-way street.  But equally or |
| 10:01AM | 23 | more important, you know, if this is a -- if this |
| 10:01AM | 24 | motion is a premise for TiVo to try to keep out this |
| 10:01AM | 25 | evidence for the other purposes that we want to use it |

10:01AM 1  for, legitimate purposes as we lay out, for example,

10:01AM 2  the invalidity issue and commercial success, we're

10:01AM 3  entitled to show that the features at issue here in

10:01AM 4  their own products, not necessarily tied to their

10:01AM 5  patent claims, do not necessarily lead to commercial

10:01AM 6  success, do not necessarily help them get over the

10:01AM 7  invalidity contentions here, that's one use that's

10:01AM 8  separate and apart from this other issue that we're

10:01AM 9  talking about.  That's one legitimate use.

10:01AM 10           Another is -- that goes to the damages

10:01AM 11 issue, whether or not, you know, the damages in this

10:02AM 12 case are attributable to the patented feature, that's

10:02AM 13 clearly a legitimate use for this.  And then also the

10:02AM 14 willfulness issue, I think that's one based on Your

10:02AM 15 Honor's reserving its ruling on the EchoStar Motion In

10:02AM 16 Limine, that -- that issue I think that makes it pretty

10:02AM 17 plain.

10:02AM 18           There are going to be some sticky issues

10:02AM 19 in this trial about what EchoStar-related evidence

10:02AM 20 comes in, if any, but if some of that evidence does

10:02AM 21 come in about positions taken in that case with respect

10:02AM 22 to a willfulness defense, they may try to assert, well,

10:02AM 23 we were on notice about the EchoStar case, so it was

10:02AM 24 unreasonable, it was reckless for us to proceed in view

10:02AM 25 of the infringement finding there.  But we're entitled

| | | |
|---|---|---|
| 10:02AM | 1 | to come back and say, well, we're different than |
| 10:02AM | 2 | EchoStar.  Our product works differently from the |
| 10:02AM | 3 | EchoStar products. |
| 10:02AM | 4 | So there's -- there are other uses for |
| 10:02AM | 5 | this -- for product-related comparisons in this case, |
| 10:03AM | 6 | including their admissions in earlier cases and what |
| 10:03AM | 7 | their experts have said, that don't in any way go to |
| 10:03AM | 8 | their point, the black letter law point, that you can't |
| 10:03AM | 9 | compare two things to make a noninfringement argument, |
| 10:03AM | 10 | but there are admissions about the way things work and |
| 10:03AM | 11 | what that means for the infringement analysis separate |
| 10:03AM | 12 | and apart from doing that apples to oranges comparison. |
| 10:03AM | 13 | And that's -- that's what we plan on using that |
| 10:03AM | 14 | evidence for.  That will become clear as we proceed |
| 10:03AM | 15 | with expert testimony and that's a legitimate basis |
| 10:03AM | 16 | that I don't hear them arguing that it's not a |
| 10:03AM | 17 | legitimate basis. |
| 10:03AM | 18 | THE COURT:   Let me hear a response from |
| 10:03AM | 19 | TiVo. |
| 10:03AM | 20 | MR. IANCU:   What's clear, Your Honor, is |
| 10:03AM | 21 | that you simply cannot compare the accused device to |
| 10:03AM | 22 | another product, okay?  And -- |
| 10:03AM | 23 | THE COURT:   For no purpose at all? |
| 10:03AM | 24 | MR. IANCU:   Well -- |
| 10:03AM | 25 | THE COURT:   Not just noninfringement? |

| | | |
|---|---|---|
| 10:03AM | 1 | MR. IANCU:  -- if that's -- |
| 10:03AM | 2 | THE COURT:  Any purpose? |
| 10:03AM | 3 | MR. IANCU:  -- that's correct because |
| 10:03AM | 4 | that misleads.  So certainly for a noninfringement.  So |
| 10:04AM | 5 | I think we have agreement on that, so the -- |
| 10:04AM | 6 | THE COURT:  Do you have any problem |
| 10:04AM | 7 | with, if I grant this Motion In Limine, as to |
| 10:04AM | 8 | noninfringement it being applied mutually to your |
| 10:04AM | 9 | client as well? |
| 10:04AM | 10 | MR. IANCU:  No, and we don't make those |
| 10:04AM | 11 | arguments.  So no, no problem with that. |
| 10:04AM | 12 | Now, with respect to the various things |
| 10:04AM | 13 | that Mr. DeFranco raised, the issue of commercial |
| 10:04AM | 14 | success and features in our products being tied to the |
| 10:04AM | 15 | claims, well that's a comparison of the TiVo product to |
| 10:04AM | 16 | the claims.  Again, product to claims; not product to |
| 10:04AM | 17 | product, though. |
| 10:04AM | 18 | The same for damages or willfulness.  It |
| 10:04AM | 19 | is not appropriate, it's never appropriate to compare |
| 10:04AM | 20 | the accused products to some other product, even for |
| 10:04AM | 21 | willfulness with respect to EchoStar.  If they sat in |
| 10:04AM | 22 | their office, let's say, years ago and they're watching |
| 10:04AM | 23 | the EchoStar trial and they're saying, well, we are |
| 10:04AM | 24 | different from EchoStar, that is not an appropriate |
| 10:04AM | 25 | analysis for anything.  They cannot be sitting in their |

| | | |
|---|---|---|
| 10:04AM | 1 | office and say, we don't infringe TiVo's patents |
| 10:05AM | 2 | because we're different from EchoStar. |
| 10:05AM | 3 | The only proper analysis to be done here |
| 10:05AM | 4 | or back in their offices when they were looking at |
| 10:05AM | 5 | EchoStar is do we infringe the claims as construed by |
| 10:05AM | 6 | the Court.  That's the only proper comparison. |
| 10:05AM | 7 | THE COURT:  Well, I think it's -- I |
| 10:05AM | 8 | think it's pretty well agreed that comparing the |
| 10:05AM | 9 | accused products to some other product or preferred |
| 10:05AM | 10 | embodiment is improper as a noninfringement theory and |
| 10:05AM | 11 | I don't hear any dispute about that. |
| 10:05AM | 12 | Based on my earlier description of what a |
| 10:05AM | 13 | Order In Limine is, my inclination and what I'm going |
| 10:05AM | 14 | to do in this is I'm going to grant the Motion In |
| 10:05AM | 15 | Limine.  I'm going to apply it mutually to both |
| 10:05AM | 16 | parties, all parties; however, at the point in the |
| 10:06AM | 17 | trial, Mr. DeFranco, where you believe the door has |
| 10:06AM | 18 | been opened and that kind of comparison is appropriate, |
| 10:06AM | 19 | you can approach the bench and you can seek leave and |
| 10:06AM | 20 | set forth your basis in a non -- in an area other than |
| 10:06AM | 21 | noninfringement and I'll take it up at that time. |
| 10:06AM | 22 | You're not precluded from that, but we're going to |
| 10:06AM | 23 | start out with the requirement that there must be an |
| 10:06AM | 24 | approach and leave obtained before going into it, that |
| 10:06AM | 25 | way I'll also have the benefit of the context at the |

10:06AM 1    point in trial at which it -- which it occurs, but I

10:06AM 2    don't think there's any question that for

10:06AM 3    noninfringement purposes this is improper and I don't

10:06AM 4    expect it to come in from either side for that purpose.

10:06AM 5              But for the record, TiVo's Motion In

10:06AM 6    Limine 7 is granted.

10:06AM 7              All right.  Let's go to Motion In Limine

10:06AM 8    No. 8.  And this is with regard to arguing practicing

10:07AM 9    the prior art.

10:07AM 10             MR. IANCU:  All right.  With respect to

10:07AM 11   Motion In Limine No. 8, again this is a question of

10:07AM 12   black letter law.  There is no practicing of prior art

10:07AM 13   defense to infringement.  The Federal Circuit has said

10:07AM 14   that multiple times.

10:07AM 15             To argue noninfringement, Motorola and

10:07AM 16   Time Warner cannot compare their products to the prior

10:07AM 17   art devices such as ReplayTV.  Now, in opposition,

10:07AM 18   again, it's unclear whether they agree or disagree with

10:07AM 19   that.  They seem to agree.  On the other hand, that is

10:07AM 20   precisely what they keep saying over and over again.

10:07AM 21   So simply looking at -- at the statements that have

10:07AM 22   already been made, the comparison between the accused

10:08AM 23   devices and ReplayTV are crystal clear and they should

10:08AM 24   be stricken or precluded.

10:08AM 25             So for example, Mr. Gray in arguing for

| | |
|---|---|
| 10:08AM | 1 |
| 10:08AM | 2 |
| 10:08AM | 3 |
| 10:08AM | 4 |
| 10:08AM | 5 |

10:08AM 1  noninfringement in his report says, quote:  Given that

10:08AM 2  the buffers in the ReplayTV DVR were indisputably large

10:08AM 3  enough to avoid the need for automatic flow control, it

10:08AM 4  necessarily follows that the same is true with respect

10:08AM 5  to the accused Motorola DVRs, and so forth.  So --

10:08AM 6          THE COURT:  What's the difference,

10:08AM 7  Counsel, between Motorola and Time Warner arguing we

10:08AM 8  don't infringe because we use the large buffers instead

10:08AM 9  of some other technology and them arguing we don't

10:09AM 10  infringe because we use large buffers just like

10:09AM 11  ReplayTV did?  What's the difference between those two

10:09AM 12  things?

10:09AM 13          MR. IANCU:  Well, first of all, the

10:09AM 14  first one is a proper, depending how it's exactly

10:09AM 15  framed, but it's probably proper comparison between the

10:09AM 16  claims and the accused device, okay?

10:09AM 17          The second one injects the prior art into

10:09AM 18  the -- into the process.  And what happens in that --

10:09AM 19  at that time, this is why Courts reject the practicing

10:09AM 20  the prior art defense, they're different standards of

10:09AM 21  proof for invalidity.  We don't -- and then you create

10:09AM 22  a mini trial within a trial.  We -- there is no

10:09AM 23  analysis as to whether ReplayTV in the prior art

10:09AM 24  practiced these particular claims.  So from an

10:09AM 25  infringement point of view, there is a dispute from a

| | | |
|---|---|---|
| 10:09AM | 1 | validity point of view with a higher burden of proof as |
| 10:09AM | 2 | to whether ReplayTV anticipates or renders the claims |
| 10:10AM | 3 | obvious. |
| 10:10AM | 4 | But you have to do that analysis |
| 10:10AM | 5 | separately.  Compare ReplayTV and the buffers it has |
| 10:10AM | 6 | and all the other elements it has to the claims and |
| 10:10AM | 7 | decide validity of those claims, decide whether Replay |
| 10:10AM | 8 | invalidates the claims based on the clear and |
| 10:10AM | 9 | convincing standard and then put that aside.  Then come |
| 10:10AM | 10 | to the infringement analysis and then say, compare the |
| 10:10AM | 11 | Motorola devices to the claims and you do that analysis |
| 10:10AM | 12 | under the lowest burden of proof, it's preponderance. |
| 10:10AM | 13 | THE COURT:  Well, I understand the |
| 10:10AM | 14 | burdens of proof for infringement and invalidity. |
| 10:10AM | 15 | MR. IANCU:  And as soon as you inject |
| 10:10AM | 16 | the prior art into the infringement analysis, not only |
| 10:10AM | 17 | is it improper as a matter of law, but in addition you |
| 10:10AM | 18 | create Jury confusion. |
| 10:10AM | 19 | THE COURT:  So what you're telling me, |
| 10:10AM | 20 | as long as they're talking about the actual mechanical |
| 10:10AM | 21 | technology that may or may not be what ReplayTV did, as |
| 10:11AM | 22 | long as they don't talk about ReplayTV but they talk |
| 10:11AM | 23 | about the large buffer and therefore on a scientific |
| 10:11AM | 24 | basis why it's not infringement, you don't see a |
| 10:11AM | 25 | problem with that? |

10:11AM  1          MR. IANCU:   Sure.  I mean, there's going

10:11AM  2  to be we don't agree with that technical position, of

10:11AM  3  course --

10:11AM  4          THE COURT:   I understand.  That's what

10:11AM  5  we have the lawsuit about.

10:11AM  6          MR. IANCU:   That's right.

10:11AM  7          THE COURT:   All right.  Let me have a

10:11AM  8  response from Motorola.

10:11AM  9          MR. DeFRANCO:   Thank you, Your Honor.

10:11AM  10  First, again, we're not going to take the position that

10:11AM  11  if we don't infringe because we practice the prior art.

10:11AM  12  We agree once again, black letter law, neither side

10:11AM  13  should be able to do that.  But that's really not what

10:11AM  14  the issue is here.

10:11AM  15          It doesn't matter for -- for the -- what

10:11AM  16  we want to use, facts, admissions relating to Replay

10:11AM  17  for on this issue, it doesn't matter whether or not

10:11AM  18  it's prior art.  For example, if -- if we -- we have

10:12AM  19  evidence that their experts or fact witnesses say, well

10:12AM  20  you know, Replay doesn't invalidate their patents

10:12AM  21  because it's got -- it doesn't have automatic flow

10:12AM  22  control, that's an admission that large buffers and

10:12AM  23  it's something different than automatic flow control.

10:12AM  24  And in fact, that's the position that their invalidity

10:12AM  25  expert takes.

10:12AM 1        Their infringement expert takes the exact

10:12AM 2    opposite position.  He says that when Motorolas have

10:12AM 3    large buffers and -- and that is automatic flow

10:12AM 4    control.  So you have their invalidity expert saying

10:12AM 5    it's not large buffers, don't invalidate a claim, go

10:12AM 6    into automatic flow control.  And you've got your --

10:12AM 7    your infringement expert taking the exact opposite

10:12AM 8    position.  We think that's why they have two experts.

10:12AM 9    You can't have one person talking out of both sides of

10:12AM 10   their mouth.  They're going to put one expert on to say

10:12AM 11   one thing and another expert on to say another.

10:12AM 12        THE COURT:  You've never seen one person

10:12AM 13   talk out of both sides of their mouth?

10:12AM 14        MR. DeFRANCO:  I've never seen them get

10:13AM 15   away with it down here, Your Honor, but --

10:13AM 16        THE COURT:  All right.

10:13AM 17        MR. DeFRANCO:  So you know, that --

10:13AM 18   that's a fact in this case.  We're going to be crossing

10:13AM 19   their experts on it.  The Jury is going to hear about

10:13AM 20   that, obviously, and we're entitled to do that.

10:13AM 21        But Replay is part of the story and they

10:13AM 22   can't excise, it carve it out of the case by saying

10:13AM 23   that we're trying to make this, we're practicing the

10:13AM 24   prior art argument.  We're not doing that.  But it's a

10:13AM 25   fact that Replay has large buffers.

| | | |
|---|---|---|
| 10:13AM | 1 | It's a fact that we licensed that |
| 10:13AM | 2 | technology and got rights to that IP for that very |
| 10:13AM | 3 | reason, so we could do it the Replay way.  Are we |
| 10:13AM | 4 | saying -- we're not saying that Replay is prior art in |
| 10:13AM | 5 | that instance or we're practicing prior art, we're |
| 10:13AM | 6 | saying we went out and got the part of our story or |
| 10:13AM | 7 | defense of this case, we licensed the Replay |
| 10:13AM | 8 | technology.  Its large buffer.  We do it differently. |
| 10:13AM | 9 | And you know, for them to say, well, |
| 10:13AM | 10 | that's a practice of the prior art defense, that's not |
| 10:13AM | 11 | it at all.  That's a -- that's a fact in this case. |
| 10:13AM | 12 | It's not -- that has nothing to do with whether or not |
| 10:13AM | 13 | Replay is prior art.  So their admissions by fact |
| 10:13AM | 14 | witnesses, their admissions by their experts, their -- |
| 10:14AM | 15 | the contradiction between their invalidity and |
| 10:14AM | 16 | infringement experts, that's all fair game for us to |
| 10:14AM | 17 | rely on in our defense and they can't prevent us from |
| 10:14AM | 18 | doing that by saying that, you know, somehow we're |
| 10:14AM | 19 | making a practicing-the-prior-art argument, because |
| 10:14AM | 20 | that's -- that's not the -- that's not the case at all. |
| 10:14AM | 21 | And then with respect to the, you know, |
| 10:14AM | 22 | the -- our practice of the '714 patent, Your Honor, |
| 10:14AM | 23 | it's the same issue there again.  We're not making that |
| 10:14AM | 24 | argument with respect to the '714 patent.  We lay out |
| 10:14AM | 25 | in our brief several other legitimate reasons that |

| | | |
|---|---|---|
| 10:14AM | 1 | we're -- you know, we're entitled to say, of course, |
| 10:14AM | 2 | that we're using our own patent, but you know that's |
| 10:14AM | 3 | not -- we're not using that solely for noninfringement |
| 10:14AM | 4 | argument, we have other legitimate uses for that; (1) |
| 10:14AM | 5 | or (2)(f) defense to rebut their -- also to rebut their |
| 10:14AM | 6 | secondary considerations argument and it's also, of |
| 10:14AM | 7 | course, relevant to damages issues in the case. |
| 10:15AM | 8 | So I think again that that clearly is an |
| 10:15AM | 9 | issue that, as the evidence comes in, you'll see that |
| 10:15AM | 10 | we're not in any way using it in the way they -- they |
| 10:15AM | 11 | assert we are. |
| 10:15AM | 12 | THE COURT:  And my inclination here is |
| 10:15AM | 13 | to treat this just like the prior Motion In Limine. |
| 10:15AM | 14 | There is clearly a black letter rule that you don't |
| 10:15AM | 15 | argue you're practicing the prior art and I think |
| 10:15AM | 16 | that's appropriate for protection through a Motion In |
| 10:15AM | 17 | Limine.  But I think some of your points are well made, |
| 10:15AM | 18 | Counsel, but I believe that the Court can better deal |
| 10:15AM | 19 | with it within the context of the trial; therefore, I'm |
| 10:15AM | 20 | going to order you to approach before you go into |
| 10:15AM | 21 | ReplayTV.  You may very well get leave based on where |
| 10:15AM | 22 | we are and what the context is, but I want to -- I |
| 10:15AM | 23 | think as a precaution about injecting prior art in an |
| 10:15AM | 24 | improper manner, you need to approach and get leave |
| 10:15AM | 25 | first. |

| | | |
|---|---|---|
| 10:15AM | 1 | So with that explanation, I'm going to |
| 10:15AM | 2 | grant the Motion In Limine. |
| 10:16AM | 3 | MR. DeFRANCO:  Your Honor there -- there |
| 10:16AM | 4 | will be some issues in opening that may touch on this, |
| 10:16AM | 5 | like the fact that we have a license from Replay and |
| 10:16AM | 6 | those sorts of issues. |
| 10:16AM | 7 | THE COURT:  Then you'll need to -- |
| 10:16AM | 8 | you'll need to communicate with me before you do your |
| 10:16AM | 9 | opening.  And I've made this clear before, I think, but |
| 10:16AM | 10 | just in case there's any doubt, I'll be in chambers an |
| 10:16AM | 11 | hour before anything starts any day of the trial.  That |
| 10:16AM | 12 | hour is there to take up matters that may come up |
| 10:16AM | 13 | overnight or on day one that may come up as a part of |
| 10:16AM | 14 | opening.  So we'll have plenty of time to go into that. |
| 10:16AM | 15 | I can give you guidance on that before you do your |
| 10:16AM | 16 | opening. |
| 10:16AM | 17 | MR. DeFRANCO:  Thank you. |
| 10:16AM | 18 | THE COURT:  All right.  We'll take up |
| 10:17AM | 19 | TiVo's Motion In Limine No. 9 now. |
| | 20 | MS. GORDNIA:  I'll be -- |
| | 21 | THE REPORTER:  I can't hear you. |
| | 22 | THE COURT:  You're going to need to speak |
| | 23 | into the -- |
| | 24 | MS. GORDNIA:  Sorry. |
| | 25 | THE COURT:  -- microphone, please.  You |

1    can pull it towards you or whatever.

10:17AM    2              MS. GORDNIA:  Your Honor, Motion In

10:17AM    3    Limine No. 9 also address ReplayTV.  This motion is

10:17AM    4    directed to two specific pieces of evidence that we

10:17AM    5    know Motorola and Time Warner Cable intend to rely on

10:17AM    6    for the invalidity of their arguments, for the

10:17AM    7    invalidity to the '389 patent and --

10:17AM    8              THE COURT:  Let me stop you just a

10:17AM    9    second, Counsel.  Identify yourself for the record,

10:17AM   10    please.

10:17AM   11              MS. GORDNIA:  Talin Gordnia --

10:17AM   12              THE COURT:  Okay.

10:17AM   13              MS. GORDNIA:  -- Irell & Manella.

10:17AM   14              THE COURT:  Thank you.  Go ahead.

10:17AM   15              MS. GORDNIA:  These two pieces of

10:17AM   16    evidence are a ReplayTV set-top box from the years 1999

10:17AM   17    or later, we actually don't know the date of the box,

10:17AM   18    as well as ReplayTV's first code that a former ReplayTV

10:17AM   19    engineer testified he had in his home for over a decade

10:17AM   20    and handed over to Counsel in a prior matter.  And he

10:17AM   21    testified that this code was from the first shipping

10:18AM   22    unit of ReplayTV in 1999.

10:18AM   23              Now, TiVo's '389 patent was filed July

10:18AM   24    30th, 1998, so it's undisputed that these two pieces of

10:18AM   25    evidence, the box and the code, are too late to be

10:18AM 1    prior art.  And TiVo's concern is that TiVo will be

10:18AM 2    unfairly prejudiced by having this box shown to the

10:18AM 3    Jury and presented to the Jury as though it was prior

10:18AM 4    art when it is, in fact, not and Motorola and Time

10:18AM 5    Warner Cable haven't argued that it is.

10:18AM 6                  THE COURT:  Let me -- let me ask you

10:18AM 7    this, Counsel:  It appears to me that we're arguing

10:18AM 8    about exhibits, tangible exhibits, at this point.  If

10:18AM 9    we are, I'd rather take them up like we did before when

10:18AM 10   we take up the disputed exhibits in the case.

10:18AM 11                 If this goes beyond these particular

10:18AM 12   matters of tangible evidence, let me know.

10:18AM 13                 MS. GORDNIA:  Your Honor, this is

10:18AM 14   slightly different than the prior motion we discussed,

10:18AM 15   No. 5.  The reason is ReplayTV is one of the primary

10:18AM 16   references.  It goes to one of the key arguments that

10:18AM 17   the other side is making for the invalidity of TiVo's

10:19AM 18   patent, so it goes beyond simply just --

10:19AM 19                 THE COURT:  So the difference is it's

10:19AM 20   really important evidence.

10:19AM 21                 MS. GORDNIA:  It's important in that it

10:19AM 22   refutes their -- their arguments in a way that the

10:19AM 23   others didn't, perhaps.

10:19AM 24                 THE COURT:  All right.  I'll allow you

10:19AM 25   to continue.

| | | |
|---|---|---|
| 10:19AM | 1 | MS. GORDNIA:  Thank you.  So the -- the |
| 10:19AM | 2 | key issue here is that this device and code are too |
| 10:19AM | 3 | late to be prior art.  There's no dispute over that |
| 10:19AM | 4 | fact.  The other reasons that Counsel has presented in |
| 10:19AM | 5 | their response also are not -- don't overcome the -- |
| 10:19AM | 6 | the prejudice that TiVo would suffer from having this |
| 10:19AM | 7 | box shown to the Jury as over prior art when it's not. |
| 10:19AM | 8 | We've already discussed that practicing |
| 10:19AM | 9 | the prior art is not a defense, so that's -- there's no |
| 10:19AM | 10 | reason for the box to be before the Jury for that |
| 10:19AM | 11 | reason.  Also we know that their expert has not |
| 10:19AM | 12 | actually analyzed the boxes for the purposes of non -- |
| 10:19AM | 13 | noninfringing alternatives argument.  He had testified |
| 10:20AM | 14 | in his deposition that he didn't analyze the ReplayTV |
| 10:20AM | 15 | box, so there's really no argument that can be made |
| 10:20AM | 16 | that would make these -- the box and the code relevant |
| 10:20AM | 17 | and the only thing it does is prejudice TiVo by |
| 10:20AM | 18 | presenting something that may confuse them and may look |
| 10:20AM | 19 | like prior art when it's not. |
| 10:20AM | 20 | THE COURT:  Well, I haven't heard |
| 10:20AM | 21 | anything that persuades me that these are not the kind |
| 10:20AM | 22 | of issues that are addressed with each exhibit that's |
| 10:20AM | 23 | in dispute.  I'm going to deny the Motion In Limine, |
| 10:20AM | 24 | but I'm going to allow you to reurge it when we get to |
| 10:20AM | 25 | the exhibit objections. |

10:20AM  1          MS. GORDNIA:    Thank you, Your Honor.

10:20AM  2          THE COURT:    Okay.  All right.  Let's

10:20AM  3  next take up TiVo's Motion In Limine 10.

10:20AM  4          MR. BIRNHOLZ:    Good morning, Your Honor.

10:20AM  5  Richard Birnholz again.

10:20AM  6          Motion In Limine No. 10 relates to a

10:20AM  7  larger category of exhibits, testimony, and argument

10:21AM  8  that relate to the Grass Valley set of prior art and

10:21AM  9  there are a number of issues that are implicated with

10:21AM  10  the Grass Valley evidence.  The -- Motorola has relied

10:21AM  11  extensively on what it's going to call at trial the PDR

10:21AM  12  system and that's another name to refer to the Grass

10:21AM  13  Valley products.

10:21AM  14          But the PDR system does not exist in the

10:21AM  15  abstract as an -- as an item of prior art.  What exists

10:21AM  16  are the particulars that underlie that and when you

10:21AM  17  deconstruct the evidence, you see that there's a

10:21AM  18  variety of improper pieces of evidence that are going

10:21AM  19  to be submitted at the trial and paraded before the

10:21AM  20  Jury.

10:21AM  21          The Motion In Limine relates to devices

10:21AM  22  and code and the corresponding argument and expert

10:22AM  23  testimony that relate to them.  The experts and

10:22AM  24  possibly Motorola in its opening presentation or other

10:22AM  25  presentations will put in front of the Jury devices.

10:22AM  1    The physical devices have not been established as in

10:22AM  2    the same condition as what they were as items of prior

10:22AM  3    art.  So we have boxes as they exist today.  We don't

10:22AM  4    know what modifications have been made to them.  We

10:22AM  5    don't know what code is running on the boxes and

10:22AM  6    there's no way to date those boxes, the devices, as

10:22AM  7    prior art.  And so the -- Motorola should not be

10:22AM  8    permitted to parade devices in front of the Jury that

10:22AM  9    cannot be established to be prior art since we know

10:22AM 10    nothing about those particular devices.  The experts

10:22AM 11    couldn't identify the code that was on those boxes and

10:22AM 12    they didn't know what condition those boxes were in the

10:22AM 13    prior art period.

10:23AM 14             So the devices should be excluded because

10:23AM 15    they can't be established to be prior art.  We don't

10:23AM 16    know what they really are and that they were in the

10:23AM 17    same condition that they were in the prior art period.

10:23AM 18    And we know for one of the devices that it was not as

10:23AM 19    originally released because there's a function on one

10:23AM 20    of the boxes that the version 2.1 box, Exhibit 1698,

10:23AM 21    that has a function that didn't exist when the box was

10:23AM 22    first released.  So there obviously were some

10:23AM 23    modifications and that underscores the point that we

10:23AM 24    don't know exactly what these devices are and to

10:23AM 25    portray them as prior art would be inappropriate.

10:23AM 1          The other significant piece on this

10:23AM 2   Motion In Limine relates to Grass Valley code, version

10:23AM 3   2.2, which is simply too late to be prior art.  And

10:23AM 4   it's black letter law that a party nor an expert nor a

10:24AM 5   witness can portray a particular item of code as prior

10:24AM 6   art that's too late.  And so there are a variety of

10:24AM 7   theories to which this relates to and so we want to cut

10:24AM 8   it off at the pass through this Motion In Limine which

10:24AM 9   says version 2.2 should be excluded because it's too

10:24AM 10  late.

10:24AM 11          And when you look at the dates, the

10:24AM 12  evidence of version 2.2 is established to be released

10:24AM 13  in October of 1997, crediting the other side's evidence

10:24AM 14  on this issue.  The '195 patent priority date is

10:24AM 15  October 10th, 1997, which is before the date that the

10:24AM 16  other side admits that this code was released and the

10:24AM 17  device bearing that code.

10:24AM 18          THE COURT:  Let me ask you this,

10:24AM 19  Counsel:  We have this Motion In Limine, we have, I

10:24AM 20  assume, objections to -- for the actual introduction of

10:24AM 21  these exhibits as evidence, and then you have a pending

10:25AM 22  Daubert motion as to the argument as to what the effect

10:25AM 23  of these are.  Why -- so we've got -- we've got this

10:25AM 24  same issue on various fronts.  Why is it appropriate to

10:25AM 25  be heard as a Motion In Limine rather than to be

| | |
|---|---|
| 10:25AM | 1 |

carried and dealt with as part of the Daubert or on the

10:25AM  2  actual introduction of the exhibits themselves?

10:25AM  3          MR. BIRNHOLZ:   Because the Motion In

10:25AM  4  Limine, as I started, covers the expert testimony, the

10:25AM  5  physical exhibits, and the argument as well as evidence

10:25AM  6  from some fact witnesses that we don't -- which we

10:25AM  7  don't know what the other side is going to introduce.

10:25AM  8  The ruling here on the Motion In Limine would clearly

10:25AM  9  be related to the Court's handling of the exhibits and

10:25AM  10  the Daubert.  This is a larger set of arguments that

10:25AM  11  apply to those more narrow arguments, that's why we

10:25AM  12  raised it in addition to the Daubert as a Motion In

10:25AM  13  Limine.

10:25AM  14          THE COURT:   All right.  Continue.

10:25AM  15          MR. BIRNHOLZ:   Thank you, Your Honor.

10:26AM  16  So the 2.2 code we know is not prior art to the '195

10:26AM  17  patent and the device that ran that 2.2 code because

10:26AM  18  it's too late.  So the experts and the parties should

10:26AM  19  not get up there and say that it is because it's not

10:26AM  20  prior art.  It's also indisputably not prior art under

10:26AM  21  Section 102(b) which requires that the product and the

10:26AM  22  device be on sale more than a year before the priority

10:26AM  23  date and -- before the filing of the patent, excuse me.

10:26AM  24  So that date is July 30th, 1997, that would be the one

10:26AM  25  year bar date.  Again, we know that the version two

10:26AM 1   code and device does not predate July 30th, 1997, under

10:26AM 2   any stretch or form.  And so version 2.2 can't be

10:26AM 3   written, it can't be described as prior art under that

10:26AM 4   theory.

10:26AM 5              Now, under other theories with regard to

10:26AM 6   the '389 and '465 patent, Motorola argues, well, this

10:27AM 7   just turns on the date that you're arguing for your

10:27AM 8   conception date and if you lose that date, you have a

10:27AM 9   later priority date and so this is all prior art.  The

10:27AM 10  problem with that argument, Your Honor, is that when

10:27AM 11  you look at the 2.2 code that was produced and on which

10:27AM 12  Motorola tends to rely, the files say 1998, 1999, 2000.

10:27AM 13  So this is not an issue of, well, is it November of '97

10:27AM 14  or July of '98.  The version 2.2 code is dated.  There

10:27AM 15  are files in that code that's dated well after that,

10:27AM 16  years after.  And so again we have a problem where we

10:27AM 17  have this label of the PDR system and a variety of

10:27AM 18  pieces of evidence that are not prior art.

10:27AM 19             So with that, Your Honor, we would ask

10:27AM 20  that the Court exclude evidence, testimony, and

10:27AM 21  argument relating to the devices which have not been

10:27AM 22  properly established to be prior art and the version

10:27AM 23  2.2 code, which is also not prior art.

10:28AM 24             One other argument is that the code has

10:28AM 25  also been kept confidential by Grass Valley and

10:28AM  1    proprietary to Grass Valley and therefore does not

10:28AM  2    qualify as prior art under 102(g).

10:28AM  3               THE COURT:   All right.  Let me have a

10:28AM  4    response from Motorola.

10:28AM  5               MR. NELSON:   Thank you, Your Honor.

10:28AM  6    Dave Nelson again.

10:28AM  7               So few issues.  I mean, one, we certainly

10:28AM  8    have the issue with respect to the code that they said

10:28AM  9    that there are -- there is a dispute with respect to

10:28AM  10   the prior art date, so there's no question.  So that

10:28AM  11   the idea that some of this may come after the '195

10:28AM  12   patent is really not -- that's a separate issue from

10:28AM  13   what it does with respect to the other two patents

10:28AM  14   where those dates are in dispute.

10:29AM  15              And in fact, even the date that Counsel

10:29AM  16   gave you is prior to any date that TiVo contends for

10:29AM  17   the '389 patent.  So it would be prior art even if TiVo

10:29AM  18   were to establish its earlier conception dates and I

10:29AM  19   think Your Honor has the motion for summary judgment

10:29AM  20   pending on some of those issues that would not be --

10:29AM  21   that would not be relevant.

10:29AM  22              But see, here's the deal with this,

10:29AM  23   the -- the devices themselves, as Counsel said, the

10:29AM  24   PDR200, that development starts back in April of 1997.

10:29AM  25   There are various versions, you know, of software that

10:29AM 1   were on there.  The devices themselves have about

10:29AM 2   screens that say what version of software they're

10:29AM 3   running.  We have testimony from Grass Valley witnesses

10:29AM 4   that have said, yes, those are the Grass Valley

10:29AM 5   devices, this is the version of code that that ran.

10:29AM 6   Talk about what changes there would be in the code and

10:29AM 7   the fact that a particular version had all the

10:30AM 8   functions in that code.  All of those things go to the

10:30AM 9   idea of what is it that was publicly available at the

10:30AM 10  time.

10:30AM 11         And so what Counsel is trying to do is

10:30AM 12  something that the Federal Circuit has rejected a

10:30AM 13  number of times, which is trying to dissect all the

10:30AM 14  pieces of evidence and say, well, this standing alone

10:30AM 15  couldn't be the -- the only piece of prior art or

10:30AM 16  couldn't be invalidating prior art.  This standing

10:30AM 17  alone couldn't be invalidating prior art.  But that's

10:30AM 18  not what you're supposed to do.

10:30AM 19         So for example in the Adenta case that we

10:30AM 20  cited, that's 501 F.3d, Your Honor, 1364, it's a 2007

10:30AM 21  Federal Circuit case, that had to do with the on-sale

10:30AM 22  bar under 102(b), but the same basic idea.  There what

10:30AM 23  the Court looked at, as is said, we need to look at

10:30AM 24  this collective body of evidence as a factual issue to

10:30AM 25  determine what was actually on sale at the time.  So

10:31AM  1    what much of this evidence is directed to is

10:31AM  2    establishing exactly that.

10:31AM  3            And furthermore, establishing the due

10:31AM  4    diligence and the lack of abandonment, suppression, or

10:31AM  5    concealment under 102(g), right?  So if you start

10:31AM  6    development of something in 1987 and you have a product

10:31AM  7    that you release and then you continue to work on that

10:31AM  8    and you have another product and eventually you get to

10:31AM  9    the point of releasing that to the public, then all

10:31AM  10   that evidence is relevant to show that there was no

10:31AM  11   abandonment, suppression, or concealment dating that

10:31AM  12   back to the 1997 time frame.

10:31AM  13           So we have one, what's the relevant

10:31AM  14   information to show the features of the product that

10:31AM  15   were on sale; and two, what's the relevant information

10:31AM  16   to show to establish this as being prior art under

10:31AM  17   102(g).  And in fact, even in the Adenta case, they

10:32AM  18   looked at things after the critical date in that case

10:32AM  19   to show what it was that was publicly on sale at the

10:32AM  20   time.  So that -- we have that issue here.

10:32AM  21           But in addition, this issue came up in a

10:32AM  22   trial that I had in front of Judge Sleet, actually,

10:32AM  23   last December where the -- the other side tried to

10:32AM  24   argue that, well, this -- we were relying on source

10:32AM  25   code, product manuals, all those things to show what

10:32AM 1  the functionality was of the accused device -- or

10:32AM 2  excuse me, the prior art device.  The prior art device

10:32AM 3  was the reference.

10:32AM 4           And the other side tried to come in and

10:32AM 5  say, well, the source code, that was confidential,

10:32AM 6  right, that in and of itself was confidential, so you

10:32AM 7  can't rely on that.  That -- and in -- and in fact,

10:32AM 8  when they tried to make that argument, Judge Sleet shut

10:32AM 9  them down and said that's an improper statement under

10:32AM 10 the law, because all of those things are relevant to

10:33AM 11 show what the functionality was of the accused device

10:33AM 12 at the time.

10:33AM 13          So to take the individual piece of

10:33AM 14 evidence and try to dissect it and say, well, that, you

10:33AM 15 know, the source code standing alone in and of itself,

10:33AM 16 that wouldn't be relevant prior art because it was

10:33AM 17 secret.  Well, that's not the test, right?  Is that

10:33AM 18 relevant to show the functionality of the device.  Is

10:33AM 19 that relevant to show that there was no abandon,

10:33AM 20 suppression or concealment of -- during this

10:33AM 21 development of the invention, the answer is yes.

10:33AM 22          So now, in terms of the authentication

10:33AM 23 that was raised, I think, and perhaps this goes to some

10:33AM 24 individual exhibit issues that Your -- Your Honor has

10:33AM 25 that you don't want to address now, but we do have

10:33AM   1    testimony from the Grass Valley witnesses

10:33AM   2    authenticating these pieces of evidence, authenticating

10:33AM   3    the code, authenticating the device and saying, yes,

10:33AM   4    those are Grass Valley devices.  So there is testimony

10:33AM   5    through deposition and, perhaps, through witnesses at

10:34AM   6    trial, depending on who -- who comes to authenticate

10:34AM   7    those things and those people can be cross-examined

10:34AM   8    with respect to these issues.  But as a threshold issue

10:34AM   9    to try to keep all of this information out on a Motion

10:34AM   10   In Limine is improper.

10:34AM   11              THE COURT:   All right.  Response, Mr.

10:34AM   12   Birnholz?

10:34AM   13              MR. BIRNHOLZ:   Thank you, Your Honor.

10:34AM   14   I'd like to respond by commenting on the Adenta case

10:34AM   15   and use that as the springboard for some other points.

10:34AM   16              The Adenta case wasn't -- it does not

10:34AM   17   stand for the proposition that you can consider the

10:34AM   18   body of evidence that comes before and after the prior

10:34AM   19   art -- prior art date.  What the Adenta case was, there

10:34AM   20   was a subsequent piece of information that referred

10:34AM   21   specifically to a prior art use.  So you add something

10:34AM   22   that came later that referred to the prior art as at

10:34AM   23   the appropriate time.

10:34AM   24              What we have here is a situation when

10:34AM   25   Motorola wants to use evidence that is not from the

| | |
|---|---|
| 10:35AM | 1 | prior art time frame and to blur the line and to let |
| 10:35AM | 2 | the Jury believe that all this evidence, the devices |
| 10:35AM | 3 | and the code and things that came later are actually |
| 10:35AM | 4 | representative of the prior art and that's not |
| 10:35AM | 5 | permissible, because what is later is not prior art. |
| 10:35AM | 6 | Now, I have no problem with the other |
| 10:35AM | 7 | side using a variety of pieces of evidence, whether |
| 10:35AM | 8 | it's a document or a device or code, if it is, in fact, |
| 10:35AM | 9 | prior art.  And that's -- that's the problem here is |
| 10:35AM | 10 | we've got some evidence that will be -- that -- that |
| 10:35AM | 11 | may be prior art, but we have a whole host of evidence |
| 10:35AM | 12 | that is not; the devices and the code and the evidence |
| 10:35AM | 13 | and argument about those devices and code that come |
| 10:35AM | 14 | later.  So the point of the -- of the motion is that |
| 10:35AM | 15 | all these things are not tied to the right time frame. |
| 10:36AM | 16 | And the devices, we have a device where |
| 10:36AM | 17 | you load up an about screen and the about screen even |
| 10:36AM | 18 | on its face if you look in the -- the other side's |
| 10:36AM | 19 | brief says for the version for the about screen is from |
| 10:36AM | 20 | 2012, because that's when that -- either that's when |
| 10:36AM | 21 | that about screen was run or maybe someone from Grass |
| 10:36AM | 22 | Valley got it working.  The point is we don't know and |
| 10:36AM | 23 | we also don't know that that information dates from the |
| 10:36AM | 24 | right period. |
| 10:36AM | 25 | There's no basis to say that it does and |

10:36AM 1   the version 2.2 code we know does not date from the

10:36AM 2   right period.  It's not prior art to the '195 patent

10:36AM 3   and it's not prior art to the -- to the '389 and the

10:36AM 4   '465, the code that -- that Motorola wants to rely on

10:36AM 5   has files going to '98, '99, 2000.  And so those pieces

10:36AM 6   of evidence and argument about it should be excluded.

10:36AM 7               THE COURT:   Well, this appears to have

10:37AM 8   pretty broad application to me and I think the Court

10:37AM 9   could benefit by reviewing again the Adenta case.  So

10:37AM 10  I'm going to carry this Motion In Limine and review the

10:37AM 11  authority cited.  That in no way prejudices the parties

10:37AM 12  to move forward with their pending objections as to the

10:37AM 13  exhibits or the pending Daubert.

10:37AM 14              But for Motion In Limine purposes, I'm

10:37AM 15  going to carry this for the time being.

10:37AM 16              MR. BIRNHOLZ:   Thank you, Your Honor.

10:37AM 17              THE COURT:   All right.  Motion In Limine

10:37AM 18  11 from TiVo regarding the iMedia Home Video Server.

10:37AM 19              MS. GORDNIA:   Talin Gordnia again with

10:37AM 20  Irell & Manella.

10:37AM 21              Your Honor, TiVo's Motion In Limine No.

10:37AM 22  11 is directed to what actually the experts from

10:37AM 23  Motorola and Time Warner Cable have generated a title,

10:38AM 24  they call something that no longer exists the home

10:38AM 25  video server prototype.  This prototype is not

10:38AM  1    something that we've seen that's been produced for

10:38AM  2    inspection, that can be shown to the Jury.  It's

10:38AM  3    something that maybe once existed.

10:38AM  4              There's argument and some testimony about

10:38AM  5    it.  There's other evidence that relates to the work

10:38AM  6    that was done by iMedia at some point, but then the

10:38AM  7    engineers at iMedia have testified time and time again

10:38AM  8    that they abandoned that work.  They didn't show the

10:38AM  9    code underlying their iMedia, we'll call it prototype,

10:38AM  10   because we don't really know what else it is, but they

10:38AM  11   never showed that quote to anyone.  It was proprietary.

10:38AM  12             It can't be 102(g) art because it was

10:38AM  13   concealed and also it was abandoned.  They said over

10:38AM  14   and over in their depositions that they focused on

10:38AM  15   other products of their company.  They did not complete

10:38AM  16   the device that they were working on and they just left

10:38AM  17   it.  And so for those reasons, whatever this iMedia

10:38AM  18   prototype was which no longer exists, we know that it

10:38AM  19   was abandoned and cannot be prior art under 102(g).

10:39AM  20             And having arguments, evidence, and

10:39AM  21   information presented to the Jury about it is -- is

10:39AM  22   irrelevant for the purposes of the validity of TiVo's

10:39AM  23   patents and for those reasons it should be not part of

10:39AM  24   this case.

10:39AM  25             THE COURT:   All right.  Response from

| | | |
|---|---|---|
| 10:39AM | 1 | Motorola, Time Warner? |
| 10:39AM | 2 | MR. NELSON:   Thank you, Your Honor. |
| 10:39AM | 3 | And -- and with respect to that last one as well, we |
| 10:39AM | 4 | actually do have a time line if you're -- that kind of |
| 10:39AM | 5 | lays out some of the things that I talked about that |
| 10:39AM | 6 | may be helpful to Your Honor to consider.  If you need |
| 10:39AM | 7 | that, let us know, but -- |
| 10:39AM | 8 | THE COURT:   Well, anything that both |
| 10:39AM | 9 | sides meet and confer on and -- |
| 10:39AM | 10 | MR. NELSON:  Yeah. |
| 10:39AM | 11 | THE COURT:  -- you submit to the Court, |
| 10:39AM | 12 | I'll look at, but -- |
| 10:39AM | 13 | MR. NELSON:  Okay. |
| 10:39AM | 14 | THE COURT:  -- we're not -- not going to |
| 10:39AM | 15 | take something from one side or -- |
| 10:39AM | 16 | MR. NELSON:  No, no -- |
| 10:39AM | 17 | THE COURT:  -- not the other. |
| 10:39AM | 18 | MR. NELSON:  -- I understand that, Your |
| 10:39AM | 19 | Honor. |
| 10:39AM | 20 | THE COURT:  Okay. |
| 10:39AM | 21 | MR. NELSON:  Just something that |
| 10:39AM | 22 | makes -- gives a little bit -- |
| 10:39AM | 23 | THE COURT:  If you both agree the time |
| 10:39AM | 24 | line is accurate, I'll be glad to look at it. |
| 10:39AM | 25 | MR. NELSON:  Okay.  Thank you.  And |

10:40AM  1    I'll -- I'll talk to Mr. Birnholz --

10:40AM  2              THE COURT:  Yes.

10:40AM  3              MR. NELSON:  -- about that before we head

10:40AM  4    up.

10:40AM  5              So with respect to the -- the Motion In

10:40AM  6    Limine No. 11, this is the -- the iMedia, it is prior

10:40AM  7    art under 102(g) and that's what this evidence goes to.

10:40AM  8    So I think what we have is a little -- we have, one, a

10:40AM  9    misstatement of the law; and two, a -- I believe a

10:40AM  10   mischaracterization of some of the testimony.

10:40AM  11             So what you have here is a situation

10:40AM  12   where the iMedia gentleman developed a program of this

10:40AM  13   home video server.  They were asked questions about

10:40AM  14   whether they abandoned that, using the term, meaning if

10:40AM  15   you look at the context of the depositions, did they

10:40AM  16   develop that commercially.  Develop it as a commercial

10:40AM  17   product and sell it.  No, they decided to go in a

10:40AM  18   different direction.  That was their answer.

10:40AM  19             But in terms of the home video server

10:40AM  20   itself, it was never abandoned in a legal context.  In

10:41AM  21   fact, the testimony from the -- the iMedia gentleman is

10:41AM  22   that that home video server was shown publicly several

10:41AM  23   times, both in support of other product sales and

10:41AM  24   initially before the idea was taken to not pursue that

10:41AM  25   commercially.  So that in and of itself, the fact that

| 10:41AM | 1 | there was this public use, this public disclosure, |
| 10:41AM | 2 | shows that there's no abandonment, suppression or |
| 10:41AM | 3 | concealment and there's several cases that we'd cite to |
| 10:41AM | 4 | Your Honor with respect to that. |
| 10:41AM | 5 | So for example, this is in the -- in the |
| 10:41AM | 6 | papers, the Friction Division versus E.I. DuPont De |
| 10:41AM | 7 | Nemours and that is a District of Delaware case again, |
| 10:41AM | 8 | 658 F. Supp. 998.  There it talks about the long line |
| 10:41AM | 9 | of cases that says making the invention -- or public |
| 10:42AM | 10 | use of the invention without disclosing the details of |
| 10:42AM | 11 | it is sufficient to negate any intention to abandon, |
| 10:42AM | 12 | suppress, or conceal. |
| 10:42AM | 13 | So what TiVo is doing is kind of mixing |
| 10:42AM | 14 | up things.  And what they're saying is, well, whatever |
| 10:42AM | 15 | the public use is, that has to disclose all the details |
| 10:42AM | 16 | of what you're claiming to be the invention.  That's |
| 10:42AM | 17 | not true, that's not the law. |
| 10:42AM | 18 | I think they cite the Avatex case for |
| 10:42AM | 19 | that principle, Your Honor.  The Avatex case actually |
| 10:42AM | 20 | didn't hold that.  In fact, in that case it held that |
| 10:42AM | 21 | there was no abandonment of the invention, despite some |
| 10:42AM | 22 | delay between that and making it public.  And there |
| 10:42AM | 23 | what TiVo seizes on some language that says, well, if |
| 10:42AM | 24 | you could reverse engineer it.  In other words, that |
| 10:42AM | 25 | was a -- it was a method for making some particular |

| | | |
|---|---|---|
| 10:42AM | 1 | drug that was at issue in that case, and what they said |
| 10:42AM | 2 | is if you could reverse engineer it from the actual |
| 10:43AM | 3 | drug that was disclosed, then that would be evidence |
| 10:43AM | 4 | that there was no abandonment.  They never held you |
| 10:43AM | 5 | need to be able to reverse engineer it.  That wasn't |
| 10:43AM | 6 | what that case was. |
| 10:43AM | 7 | Another case, this goes back to predating |
| 10:43AM | 8 | the Federal circuit, but it's a case that the Federal |
| 10:43AM | 9 | Circuit has cited numerous times, it's Dunlop V Ram, |
| 10:43AM | 10 | it's the golf ball and the Surlyn covers, apparently |
| 10:43AM | 11 | they're real hard so when you slice them with your |
| 10:43AM | 12 | irons, you don't hack up the golf balls, and there |
| 10:43AM | 13 | there was a similar issue under 102(g).  And the Court |
| 10:43AM | 14 | said, no, it isn't -- you don't need to disclose the |
| 10:43AM | 15 | details of what the invention is.  All you need to do |
| 10:43AM | 16 | is make it available for public use, something that |
| 10:43AM | 17 | embodies it.  And the testimony is this home video |
| 10:43AM | 18 | server did, in fact, embody these, the claimed |
| 10:43AM | 19 | inventions. |
| 10:43AM | 20 | So -- and in that case I think another |
| 10:43AM | 21 | case that the -- TiVo relies on is this Palmer versus |
| 10:44AM | 22 | Dudzik case, which is a very old -- well, it's not very |
| 10:44AM | 23 | old, 1973, but it cites some old Supreme Court cases. |
| 10:44AM | 24 | Again, those were a different situation because it |
| 10:44AM | 25 | wasn't a situation where the device that was made |

10:44AM  1    publicly available embodied the invention, which is

10:44AM  2    what the test is for abandonment, suppression or

10:44AM  3    concealment.

10:44AM  4             In those cases what you had is a

10:44AM  5    situation where there was a machine that was used to

10:44AM  6    make a particular device or a particular article of

10:44AM  7    manufacture.  I think in one of the cases it was some

10:44AM  8    kind of weaving.  And the -- the only thing that was

10:44AM  9    made publicly available was the product of the machine,

10:44AM 10    not the machine itself.  So there the Court said, well,

10:44AM 11    you tried to keep that secret for yourself, you know,

10:44AM 12    you didn't make the invention publicly available.

10:45AM 13             So those cases were all deceitful.  In

10:45AM 14    fact, in the cases that I've cited for you, those were

10:45AM 15    distinguished.

10:45AM 16             Now, one other case is this Zenith, and

10:45AM 17    this is a Federal Circuit case, Zenith versus PDI

10:45AM 18    Communication Systems, it's 522 F.3d 1348; it's a 2008

10:45AM 19    Federal Circuit case.  There the Court, now this was in

10:45AM 20    the 102(b) context, but the -- the idea is exactly the

10:45AM 21    same.  It -- they said contrary to Zenith's arguments,

10:45AM 22    however, we note that the public use itself need not be

10:45AM 23    enabling, rather we must simply determine whether the

10:45AM 24    public use related to a device that embodied the

10:45AM 25    invention.

10:45AM  1          So again, the idea behind 102, and this

10:45AM  2   would apply to 102(g), is what have you made public.

10:45AM  3   Does that embody the invention.  That shows that

10:45AM  4   there's no intent to abandon, suppress or conceal.

10:46AM  5          Now, one additional fact that we have

10:46AM  6   here is, and this is something that the courts have

10:46AM  7   noted numerous times in various cases, and I won't go

10:46AM  8   through these, Your Honor, because they're cited in the

10:46AM  9   papers, but when you file a patent application on your

10:46AM 10   invention, that is essentially conclusive evidence that

10:46AM 11   there was no intent to abandon, suppress or conceal and

10:46AM 12   we have that here.  We have the '714 patent, which

10:46AM 13   flows from the development and the inventions in the

10:46AM 14   home video server and that original application, the

10:46AM 15   '714, derives from a continuation that was originally

10:46AM 16   filed back in 1995.

10:46AM 17          So to suggest because some individuals

10:46AM 18   testified that we chose not to pursue this commercially

10:46AM 19   and repeated the word abandon that the lawyers used in

10:46AM 20   the question is contrary to the evidence as a legal

10:46AM 21   matter.  And so the idea that we would keep out any

10:47AM 22   evidence of the home video server under 102(g) and the

10:47AM 23   efforts that they took under 102(g) to develop, use

10:47AM 24   this publicly, and eventually show this in a patent

10:47AM 25   application is contrary to the facts and the law.

| | | |
|---|---|---|
| 10:47AM | 1 | Now, the one thing that I think I saw in |
| 10:47AM | 2 | the papers that TiVo says about the patent application |
| 10:47AM | 3 | is, well, not all the details are disclosed there of |
| 10:47AM | 4 | the automatic flow control.  Well, that's actually, |
| 10:47AM | 5 | one, I didn't see any cases where that was required to |
| 10:47AM | 6 | be the case; but setting that issue aside, that's -- |
| 10:47AM | 7 | that's a disputed fact.  You know, one of the |
| 10:47AM | 8 | references that Mr. Gray relies upon for invalidity of |
| 10:47AM | 9 | the TiVo patent on exactly that issue, says that it |
| 10:47AM | 10 | discloses the automatic flow control and is the '704 |
| 10:47AM | 11 | patent.  So you know, on a Motion In Limine that TiVo |
| 10:47AM | 12 | is asking you to basically resolve a dispute issue even |
| 10:48AM | 13 | as to that limited issue between the experts. |
| 10:48AM | 14 | THE COURT:   All right.  What else? |
| 10:48AM | 15 | MR. NELSON:   I don't have anything else, |
| 10:48AM | 16 | Your Honor. |
| 10:48AM | 17 | THE COURT:   All right.  Anything further |
| 10:48AM | 18 | from TiVo on this? |
| 10:48AM | 19 | MS. GORDNIA:   Yes, Your Honor, just |
| 10:48AM | 20 | briefly.  Your Honor, if -- if we had a photo, we had |
| 10:48AM | 21 | any sort of evidence about what this prototype was, |
| 10:48AM | 22 | things would be different.  But there's no evidence in |
| 10:48AM | 23 | the record.  All we have are vague references to a |
| 10:48AM | 24 | prototype that iMedia was working on.  What we do know |
| 10:48AM | 25 | is that they had multiple concepts and projects going |

10:48AM  1    on at the same time.  And what we do know is that they

10:48AM  2    have testified that they showed some prototype

10:48AM  3    confidentially, not publicly, confidentially under

10:48AM  4    NDA's discerning potential investors.

10:48AM  5              Actually, Counsel is mixing things up.

10:48AM  6    Prototypes for different devices for different projects

10:48AM  7    going on at the same time, that's really what we have

10:49AM  8    here.  We have no concrete evidence about the home

10:49AM  9    video server prototype.  What we do know is the iMedia

10:49AM  10   engineers testified that they didn't complete it.  They

10:49AM  11   testified that it didn't work.  They testified that it

10:49AM  12   didn't record.  They used the word abandon and abandon

10:49AM  13   is the commonly understood word, not a legal term

10:49AM  14   that's -- an engineer would have a hard time

10:49AM  15   understanding.

10:49AM  16             So the problem here is that there's a

10:49AM  17   lack of evidence in the record for what this device was

10:49AM  18   and none of the cases that Counsel discussed right now

10:49AM  19   changes that.  The facts are as they are.  The -- the

10:49AM  20   inventors or engineers have said that they stopped

10:49AM  21   working on it and, in fact, have identified key

10:49AM  22   features of a digital video recorder that were lacking

10:49AM  23   in whatever it was that they were working on, we'll

10:49AM  24   call it the prototype.

10:49AM  25             But at this stage, it's important to keep

10:49AM 1    out this body of argument and evidence because no

10:49AM 2    record so far shows that this is not 102(g) art and

10:50AM 3    there's no other relevance for this to be in the case.

10:50AM 4    And for those reasons, Your Honor, TiVo's Motion In

10:50AM 5    Limine No. 11 should be granted.

10:50AM 6                THE COURT:   All right.  Well, clearly

10:50AM 7    there are at least nine exhibits identified as a part

10:50AM 8    of this dispute as well as there's a pending motion to

10:50AM 9    strike portions of testimony of Stephen Gray, an expert

10:50AM 10   for Motorola.  I don't view this as a dispute that is

10:50AM 11   appropriate for disposition on a Motion In Limine

10:50AM 12   basis.

10:50AM 13               I'm going to deny the Motion In Limine,

10:50AM 14   but I'm going to do so without prejudice to argue the

10:50AM 15   specific exhibits at issue or the motion to strike

10:50AM 16   portions of Mr. Gray's testimony, which we'll take up

10:50AM 17   subsequently.

10:50AM 18               But for Motion In Limine purposes, No. 11

10:50AM 19   is denied.

10:51AM 20               No. 12.  This has to do with the

10:51AM 21   nonexistent confidentiality agreement with iMedia.

10:51AM 22               MR. BIRNHOLZ:   Our catchy title is -- is

10:51AM 23   accurate, Your Honor.  This Motion In Limine relates to

10:51AM 24   a nonexistent confidentiality agreement and we want to

10:51AM 25   make sure that the other side doesn't put in testimony,

10:51AM 1   argument about a confidentiality agreement between

10:51AM 2   iMedia and Mr. Yang, who was a potential investor in

10:51AM 3   iMedia back in 1995.

10:51AM 4           And what we have is the undisputed

10:51AM 5   testimony from the iMedia witness, Adam Tom, who

10:51AM 6   testified in his deposition that there was no -- that

10:51AM 7   he had no signed NDA.  There's no signed agreement that

10:51AM 8   exists; you will not see one in Court.  One will never

10:52AM 9   be produced because it's never been produced in

10:52AM 10  discovery and we have no evidence that it exists.

10:52AM 11          He could -- he admitted that he could not

10:52AM 12  identify whether the agreement was signed, who signed

10:52AM 13  it, what the terms were, and so you cannot have a party

10:52AM 14  assert that there is an obligation of confidentiality

10:52AM 15  when there is no writing and there is an admission that

10:52AM 16  that party cannot identify any terms of such an

10:52AM 17  agreement.  So it's pretty -- it seems pretty basic to

10:52AM 18  us that there should not be evidence or argument about

10:52AM 19  a nonexistent confidentiality agreement.

10:52AM 20          THE COURT:  Counsel, why isn't this just

10:52AM 21  something that's right for cross-examination?  Seems

10:52AM 22  like to me the worst thing your opponent can do is

10:52AM 23  bring something up that doesn't exist that you can then

10:52AM 24  show the Jury on a cross doesn't exist and their

10:52AM 25  credibility is damaged accordingly.  Why is this not

10:52AM 1   something we deal with in the ordinary course of the

10:52AM 2   trial and the cross-examination?

10:52AM 3                  MR. BIRNHOLZ:   If Your Honor allows the

10:52AM 4   evidence, we certainly will do that.  Now, there are

10:53AM 5   two issues.  Is it's highly impermissible for a party

10:53AM 6   to, as a matter of law, assert that there is some

10:53AM 7   obligation when they admit that they cannot prove up

10:53AM 8   the terms and so this is something that's right now for

10:53AM 9   Your Honor to dispose of based on their own admission.

10:53AM 10                  The confidentiality obligation also goes

10:53AM 11  to this theory of unjust enrichment, which is the

10:53AM 12  subject of the pending summary judgment motions on

10:53AM 13  those -- those claims and so that's another reason why

10:53AM 14  it should be excluded from the trial, because if it has

10:53AM 15  any bearing, it has a bearing only on these claims

10:53AM 16  which are to be decided by Your Honor.

10:53AM 17                  So we think it's appropriate for a Motion

10:53AM 18  In Limine and that it should be kept out.

10:53AM 19                  THE COURT:   All right.  Response from

10:53AM 20  Motorola?

10:54AM 21                  MR. CUNNINGHAM:   Your Honor, Sean

10:54AM 22  Cunningham again.  I think the question here is what

10:54AM 23  exactly is TiVo trying to exclude.  I just heard

10:54AM 24  Counsel say that Motorola should not be able to assert

10:54AM 25  an obligation of confidentiality when it cannot produce

10:54AM  1    the final signed nondisclosure agreement between Yang

10:54AM  2    and iMedia.  And -- and there lies the rub, because I

10:54AM  3    can establish an obligation of confidentiality, Your

10:54AM  4    Honor, by handing you a document that's marked

10:54AM  5    confidential and saying, please keep this under your

10:54AM  6    hat.  And you say, yes, I will.  That's an obligation

10:54AM  7    of confidentiality.

10:54AM  8              And that kind of obligation of

10:54AM  9    confidentiality is what is required for an unjust

10:54AM  10   enrichment claim.  That is exactly what the Ultra

10:54AM  11   provision -- Precision Manufacturing versus Ford Motor

10:54AM  12   Company case says that TiVo cited in its Motions In

10:54AM  13   Limine at page 26.  There's no requirement for unjust

10:55AM  14   enrichment, that there be a final, signed nondisclosure

10:55AM  15   agreement; however, having said that --

10:55AM  16              THE COURT:  Yeah, we're not arguing the

10:55AM  17   summary judgment here.

10:55AM  18              MR. CUNNINGHAM:  Correct.  Having said

10:55AM  19   that, Your Honor, there will be witness testimony and

10:55AM  20   documents that provide circumstantial evidence that

10:55AM  21   there was, in fact, at one time a signed NDA between

10:55AM  22   Yang and iMedia and those include letters sent by Dr.

10:55AM  23   Tom to Mr. Yang saying enclosed is a drift.  And an

10:55AM  24   e-mail back from Mr. Yang saying, I'm going to send

10:55AM  25   you, I'm going to fax you comments on your proposed

10:55AM  1    nondisclosure agreement, which he did.

10:55AM  2                So the witnesses will testify that there

10:55AM  3    was, in fact, a final signed agreement, that that

10:55AM  4    cannot be located anymore, it's not in the files that

10:55AM  5    remain from iMedia, it's not in Motorola's files, and

10:55AM  6    it's not in Irell's files.  Remember that they were

10:56AM  7    Counsel for iMedia at the time and in fact, there's

10:56AM  8    several billing entries in their billing records

10:56AM  9    talking about advising Dr. Tom on the language of the

10:56AM  10   NDA.

10:56AM  11               So all of this is, as you point out,

10:56AM  12   fodder for cross-examination, but -- but Dr. Tom

10:56AM  13   certainly has a memory of having negotiated an NDA and

10:56AM  14   having executed that NDA with Mr. Yang and there's no

10:56AM  15   reason that he shouldn't be allowed to testify to that

10:56AM  16   if that's his memory.

10:56AM  17               THE COURT:  All right.  Anything

10:56AM  18   further, Mr. Birnholz?

10:56AM  19               MR. BIRNHOLZ:  Yes, just very briefly

10:56AM  20   because it's -- it's very pertinent.  Adam Tom, the

10:56AM  21   person that Mr. -- opposing Counsel just referred to

10:56AM  22   testified quite clearly.  He said I -- he says when the

10:56AM  23   start date was; when the end date was; who signed it;

10:56AM  24   the address; date; no, I don't remember those details.

10:56AM  25   When I said -- asked him:  Is it fair to say that you

| | | |
|---|---|---|
| 10:56AM | 1 | cannot provide me the details of any NDA between IVP |
| 10:57AM | 2 | and iMedia? |
| 10:57AM | 3 | Answer:  That's right. |
| 10:57AM | 4 | I don't think there's any basis for Adam |
| 10:57AM | 5 | Tom to then get up and testify as to the existence of a |
| 10:57AM | 6 | confidentiality agreement that has not been produced |
| 10:57AM | 7 | and to which he admitted under oath he could not tell |
| 10:57AM | 8 | anyone the terms. |
| 10:57AM | 9 | THE COURT:   Well, the Court continues to |
| 10:57AM | 10 | be convinced that this is just the type of evidentiary |
| 10:57AM | 11 | dispute that Juries are particularly appropriate at |
| 10:57AM | 12 | determining, weighing the credibility, determining what |
| 10:57AM | 13 | weight, if any, to give to contradictory testimony.  I |
| 10:57AM | 14 | think this is not appropriate for Motion In Limine |
| 10:57AM | 15 | exclusion.  I'm going to deny the Motion In Limine. |
| 10:57AM | 16 | All right.  No. 13, irrelevant patents |
| 10:57AM | 17 | and technology for Motorola. |
| 10:57AM | 18 | MR. WELLS:  Your Honor, Maclain Wells of |
| 10:58AM | 19 | Irell & Manella on behalf of TiVo. |
| 10:58AM | 20 | What we're talking about here, Your |
| 10:58AM | 21 | Honor, is a series of Motorola patents other than the |
| 10:58AM | 22 | Motorola patents asserted in this case that have been |
| 10:58AM | 23 | identified as, one, exhibits.  Have also been |
| 10:58AM | 24 | identified in expert reports where they just listed the |
| 10:58AM | 25 | patent numbers with no analysis and then an indication |

10:58AM   1    that they're going to ask fact witnesses about these

10:58AM   2    patents because some of the fact witnesses they've

10:58AM   3    listed are inventors on these patent numbers, these

10:58AM   4    additional patent numbers that have been provided, and

10:58AM   5    there's a problem with this.

10:58AM   6            And that is that it's very clear from

10:58AM   7    Federal Circuit precedent that you can't say, oh, I

10:58AM   8    have my own patents and therefore I don't infringe.

10:58AM   9    Nobody disagrees with that premise.  That is -- that --

10:58AM  10    that's an accepted premise of law.  And the second

10:58AM  11    thing is that the Federal Circuit has recognized again

10:58AM  12    and again that there is a high risk of prejudice for a

10:58AM  13    layperson, a Jury member, to say and to not understand

10:58AM  14    that a patent is the right to exclude, it's not the

10:58AM  15    right to practice.  And I'm going to go through both

10:59AM  16    the relevance and prejudice problems now, Your Honor.

10:59AM  17            THE COURT:   What about not as to

10:59AM  18    infringement, what about as to willfulness?

10:59AM  19            MR. WELLS:  I'm glad you asked, Your

10:59AM  20    Honor.  So Motorola put forth a case where it says that

10:59AM  21    it's possible that your own patents could be relevant

10:59AM  22    to willfulness.  It's a possibility, but it's not fact

10:59AM  23    intensive analysis.

10:59AM  24            And the facts of that case, you had

10:59AM  25    highly related technologies.  The patents that they

10:59AM 1  were trying to assert were relevant were actually cited

10:59AM 2  as prior art in the asserted patents and the Court

10:59AM 3  found that -- this is the Ortho Pharmaceutical case

10:59AM 4  that the cited -- the Court found that that, because of

10:59AM 5  those issues, a reasonable belief could have been

10:59AM 6  maintained by the Defendant that their patent claims

10:59AM 7  and the claims of the asserted patents were mutually

10:59AM 8  exclusive.

10:59AM 9          Contrast that to what we have in this

10:59AM 10 case.  We have no analysis from their experts as to

11:00AM 11 what these patent are about whatsoever.  They just list

11:00AM 12 the numbers.  We have -- these patents aren't, for

11:00AM 13 example, listed as prior art in the file histories that

11:00AM 14 were analyzed during the prosecution and we don't have

11:00AM 15 any facts supporting a reasonable belief on behalf of

11:00AM 16 Motorola that these patents, because of these patents,

11:00AM 17 Motorola did not infringe.

11:00AM 18         They didn't waive privilege of --

11:00AM 19 regarding opinions, so there's no attorney analysis

11:00AM 20 that they're relying on and there's no evidence

11:00AM 21 whatsoever that they believe that the claims of these

11:00AM 22 patents and the claims of the asserted TiVo patents are

11:00AM 23 mutually exclusive; therefore, there is no relevance

11:00AM 24 under the willfulness prong in this instance.

11:00AM 25         They also cite equivalents under the

| | | |
|---|---|---|
| 11:00AM | 1 | doctrine of equivalents and say, oh, well, it could be |
| 11:00AM | 2 | relevant there.  Well, the case law says a similar |
| 11:00AM | 3 | standard.  It's a fact-intensive issue.  And again, we |
| 11:01AM | 4 | don't have any analysis whatsoever what their case |
| 11:01AM | 5 | cites, this is the National case they cite, the |
| 11:01AM | 6 | National case states that:  It's not automatic that |
| 11:01AM | 7 | it's relevant under the doctrine of equivalents.  It's |
| 11:01AM | 8 | not automatic that having your own patents prevents |
| 11:01AM | 9 | arguments or regarding equivalents.  You have to look |
| 11:01AM | 10 | and see whether the claims are going to be mutually |
| 11:01AM | 11 | exclusive with that and what the claims of the asserted |
| 11:01AM | 12 | patents and we don't have that analysis from Motorola |
| 11:01AM | 13 | and we don't have any assertion that the Motorola |
| 11:01AM | 14 | witnesses believed that to be the case.  So that's the |
| 11:01AM | 15 | first prong, the -- the relevance prong. |
| 11:01AM | 16 | So even if you determine that these are |
| 11:01AM | 17 | relevant to this case, you still have to look at the |
| 11:01AM | 18 | prejudice prong.  And under the prejudice prong, the |
| 11:01AM | 19 | Federal Circuit has again and again stated that there |
| 11:01AM | 20 | is a high chance of Juror confusion thinking that |
| 11:01AM | 21 | because you have your own patents, you do not infringe |
| 11:01AM | 22 | the asserted patents of the -- of the other party and |
| 11:01AM | 23 | that's just wrong.  And they recognize that this is a |
| 11:02AM | 24 | real risk. |
| 11:02AM | 25 | And so you have cases like Cordis and EZ |

```
11:02AM   1    Dock.  In EZ Dock the Court -- the Federal Circuit
11:02AM   2    agreed that there was an assertion that this was
11:02AM   3    relevant to willfulness and they said, well, guess
11:02AM   4    what, the risk of prejudice is too great.  We're not
11:02AM   5    going to allow the -- these unrelated patents in, these
11:02AM   6    extra patents, these patents that aren't being
11:02AM   7    asserted.
11:02AM   8              THE COURT:  Well then, if that's the
11:02AM   9    state of the law, and I don't doubt that it is, tell me
11:02AM  10    specifically what it is about these particular patents
11:02AM  11    they intend to offer that creates the prejudice.  Where
11:02AM  12    is those -- where are those fact in -- fact
11:02AM  13    intentional -- intensive, rather, factual
11:02AM  14    considerations?
11:02AM  15              MR. WELLS:  The intensive factual
11:02AM  16    consideration under the relevance prong is establishing
11:02AM  17    that the patents have some basis for a reasonable
11:02AM  18    belief that you do not infringe.  And that goes to
11:02AM  19    willfulness, the intent of Motorola.  So that's under
11:02AM  20    the relevance prong.
11:03AM  21              Under the prejudice prong, the Court has
11:03AM  22    generally been looking at what is the risk here.  And
11:03AM  23    the risk here is exactly what they're going to put
11:03AM  24    their patents forward for.  They're going to say, we're
11:03AM  25    innovators.  We have patents that relates to our DVR
```

| | | |
|---|---|---|
| 11:03AM | 1 | products, whether they're related to some basal |
| 11:03AM | 2 | components or something else, they're going to say we |
| 11:03AM | 3 | are innovators.  And the risk is the Jury is going to |
| 11:03AM | 4 | say, okay, they have their own patents, so how could |
| 11:03AM | 5 | they infringe TiVo's patents? |
| 11:03AM | 6 | THE COURT:   Well but, there's a gap |
| 11:03AM | 7 | there that you're jumping over.  When they say they |
| 11:03AM | 8 | have patents and they're innovators, show me, tell me |
| 11:03AM | 9 | what it is about those particular patents that are |
| 11:03AM | 10 | going to hold up that would cause a Jury to be confused |
| 11:03AM | 11 | and think -- I mean, you may be talking about a patent |
| 11:03AM | 12 | for something that is not confusing at all.  You may be |
| 11:03AM | 13 | talking about patents that relate to devices or |
| 11:03AM | 14 | processes that wouldn't be confused. |
| 11:03AM | 15 | Show me the similarity between what |
| 11:04AM | 16 | they're going to raise as these patents and what's at |
| 11:04AM | 17 | issue in this case.  Show me where that -- show me the |
| 11:04AM | 18 | likelihood of confusion.  Don't just tell me there is a |
| 11:04AM | 19 | likelihood of confusion.  Give me some specifics. |
| 11:04AM | 20 | MR. WELLS:  Sure, Your Honor.  And I'd |
| 11:04AM | 21 | like to address -- I think that there's an issue there |
| 11:04AM | 22 | that's really important and this goes back to the |
| 11:04AM | 23 | Motion In Limine that they filed regarding TiVo's |
| 11:04AM | 24 | awards and whatnot.  And in that Motion In Limine, the |
| 11:04AM | 25 | Court brought up the fact that, hey, TiVo's got to tie |

| | | |
|---|---|---|
| 11:04AM | 1 | it to the technology.  If it goes to the DVR in |
| 11:04AM | 2 | general, we can put forth the evidence; but if it's |
| 11:04AM | 3 | unrelated, we can't get it in because it's not relevant |
| 11:04AM | 4 | and it could lead to prejudice.  And I think we have a |
| 11:04AM | 5 | similar situation here where -- where you're asking me, |
| 11:04AM | 6 | well, show me that these are -- that these patents are |
| 11:04AM | 7 | so close to the TiVo patent that there's a risk. |
| 11:04AM | 8 | THE COURT:    That's my question. |
| 11:04AM | 9 | MR. WELLS:    And these patents all relate |
| 11:04AM | 10 | to, you know, some technology relating to DVRs to |
| 11:04AM | 11 | varying degrees.  And these aren't patents, for |
| 11:05AM | 12 | example, on a toothbrush or a Motorola cell phone, that |
| 11:05AM | 13 | kind of thing.  But Your Honor, I think the more |
| 11:05AM | 14 | important question is if they're unrelated -- if they |
| 11:05AM | 15 | aren't so close as to prevent TiVo from getting the |
| 11:05AM | 16 | claims, they don't know the facts supporting that, then |
| 11:05AM | 17 | they're not relevant.  They're -- they're -- Motorola |
| 11:05AM | 18 | is saying I have a patent on a cell phone has nothing |
| 11:05AM | 19 | to do with this case. |
| 11:05AM | 20 | THE COURT:    So it's kind of a Catch-22. |
| 11:05AM | 21 | If they're relevant, they're prejudicial.  If they're |
| 11:05AM | 22 | not prejudicial, they're not relevant? |
| 11:05AM | 23 | MR. WELLS:    Exactly, Your Honor. |
| 11:05AM | 24 | THE COURT:    Okay.  Is there -- you've |
| 11:05AM | 25 | talked a lot about a lack of analysis with regard to |

| | | |
|---|---|---|
| 11:05AM | 1 | these.  Is there a companion Daubert that goes to this |
| 11:05AM | 2 | issue before the Court?  Because I'm not remembering |
| 11:05AM | 3 | that there is one. |
| 11:05AM | 4 | MR. WELLS:  I -- I think -- I don't |
| 11:05AM | 5 | think there is and I think that the reason for that is |
| 11:05AM | 6 | Jeff Rodriguez, the expert that put forth this |
| 11:05AM | 7 | information, just listed the patent numbers in the end |
| 11:05AM | 8 | of his report in one of the final paragraphs with no |
| 11:06AM | 9 | analysis.  So there's no analysis to exclude.  It -- |
| 11:06AM | 10 | it -- |
| 11:06AM | 11 | THE COURT:  Typically a lack of analysis |
| 11:06AM | 12 | is something I hear in a Daubert context, not a Limine |
| 11:06AM | 13 | context. |
| 11:06AM | 14 | MR. WELLS:  Well, we have no idea how |
| 11:06AM | 15 | Jeff Rodriguez would actually present any evidence on |
| 11:06AM | 16 | this or what opinion he would offer.  There's no |
| 11:06AM | 17 | indication other than the fact that it's in his report |
| 11:06AM | 18 | listing these patent numbers. |
| 11:06AM | 19 | THE COURT:  All right.  What else, |
| 11:06AM | 20 | Counsel? |
| 11:06AM | 21 | MR. WELLS:  That's it, Your Honor.  I'll |
| 11:06AM | 22 | turn it over to -- |
| 11:06AM | 23 | THE COURT:  Let me have a response from |
| 11:06AM | 24 | Motorola. |
| 11:06AM | 25 | MR. WILSON:  Good morning, Your Honor. |

| | | |
|---|---|---|
| 11:06AM | 1 | Robert Wilson for Motorola of -- |
| 11:06AM | 2 | THE COURT:   Proceed. |
| 11:06AM | 3 | MR. WILSON:  -- Quinn, Emanuel.  Thank |
| 11:06AM | 4 | you, Your Honor. |
| 11:06AM | 5 | So I think the last colloquy really told |
| 11:06AM | 6 | the story here and what TiVo is trying to do with this |
| 11:06AM | 7 | motion is put us in a Catch-22.  They really want the |
| 11:06AM | 8 | Jury just to hear half the story in this case.  Let me |
| 11:06AM | 9 | clear up a little bit about what came up with respect |
| 11:07AM | 10 | to Dr. Rodgriguez because we included this in our |
| 11:07AM | 11 | opposition. |
| 11:07AM | 12 | Dr. Rodriguez does not intend to testify |
| 11:07AM | 13 | that the patents that are listed in his report are in |
| 11:07AM | 14 | defense to infringement.  He said so at his deposition |
| 11:07AM | 15 | and so TiVo knows that that's not what Motorola intends |
| 11:07AM | 16 | to do or that has any intention with respect to that |
| 11:07AM | 17 | listing in his expert report.  So we can kind of set |
| 11:07AM | 18 | that issue aside.  I don't think it's a Daubert issue. |
| 11:07AM | 19 | I don't think there's a dispute there. |
| 11:07AM | 20 | But as Your Honor rightly points out, |
| 11:07AM | 21 | we're in a situation here where I think what you're |
| 11:07AM | 22 | going to hear from the outset of this case is about how |
| 11:07AM | 23 | TiVo is an innovator in this area of DVR technology. |
| 11:07AM | 24 | That they were one of the leaders in this technology |
| 11:07AM | 25 | and they are accusing us of stealing their technology. |

11:07AM 1          And this information about Motorola's

11:07AM 2   technology relating to DVRs, we're not going to be

11:08AM 3   talking about cell phone patents.  We're not going to

11:08AM 4   be talking about these other kinds of patents in other

11:08AM 5   fields, but its practice of developing its own

11:08AM 6   technology.  Its practice of licensing technology, and

11:08AM 7   its practice of purchasing technology from other

11:08AM 8   companies that it wants to put in its products is

11:08AM 9   highly relevant.

11:08AM 10         It's relevant to oppose this story that

11:08AM 11  TiVo is trying to tell that they're the only ones out

11:08AM 12  there with the asserted patents in this case that have

11:08AM 13  ever done anything innovative with respect to DVR.

11:08AM 14  We're going to hear from their inventors and we're

11:08AM 15  going to hear that extended story.

11:08AM 16         Motorola has to be able to rebut that

11:08AM 17  from the outset, Your Honor; otherwise, the Jury is

11:08AM 18  only going to hear half of the story, the TiVo side.

11:08AM 19  More importantly --

11:08AM 20         THE COURT:  Then tell me how you're

11:08AM 21  going to keep from creating Jury confusion by telling

11:08AM 22  the other half of the story.

11:08AM 23         MR. WILSON:  Well, more importantly,

11:08AM 24  Your Honor, I think you -- you zeroed in on this.  I

11:08AM 25  mean, this is a case that involves more than $3 billion

11:09AM  1   in damages and they are seeking an enhancement for

11:09AM  2   willfulness.  And so this information about Motorola's

11:09AM  3   development of its own technology and its own patents

11:09AM  4   in the DVR area is very important to rebut all of the

11:09AM  5   evidence that they're trying to get in about our intent

11:09AM  6   to infringe their patents and steal their technology.

11:09AM  7           And the only way we can rebut that is to

11:09AM  8   show, no, this is how we develop our product.  This is

11:09AM  9   how our DVR technology was either acquired or developed

11:09AM  10  in house or acquired through mergers and put into our

11:09AM  11  products that way.

11:09AM  12          The Jury is not going to be confused by

11:09AM  13  that information.  We're not going to be arguing that,

11:09AM  14  oh, because we've done this, we don't infringe.  But we

11:09AM  15  are going to explain very clearly, they're making a

11:09AM  16  very serious allegation that we had specific intent to

11:09AM  17  infringe their patents when, in fact, the way we've

11:09AM  18  developed our DVRs is through in-house development of

11:10AM  19  the technology and acquisitions of technology that has

11:10AM  20  gone right into the accused product.

11:10AM  21          So I don't think that there's going to be

11:10AM  22  any Jury confusion with respect to those two issues,

11:10AM  23  anymore than the fact that they -- the Jury is going to

11:10AM  24  be hearing two separate issues; one on infringement and

11:10AM  25  one on willfulness.  But it's vital that Motorola is

```
11:10AM   1    able to rebut that kind of argument that TiVo is going

11:10AM   2    to be making, because they're going to be saying, oh,

11:10AM   3    well, you know, you were following our litigations.

11:10AM   4    You knew about our technology and you just stole it.

11:10AM   5              And then if we have to sit on our hands

11:10AM   6    and say, well, we thought we did the right thing and

11:10AM   7    not be able to explain exactly what we've done with our

11:10AM   8    technology in our DVR development, then the Jury is not

11:10AM   9    going to hear the full story.  And they're going to

11:10AM  10    say, well, gee, they don't really have a response to

11:10AM  11    that.

11:10AM  12              If you can't -- if -- if they're going to

11:10AM  13    raise all these contentions for willfulness, we have to

11:10AM  14    be able to respond to that with the facts and the --

11:10AM  15    the evidence --

11:10AM  16              THE COURT:  Haven't you --

11:10AM  17              MR. WILSON:  -- about how we --

11:10AM  18              THE COURT:  -- asserted --

11:10AM  19              MR. WILSON:  -- developed our products.

11:10AM  20    Excuse me.

11:10AM  21              THE COURT:  Haven't you asserted that

11:10AM  22    they've willfully infringed your patents as well?

11:11AM  23              MR. WILSON:  Yes, we have, Your Honor.

11:11AM  24    So it's -- it's on both sides of the coin here.  But

11:11AM  25    we're not trying to preclude them from talking about
```

11:11AM 1   how they've developed their technology.

11:11AM 2             THE COURT:   Well, I don't know that the

11:11AM 3   size of the damages model has anything to do with

11:11AM 4   what's proper under willfulness or not, but I hear your

11:11AM 5   argument.

11:11AM 6             What else do you have for me?

11:11AM 7             MR. WILSON:   Well, Your Honor, that's

11:11AM 8   it.  I mean, I can -- I can recite cases for you.  I

11:11AM 9   mean, we have -- we cited in our briefs the Ortho

11:11AM 10  Pharmaceutical case and the King Instrument case

11:11AM 11  regarding the willful infringement and the Court

11:11AM 12  finding, yes, willfulness is a very fact intensive

11:11AM 13  inquiry and the Jury should be able to hear those facts

11:11AM 14  and be able to weigh them.  And in addition, we've

11:11AM 15  cited the, sorry, the EEOC and the Veretta case in our

11:11AM 16  briefs relating to the issue of this innovator and --

11:11AM 17  and hearing only half of the story.  So I urge the

11:12AM 18  Court that -- that those cases are important to show

11:12AM 19  the relevance of this motion.

11:12AM 20            THE COURT:   And since you readily agree

11:12AM 21  that it would be improper to offer proof of other

11:12AM 22  patents to show noninfringement and that their use

11:12AM 23  should only be limited to the issue of whether Motorola

11:12AM 24  acted with the necessary intent to be willful, then I

11:12AM 25  gather you wouldn't have a problem with an initial

11:12AM 1   instruction from the Court, the Jury that evidence of

11:12AM 2   patents held by Motorola does not preclude or prevent a

11:12AM 3   finding of infringement on the TiVo patents as

11:12AM 4   asserted?

11:12AM 5                   MR. WILSON:   Well, I mean, I think

11:12AM 6   you've heard, Your Honor, that we will -- we're not

11:12AM 7   going to be making that allegation with respect to --

11:12AM 8                   THE COURT:   So if you're not going to

11:12AM 9   make it, there wouldn't be any problem with telling the

11:12AM 10  Jury that?

11:12AM 11                  MR. WILSON:   I think you can clarify for

11:12AM 12  the Jury that infringement and willfulness are two

11:12AM 13  separate issues and that they have to consider the

11:12AM 14  evidence that relates to those issues separately.

11:12AM 15                  THE COURT:   All right.  Let me hear

11:12AM 16  anything final from TiVo on this.

11:13AM 17                  MR. WELLS:   Thank you, Your Honor.  I

11:13AM 18  think I'll want to clarify one thing.  If these patents

11:13AM 19  are relevant, they're highly prejudicial.  If these

11:13AM 20  patents are irrelevant, they're still highly

11:13AM 21  prejudicial and that's why it's required that there --

11:13AM 22  that initial showing of relevance be -- be met.

11:13AM 23                  On willfulness, the question isn't

11:13AM 24  whether there needs to be a factual -- I'm sorry, on

11:13AM 25  willfulness, the issue here is that there is no

11:13AM 1  evidence supporting this good faith belief that they're

11:13AM 2  putting forward.  There's no expert -- there's no

11:13AM 3  expert analysis, so the expert can't testify to it.

11:13AM 4          The fact witnesses' lay opinions

11:13AM 5  regarding whether or not their terms of their patent

11:13AM 6  are mutually exclusive of the terms of TiVo's asserted

11:14AM 7  patents, that's improper expert testimony.  This --

11:14AM 8  this evidence shouldn't come in to show willfulness

11:14AM 9  unless there's been some predicate preceding showing

11:14AM 10 that there's a factual similarity between the claims

11:14AM 11 and there hasn't been in this case.  And I think that

11:14AM 12 that's what the case law says is required to avoid this

11:14AM 13 prejudice.

11:14AM 14         Regarding the -- Your Honor's point about

11:14AM 15 having a preliminary instruction regarding the

11:14AM 16 infringement issue, that might address the infringement

11:14AM 17 issue, but these patents are still prejudicial.  The

11:14AM 18 fact is that Juries misuse it.  Courts exclude this

11:14AM 19 evidence because they have found that that preliminary

11:14AM 20 instruction is insufficient to overcome that prejudice.

11:14AM 21         THE COURT:  Well, it's the Court's

11:14AM 22 experience, Counsel, that very few things that are

11:14AM 23 relevant don't carry some prejudice; and very few

11:14AM 24 things that are prejudicial don't have some relevance.

11:14AM 25 And I just can't subscribe to your Catch-22 proposal

11:15AM 1   that if it's relevant, then it should be included as

11:15AM 2   prejudicial; and if it's prejudicial, then it should be

11:15AM 3   excluded as -- if it's not prejudicial, it should be

11:15AM 4   excluded as irrelevant.  In that scenario, there would

11:15AM 5   never be an opportunity for a Defendant to introduce

11:15AM 6   any competing patents under any circumstances.

11:15AM 7                 I think that there may be some risk of

11:15AM 8   prejudice, but I also think there is certainly the

11:15AM 9   possibility of important probative value as well.  And

11:15AM 10  I'll consider submission from the parties on any kind

11:15AM 11  of a preliminary instruction to the Jury to address the

11:15AM 12  noninfringement use of these other patents, but I'm

11:15AM 13  going to deny your Motion In Limine.

11:15AM 14                MR. WELLS:  Your Honor, may I request

11:15AM 15  that we can address the individual patents on the

11:15AM 16  objections because we have the exhibit objections to --

11:15AM 17                THE COURT:  I'm not prejudicing your

11:15AM 18  objections on the exhibits at all.

11:15AM 19                MR. WELLS:  Thank you, Your Honor.

11:15AM 20                THE COURT:  Okay.  All right.  Let's go

11:16AM 21  to what I show is the last TiVo Motion In Limine No.

11:16AM 22  14, regarding equitable claims and defenses.

11:16AM 23                MR. LIPNER:  Yes, Your Honor.  Motion In

11:16AM 24  Limine No. 14 is the mirror image of a motion that

11:16AM 25  Motorola brought in the original -- that we heard in

11:16AM  1    the original pretrial and that has to do with the

11:16AM  2    evidence that relates to claims that are claims for the

11:16AM  3    Court and not for the Jury.

11:16AM  4            And based on the briefing in the Motion

11:16AM  5    In Limine, it seems that we have agreement on the fact

11:16AM  6    that certain claims and defenses are for the Court and

11:16AM  7    not for the Jury.  So most importantly focus on -- on

11:16AM  8    the most practical issues, we have agreement, opposing

11:16AM  9    Counsel can tell me if they're -- if I've got this

11:16AM  10   wrong, but I believe from their opposition we have

11:16AM  11   agreement that the unjust enrichment and correction of

11:17AM  12   inventorship claims are for the Court and not for the

11:17AM  13   Jury.  And as a parenthetical, these, of course, are

11:17AM  14   the claims that they have that Mr. Yang stole the --

11:17AM  15   the invention from iMedia and gave it to TiVo.  And

11:17AM  16   just as a reminder, I know we're not arguing it, but

11:17AM  17   that is the subject of one of our motions for summary

11:17AM  18   judgment.  We believe it should be out of the case

11:17AM  19   entirely.  There's a basic failure of proof and a

11:17AM  20   statute of limitations problem.

11:17AM  21           But putting that aside for purposes of

11:17AM  22   the Motion In Limine, the parties agree that these are

11:17AM  23   issues for the Court.  Similarly, the parties agree

11:17AM  24   that the laches defense that Motorola has asserted are

11:17AM  25   issues for the Court.  So our motion is very simple.

11:17AM   1    It's that if you have proof that relates to these

11:17AM   2    motions -- to these claims and these defenses, they

11:17AM   3    should not go in front of the Jury, at least not

11:18AM   4    without further conversation with Your Honor as to what

11:18AM   5    else in the case they might be relevant to.

11:18AM   6                    A very important point is the evidence

11:18AM   7    relating to Mr. Yang on unjust enrichment and

11:18AM   8    correction of inventorship.  Motorola will argue that

11:18AM   9    that evidence is also relevant to one of their

11:18AM   10   invalidity defenses, 102(f) where they say they

11:18AM   11   invented the claim -- the '389 patent and not TiVo.

11:18AM   12   That's also part of our motion for summary judgment,

11:18AM   13   but they would -- they will argue that if it remains in

11:18AM   14   the case, it should -- that evidence should be in front

11:18AM   15   of the Jury.

11:18AM   16                   And the problem is, Your Honor, although

11:18AM   17   they've admitted that unjust enrichment and correction

11:18AM   18   of an inventorship is an issue for the Court, the

11:18AM   19   concern is that that will allow them to try to tell the

11:19AM   20   entire story of Mr. Yang taking the invention from

11:19AM   21   iMedia to TiVo --

11:19AM   22                   THE COURT:   Just a minute, Counsel.

11:19AM   23                   Let's try to have a seat, folks.  There's

11:19AM   24   so much wandering around, I'm having a hard time

11:19AM   25   concentrating.  We don't have a Jury in the box, I'm

11:19AM  1   going to give you some latitude, but I certainly don't

11:19AM  2   expect for there to be that kind of milling around in

11:19AM  3   the courtroom.

11:19AM  4               All right.  Continue.

11:19AM  5               MR. LIPNER:   Very good.  So Your Honor,

11:19AM  6   our very simple point is if there is evidence relating

11:19AM  7   to unjust enrichment and correction of inventorship

11:19AM  8   that Motorola believes for some reason should be in

11:19AM  9   front of the Jury, that should be a subject of specific

11:19AM 10   conversation with Your Honor before it gets given to

11:19AM 11   the Jury.

11:19AM 12               A good example was the conversation Your

11:19AM 13   Honor had with Mr. Birnholz about this confidentiality

11:19AM 14   agreement.  I can't imagine why that confidentiality

11:19AM 15   agreement would be relevant to any 102(f) defense, but

11:20AM 16   they claim that it is relevant to unjust enrichment.

11:20AM 17   So they shouldn't be permitted to simply trot in and

11:20AM 18   tell the whole very prejudicial story about Mr. Yang in

11:20AM 19   front of the Jury under the guise of their 102(f)

11:20AM 20   defense.

11:20AM 21               We have similar issues on the issue of

11:20AM 22   unjust enrichment where we wanted to bring issues

11:20AM 23   relating to their damages defense and damages claim

11:20AM 24   relating to unjust enrichment in front of the Jury for

11:20AM 25   other purposes and Your Honor granted the Motion In

| | | |
|---|---|---|
| 11:20AM | 1 | Limine and said we would have to approach Your Honor if |
| 11:20AM | 2 | we wanted to do that.  The same should go both ways. |
| 11:20AM | 3 | Same thing for laches.  Many of their |
| 11:20AM | 4 | questions in connection with deposition practice and |
| 11:20AM | 5 | the like were -- was about when we knew about their |
| 11:20AM | 6 | products and why we waited so long, they argue, to |
| 11:20AM | 7 | bring the case.  That is an issue that goes to Your |
| 11:20AM | 8 | Honor as the equitable defense about laches for |
| 11:21AM | 9 | pre-suit damages, but there is no legitimate reason |
| 11:21AM | 10 | that that should go in front of the Jury if there's a |
| 11:21AM | 11 | claim that it overlaps with something else, that should |
| 11:21AM | 12 | be brought to Your Honor's attention. |
| 11:21AM | 13 | So we ask that you grant the Motion In |
| 11:21AM | 14 | Limine to preclude evidence relating to these claims |
| 11:21AM | 15 | before the Court subject to further discussion with |
| 11:21AM | 16 | Your Honor. |
| 11:21AM | 17 | THE COURT:  Let me ask you this before |
| 11:21AM | 18 | you sit down, Counsel.  What -- |
| 11:21AM | 19 | MR. LIPNER:  Yes. |
| 11:21AM | 20 | THE COURT:  -- do you propose the Court |
| 11:21AM | 21 | do with that category of evidence that does have |
| 11:21AM | 22 | application to these equitable defenses, but yet also |
| 11:21AM | 23 | has application to the factual questions before the |
| 11:21AM | 24 | Jury? |
| 11:21AM | 25 | MR. LIPNER:  It depends on -- it depends |

| | | |
|---|---|---|
| 11:21AM | 1 | on the issue on an evidence by -- on a piece of |
| 11:21AM | 2 | evidence by piece of evidence basis and that's why I |
| 11:21AM | 3 | think it will be healthy, Your Honor, to be able to |
| 11:21AM | 4 | discuss it.  For example, in connection with the -- |
| 11:22AM | 5 | it's hard to answer that in the abstract.  In |
| 11:22AM | 6 | connection with the Yang claims, for example, we hope |
| 11:22AM | 7 | they don't survive summary judgment, but if they were |
| 11:22AM | 8 | to be part of this trial, which we think would be a |
| 11:22AM | 9 | very difficult thing to manage, but if they were to be |
| 11:22AM | 10 | part of the trial, there might be aspects of those that |
| 11:22AM | 11 | the Court could get in front of the Jury relating to |
| 11:22AM | 12 | whether they ever disclosed a complete conception of |
| 11:22AM | 13 | their invention to Mr. Yang, but then not tell the |
| 11:22AM | 14 | sinister part of the story that they would like to tell |
| 11:22AM | 15 | about taking it and bringing it over to Motorola until |
| 11:22AM | 16 | they've established that predicate. |
| 11:22AM | 17 | There might be a lot of different ways of |
| 11:22AM | 18 | dealing with this evidence to make sure that we |
| 11:22AM | 19 | minimalize any prejudice, but if there's just something |
| 11:22AM | 20 | that overlaps, that should be pre-cleared with Your |
| 11:22AM | 21 | Honor on an evidence -- on a -- on a piece of evidence |
| 11:22AM | 22 | by piece of evidence basis. |
| 11:23AM | 23 | THE COURT:  All right.  Let me hear a |
| 11:23AM | 24 | response, please. |
| 11:23AM | 25 | MR. VERHOEVEN:  Morning, Your Honor. |

11:23AM  1   Mr. Verhoeven for TiVo (sic) Motorola.

11:23AM  2            Let me start by saying as a general

11:23AM  3   principle, Your Honor, it's correct that we are in

11:23AM  4   agreement that the equitable causes of action here are

11:23AM  5   for the Court, not the Jury.  I think where we're

11:23AM  6   having a dispute, Your Honor, is on this overlap issue

11:23AM  7   Your Honor just asked the question about.

11:23AM  8            So for -- you know, we -- we have this --

11:23AM  9   we're going to have this procedure where we're

11:23AM 10   exchanging as we go through trial, we're going to raise

11:23AM 11   issues in the morning and my suspicion is that

11:23AM 12   procedure is going to be what is the mechanism that

11:23AM 13   will resolve these.

11:23AM 14            But setting that aside for a second, the

11:23AM 15   notion that we have to -- they both -- I assume that

11:23AM 16   what TiVo is suggesting is that this apply both ways.

11:24AM 17   And if the notion that both sides would have to

11:24AM 18   approach the Court on every single document that

11:24AM 19   overlaps, for example, Your Honor, between laches, our

11:24AM 20   laches defense and TiVo's willfulness claim, that will

11:24AM 21   be almost -- that will be a large number of documents,

11:24AM 22   Your Honor, because the issue of willfulness that, for

11:24AM 23   example, that TiVo's asserting is inextricably tied to

11:24AM 24   our laches defense.

11:24AM 25            In this case, Your Honor, the evidence is

11:24AM 1    virtually undisputed that the -- the time period here

11:24AM 2    between knowledge by TiVo and their assertion of the

11:24AM 3    claim exceeded six years, which under the law, Your

11:24AM 4    Honor, invokes a presumption that laches applies.  This

11:24AM 5    is a serious defense.  It's an equitable defense, but

11:24AM 6    it's a serious defense in this case.  And I know from

11:24AM 7    reading their expert reports and other information that

11:24AM 8    TiVo is going to rely on a whole series of events that

11:25AM 9    are the same events, basically, that Motorola and TiVo

11:25AM 10   are relying on for their laches defense, for their

11:25AM 11   willfulness claim.

11:25AM 12            So they're going to cast -- they're going

11:25AM 13   to try to cast it as, well, you should have known about

11:25AM 14   our patents and we're -- our contention is from the

11:25AM 15   same set of facts, the same chronology, that you never

11:25AM 16   told us that we infringed and you were trying to do

11:25AM 17   deals with us and then -- and then, you know, eight

11:25AM 18   years later, you filed these counterclaims and said we

11:25AM 19   were willful.  And so this same body of evidence, many,

11:25AM 20   many documents and a chronology of dealings, Your

11:25AM 21   Honor, is going to relate to both of those issues.

11:25AM 22            And so I would submit to Your Honor,

11:25AM 23   using this laches and willfulness overlap as an

11:25AM 24   example, that if there's an overlap and Your Honor

11:25AM 25   concludes or -- or it's indisputable when we're

| | | |
|---|---|---|
| 11:25AM | 1 | negotiating before we have to raise it with Your Honor, |
| 11:25AM | 2 | that it is relevant to something that is a Jury issue, |
| 11:25AM | 3 | then it comes in, instead of having to fight every |
| 11:26AM | 4 | single time about it.  If the -- if it's -- if it's |
| 11:26AM | 5 | relevant, I think it would be good guidance for the |
| 11:26AM | 6 | parties in their negotiations as well, Your Honor.  If |
| 11:26AM | 7 | it's relevant to their willfulness claim and our laches |
| 11:26AM | 8 | claim, they're going to say it comes in, we'll agree. |
| 11:26AM | 9 | If it's relevant to one of our assertions |
| 11:26AM | 10 | in the case, whether it be 102(f) or our willfulness |
| 11:26AM | 11 | claim against their -- against -- with respect to our |
| 11:26AM | 12 | patents, that's a Jury issue that comes in.  Just |
| 11:26AM | 13 | because it's also relevant to an equitable issue |
| 11:26AM | 14 | doesn't mean it should be excluded. |
| 11:26AM | 15 | So that's the only modification I would |
| 11:26AM | 16 | make, Your Honor, because a lot of these issues are |
| 11:26AM | 17 | going to be relevant to both the equitable issue and |
| 11:26AM | 18 | indisputably relevant to the Jury issues. |
| 11:26AM | 19 | THE COURT:  Well, certainly if it's |
| 11:26AM | 20 | relevant to a Jury issue, it's got to come in even if |
| 11:26AM | 21 | it's also relevant to an equitable defense.  I don't |
| 11:27AM | 22 | think you can keep relevant evidence away from the Jury |
| 11:27AM | 23 | even if it has application outside of the Jury context. |
| 11:27AM | 24 | I have -- I do have some concern about |
| 11:27AM | 25 | the practical complications you raise of the number of |

| | | |
|---|---|---|
| 11:27AM | 1 | exhibits and coming to the bench every time.  But there |
| 11:27AM | 2 | is also certainly some risk of prejudice on the other |
| 11:27AM | 3 | side that the Court has got to weigh.  I mean, I think |
| 11:27AM | 4 | I can give you the guidance that if I determine that |
| 11:27AM | 5 | the evidence at issue has -- falls in this overlapping |
| 11:27AM | 6 | category where it's relevant to the Jury but also |
| 11:27AM | 7 | relevant to your -- the equitable defenses that have |
| 11:27AM | 8 | been asserted, that I'm going to let it in. |
| 11:27AM | 9 | But my worry is that one side is going to |
| 11:27AM | 10 | say, well, it doesn't overlap and one side says it |
| 11:27AM | 11 | does.  And those are the kinds of issues I guess I'm |
| 11:27AM | 12 | going to have to get in the middle of. |
| 11:27AM | 13 | MR. VERHOEVEN:  I appreciate Your Honor |
| 11:28AM | 14 | for that guidance.  I think it will be very helpful and |
| 11:28AM | 15 | as a practical matter, I think if we have an exchange |
| 11:28AM | 16 | procedure we're going to exchange exhibits and whatnot, |
| 11:28AM | 17 | witness order, and raise it in the morning if we have |
| 11:28AM | 18 | these issues and I suspect those issues will be framed, |
| 11:28AM | 19 | in light of Your Honor's guidance, as to whether or not |
| 11:28AM | 20 | it's relevant, sufficiently relevant and not |
| 11:28AM | 21 | prejudicial for the Jury issues rather than this |
| 11:28AM | 22 | overlap issue. |
| 11:28AM | 23 | THE COURT:  Well, you know, denying a |
| 11:28AM | 24 | Motion In Limine doesn't prohibit you from making your |
| 11:28AM | 25 | objection at the time and this -- there is going to be |

11:28AM  1   a lot of, as I said earlier, there are a lot of moving

11:28AM  2   parts in this trial and I do have some concern about

11:28AM  3   that.  I guess the only thing I know to do is to say

11:29AM  4   that if it does not have application to a live issue

11:29AM  5   before the Jury but relates solely to the equitable

11:29AM  6   defenses, then I'll grant the Motion In Limine.

11:29AM  7           To the extent it has real relevance and

11:29AM  8   application to the issues before the Jury,

11:29AM  9   notwithstanding it may have application beyond that to

11:29AM 10   the equitable defenses, I'll deny the Motion In Limine.

11:29AM 11   And as to those that fall between the cracks that both

11:29AM 12   sides can't agree on what they are, I'll take them up

11:29AM 13   the morning before as a part of the actual handling the

11:29AM 14   issues in the trial itself.

11:29AM 15           MR. VERHOEVEN:   Thank you, Your Honor.

11:29AM 16           THE COURT:   All right.  Those are all

11:29AM 17   that I have of TiVo's Motions In Limine.

11:29AM 18           Before we get into -- well, next I intend

11:29AM 19   to go to the disputed exhibit objections.  Before we do

11:30AM 20   that, I'm going to break for lunch.  I'm going to give

11:30AM 21   you -- I'm going to give both sides an hour and a half.

11:30AM 22   I'm not going to suggest that you have a leisurely

11:30AM 23   lunch for an hour and a half.  I'm going to suggest

11:30AM 24   that you have a very expedited lunch and you use an

11:30AM 25   hour or so of that time to meet and confer further

11:30AM  1    about these exhibit objections.

11:30AM  2                We all know there have been some stops

11:30AM  3    and starts in this process and perhaps there otherwise

11:30AM  4    would have been more meeting and conferring than there

11:30AM  5    has been up until now, so I'm going to give you an

11:30AM  6    extra long lunch hour to try and catch up on some of

11:30AM  7    that.  So with that, I'll hear from the parties as to

11:30AM  8    any intervening agreements or resolutions that may have

11:30AM  9    been reached when we come back at one o'clock, but

11:30AM  10   between now and then we stand in recess for lunch.

11:30AM  11               COURT SECURITY OFFICER:  All rise.

01:30PM  12               (Lunch recess.)

01:30PM  13               COURT SECURITY OFFICER:  All rise.

01:30PM  14               THE COURT:  Be seated, please.  All

01:30PM  15   right, Counsel.  We're even later starting back than I

01:30PM  16   thought, but apparently you've been making progress on

01:30PM  17   exhibits, so the Court was inclined to give you time to

01:30PM  18   continue to work.

01:30PM  19               Why don't I get a brief report from both

01:30PM  20   sides as to what the status of the exhibit objections

01:31PM  21   is at this time.

01:31PM  22               MS. DUCCA:  Good afternoon, Your Honor.

01:31PM  23   Marissa Ducca from Quinn, Emanuel for Motorola and Time

01:31PM  24   Warner Cable.

01:31PM  25               I'm happy to report that we have an

| | | |
|---|---|---|
| 01:31PM | 1 | agreement on quite a few of TiVo's objections to |
| 01:31PM | 2 | Motorola's exhibits. |
| 01:31PM | 3 | THE COURT:   All right. |
| 01:31PM | 4 | MS. DUCCA:   We have an agreement on |
| 01:31PM | 5 | objection categories 1. |
| 01:31PM | 6 | THE COURT:   Just a minute.  Let me get |
| 01:31PM | 7 | there. |
| 01:31PM | 8 | MS. DUCCA:  Okay. |
| 01:31PM | 9 | THE COURT:   These are TiVo's objections |
| 01:31PM | 10 | to Motorola's? |
| 01:31PM | 11 | MS. DUCCA:  That's right, Your Honor. |
| 01:31PM | 12 | THE COURT:   Okay.  Go ahead. |
| 01:31PM | 13 | MS. DUCCA:  1.  Category 2. |
| 01:31PM | 14 | THE COURT:   Now, when you say you have |
| 01:31PM | 15 | agreement, you want to tell me what the agreement is, |
| 01:31PM | 16 | whether something is being withdrawn or whether an |
| 01:31PM | 17 | object -- or whether documents agreed to be admitted? |
| 01:31PM | 18 | MS. DUCCA:  Absolutely. |
| 01:31PM | 19 | THE COURT:   Let's get a little -- a |
| 01:31PM | 20 | little more specific. |
| 01:31PM | 21 | MS. DUCCA:   With regard -- |
| 01:32PM | 22 | THE COURT:   Go ahead. |
| 01:32PM | 23 | MS. DUCCA:   -- excuse me.  With regard to |
| 01:32PM | 24 | category 1, objection 1, these are the exhibits needing |
| 01:32PM | 25 | redaction pursuant to TiVo's Motion In Limine No. 1. |

01:32PM 1    Motorola and Time Warner Cable have withdrawn Exhibits

01:32PM 2    PX-86, PX-101, PX-105, PX-171, PX-181, PX-248, and

01:32PM 3    PX-251.

01:32PM 4              We've also agreed to produce redacted

01:32PM 5    versions, in light of Your Honor's Order, on the Motion

01:32PM 6    In Limine by Friday.

01:32PM 7              THE COURT:   Redacted on the other ones?

01:32PM 8              MS. DUCCA:   Correct.

01:32PM 9              THE COURT:   And that would be, for the

01:32PM 10   record, PX-87, 97, 128, 129, 147, 154, 160, 162, 164,

01:32PM 11   165, 166, 167, 202, 209, 210, 211, 230, 231, 232, 233,

01:33PM 12   234, 249, and 250; is that --

01:33PM 13             MS. DUCCA:   That is --

01:33PM 14             THE COURT:   -- right?

01:33PM 15             MS. DUCCA:   -- that is correct, Your

01:33PM 16   Honor.

01:33PM 17             THE COURT:   Okay.  Is that TiVo's

01:33PM 18   agreement?  Can we confirm that?

01:33PM 19             MR. WERNER:  Your Honor, I was under the

01:33PM 20   impression that many were -- many other additional

01:33PM 21   exhibits have been withdrawn and that we were down to

01:33PM 22   three.

01:33PM 23             MS. DUCCA:   That may be correct.

01:33PM 24             MR. WERNER:  There were -- there's other

01:33PM 25   motions pending, this is Tom Werner, Irell & Manella,

01:33PM   1     Counsel for TiVo.  My understanding is that in

01:33PM   2     connection with -- through other motions there --

01:33PM   3                 THE COURT:  Why don't you step to the

01:33PM   4     podium, Counsel.  You can both stand --

01:33PM   5                 MR. WERNER:  Well, thank you --

01:33PM   6                 THE COURT:  -- there.

01:33PM   7                 MR. WERNER:  -- Your Honor.

01:33PM   8                 THE COURT:  And if you would for the

01:33PM   9     court reporter, identify yourself again.

01:33PM  10                 MR. WERNER:  Yes, Your Honor.  This is

01:33PM  11     Tom Werner with Irell & Manella, Counsel for TiVo.

01:33PM  12                 With respect to objection category 1, the

01:34PM  13     agreement that has been reached is that we will

01:34PM  14     receive, if you don't mind, we will receive redacted

01:34PM  15     copies of the remaining trial exhibits corresponding to

01:34PM  16     documents produced under the Bates number I&M, I

01:34PM  17     ampersand M, on Friday.

01:34PM  18                 Pursuant to TiVo's objection No. 2,

01:34PM  19     objection 02, all but three of those I&M documents have

01:34PM  20     been withdrawn.  I would need to refer to my database

01:34PM  21     to identify those.  I could do that briefly, if you

01:34PM  22     want, for the record or we could move along here, we

01:34PM  23     could do another submission updating Your Honor with

01:34PM  24     the specifics.

01:35PM  25                 THE COURT:  You know, I think it's

01:35PM  1    better if we get specific right now and get it on the

01:35PM  2    record.

01:35PM  3                    MR. WERNER:   So Your Honor, with respect

01:35PM  4    to trial exhibits that are subject to TiVo's objections

01:35PM  5    1 and 2, we have the agreement reflected earlier that

01:35PM  6    we receive redacted copies of these I&M documents.  And

01:35PM  7    the remaining I&M documents on the trial exhibit list

01:35PM  8    are PX-87, PX-154, and PX-162.

01:36PM  9                    THE COURT:   And you're telling me that

01:36PM 10    those are the ones to be redacted, the remainder have

01:36PM 11    been withdrawn?

01:36PM 12                    MR. WERNER:   The remainder of the I&M

01:36PM 13    documents have been withdrawn, that is -- that is my

01:36PM 14    understanding and basically the information that I

01:36PM 15    received.

01:36PM 16                    MS. DUCCA:   Your Honor, may I?

01:36PM 17                    THE COURT:   Yes, please.

01:36PM 18                    MS. DUCCA:   In the past several days we

01:36PM 19    have gone to great lengths to reduce our exhibit list

01:36PM 20    to a -- to a very small number.  In the process we've

01:36PM 21    withdrawn many of the exhibits that TiVo has been

01:36PM 22    objecting to.  I have no reason to doubt what Mr.

01:36PM 23    Werner is saying and I've been able to verify that that

01:36PM 24    is correct.

01:36PM 25                    The only three remaining exhibits that

| | | |
|---|---|---|
| 01:36PM | 1 | will need to be redacted on Friday are PX-87, PX-154, |
| 01:36PM | 2 | and PX-162. |
| 01:36PM | 3 | THE COURT:   All right. |
| 01:37PM | 4 | MR. WERNER:   That takes care of |
| 01:37PM | 5 | objections 1 and 2. |
| 01:37PM | 6 | THE COURT:   What about category 3? |
| 01:37PM | 7 | MR. WERNER:   Would you prefer, Your |
| 01:37PM | 8 | Honor, to address only those that have been resolved |
| 01:37PM | 9 | and come back to those that remain in dispute? |
| 01:37PM | 10 | THE COURT:   Well, let's first cover |
| 01:37PM | 11 | what's been withdrawn -- |
| 01:37PM | 12 | MR. WERNER:  Okay. |
| 01:37PM | 13 | THE COURT:   -- or resolved and then |
| 01:37PM | 14 | depending on the scope of it, we'll come back or we'll |
| 01:37PM | 15 | go ahead. |
| 01:37PM | 16 | MR. WERNER:  I see. |
| 01:37PM | 17 | THE COURT:   We'll take them up on a |
| 01:37PM | 18 | case-by-case basis. |
| 01:37PM | 19 | MR. WERNER:   And if I may, Your Honor, |
| 01:37PM | 20 | since these are our objections -- thank you.  So |
| 01:37PM | 21 | objection category 11. |
| 01:37PM | 22 | THE COURT:   Wait a minute.  What about |
| 01:37PM | 23 | category 3? |
| 01:37PM | 24 | MR. WERNER:  There remains a live dispute |
| 01:37PM | 25 | with respect to the documents subject to that |

01:37PM 1   objection.

01:37PM 2                    THE COURT:   Okay.

01:37PM 3                    MR. WERNER:   Same -- the same applies to

01:37PM 4   4 through 10.

01:37PM 5                    MS. DUCCA:   Your Honor, we have

01:37PM 6   withdrawn some exhibits that are subject to the

01:37PM 7   objections in which we have them, if you'd like us

01:37PM 8   to --

01:37PM 9                    MR. WERNER:   But not all of them.  So we

01:38PM 10  have a reduced set from what is reflected in the

01:38PM 11  filings that Your Honor has because of exhibits that

01:38PM 12  have been withdrawn or because TiVo withdrew its

01:38PM 13  objection --

01:38PM 14                    THE COURT:   All right.  Well, let's do

01:38PM 15  this, let's -- let's go next to objection category 3.

01:38PM 16  Let's identify what's been withdrawn or disposed of

01:38PM 17  otherwise and then we'll take up what's left.  Then

01:38PM 18  we'll go to category 4 and do the same thing over

01:38PM 19  again.

01:38PM 20                    MS. DUCCA:   Your Honor, with respect to

01:38PM 21  objection category 3, Motorola and Time Warner Cable

01:38PM 22  have withdrawn Exhibits PX-968, PX-1809, PX-2634, and

01:38PM 23  PX-2635.

01:38PM 24                    The only remaining exhibit that is in

01:38PM 25  dispute with respect to objection 3 is Exhibit PX-1029.

01:38PM  1           THE COURT:   All right.   Then let's take

01:39PM  2  up PX-1029, the e-mail from Mr. Yang.

01:39PM  3           MR. IANCU:   Your Honor, PX-1029 is the

01:39PM  4  very -- one of the very documents that we talked about

01:39PM  5  at the last pretrial that was subject to TiVo's Motion

01:39PM  6  In Limine No. 2, which was about the -- the attempted

01:39PM  7  use of such documents to show a culture of copying.

01:39PM  8  This was the clearest example of such a document, which

01:39PM  9  was the -- the e-mail from Mr. Yang that said that a

01:39PM  10  commercial aspect not having to do with this case, what

01:39PM  11  can we copy from it.   And that was the document, as we

01:39PM  12  discussed some time ago, that came after the date of

01:39PM  13  the patents in suit, so it had no particular relevance.

01:39PM  14  It was directly and expressly subject to the Motion In

01:40PM  15  Limine which Your Honor granted and it should be out.

01:40PM  16           THE COURT:   All right.   Motorola's

01:40PM  17  response?

01:40PM  18           MR. WHITEHURST:   Good afternoon, Your

01:40PM  19  Honor.   Alan Whitehurst, Quinn, Emanuel for Motorola

01:40PM  20  and Time Warner Cable.

01:40PM  21           And if we could put this document up on

01:40PM  22  the screen, please, real quickly.   Your Honor, Motorola

01:40PM  23  does not propose using this exhibit as it was

01:40PM  24  originally submitted.   We are currently proposing that

01:40PM  25  the exhibit be redacted so that only the top part of

01:40PM 1  the exhibit, the e-mail from Yang to individuals at

01:40PM 2  TiVo, be used at trial.

01:40PM 3        As you mentioned earlier today, all

01:40PM 4  exhibits they're going to have some prejudicial effect.

01:40PM 5  We believe here the probative value as redacted would

01:40PM 6  outweigh any possible prejudice.  As you know, one of

01:41PM 7  the issues in this case is what did Mr. Yang know and

01:41PM 8  what did he communicate to TiVo.  And this is directly

01:41PM 9  relevant to Motorola's improper inventorship, unjust

01:41PM 10  enrichment, and derivation claims --

01:41PM 11        THE COURT:  Back up just a minute,

01:41PM 12  Counsel.  Tell me again what you're proposing to redact

01:41PM 13  and what you're proposing not to redact in this.

01:41PM 14        MR. WHITEHURST:  Yes, Your Honor.  We're

01:41PM 15  proposing to redact everything from the at 07:27 down.

01:41PM 16  So that all that would be left would be the from line,

01:41PM 17  from Geoff Yang to the individual, through the content

01:41PM 18  of his e-mail and his signature, Geoff.

01:41PM 19        Now, the reason why we believe that the

01:41PM 20  probative value of this redacted exhibit outweighs the

01:41PM 21  prejudice is because one of the issues is whether Yang

01:41PM 22  had any communication or direction or control over

01:42PM 23  individuals at TiVo.  The evidence, we believe, is

01:42PM 24  going to show that Mr. Yang knew about iMedia's home

01:42PM 25  video server, he learned about iMedia's technology, and

01:42PM   1   then there was a communication path between him and

01:42PM   2   TiVo.  And that's exactly what this e-mail is showing,

01:42PM   3   that not only was he communicating with TiVo, but he

01:42PM   4   was communicating with key individuals and engineers at

01:42PM   5   TiVo that were in a position to change their products

01:42PM   6   and incorporate certain technology.

01:42PM   7               And in this e-mail Mr. Yang is

01:42PM   8   instructing TiVo to make certain changes to its

01:42PM   9   products and we believe that's directly relevant to

01:42PM  10   Motorola's claims in this litigation.

01:42PM  11               THE COURT:   All right.  Let me hear from

01:42PM  12   TiVo.

01:42PM  13               MR. LIPNER:   So Your Honor, as you can

01:42PM  14   see, what they're proposing to redact is to make the

01:42PM  15   document worse by highlighting only the prejudicial

01:42PM  16   parts, so I don't think that solves anything.  The

01:43PM  17   document has no probative -- no probative value.  It

01:43PM  18   postdates the TiVo patents.  So what Mr. Yang is doing

01:43PM  19   in a totally separate situation has nothing to do with

01:43PM  20   what he was doing before the TiVo patents were filed.

01:43PM  21               And in fact, this circles us back right

01:43PM  22   to the Motion In Limine.  What they're attempting to do

01:43PM  23   is use a different aspect of Mr. Yang's actions at TiVo

01:43PM  24   to try to prove up something that happened earlier in a

01:43PM  25   totally different situation, that's exactly what Your

| | | |
|---|---|---|
| 01:43PM | 1 | Honor excluded in the Motions In Limine, that is the |
| 01:43PM | 2 | culture of copying. |
| 01:43PM | 3 | THE COURT:   You're standing up, do you |
| 01:43PM | 4 | have something else to add? |
| | 5 | MR. LIPNER:  I have nothing else to add. |
| | 6 | I wanted to see if Your Honor had any further |
| | 7 | questions. |
| | 8 | THE COURT:  Let's see if your opposing |
| | 9 | Counsel has any -- |
| 01:44PM | 10 | MR. WHITEHURST:  I was standing only to |
| 01:44PM | 11 | see if you would allow me to add one -- one final |
| 01:44PM | 12 | comment. |
| 01:44PM | 13 | THE COURT:   If you have one final |
| 01:44PM | 14 | comment, you may make it. |
| 01:44PM | 15 | MR. WHITEHURST:  Your Honor, we |
| 01:44PM | 16 | understand Motion In -- your ruling in Motion In Limine |
| 01:44PM | 17 | No. 2 going to a culture of copying at TiVo.  We |
| 01:44PM | 18 | believe as redacting we've removed any possible |
| 01:44PM | 19 | reference to copying at TiVo.  The original e-mail was |
| 01:44PM | 20 | from a Stewart Alsop to Mr. Yang talking about |
| 01:44PM | 21 | activities at TiVo, that's why we've redacted what |
| 01:44PM | 22 | we're -- what we're proposing to redact, leaving just |
| 01:44PM | 23 | Mr. Yang's instructions to TiVo to show in the case |
| 01:44PM | 24 | that he was communicating with TiVo; he did have a |
| 01:44PM | 25 | communication with TiVo; and he even went so far as to |

01:44PM  1   comment on the products and what changes should be made

01:44PM  2   to the products.

01:44PM  3              Thank you, Your Honor.

01:44PM  4              THE COURT:   All right.  I'm going to

01:44PM  5   grant the objection to PX-1020, it's excluded.  I think

01:45PM  6   the prejudicial effect is significant.  And I think

01:45PM  7   that comports with my ruling on TiVo's Motion In Limine

01:45PM  8   No. 2.

01:45PM  9              All right.  Do we have anything else

01:45PM  10  under exhibit objection category 3?

01:45PM  11             MR. LIPNER:  No, Your Honor.

01:45PM  12             THE COURT:  Let's go to 4.  Tell me what

01:45PM  13  we've solved first and then we'll take up what's

01:45PM  14  unsolved.

01:45PM  15             MS. DUCCA:  Your Honor, with respect to

01:45PM  16  exhibit category 4, Motorola and Time Warner Cable have

01:45PM  17  withdrawn Exhibits PX-719, PX-739, PX-742, PX-897, and

01:45PM  18  PX-935.  And excuse me, I -- I did that in reverse, I

01:45PM  19  apologize, Your Honor.  Those are the exhibits that are

01:45PM  20  still at issue.

01:45PM  21             With respect to objection 4, we have

01:46PM  22  withdrawn PX-68, 740, and 2641.

01:46PM  23             THE COURT:   All right.  So we still have

01:46PM  24  719, 739, 742, 897, and 935.

01:46PM  25             MS. DUCCA:   That is correct, Your Honor.

01:46PM 1          THE COURT:   All right.  Let's take those

01:46PM 2   up and I'll hear from TiVo as to the basis of their

01:46PM 3   objections.

01:46PM 4          MR. LIPNER:   Your Honor, we did not

01:46PM 5   have -- well, we discussed this, we did not have the

01:46PM 6   opportunity to get those final numbers at any time

01:46PM 7   before right now.  The general objection to this is

01:46PM 8   very simple, which is these documents appear to us to

01:46PM 9   be related only to the Horizon defense which Your Honor

01:46PM 10  excluded this morning.  We could not tell what -- for

01:46PM 11  any of these documents, any additional relevance for

01:47PM 12  which they could be admissible at trial and that is the

01:47PM 13  reason that we are objecting to them.

01:47PM 14         If there's some colorable explanation

01:47PM 15  that they are relevant to something, we can -- we can

01:47PM 16  discuss that.  But as far as we can tell, every one of

01:47PM 17  these documents relates to the Horizon license defense.

01:47PM 18         THE COURT:   Well, to the extent they

01:47PM 19  relate solely to that, they're going to be excluded,

01:47PM 20  but I'll hear from Motorola if they believe there's

01:47PM 21  some other basis outside of that that would allow them

01:47PM 22  to survive.

01:47PM 23         Mr. Cunningham?

01:47PM 24         MR. CUNNINGHAM:   Your Honor, good

01:47PM 25  afternoon.  The -- the relevance -- so these documents

01:47PM 1  relate to the commercial relationship that TiVo and

01:47PM 2  Motorola had in that time frame, TiVo's work with

01:47PM 3  Motorola on the Horizon Developer program.  So the

01:48PM 4  license itself is not going to be an issue based on

01:48PM 5  your earlier ruling this morning, but the fact that

01:48PM 6  Motorola and TiVo had a commercial relationship in the

01:48PM 7  past is relevant to Georgia-Pacific and damages and

01:48PM 8  that's the reason that they're being offered, just to

01:48PM 9  simply, you know, question our witnesses.

01:48PM 10          We have two who have -- who have

01:48PM 11  firsthand knowledge of TiVo's work on the Horizon

01:48PM 12  Development program who will say, yeah, sure we had a

01:48PM 13  commercial relationship with TiVo.  They worked on this

01:48PM 14  program with us, so did a lot of other people and we

01:48PM 15  believe that that's relevant to one of the -- at least

01:48PM 16  one of the commercial -- of the Georgia-Pacific

01:48PM 17  factors.

01:48PM 18          THE COURT:  All right.

01:48PM 19          MR. CUNNINGHAM:  And I'm happy, Your

01:48PM 20  Honor, to -- to meet and confer further with -- with

01:48PM 21  TiVo about the specific documents because it sounds

01:48PM 22  like this one didn't get fully vetted.  And -- and with

01:48PM 23  that, with what I just said in mind, whether we can

01:48PM 24  come to an agreement on the remaining documents, I

01:48PM 25  think we probably can.

01:48PM  1          THE COURT:   Well, I will say for

01:48PM  2   whatever assistance that may guide Counsel, I think

01:49PM  3   your point is well taken.  If it doesn't get into the

01:49PM  4   substance of the Horizon Developer agreement but just

01:49PM  5   shows a commercial relationship --

01:49PM  6          MR. CUNNINGHAM:   Right.

01:49PM  7          THE COURT:   -- I think it does relate to

01:49PM  8   one of the Georgia-Pacific factors.

01:49PM  9          MR. CUNNINGHAM:   Thank you, Your Honor.

01:49PM  10          THE COURT:   Let me ask this:  We've got

01:49PM  11   an awful lot of lawyers in this room.  Are there two

01:49PM  12   qualified people who can go somewhere else and work

01:49PM  13   through that issue while the rest of us continue to

01:49PM  14   make progress?  I hate to -- I really don't want to

01:49PM  15   stop the whole undertaking.  I would hope we could do

01:49PM  16   things at a couple different parallel levels at the

01:49PM  17   same time.

01:49PM  18          MR. CUNNINGHAM:   I think that's -- I

01:49PM  19   think we probably have more than two.

01:49PM  20          THE COURT:   Well, I'll authorize those

01:49PM  21   that can pursue that to excuse themselves and then

01:49PM  22   report back.  In the meantime, we'll -- we'll come back

01:49PM  23   to this.

01:49PM  24          MR. CUNNINGHAM:   All right.  Understood.

01:49PM  25          THE COURT:   Then in the meantime you'll

01:49PM  1  go forward with objection category 5.  Any agreements

01:50PM  2  to report here, Counsel?

01:50PM  3            MS. DUCCA:   I do, Your Honor.  Your

01:50PM  4  Honor, Motorola and Time Warner Cable through their

01:50PM  5  latest exhibit list have withdrawn a number of the

01:50PM  6  exhibits on -- that are at issue with the object --

01:50PM  7  objection -- objection 5.  Those exhibits that we have

01:50PM  8  withdrawn are --

01:50PM  9            THE COURT:   Now, this is not in reverse

01:50PM 10  order?

01:50PM 11            MS. DUCCA:   It is not, Your Honor.

01:50PM 12            THE COURT:   Got these in -- okay.  Go

01:50PM 13  ahead.

01:50PM 14            MS. DUCCA:   I'm being careful this time.

01:50PM 15  PX-86 is withdrawn.  PX-97, PX-101, PX-105, PX-128,

01:50PM 16  PX-129, PX-147, PX-160, PX-164, PX-165, PX-166, PX-167,

01:50PM 17  PX-171, PX-181, PX-202, PX-209, PX-210, PX-211, PX-230,

01:51PM 18  PX-231, PX-232, PX-233, PX-234, PX-248, PX-249, PX-250,

01:51PM 19  and PX-251.

01:51PM 20            THE COURT:   So that leaves 87, 154, and

01:51PM 21  162?

01:51PM 22            MS. DUCCA:   That is correct, Your Honor.

01:51PM 23            THE COURT:   All right.  Let me hear from

01:51PM 24  TiVo in regard to those surviving three exhibits

01:51PM 25  there -- the basis for their objection.

01:51PM 1          MS. GORDNIA:   Your Honor, Talin Gordnia

01:51PM 2   with Irell & Manella.

01:51PM 3          With respect to the remaining I&M

01:51PM 4   documents listed as Exhibits PX-87, 154, and 162, these

01:52PM 5   are among thousands of pages of documents that Motorola

01:52PM 6   had for over 10 months during the discovery period and

01:52PM 7   decided to produce to TiVo within a week of the

01:52PM 8   discovery deadline, after TiVo had already taken

01:52PM 9   depositions of the iMedia engineers.

01:52PM 10         In this -- in this case the parties

01:52PM 11  stipulated in the Rule 26(f) report to produce

01:52PM 12  documents received pursuant to subpoena within five

01:52PM 13  days.  It took Motorola 10 months, leading TiVo to

01:52PM 14  believe that either they would not rely on these

01:52PM 15  documents or that they would be withheld for privilege

01:52PM 16  reasons.

01:52PM 17         These documents later on appeared at a

01:52PM 18  few stages in interrogatory responses as part of a

01:52PM 19  listing of nearly 10,000 pages of documents allegedly

01:52PM 20  relating to the conception dates of Motorola's patents.

01:52PM 21  They appeared again as an undifferentiated mass in the

01:52PM 22  report of doctor -- rather Mr. Gray and even at his

01:53PM 23  deposition Mr. Gray was unable to differentiate between

01:53PM 24  the documents.

01:53PM 25         Up until just a few days ago, TiVo had no

01:53PM 1   insight into what documents of this list of 4000-plus

01:53PM 2   documents Motorola would rely on and it's unfair to

01:53PM 3   drop documents on your opponent close to the discovery

01:53PM 4   deadline when you've had it for over 10 months.

01:53PM 5            THE COURT:   So your objection doesn't go

01:53PM 6   to the substance of the documents themselves, it's the

01:53PM 7   timeliness of the production?

01:53PM 8            MS. GORDNIA:   Correct, and the fact that

01:53PM 9   they were among thousands of documents that were

01:53PM 10  undifferentiated for the length of the -- the case

01:53PM 11  throughout discovery.

01:53PM 12           THE COURT:   Tell me why notwithstanding

01:53PM 13  the lateness of their production you think they're

01:53PM 14  prejudicial, other than their being late.  Is there

01:53PM 15  another basis to argue prejudicial?

01:53PM 16           MS. GORDNIA:   Well, two of the documents

01:53PM 17  appear to be very similar on the surface.  It's titled

01:53PM 18  as a business productions document from iMedia.  As we

01:53PM 19  know, the iMedia conception is a disputed issue.  The

01:54PM 20  date of that conception is a disputed issue in terms of

01:54PM 21  the relevance of documents to that argument, they

01:54PM 22  should have been disclosed in a timely matter.  If they

01:54PM 23  have any relevance to the arguments that Motorola

01:54PM 24  intends to present to the Jury, we would have expected

01:54PM 25  them to present it much earlier and to differentiate

01:54PM   1    them.

01:54PM   2              And they -- the prejudice TiVo suffered

01:54PM   3    was that we were unable to pursue discovery and follow

01:54PM   4    up on these documents throughout the 10-month period

01:54PM   5    when we know that they had them, but they weren't

01:54PM   6    producing them within the five-day deadline that the

01:54PM   7    parties had stipulated to.

01:54PM   8              THE COURT:  All right.  Let me hear a

01:54PM   9    response from Motorola.

01:54PM   10             MR. CUNNINGHAM:  Your Honor, I'll make

01:54PM   11   this argument, then I promise I'll leave and do my

01:54PM   12   other -- the other job you assigned me to.

01:54PM   13             I want to back way up here because the

01:55PM   14   documents we're talking about are documents that were

01:55PM   15   in Irell's files for years.  So these were documents

01:55PM   16   that -- that Irell itself found in its own client file

01:55PM   17   archives.  I was involved in the -- the very tedious

01:55PM   18   and lengthy process of agreeing on the manner of how

01:55PM   19   Irell would produce its own files to Motorola's Counsel

01:55PM   20   in this case and -- and Mr. Lipner and I were involved

01:55PM   21   in those discussions.

01:55PM   22             It was ultimately decided that a

01:55PM   23   different team of Irell lawyers would look at these

01:55PM   24   documents to ensure that there weren't attorney-client

01:55PM   25   privileged documents for other clients, for other Irell

01:55PM 1   clients, within these documents.  And so after a period

01:55PM 2   of months, we obtained three bankers' boxes of files

01:55PM 3   from Irell of its old client files of iMedia.

01:55PM 4          The process was that those documents were

01:55PM 5   sent to an outside copy vendor who made a copy of the

01:56PM 6   documents and delivered the originals and the copies to

01:56PM 7   us at DLA Piper.  So we're talking about a set of

01:56PM 8   documents that came from Irell originally.

01:56PM 9          THE COURT:   I understand that.

01:56PM 10          MR. CUNNINGHAM:   And when we answered

01:56PM 11   interrogatories about conception, we listed a number of

01:56PM 12   these documents as part of our response to that

01:56PM 13   interrogatory.  Subsequently we realized, oh, gosh,

01:56PM 14   because of the way we agreed to do this, Irell probably

01:56PM 15   doesn't have a copy of these still, so we reproduced

01:56PM 16   them to Irell.  So if -- if there was a mistake there,

01:56PM 17   it was one that the lawyers made by not remembering or

01:56PM 18   realizing that -- that Irell didn't maintain a copy

01:56PM 19   when they sent us the documents.

01:56PM 20          We produced the -- we reproduced the

01:56PM 21   documents back to Irell 10 days before two of the

01:56PM 22   inventors were deposed in this case.  And I -- I and

01:57PM 23   another colleague of mine used a number of these

01:57PM 24   documents, authenticated a number of these documents at

01:57PM 25   those depositions.

01:57PM  1          So it's not a question of -- of a late

01:57PM  2  production of a massive undifferentiated documents, and

01:57PM  3  I'm not even sure what that means, it's a question of

01:57PM  4  files being reproduced to the firm that originally

01:57PM  5  produced them to us during the discovery period before

01:57PM  6  two of the three inventor depositions that were taken

01:57PM  7  in this case were taken.  The fourth inventor was never

01:57PM  8  deposed in this case at all, so that's -- that's

01:57PM  9  irrelevant.

01:57PM  10          The -- the fact is they had these

01:57PM  11  documents during the discovery period.  We used them

01:57PM  12  affirmatively in depositions of the inventors to

01:57PM  13  authenticate them.  They appeared on our trial exhibit

01:57PM  14  list.  They appear in summary judgment motions in

01:57PM  15  oppositions that we filed.

01:57PM  16          There's simply nothing about this

01:57PM  17  production that can be said as being -- rising to the

01:57PM  18  extreme level of exclusion of evidence of conception of

01:58PM  19  these patents that Irell itself helped to create.

01:58PM  20          Now, understanding your ruling at the

01:58PM  21  other pretrial conference, we will remove the

01:58PM  22  references to the Irell firm name on these documents,

01:58PM  23  to the extent there are any, but the documents

01:58PM  24  themselves were produced timely during the discovery

01:58PM  25  periods.  Witnesses were questioned about them, they

01:58PM 1   were properly put on our exhibit list, etcetera.

01:58PM 2              So I don't see the prejudice here

01:58PM 3   certainly and certainly not an extreme prejudice that

01:58PM 4   would lead to the exclusion of evidence related to

01:58PM 5   conception.

01:58PM 6              THE COURT:   All right.  Anything else

01:58PM 7   from TiVo?

01:58PM 8              MS. GORDNIA:  Yes, Your Honor, briefly.

01:58PM 9   In response to the, oh, gosh, argument, the --

01:58PM 10             THE COURT:   The response to the what

01:58PM 11  argument?

01:58PM 12             MS. GORDNIA:  The oh, gosh, argument.

01:58PM 13             THE COURT:   Oh, okay.

01:58PM 14             MS. GORDNIA:  Oh, gosh, they don't have

01:58PM 15  these documents.  With all due respect, the parties met

01:58PM 16  and at length discussed the process by which these

01:58PM 17  documents would be produced.  These documents were in

01:58PM 18  deep storage.  No one on the Irell -- Irell & Manella

01:59PM 19  TiVo team has -- has seen these documents until they

01:59PM 20  were produced to us.

01:59PM 21             Counsel for Motorola and Time Warner

01:59PM 22  Cable knew this.  They were aware that we were walled

01:59PM 23  off and that none -- none of us would be able to see

01:59PM 24  these documents.  So for them to say that we had it

01:59PM 25  during the discovery period is simply inaccurate.

01:59PM   1         Second, with respect to these documents

01:59PM   2   being cited in interrogatory responses, they were cited

01:59PM   3   for the first time in December of 2012 without being

01:59PM   4   produced to us.  They were cited again in January of

01:59PM   5   2012 (sic) with about 10,000 documents all pertaining

01:59PM   6   allegedly to the conception dates of the Motorola

01:59PM   7   patents.

01:59PM   8         This is not the type of disclosure that

01:59PM   9   would be fair.  This isn't playing by the rules.  You

01:59PM  10   don't keep documents that you intend to rely on for the

01:59PM  11   conception dates of your patents until just a few days

01:59PM  12   before the discovery deadline, within a few days of the

01:59PM  13   depositions of the inventors, within one day of one of

01:59PM  14   them.  So this is just a fundamental fairness issue

02:00PM  15   and --

02:00PM  16         THE COURT:  You're telling me that given

02:00PM  17   that they were received before the deposition of the

02:00PM  18   inventors that were deposed, that there wasn't an

02:00PM  19   opportunity to review them and take them into account?

02:00PM  20         MS. GORDNIA:  One deposition occurred the

02:00PM  21   following day after we received the documents.  There

02:00PM  22   were four -- over 4000 pages.  The second deposition

02:00PM  23   occurred just at the end of the week.  Other

02:00PM  24   depositions had occurred before.

02:00PM  25         So there's no reason why these documents

02:00PM 1    wouldn't have been produced back in 2012 within five

02:00PM 2    days of having been received by Motorola's Counsel.

02:00PM 3    It's unclear to us why they sat on them for 10 months

02:00PM 4    and suddenly now intend to rely on them at trial.

02:00PM 5                    THE COURT:  All right.

02:00PM 6                    MS. GORDNIA:  Thank you, Your Honor.

02:00PM 7                    THE COURT:  Thank you.

02:00PM 8                    MR. CUNNINGHAM:  Your Honor, may I

02:00PM 9    correct one thing that was just said?

02:00PM 10                   THE COURT:  Briefly.

02:00PM 11                   MR. CUNNINGHAM:  Thank you.  Your Honor,

02:00PM 12   to be very clear, the documents were produced 10 days

02:00PM 13   before the deposition of Mr. Krause and 11 days before

02:00PM 14   the deposition of Dr. Tom, so I don't know where the

02:01PM 15   next day came from, but that's -- that's the reality of

02:01PM 16   the situation.

02:01PM 17                   MS. GORDNIA:  Your Honor, I misspoke, I'm

02:01PM 18   sorry about that.  My -- my team just confirmed it's 11

02:01PM 19   days.

02:01PM 20                   THE COURT:  All right.  Thank you.  All

02:01PM 21   right.  The -- TiVo's objections to PX-87, 154, and 162

02:01PM 22   are overruled.

02:01PM 23                   Let's go to category 6.

02:01PM 24                   MS. DUCCA:  Your Honor, with respect to

02:01PM 25   category 6, Motorola and Time Warner Cable have

02:01PM 1  withdrawn Exhibit 2654.  The remaining four exhibits,

02:01PM 2  which are PX-857, 1707, 2644, and 2645, I understand

02:01PM 3  are still in dispute.

02:01PM 4              THE COURT:  All right.  Let me hear from

02:02PM 5  TiVo on those four surviving exhibits.

02:02PM 6              MS. GORDNIA:  Your Honor, these are the

02:02PM 7  same documents we discussed briefly this morning.  The

02:02PM 8  ReplayTV physical set-top box, the code, and in

02:02PM 9  addition here there's -- there's also an advertisement

02:02PM 10 that's an artist's rendering of a ReplayTV box.

02:02PM 11             So just to briefly go over the arguments

02:02PM 12 from this morning, the set-top box and the code are

02:02PM 13 both from 1999 or later, we're not sure exactly of the

02:02PM 14 dates, but we know that they're both for commercial

02:02PM 15 shipping units of ReplayTV and ReplayTV didn't begin to

02:02PM 16 ship until 1999.  So for that reason, they're not prior

02:02PM 17 art to TiVo's '389 patent.

02:02PM 18             Outside of that, they have no relevance

02:03PM 19 and should not be placed before the Jury and mistaken

02:03PM 20 for prior art when they're, in fact, too late to be

02:03PM 21 prior art to the patent.

02:03PM 22             THE COURT:  All right.  Let me hear a

02:03PM 23 response to the relevance argument.

02:03PM 24             MR. TRAUPMAN:  Yes, Your Honor, Matt

02:03PM 25 Traupman on behalf of Motorola.

02:03PM 1          We are alleging that the ReplayTV is

02:03PM 2    prior art under Section 102(g).  And under 102(g) there

02:03PM 3    are two dates that are important under the statute; the

02:03PM 4    date of conception and the date of reduction of

02:03PM 5    practice.

02:03PM 6          We're contending that establish the date

02:03PM 7    of conception using another ReplayTV document, the

02:03PM 8    software specification that's written in 1997 that

02:03PM 9    shows that ReplayTV had conceived of their DVR before

02:03PM 10   TiVo conceived of their DVR.  Now, under the law under

02:03PM 11   Section 102(g), we need to show a diligent -- diligent

02:04PM 12   efforts to reduce that invention to practice.  That can

02:04PM 13   happen under the law after TiVo's conception.  It's the

02:04PM 14   comparing the relative conception dates which we

02:04PM 15   believe we are -- ReplayTV is first.

02:04PM 16          So this evidence, this source code and

02:04PM 17   this box shows ReplayTV's actual reduction in practice,

02:04PM 18   therefore perfecting our claim that it's prior art

02:04PM 19   under Section 102(g).

02:04PM 20          There was a mention on artist rendering,

02:04PM 21   that was the exhibit that Ms. Ducca mentioned was

02:04PM 22   withdrawn, so we're just talking about three exhibits

02:04PM 23   that relate to source code and one that relates to the

02:04PM 24   physical device.

02:04PM 25          THE COURT:   Okay.  So the artist's

02:04PM  1  rendition is out?

02:04PM  2           MR. TRAUPMAN:  Yes, Your Honor.

02:04PM  3           THE COURT:   All right.  Additional from

02:04PM  4  TiVo?

02:04PM  5           MS. GORDNIA:   Your Honor, everything

02:04PM  6  that Counsel said doesn't provide any sort of basis for

02:04PM  7  the relevancy of the actual box.  The box itself was

02:04PM  8  offered for inspection, but Mr. Gray, Motorola and Time

02:04PM  9  Warner Cable's expert, said that he didn't do any

02:04PM  10  analysis of the box itself.  So the arguments that

02:05PM  11  Counsel just referenced can be made without necessarily

02:05PM  12  bringing a DVR that's from 1999 or later into the

02:05PM  13  courtroom and then talking around it about prior art

02:05PM  14  and possibly leading some Jurors to believe that this,

02:05PM  15  in fact, is the box that predates the patent when we

02:05PM  16  know it's not and the code is in the same -- same

02:05PM  17  situation.

02:05PM  18           THE COURT:   But do you -- what's your

02:05PM  19  response to their argument that their conception could

02:05PM  20  predate the patent as long as they show that they

02:05PM  21  continued to work on it without abandoning it and it

02:05PM  22  ripened into this at a later date?

02:05PM  23           MS. GORDNIA:   The response is that they

02:05PM  24  can still offer those types of arguments without

02:05PM  25  necessarily bringing a commercial unit into the

02:05PM   1   courtroom and parading it as though it's prior art.

02:05PM   2   There's potentially other relevant -- other evidence

02:06PM   3   that they could cite to without necessarily bringing in

02:06PM   4   a device.

02:06PM   5           And if they were to do so, the Jury

02:06PM   6   should be instructed that the device itself is not

02:06PM   7   prior art and there should be some sort of limiting

02:06PM   8   instruction for the Jury so as to avoid any confusion

02:06PM   9   and prejudice to TiVo.

02:06PM   10           THE COURT:   All right.   Motorola, what's

02:06PM   11   your response to that, that you can do exactly what you

02:06PM   12   want to do, you just don't have to wave the box in

02:06PM   13   front of the Jury?

02:06PM   14           MR. TRAUPMAN:   Your Honor, as I

02:06PM   15   mentioned, Section 102(g) requires that we show that

02:06PM   16   the invention was actually reduced to practice.   I

02:06PM   17   can't think of a better way of showing that the

02:06PM   18   invention was actually reduced to practice than

02:06PM   19   bringing it in front -- a box in front of the Jury.

02:06PM   20   That is the same invention that was first conceived of

02:06PM   21   in the ReplayTV software specification from 1997.   It

02:06PM   22   very clearly talks about all the features that end up

02:06PM   23   maturing into this box.

02:06PM   24           This shows the box as well as the source

02:07PM   25   code shows that ReplayTV didn't just have some idea in

02:07PM    1    their mind, they followed through with it and they made

02:07PM    2    an actual -- an actual device and that is a prior

02:07PM    3    invention under Section 102(g).

02:07PM    4              MR. BIRNHOLZ:   Your Honor, could I add

02:07PM    5    something on behalf of TiVo, briefly?

02:07PM    6              THE COURT:   Briefly.

02:07PM    7              MR. BIRNHOLZ:  That the --

02:07PM    8              THE COURT:  Go to the podium --

02:07PM    9              MR. BIRNHOLZ:  -- Replay --

02:07PM   10              THE COURT:  -- if you're --

02:07PM   11              MR. BIRNHOLZ:   Thank you, Your Honor.

02:07PM   12    The ReplayTV box was -- has been admitted that it does

02:07PM   13    not have the automatic flow control of the '389 patent.

02:07PM   14    So to talk about this reduction of practice of the

02:07PM   15    invention, what invention are we talking about?

02:07PM   16              There's no dispute that ReplayTV had a

02:07PM   17    product and Your Honor is exactly right, the issue is

02:07PM   18    you shouldn't be able to wave that box in front of the

02:07PM   19    Jury and say this box here that's in front of you,

02:07PM   20    which we know shipped in 1999 at the earliest is prior

02:07PM   21    art.  It's not.  The code that's on that box is not

02:08PM   22    prior art because that shipped much later in 1999, so

02:08PM   23    that's really what's going on here.

02:08PM   24              They'll be able to use whatever

02:08PM   25    appropriate arguments there are on ReplayTV, but I

02:08PM 1    don't think there are any because the box and the code

02:08PM 2    are too late.

02:08PM 3              THE COURT:   Well, it's not the date,

02:08PM 4    Counsel.  I mean, they've got the argument that their

02:08PM 5    conception predates yours and they just didn't reduce

02:08PM 6    it to practice until later and that this is evidence of

02:08PM 7    it being reduced to practice.  But I thought you were

02:08PM 8    going to tell me that these exhibits don't embody the

02:08PM 9    conception that's at issue here.  Now, that -- that

02:08PM 10   would be something I'd be interested in knowing.

02:08PM 11             MR. BIRNHOLZ:   The issue is it's

02:08PM 12   what's -- the conception of what, Your Honor?  They

02:08PM 13   admit that there's no flow control.  So if we're

02:08PM 14   talking about whatever ReplayTV did, that's different

02:08PM 15   than the '389 patent.  It's not in dispute that they

02:08PM 16   didn't -- that the box itself doesn't have the flow

02:09PM 17   control of the '389 patent.

02:09PM 18             THE COURT:   Motorola, is that true?

02:09PM 19             MR. TRAUPMAN:   Your Honor, we're using

02:09PM 20   ReplayTV as an obviousness reference, combining it

02:09PM 21   with -- with the Krause patents and other secondary

02:09PM 22   references.  So yes, when you're dealing with

02:09PM 23   obviousness by definition there are some limitations of

02:09PM 24   the patent that aren't present in the claims.  That

02:09PM 25   does not make it not prior art.

02:09PM 1          We have, you know, in -- Mr. Gray, our

02:09PM 2   expert, explained why it would have been obvious to

02:09PM 3   modify the ReplayTV device so that it does practice

02:09PM 4   flow control.  That's quintessential obviousness, Your

02:09PM 5   Honor.

02:09PM 6          THE COURT:   All right.  I understand

02:09PM 7   this is a big part of the fight, but I also understand

02:09PM 8   that's why we have a Jury to weigh and allocate weight

02:09PM 9   to the evidence.  I'm going to overrule the objections

02:10PM 10  and allow these exhibits.

02:10PM 11         MR. BIRNHOLZ:   Your Honor, could I just

02:10PM 12  state for the record that we don't know what's inside

02:10PM 13  this box, that's the problem.

02:10PM 14         THE COURT:   You can state that for the

02:10PM 15  record, but my ruling stands.  You can certainly

02:10PM 16  cross-examine it at great length.

02:10PM 17         All right.  Let's go on to category 10.

02:10PM 18         MS. DUCCA:   Your Honor, if I may, I

02:10PM 19  believe we're on objection 7, unless --

02:10PM 20         THE COURT:   I'm sorry.

02:10PM 21         MR. BIRNHOLZ:   It's Motion In Limine 10.

02:10PM 22         THE COURT:   It's Motion In Limine 10.   I

02:10PM 23  looked at the wrong number.  It's category 7, you're

02:10PM 24  right, Counsel.

02:10PM 25         MS. DUCCA:   I don't believe we have any

02:10PM  1   agreements with respect to this objection category; is

02:10PM  2   that correct?

02:10PM  3            MR. BIRNHOLZ:  Yes, that's correct.

02:10PM  4            THE COURT:   All right.  Then I'll hear

02:10PM  5   the underlying objections.

02:10PM  6            MR. BIRNHOLZ:   Thank you, Your Honor.

02:10PM  7   So this objection category relates to Grass Valley and

02:10PM  8   the exhibits that are in this -- in this -- subject to

02:11PM  9   this objection are the source code for version 2.2

02:11PM 10   Grass Valley, that's Exhibit 1674.  Then there are

02:11PM 11   three physical devices, 1698, which is the one

02:11PM 12   purportedly shipped in May of '97.  The 1699 is a

02:11PM 13   device that we were never -- was never offered to us in

02:11PM 14   an operational stage, was never powered on.  And

02:11PM 15   Exhibit 1700 is a -- the so-called 2.2 device from

02:11PM 16   February 1998 or at least purported to be.

02:11PM 17            And the next set of exhibits, 1701 to

02:11PM 18   1706 are a bucket of parts.  And the last two exhibits

02:11PM 19   are simply all the codes cited in the expert reports.

02:11PM 20            And so let me take these, I guess, in

02:11PM 21   reverse order.  So in a -- in the category of exhibits

02:12PM 22   that's all the code cited in the expert report, we're

02:12PM 23   having a little difficulty responding to that and

02:12PM 24   objecting, they were obviously components and I don't

02:12PM 25   know what the other side's plan is in terms of putting

02:12PM  1   in all the code cited in the expert report.  It

02:12PM  2   embraces many pieces of code that are subject to

02:12PM  3   objection, such as Exhibit 1674, which is version 2.2

02:12PM  4   of the Grass Valley code.

02:12PM  5               And so this is the argument that I made

02:12PM  6   earlier, that version 2.2 of the code is too late to be

02:12PM  7   prior art.  It's too late to be prior art to the '195

02:12PM  8   patent because it's admitted to be -- have been

02:12PM  9   released October 24th, 1997 at the earliest and the

02:12PM 10   priority date for the '195 patent is October 10th.

02:12PM 11               It's also not prior art under Section

02:12PM 12   102(b) because it's not more than a year before TiVo's

02:12PM 13   effective filing date.  And it's also the same code

02:12PM 14   that has the dates that we mentioned earlier about

02:12PM 15   1998, 1999, and 2000.  And so the code is on its face,

02:13PM 16   version 2.2, is too late to be prior art so that code

02:13PM 17   should be excluded.

02:13PM 18               The devices are subject to the objection

02:13PM 19   that we made earlier, which was that we don't know what

02:13PM 20   condition these devices are in based on the condition

02:13PM 21   they're in today as compared to what they were during

02:13PM 22   the prior art period.  So there's not a proper

02:13PM 23   foundation or authentication for these device exhibits.

02:13PM 24   And it's a similar problem where there -- they should

02:13PM 25   not be able to parade devices in front of the Jury and

02:13PM  1    say they're prior art when we don't know if they're in

02:13PM  2    the same condition that they were in the prior art

02:13PM  3    period.

02:13PM  4              1699 was never offered in an operational

02:13PM  5    state.  I have no idea what it is and what it does.  So

02:13PM  6    that's an exhibit that is irrelevant and also subject

02:13PM  7    to 403.  Same for the bucket of parts, 1701 to 1706.

02:14PM  8              THE COURT:   What about 1674, 1698, and

02:14PM  9    1700?

02:14PM  10             MR. BIRNHOLZ:   So 1694 was the version

02:14PM  11   2.2 code with the late dates.

02:14PM  12             THE COURT:   1674?

02:14PM  13             MR. BIRNHOLZ:   1674, sorry, I misspoke,

02:14PM  14   Your Honor.

02:14PM  15             THE COURT:   Okay.

02:14PM  16             MR. BIRNHOLZ:   1698 is the so-called 2.1

02:14PM  17   device.  1699 -- we addressed 1700.  1700 is the other

02:14PM  18   device, the so-called 2.2 device.

02:14PM  19             THE COURT:   And which device is 1699?

02:14PM  20             MR. BIRNHOLZ:   That's a device that we

02:14PM  21   have no idea.  It's never been -- it was not offered in

02:14PM  22   an operational state and was never powered on.

02:14PM  23             THE COURT:   All right.  1698 and 1700

02:14PM  24   were in an operational state, I gather?

02:14PM  25             MR. BIRNHOLZ:   Those were inspected by

02:14PM  1    the experts, yes, Your Honor.

02:14PM  2              THE COURT:   Okay.  Let me hear a

02:14PM  3    response from Motorola.

02:15PM  4              MR. TRAUPMAN:   Yes, Your Honor.  Let me,

02:15PM  5    if I can, start with the source code first.  So the

02:15PM  6    '389 and '465 patents were both filed in July -- on

02:15PM  7    July 30th, 1998.  The evidence, even assuming Mr.

02:15PM  8    Birnholz's version of the facts, that source code was

02:15PM  9    released on October 24th, 1997.  That's several months

02:15PM 10    prior to the filing date of the TiVo patents.  It makes

02:15PM 11    that source code and the devices running the source

02:15PM 12    code prior art under 102(a) and 102(g).

02:15PM 13              Now, with respect to the '195 patent, the

02:15PM 14    '195 patent has a priority date of October 10th, 1995,

02:15PM 15    which is two weeks, obviously, after the October 20 --

02:15PM 16    two weeks before the October 24th date the version 2.2

02:15PM 17    code; however, we have press releases from September of

02:15PM 18    1997 from Grass Valley announcing the version 2.2 code

02:15PM 19    saying here's all the features set that's in the 2.2

02:15PM 20    code.

02:16PM 21              We have a Grass Valley witness, a former

02:16PM 22    Grass Valley employee, coming to testify at trial.  He

02:16PM 23    will say when Grass Valley makes a press release, and

02:16PM 24    this is actually in conjunction with a major trade show

02:16PM 25    where they're showing devices to their customers, when

02:16PM  1    Grass Valley makes a press release about that, that

02:16PM  2    means the code is set.  You're not going to -- they're

02:16PM  3    got going to go announcing features in a code -- code

02:16PM  4    before they know what the features are going to be.

02:16PM  5                   So we have a, at least under 102(g),

02:16PM  6    evidence of a September '97 date.  Moreover, Mr.

02:16PM  7    Witnah, who is Grass Valley's 30(b)(6) deponent in this

02:16PM  8    case, who was going to testify via deposition, said and

02:16PM  9    there's also Mr. McDonnell, who's the witness coming

02:16PM  10   live for trial is also going to corroborate this, said

02:16PM  11   that any time Grass Valley would roll out a new release

02:16PM  12   of code, they would perform three to six months of Beta

02:17PM  13   testing at customer sites with no limitations on

02:17PM  14   confidentiality for that Beta testing.  And again, all

02:17PM  15   the features of version 2.2 would have been in that

02:17PM  16   Beta test.  So that takes the Beta test date to

02:17PM  17   sometime in the May to July time frame of 1997.

02:17PM  18                   So we believe that we can show that the

02:17PM  19   version 2.2 code is, in fact, early enough in time and

02:17PM  20   the witness who's going to testify live at trial is

02:17PM  21   going to testify to that and TiVo's going to have full

02:17PM  22   opportunity to cross-examine him, but we believe the

02:17PM  23   document -- documentary evidence fully corroborates

02:17PM  24   his -- his -- his testimony.

02:17PM  25                   THE COURT:   What -- do you dispute

02:17PM 1    opposing Counsel's statement that PX-1699 was never

02:17PM 2    produced in the operational state?

02:17PM 3              MR. TRAUPMAN:   Yes, I do, Your Honor,

02:17PM 4    and I'll explain that as well.  So all three of these

02:17PM 5    devices were made available for inspection.  There were

02:17PM 6    limits -- these are semi big -- fairly big devices, not

02:18PM 7    huge.  There are limits as to how many working devices

02:18PM 8    you can have at one time.

02:18PM 9              So the -- two of the three devices were

02:18PM 10   presented in a working state, just set up, ready to go

02:18PM 11   because that was the limitation on the inspection.  The

02:18PM 12   third device was there.  All they had to do is ask us

02:18PM 13   to hook it up and, you know, rearrange the -- the

02:18PM 14   demonstration and we would have been happy to have

02:18PM 15   allowed them to inspect it.  They never asked.  It just

02:18PM 16   sat in the corner and then they never followed up, they

02:18PM 17   never said, hey, do you really want to look at this?

02:18PM 18   Can you turn it on or anything like that.  They just

02:18PM 19   let it sit there and are now saying we never offered it

02:18PM 20   for inspection, which I would respectfully disagree

02:18PM 21   with.

02:18PM 22              THE COURT:   So what's the limitation

02:18PM 23   that you can have two set up and working but not three?

02:18PM 24   Are you talking about the size of the room you were in?

02:18PM 25   Tell me what you're talking about.

02:18PM 1          MR. TRAUPMAN:   Yes, it's -- I believe

02:18PM 2    it's the size of the room and also to have it so these

02:18PM 3    devices take inputs from external sources.  If you want

02:18PM 4    to see a working device set up, you need to hook up a

02:18PM 5    computer, a monitor, a DVD player or some other video

02:19PM 6    source.  We had two, not -- but not three.  That's just

02:19PM 7    the way -- way our setup was -- was -- was made.  We

02:19PM 8    could have easily rearranged and switched those video

02:19PM 9    sources to the third device, had they asked.  It wasn't

02:19PM 10   anything to try to prevent them from -- from inspecting

02:19PM 11   that device.

02:19PM 12          THE COURT:   Talk to me about this group

02:19PM 13   of parts, 1701 through 1706.  What's your position on

02:19PM 14   that?

02:19PM 15          MR. TRAUPMAN:   Yeah, so -- and the --

02:19PM 16   the Grass Valley witness who's going to come testify at

02:19PM 17   trial, and if you read the user manual and -- and the

02:19PM 18   installation manual for the PDR200, you see that

02:19PM 19   there's a main box and that's what Exhibit 1698, 1699,

02:19PM 20   and 1700 are, but there are ancillary, you know,

02:19PM 21   devices that were all sold together with -- in one

02:19PM 22   package.  They're listed on the -- in the installation

02:19PM 23   manual.  So these bucket of parts are actually the rest

02:19PM 24   of the fully functioning device, it just wasn't all

02:19PM 25   physically housed in one unit.

02:19PM 1      We made the entire device available for

02:19PM 2 inspection.  Our Grass Valley witness is going to come

02:20PM 3 testify at trial and say that these are exactly what

02:20PM 4 was being sold in 1997 and that they're authentic parts

02:20PM 5 and this is how -- they had the same functionality back

02:20PM 6 then as they have today.

02:20PM 7      THE COURT:   Anything further from TiVo?

02:20PM 8      MR. BIRNHOLZ:   Your Honor, we don't know

02:20PM 9 the contents of the devices that are being offered as

02:20PM 10 evidence.  We don't know the code that's on the

02:20PM 11 devices.  We don't know anything else about it.  The

02:20PM 12 about screen has a 2012 date when you look at it, so

02:20PM 13 that doesn't help me date anything.

02:20PM 14      As for the powering on issue, the two

02:20PM 15 limitation, two devices, we asked them to power it on,

02:20PM 16 they said no.  They wouldn't let us look and -- they

02:20PM 17 wouldn't let us inspect inside it apparently either.

02:20PM 18 And so -- and the code to say now that the code that

02:20PM 19 has dates from '98, '99, and 2000 dates from even

02:20PM 20 earlier than they're saying, that's -- that's just

02:21PM 21 belied by the face of the document and I don't see how

02:21PM 22 you can ask to admit a document as 1997 code when the

02:21PM 23 date of the document says '98, '99, and 2000 in various

02:21PM 24 files in the code.  That's the -- the first exhibit in

02:21PM 25 the version 2.2 code.

02:21PM 1      It's too late because -- it's a little

02:21PM 2 too late no matter what, even giving them the earliest

02:21PM 3 date for the '195 patent and it's too late for the

02:21PM 4 other patents because the dates that are in the files.

02:21PM 5      THE COURT:   Well, I'll be honest,

02:21PM 6 Counsel, it's distressing that we're not arguing about

02:21PM 7 evidentiary matters, we're arguing about factual

02:21PM 8 things.  They didn't ask to turn it on.  We asked to

02:21PM 9 turn it on and they wouldn't.  It has this date on it.

02:21PM 10 No, it has that date on it.

02:21PM 11      You know, it's difficult for the Court to

02:21PM 12 apply the Rules of Evidence when there's a dispute

02:21PM 13 about what actually is before the Court.  And if I need

02:21PM 14 to look at these things physically so I can see what

02:21PM 15 date's on them, I can do that.  But we have trial

02:21PM 16 coming up next week and none of us have the luxury of

02:22PM 17 that much time.

02:22PM 18      Either both of you are very confused or

02:22PM 19 somebody has given me bad information and neither one

02:22PM 20 is a very good state of affairs.  Is there some way

02:22PM 21 that we can cut through this without me actually taking

02:22PM 22 the time to look at the items we're talking about and

02:22PM 23 see the dates on them and see the -- the disputed

02:22PM 24 issues that you're telling me two different things

02:22PM 25 about?

02:22PM 1          MR. BIRNHOLZ:   Well, I -- Motorola could

02:22PM 2    respond.  We'd be happy to provide Your Honor with a

02:22PM 3    file listing that shows the various dates that range

02:22PM 4    into 2000.  I don't think that's a very voluminous

02:22PM 5    point.

02:22PM 6          THE COURT:   Motorola?

02:22PM 7          MR. TRAUPMAN:   Yes, Your Honor.

02:22PM 8          THE COURT:   It's hard to know whether,

02:22PM 9    you know, the circle or the square comes in and you're

02:22PM 10   telling me it's a circle and he's telling me it's a

02:22PM 11   square.

02:22PM 12         MR. TRAUPMAN:   Well, I -- I don't know

02:22PM 13   specifically which files he's referring to.  The files

02:22PM 14   that our expert relied upon, to the best of my

02:23PM 15   knowledge, are not dated in '99.  So I -- you know, we

02:23PM 16   can try to work that out and we can show you, you know,

02:23PM 17   try to work that out and see if there's additional

02:23PM 18   evidence we could present to the Court on this issue.

02:23PM 19         THE COURT:   Well, here's what I'm going

02:23PM 20   to do.  I'm going to grant the objection to 1699.  You

02:23PM 21   presented it.  You had an obligation to power it up and

02:23PM 22   show it in working order.  Now, the stuff about the

02:23PM 23   accommodations it was in, didn't accommodate it,

02:23PM 24   that -- that just doesn't work.  You were there to

02:23PM 25   present it.  It was your obligation to present it.

| | | |
|---|---|---|
| 02:23PM | 1 | They didn't have to beg you for it or ask you to do it. |
| 02:23PM | 2 | It wasn't in working order.  It's not going to be |
| 02:23PM | 3 | considered. |
| 02:23PM | 4 | These other items, I'm going to direct -- |
| 02:23PM | 5 | I'm going to direct you to meet and confer and report |
| 02:23PM | 6 | back to me before the day is over and we'll come back |
| 02:23PM | 7 | to these.  I want to know what the facts are.  I want |
| 02:23PM | 8 | to know what the dates are.  I don't want to hear two |
| 02:23PM | 9 | different factual assertions that can't both be right, |
| 02:24PM | 10 | because quite honestly, unless I know those underlying |
| 02:24PM | 11 | facts, I can't rule intelligently on whether they come |
| 02:24PM | 12 | in or not. |
| 02:24PM | 13 | So I'm going to carry everything except |
| 02:24PM | 14 | 1699.  I'm going to grant the objection on 1699 and we |
| 02:24PM | 15 | can have another level of parallel meeting and |
| 02:24PM | 16 | conferring going on and I'll hear back on this later. |
| 02:24PM | 17 | MR. TRAUPMAN:   Thank you, Your Honor. |
| 02:24PM | 18 | MR. BIRNHOLZ:   Thank you, Your Honor. |
| 02:24PM | 19 | THE COURT:   All right.  Objection |
| 02:24PM | 20 | Category 8. |
| 02:24PM | 21 | MS. DUCCA:   With respect to Objection |
| 02:24PM | 22 | Category 8, Motorola and Time Warner Cable have |
| 02:24PM | 23 | withdrawn Exhibits PX-87, PX-160 -- excuse me, I did it |
| 02:24PM | 24 | again, Your Honor. |
| 02:24PM | 25 | THE COURT:   That's all right. |

02:24PM  1                  MS. DUCCA:   We have withdrawn Exhibits

02:24PM  2      PX-295, PX-296, Exhibits 2 -- PX-297, 298, 299, and

02:25PM  3      300.

02:25PM  4                  We have not withdrawn Exhibits PX-87,

02:25PM  5      Exhibits PX-162, 291, 294, 2644, 2645, and 2653.  And

02:25PM  6      it's my understanding from the meet and confer that

02:25PM  7      TiVo still maintains their objections to those

02:25PM  8      exhibits.

02:25PM  9                  THE COURT:   Then I'll hear from TiVo on

02:25PM 10      those surviving exhibits from this category.

02:25PM 11                  MR. BIRNHOLZ:   Thank you, Your Honor.

02:25PM 12      Richard Birnholz again for TiVo.

02:25PM 13                  Just the -- two of the last three

02:25PM 14      Exhibits, 2644 and 2645 are those global exhibits that

02:25PM 15      say all the codes cited in the expert reports, so Your

02:25PM 16      Honor's rulings with any particular item of code will

02:25PM 17      apply to those exhibits as well.  The -- this -- these

02:25PM 18      remaining -- excuse me one moment, Your Honor.

02:26PM 19                  So Your Honor, I was confused for a

02:26PM 20      moment as to the subject matter of these exhibits.

02:26PM 21      These documents are the iMedia documents that were the

02:26PM 22      subject of Motion In Limine No. 11, which Ms. Gordnia

02:26PM 23      argued earlier to the Court where we have the home

02:26PM 24      video server and the documents that are intended to

02:26PM 25      prove this home vide server that the witnesses from

02:26PM  1   iMedia have testified that they abandoned.  And so

02:26PM  2   the -- the arguments that apply for Motion In Limine

02:26PM  3   No. 11 would apply to these exhibits.

02:26PM  4        There's another layer of -- of importance

02:26PM  5   here is that these documents are related to the summary

02:26PM  6   judgment motion that is pending before Your Honor on

02:26PM  7   the derivation and the so-called Yang unjust enrichment

02:27PM  8   type theories, they're business documents from iMedia.

02:27PM  9   And so the -- the Court's disposition of that motion

02:27PM 10   would resolve the admissibility of these exhibits as

02:27PM 11   well, in -- in our view.  So they're relating to a home

02:27PM 12   video server product that was abandoned and business

02:27PM 13   documents that are alleged to have existed and have

02:27PM 14   been communicated with Mr. Yang and those would be

02:27PM 15   excluded subject to the Court's ruling, if the Court

02:27PM 16   were to grant the summary judgment motion.

02:27PM 17        THE COURT:  Well, as I recall when we

02:27PM 18   got to Motion In Limine No. 11, I cited a pending

02:27PM 19   motion to strike portions of Stephen Gray's testimony

02:27PM 20   and indicated those documents would rise or fall with

02:27PM 21   that.  You mentioned a summary judgment, am I confusing

02:28PM 22   this with something else or was it the -- was it the

02:28PM 23   Daubert motion that's been --

02:28PM 24        MR. BIRNHOLZ:  There -- there may be

02:28PM 25   overlap with some of the underlying iMedia documents.

02:28PM   1    So to the extent the -- the experts rely on some -- on

02:28PM   2    the technical documents, that would be a different

02:28PM   3    category, being sent their business plan documents that

02:28PM   4    were allegedly communicated to Mr. Yang that would be

02:28PM   5    tied with the summary judgment motion.

02:28PM   6              THE COURT:   All right.   What's

02:28PM   7    Motorola's response?

02:28PM   8              MR. WHITEHURST:   Your Honor, Alan

02:28PM   9    Whitehurst.   I'm not prepared to address the other

02:28PM  10    motions that are pending, but as we understand it, this

02:28PM  11    objection is duplicative of the motion that you ruled

02:28PM  12    on this morning.   That motion was argued by Mr. Nelson

02:28PM  13    and as he pointed out, there was a misunderstanding of

02:28PM  14    the law and mischaracterization of the facts.   We think

02:28PM  15    the same reasons that the Motion In Limine was denied,

02:29PM  16    this objection should be denied as well and we can take

02:29PM  17    up the other issues when we get to those motions.

02:29PM  18              THE COURT:   Well, without completely

02:29PM  19    rearguing the Motion In Limine, give me a brief

02:29PM  20    overview of your substantive arguments as to these

02:29PM  21    surviving exhibits or why you think they're -- why you

02:29PM  22    think these exhibits should be admitted.

02:29PM  23              MR. WHITEHURST:   These -- these exhibits,

02:29PM  24    as I understand it, are iMedia source code and we're

02:29PM  25    going to have witnesses testifying about this source

02:29PM  1  code, witnesses that have firsthand knowledge.  The

02:29PM  2  source code is -- is relevant to iMedia's home video

02:29PM  3  server, which is not only prior art to TiVo's patents

02:29PM  4  in suit, but it was also demonstrated to Mr. Yang.

02:30PM  5            THE COURT:    All right.  Something

02:30PM  6  further, Mr. Birnholz?

02:30PM  7            MR. BIRNHOLZ:    This, Your Honor, is

02:30PM  8  the -- is the incomplete code that was nonoperational

02:30PM  9  and expressly testified to being abandoned.

02:30PM  10            THE COURT:    Are you making

02:30PM  11  authentication or foundation objections to these?

02:30PM  12            MR. BIRNHOLZ:    Yes, Your Honor, and

02:30PM  13  another objection, it's in another bucket of

02:30PM  14  categories, another bucket of documents.  17 --

02:30PM  15            THE COURT:    You lost me there.

02:30PM  16            MR. BIRNHOLZ:    I've been in --

02:30PM  17            THE COURT:    You've got a bucket of parts

02:30PM  18  and --

02:30PM  19            MR. BIRNHOLZ:    I've been --

02:30PM  20            THE COURT:    -- now you've got a bucket of

02:30PM  21  something else.

02:30PM  22            MR. BIRNHOLZ:    I -- I -- be the last

02:30PM  23  time I use that word.  The -- I've been told it's

02:31PM  24  objection 17 is the foundation.

02:31PM  25            THE COURT:    But it goes to the same

02:31PM 1  exhibits, is what you're saying?

02:31PM 2          MR. BIRNHOLZ:  It's included in a larger

02:31PM 3  set, that's correct.

02:31PM 4          THE COURT:  Well, 17 appears to be --

02:31PM 5          MR. WHITEHURST:  Yeah, I was going to --

02:31PM 6          MR. BIRNHOLZ:  So the device that is

02:31PM 7  being put forth has been admitted to be nonoperational.

02:31PM 8  This is the code for that so-called nonoperational

02:31PM 9  device that doesn't do anything.  And again, this is a

02:31PM 10 product that -- that died on the vine, by the admission

02:31PM 11 of the inventors.  So it's not -- it's not prior art.

02:31PM 12 It's not relevant and should not be admitted.

02:31PM 13         THE COURT:  All right.  Is this the code

02:31PM 14 for PX-1699 that I just granted the objection on?  You

02:31PM 15 said nonoperational or is that another nonoperational

02:31PM 16 device?

02:31PM 17         MR. BIRNHOLZ:  Your Honor, it's another

02:32PM 18 nonoperational device.  In fact, it's not even a

02:32PM 19 device.  This is the home video server which there --

02:32PM 20 there's no photos, there's no machine, there's no

02:32PM 21 product, there's nothing.  You will not see anything in

02:32PM 22 this proceeding that is a home video server.  We don't

02:32PM 23 have -- we don't have anything physical relating to

02:32PM 24 that.

02:32PM 25         THE COURT:  All right.  Counsel, you

02:32PM  1    want to respond to that for me?  You going to tag team

02:32PM  2    me now?

02:32PM  3                 MR. NELSON:   This goes back to the

02:32PM  4    Motion In Limine thing that I argued this morning, Your

02:32PM  5    Honor.  Dave Nelson, for the record.

02:32PM  6                 THE COURT:   All right, Mr. Nelson.  I'll

02:32PM  7    allow you to go forward.

02:32PM  8                 MR. NELSON:   Okay.  Thank you, I

02:32PM  9    appreciate that, Your Honor.  So what we're getting

02:32PM 10    back in to is rearguing that Motion In Limine No. 11.

02:32PM 11    You recall when I went through that, there is a

02:32PM 12    dispute.  What they say is, well, the home video

02:32PM 13    server, this iMedia home video server is not prior art

02:32PM 14    because they abandoned it.  And I went through the fact

02:32PM 15    that they didn't abandon that, that they actually did

02:33PM 16    it, built a prototype, demonstrated it publicly.

02:33PM 17                 The source code in these exhibits we're

02:33PM 18    talking about are part of the 102(g) story in order to

02:33PM 19    show that they, in fact, didn't abandon that.  So under

02:33PM 20    the cases that -- and -- and I'm not going to go back

02:33PM 21    through them, I went through a lot this morning,

02:33PM 22    understand, Your Honor, but under the law, those are

02:33PM 23    not abandoned.

02:33PM 24                 We'll have the witness come up so as to

02:33PM 25    the authentication issues, they'll be the witness to

02:33PM  1    testify to these, provide that foundation and

02:33PM  2    authentication.  So that's premature to resolve those

02:33PM  3    objections at this stage of the game.  But as to the

02:33PM  4    broader argument, we're back to the Motion In Limine

02:33PM  5    again, which is that TiVo wants you to rule as really a

02:33PM  6    matter of summary judgment that the home video server

02:33PM  7    cannot be prior art under 102(g).

02:33PM  8                    And that, frankly, is a factual dispute

02:33PM  9    for the reasons that I talked about earlier and this

02:33PM  10   evidence is to show that, in fact, it was conceived and

02:34PM  11   it was publicly displayed through various times and the

02:34PM  12   source code is one of the things that's used to

02:34PM  13   corroborate that.

02:34PM  14                    THE COURT:   All right.

02:34PM  15                    MR. BIRNHOLZ:   Your Honor, when you were

02:34PM  16   ruling on the Motion In Limine, you expressly said you

02:34PM  17   would take it up as an exhibit and this particular

02:34PM  18   piece of code, there's no foundation for it because

02:34PM  19   they're -- they're trying to say that it is prior art

02:34PM  20   that operated in a certain way.  And we know from the

02:34PM  21   admission of the inventors that it did not break, so

02:34PM  22   it's -- it's -- there's no -- it can't be evidence that

02:34PM  23   it worked in a certain -- in a certain way.

02:34PM  24                    And as part of the 102(g) story, they

02:34PM  25   don't need the code because -- if -- if they, in fact,

02:34PM  1    disclose this product in their patent application,

02:34PM  2    which is their end result of their 102(g) efforts, they

02:34PM  3    wouldn't need the code.  If it was disclosed in the

02:34PM  4    patent that there -- that it's publicly available, then

02:35PM  5    they would rely on the patent.

02:35PM  6                    And so to say that this -- that we need

02:35PM  7    this evidence that's not operational code completes

02:35PM  8    their 102(g) story just proves that they really need

02:35PM  9    this code that wasn't prior art because it was never

02:35PM  10   publicly disclosed and it's not -- and there's no

02:35PM  11   foundation for this code because to say that it worked

02:35PM  12   in a certain way, it was testified to be

02:35PM  13   nonoperational.

02:35PM  14                    THE COURT:   All right.  With regard to

02:35PM  15   the surviving documents not withdrawn under objection

02:35PM  16   category No. 8, I'm going to deny the objection.  That

02:35PM  17   doesn't mean that TiVo can't reurge its

02:35PM  18   unauthentication or its hearsay objections when we get

02:35PM  19   to category 17 as to these documents.  But for now

02:35PM  20   that's a -- that's as to the -- as to the level of

02:36PM  21   objection raised as a part of objection category 8, the

02:36PM  22   objection is denied.

02:36PM  23                    Let's go to category 9.

02:36PM  24                    MS. DUCCA:   Your Honor, with respect to

02:36PM  25   category 9, Motorola and Time Warner Cable have

02:36PM  1   withdrawn Exhibit PX-86.  We have not withdrawn

02:36PM  2   Exhibits PX-252, 267, 284, and 1739.  And I understand

02:36PM  3   that TiVo's maintaining their objections to those

02:36PM  4   exhibits.

02:36PM  5                 THE COURT:   All right.  Then I'll hear

02:36PM  6   from TiVo on those surviving objections.

02:36PM  7                 MR. BIRNHOLZ:   Thank you, Your Honor.

02:36PM  8   Richard Birnholz again.

02:36PM  9                 These are the exhibits that I was

02:36PM 10   confused about a moment ago.  So the four surviving

02:36PM 11   exhibits are being represented as correspondence

02:36PM 12   between iMedia and Geoff Yang.  And 252 and 267 are --

02:37PM 13   are printouts, they appear, that are unsigned letters

02:37PM 14   from Adam Tom of iMedia to Geoff Yang, who is the

02:37PM 15   financier, and the -- the letters.

02:37PM 16                 If I could put 252 on the screen, please?

02:37PM 17                 So you can see that what we have is a

02:37PM 18   letter that is unsigned with no delivery information,

02:37PM 19   no number of pages, no anything.  And when Adam Tom was

02:37PM 20   asked about this letter, he conceded in his deposition,

02:37PM 21   and I don't have the -- the cite handy to provide, Your

02:37PM 22   Honor, that he didn't -- he couldn't tell whether this

02:37PM 23   letter had been sent.  Now, he testified that he

02:38PM 24   believed it had, but he couldn't tell if it had been

02:38PM 25   sent.  It's not signed.  We don't know where this

| | | |
|--|--|--|
| 02:38PM | 1 | letter came from. |
| 02:38PM | 2 | And if you could put up also 267, you'll |
| 02:38PM | 3 | see the same -- the same thing, where it's another |
| 02:38PM | 4 | unsigned letter.  It says:  Via express mail, but there |
| 02:38PM | 5 | are no attachments.  So we -- all we have is an |
| 02:38PM | 6 | unsigned letter with no attachments. |
| 02:38PM | 7 | Now, this iMedia's business plan, the |
| 02:38PM | 8 | document that's referred to in this document -- in this |
| 02:38PM | 9 | letter is a hotly debated issue and that's why this |
| 02:38PM | 10 | exhibit it -- or objection is significant because we |
| 02:38PM | 11 | don't know what this letter is.  We don't know if it |
| 02:38PM | 12 | was sent.  We don't know what was sent with it, if |
| 02:38PM | 13 | anything; and we don't know if it was delivered. |
| 02:38PM | 14 | And so we're objecting to this on the |
| 02:38PM | 15 | grounds that it is hearsay, it is unauthenticated and |
| 02:38PM | 16 | there's no foundation for it, this one and the previous |
| 02:38PM | 17 | exhibit.  This is 267 and 252.  The subject matter of |
| 02:39PM | 18 | these letters are also -- are also subject to our |
| 02:39PM | 19 | pending summary judgment motion. |
| 02:39PM | 20 | THE COURT:   What about 284 and 1739? |
| 02:39PM | 21 | MR. BIRNHOLZ:   284 and 1739 are e-mail |
| 02:39PM | 22 | correspondence. |
| 02:39PM | 23 | You can put 284 up. |
| 02:39PM | 24 | And so this raises a couple of issues |
| 02:39PM | 25 | where you recall earlier in connection with Motion In |

02:39PM 1   Limine No. 12, my argument was they shouldn't be able

02:39PM 2   to say there was a confidentiality agreement because

02:39PM 3   iMedia itself admits that they couldn't tell anyone the

02:39PM 4   terms of that agreement, including whether there was a

02:39PM 5   term to be -- an ending to the agreement, a start date,

02:39PM 6   and that these are critical issues in their theory,

02:39PM 7   which is subject to our summary judgment motion.

02:40PM 8           So there's an e-mail where it says I'll

02:40PM 9   provide some comments on the nondisclosure.  So we have

02:40PM 10  no evidence in the record as to what those comments

02:40PM 11  are, such as I'll make something up that could -- could

02:40PM 12  have happened, which is it'll be valid for one month.

02:40PM 13  We'll have a -- we'll have a confidentiality agreement

02:40PM 14  for one month.  Or it could have been something more

02:40PM 15  significant.  But the point is that iMedia itself says

02:40PM 16  they have no idea what these comments are.

02:40PM 17          So admitting this document to say we have

02:40PM 18  comments on a nondisclosure without any corresponding

02:40PM 19  evidence by their own admission as to what that -- what

02:40PM 20  those comments was makes this document inadmissible

02:40PM 21  under -- under 403 and it's also irrelevant because of

02:40PM 22  the pending summary judgment motions.

02:40PM 23          And the same would be true for Exhibit

02:40PM 24  1739, which is also an e-mail exchange between Mr. Yang

02:41PM 25  and iMedia.

02:41PM   1          THE COURT:   All right.   Response from

02:41PM   2   Motorola?

02:41PM   3          MR. WHITEHURST:   Your Honor, Alan

02:41PM   4   Whitehurst again.   I just heard two arguments.   I'll

02:41PM   5   take the last one first.   That was the argument having

02:41PM   6   to do with the confidentiality agreement.   This was

02:41PM   7   addressed by Your Honor this morning.   This was the

02:41PM   8   subject of TiVo's Motion In Limine No. 12.   We don't

02:41PM   9   agree with TiVo that these documents necessarily even

02:41PM  10   mention a confidentiality agreement.   But even if they

02:41PM  11   do, that's not grounds for precluding either of these

02:41PM  12   two exhibits.

02:41PM  13          The existence of a confidentiality

02:41PM  14   agreement is a fact question, it's for the Jury, it's

02:41PM  15   for cross-examination.   The Jury can weigh credibility

02:41PM  16   and give weight as it sees fit.   So that's our response

02:41PM  17   for PX-284 and PX-1739, which were the two e-mails that

02:41PM  18   you just saw on the screen.

02:42PM  19          Now, as to the other two exhibits, PX-252

02:42PM  20   and PX-267, it appears that Counsel has jumped forward

02:42PM  21   to objection 17, which is their unauthenticated hearsay

02:42PM  22   objection.   We're going to get to that in a little bit,

02:42PM  23   but if I can go ahead and -- and respond to that as

02:42PM  24   well, I can --

02:42PM  25          THE COURT:   You may.

02:42PM 1          MR. WHITEHURST:  -- either respond now or

02:42PM 2    respond later.

02:42PM 3          We're going to have witnesses with

02:42PM 4    firsthand knowledge of -- of these documents.  They're

02:42PM 5    going to explain that iMedia, they typically save the

02:42PM 6    documents onto the server.  They didn't typically print

02:42PM 7    out, sign it, scan it, and then say it was scanned back

02:42PM 8    to the server.  That doesn't mean these documents

02:42PM 9    aren't authentic.  It doesn't mean they're not business

02:42PM 10   records.

02:42PM 11         But more importantly, we're going to have

02:42PM 12   live witnesses either or -- or through deposition,

02:42PM 13   witnesses with firsthand knowledge that will testify as

02:42PM 14   to the authenticity of these documents.  They'll be

02:42PM 15   subject to cross-examination that that's a fact

02:42PM 16   question and it -- it goes to the Jury and they can

02:43PM 17   give weight as they see fit.

02:43PM 18         THE COURT:  Who's going to be a fact

02:43PM 19   witness that's going to testify to two unsigned

02:43PM 20   letters?

02:43PM 21         MR. WHITEHURST:  We believe that both

02:43PM 22   letters that you saw on the screen, Mr. Tom will

02:43PM 23   testify as to those two documents himself.

02:43PM 24         THE COURT:  That's the purported

02:43PM 25   signatory to the letters?

02:43PM  1              MR. WHITEHURST:   If we could put both

02:43PM  2      those documents back up.

02:43PM  3              PX-252, yes, Your Honor.  252 is Mr. Tom.

02:43PM  4      Now, I should point out for the Court, these are not

02:43PM  5      Motorola employees, they're not under our control, but

02:43PM  6      Mr. Tom testified about this document during his

02:43PM  7      deposition.  It is our current plan, we can't guarantee

02:43PM  8      that he will, in fact, be here on Monday, but our

02:43PM  9      current plan is for Mr. Tom, the signatory, the name

02:43PM 10      that you see here on PX-252 will testify as to this

02:44PM 11      document.

02:44PM 12              And if we look at -- we have PX-252 --

02:44PM 13              THE COURT:   267.

02:44PM 14              MR. WHITEHURST:  -- on the screen.  If

02:44PM 15      we'll look at 267, it's the same situation, Your Honor.

02:44PM 16      Mr. Tom again is the name listed there.

02:44PM 17              Now, the other two documents were

02:44PM 18      e-mails, so the -- the authenticity argument would not

02:44PM 19      apply to those like it did to these.

02:44PM 20              THE COURT:   All right.  Mr. Birnholz?

02:44PM 21              MR. BIRNHOLZ:   So your -- Your Honor,

02:44PM 22      thank you.  The -- Mr. Tom in his deposition said that

02:44PM 23      he couldn't -- he couldn't tell if this had been sent

02:44PM 24      because it was unsigned.  So he can talk about his

02:44PM 25      practices, but this is a very important part of their

02:44PM 1   story and they don't have a signed copy of the

02:44PM 2   document.  They also don't have the attachments that

02:44PM 3   went to this document.

02:44PM 4          We have no idea what document was

02:44PM 5   attached to it.  We don't know if it was sent.  And so

02:45PM 6   it is highly irregular to have a printout of a document

02:45PM 7   with no attachments and no delivery confirmation, no

02:45PM 8   fax information, no number of pages, nothing about it.

02:45PM 9   And he, Mr. Tom, in his deposition admitted that he

02:45PM 10  couldn't tell what was delivered and what was sent.

02:45PM 11         And so this is -- it would be highly

02:45PM 12  prejudicial to admit this document and it has no proper

02:45PM 13  foundation established and Mr. Tom shouldn't be able

02:45PM 14  to -- to come in and say that, contrary to what he's

02:45PM 15  already testified the letter of.

02:45PM 16         THE COURT:  Well, Mr. Whitehurst, is he

02:45PM 17  going to have an epiphany about something he didn't

02:45PM 18  remember when he was deposed?

02:45PM 19         MR. WHITEHURST:  Your Honor, I don't

02:45PM 20  have the deposition transcript in front of me, but

02:45PM 21  that's not my recollection of the deposition

02:45PM 22  transcript.  Mr. Tom's going to testify about this

02:45PM 23  document here and that's a -- that's a question for

02:45PM 24  cross-examination, goes to his credibility.

02:45PM 25         MR. BIRNHOLZ:  Your -- Your Honor, the

02:46PM 1    contents of this -- the what was purportedly submitted

02:46PM 2    to Mr. Yang is an essential part of the -- the --

02:46PM 3    Motorola's theory in the case.  This would become

02:46PM 4    irrelevant entirely if -- pending the Court's ruling on

02:46PM 5    summary judgment, so --

02:46PM 6                 THE COURT:   Well --

02:46PM 7                 MR. BIRNHOLZ:  -- this would fall with

02:46PM 8    that part of the case as well.

02:46PM 9                 THE COURT:   Well, not withstanding that

02:46PM 10   the later summary judgment ruling might impact this.

02:46PM 11   You know, I'm -- again, I'm hearing different stories

02:46PM 12   about whether there's somebody who can authenticate

02:46PM 13   these and somebody who can't.  I guess we'll have to

02:46PM 14   wait and see what the witness says on the witness

02:46PM 15   stand.  If they're not clearly and validly

02:46PM 16   authenticated, I'm not going to admit them.  I'll -- if

02:46PM 17   they are, that's a different story.

02:46PM 18                 But I'll -- I'll defer ruling on the

02:46PM 19   admissibility of these until I can be presented with

02:47PM 20   whatever testimony there is in the nature of foundation

02:47PM 21   or predicate, since again, I'm hearing two different

02:47PM 22   things about the facts.  But I can tell Motorola

02:47PM 23   without an unequivocal foundation and support, an

02:47PM 24   unsigned letter is not likely to be admitted.  You're

02:47PM 25   going to have to have somebody that can stand behind

| | | |
|---|---|---|
| 02:47PM | 1 | this without any recordation. |
| 02:47PM | 2 | But I –- you know, I don't know what the |
| 02:47PM | 3 | answer to that is today, so I'm going to have to defer |
| 02:47PM | 4 | ruling on it until I hear it.  Okay? |
| 02:47PM | 5 | MR. WHITEHURST:   Thank you, Your Honor. |
| 02:47PM | 6 | MR. BIRNHOLZ:  Your Honor, could I be |
| 02:47PM | 7 | clear that this exhibit will not be published to the |
| 02:47PM | 8 | Jury until Your Honor makes that ruling? |
| 02:47PM | 9 | THE COURT:   I can't tell you that, Mr. |
| 02:47PM | 10 | Birnholz, when an exhibit's offered into evidence, it's |
| 02:47PM | 11 | offered into evidence, but I'm going to tell the Jury |
| 02:47PM | 12 | if -- if an objection is sustained, then they're to |
| 02:47PM | 13 | disregard it.  We're just going to have to offer this |
| 02:47PM | 14 | at the time this authenticating witness is available to |
| 02:48PM | 15 | testify, just like you would without a preadmission |
| 02:48PM | 16 | process. |
| 02:48PM | 17 | MR. BIRNHOLZ:   Thank you, Your Honor. |
| 02:48PM | 18 | THE COURT:  Okay. |
| 02:48PM | 19 | MR. WHITEHURST:   Thank you, Your Honor. |
| 02:48PM | 20 | THE COURT:   That will apply to all four |
| 02:48PM | 21 | of those instruments. |
| 02:48PM | 22 | All right.  Let's go to the next one, |
| 02:48PM | 23 | category 10. |
| 02:48PM | 24 | MS. DUCCA:   Your Honor, with respect to |
| 02:48PM | 25 | TiVo's category 10, Motorola and Time Warner Cable have |

02:48PM 1    withdrawn the following exhibits:  97, 105, 128, 129,

02:48PM 2    147, 154, 160, 164, 165, 166, 167, 202, 209, 210, 211,

02:49PM 3    230, 248, 250, and 1690.

02:49PM 4             The remaining exhibits in this category

02:49PM 5    are Exhibits 27; Exhibits 1682 to 1689; Exhibits 2628,

02:49PM 6    2629, Exhibits 2656 to 2659; and Exhibit 1468.

02:49PM 7             And I believe that --

02:49PM 8             THE COURT:  All right.

02:49PM 9             MS. DUCCA:  -- TiVo is maintaining its

02:49PM 10   objections.  I'm sorry, Your Honor.

02:49PM 11            THE COURT:  Let me hear from TiVo on

02:49PM 12   these exhibits that are not withdrawn.

02:49PM 13            MR. WELLS:  Yes, Your Honor.  These have

02:49PM 14   to do with Motorola patents that we talked -- oh,

02:49PM 15   Maclain Wells, Your Honor, on behalf of TiVo.

02:49PM 16            These have to do with Motorola patents

02:49PM 17   that we talked about earlier and I did want to correct

02:49PM 18   one thing from my discussion earlier.  There actually

02:49PM 19   is a motion to strike as a portion of the Gray expert

02:50PM 20   report where he just lists off Motorola patents in a

02:50PM 21   sentence about what the patents are about.  So you had

02:50PM 22   asked that question; I answered you incorrectly, so I

02:50PM 23   wanted to correct that.

02:50PM 24            These patents Counsel described them as

02:50PM 25   Motorola patents that relate to its DVR set-top boxes

02:50PM 1   and those are the ones that they're keeping in and that

02:50PM 2   raises the issue.  If these are limited to DVR

02:50PM 3   technology and TiVo is asserting its DVR patents

02:50PM 4   then -- and their basis for irrelevance is willfulness,

02:50PM 5   they need to show that the claims in these patents are

02:50PM 6   so close to the claims of TiVo's DVR patents that

02:50PM 7   Motorola would have a reasonable belief that it having

02:50PM 8   its patents meant that it could not have infringed TiVo

02:50PM 9   patents.

02:50PM 10          They have to be that close.  There has to

02:50PM 11  be facts and analysis to back that up.  That's what --

02:50PM 12  that's when it was alluded -- that's when evidence of

02:50PM 13  willfulness of your own patents came in under the case

02:51PM 14  law that they cited.  In this case, we don't have any

02:51PM 15  of that.  So we're going to have them getting up saying

02:51PM 16  here's our DVR patents and this is the basis for our --

02:51PM 17  Motorola's belief that it did not infringe TiVo's

02:51PM 18  patents.

02:51PM 19          And then TiVo's going to have to come

02:51PM 20  back and we're going to get into an overcomplicated

02:51PM 21  trial on each of these patents as to what -- what these

02:51PM 22  patents claim, what the technology covers, comparing it

02:51PM 23  to TiVo's patents and illustrating that there was no

02:51PM 24  way that there was a reasonable person could say, hey,

02:51PM 25  if I have a patent on security protocols and DVRs, I

02:51PM   1    don't do time warp, I don't do trick play, I don't do

02:51PM   2    the stuff that's covered by TiVo's patents.

02:51PM   3              It's going to -- we're going to have a

02:51PM   4    lot of sideshows.  That's what's going to happen here.

02:51PM   5              THE COURT:   Well, I'm not aware that

02:51PM   6    preventing sideshows is a reasonable basis to object to

02:51PM   7    something under the Rules of Evidence.  I mean, I would

02:52PM   8    prefer that all things being equal that it not happen,

02:52PM   9    but --

02:52PM  10              MR. WELLS:   If I may, Your Honor?

02:52PM  11              THE COURT:   -- that's not a basis to tell

02:52PM  12    me to keep it out of evidence.

02:52PM  13              MR. WELLS:   Well, that's what raises the

02:52PM  14    prejudice, Your Honor.  What we're going to -- TiVo's

02:52PM  15    going to end up wasting the -- a lot of resources and

02:52PM  16    trial time going through to address these patents --

02:52PM  17              THE COURT:   So you didn't --

02:52PM  18              MR. WELLS:   -- that they had -- that they

02:52PM  19    do not assert as prior -- I'm sorry, Your Honor, I

02:52PM  20    didn't mean to interrupt you.  Please --

02:52PM  21              THE COURT:   That's okay.  But I mean,

02:52PM  22    just -- your argument is based on the premise that you

02:52PM  23    just want me to trust you.  You just want me to say

02:52PM  24    what you're telling me is right and so I'll take it on

02:52PM  25    face value that there's not a close enough nexus where

02:52PM 1   they could possibly be relevant for a willfulness

02:52PM 2   question.

02:52PM 3               MR. WELLS:  Well, Your Honor, they would

02:52PM 4   have had to put forth some kind of evidence of that and

02:52PM 5   their experts haven't addressed whether these patent

02:52PM 6   claims are coextensive with the scope of TiVo's

02:52PM 7   patents.  If these patent claims have been, I would

02:52PM 8   think that we would see this stuff as prior art to

02:52PM 9   TiVo's patents.  It would be part of their invalidity

02:52PM 10  case.  It's not.

02:52PM 11              THE COURT:   All right.  Let me hear from

02:53PM 12  Motorola.

02:53PM 13              MR. WILSON:   Good afternoon, Your Honor.

02:53PM 14  Robert Wilson from Quinn, Emanuel.

02:53PM 15              So with respect, let's clarify what the

02:53PM 16  issue is we're talking about here.  We're talking about

02:53PM 17  Motorola and its subjective intent and this is not

02:53PM 18  going to create a sideshow.  A party's independent

02:53PM 19  development of its technology is a defense to a claim

02:53PM 20  of willfulness.  We're talking about Motorola's intent

02:53PM 21  and understanding about whether or not it would have

02:53PM 22  infringed TiVo's asserted patents.

02:53PM 23              And the response that we intend to put

02:53PM 24  forward is our independent development of our own

02:53PM 25  technology that we incorporated into our DVR products.

02:53PM 1    It's not going to get into a sideshow about what these

02:53PM 2    claims say and you don't need expert testimony to talk

02:54PM 3    about someone's subjective intent.

02:54PM 4                You will hear the testimony of Motorola's

02:54PM 5    witnesses who will talk about their development, their

02:54PM 6    process of their technology that relates to the patents

02:54PM 7    that they have obtained and the technology that they

02:54PM 8    put in their products.  And the patents are important

02:54PM 9    to show that not only did they develop their own

02:54PM 10   technology, but the Patent Office acknowledged in

02:54PM 11   multiple patents that the developments were innovative

02:54PM 12   and that they merited the patents that these inventors

02:54PM 13   obtained.

02:54PM 14               So again, we're talking about Motorola's

02:54PM 15   intent here.  It's not an expert dispute about what

02:54PM 16   this patent encompasses and that patent encompasses.

02:54PM 17   The patents that we have to -- to introduce into

02:54PM 18   evidence go to the DVR technology that Motorola

02:54PM 19   developed and -- and they relate to trick play

02:54PM 20   functionalities and the types of -- of simultaneous

02:55PM 21   video storage and recording that we're talking about in

02:55PM 22   this case.  And the inventors will testify about how

02:55PM 23   they developed those technologies and they put them in

02:55PM 24   their products.

02:55PM 25               So this is not going to create a sideshow

02:55PM  1   and as the Federal Circuit has held, independent

02:55PM  2   development may be a defense to a claim that there was

02:55PM  3   subjective intent to infringe someone else's patent.

02:55PM  4   Did Motorola think it was stealing TiVo's patents or

02:55PM  5   did Motorola think it was developing its own

02:55PM  6   technology?  Well, Your Honor, develop -- Motorola

02:55PM  7   developed its own technology and that's what it put in

02:55PM  8   its products.

02:55PM  9              THE COURT:   All right.

02:55PM  10             MR. WELLS:   May I, Your Honor?

02:55PM  11             THE COURT:   Go ahead.

02:55PM  12             MR. WELLS:   I have here a list of some of

02:55PM  13  the titles of these patents.  Domain Security; MPEG-4

02:55PM  14  Compression; Controlling Security Modes; firm --

02:55PM  15  Firmware Security; Smart Remote with built-in video

02:55PM  16  screen.  The -- these patents are not directed at

02:55PM  17  TiVo's Time Warp and Trick Play functionality.  They

02:55PM  18  relate generally to DVRs.  And Counsel's argument

02:56PM  19  illustrated exactly the problem.  He said:  Their

02:56PM  20  independent development of the DVR technology.  Via's

02:56PM  21  ancillary DVR aspects.  Not TiVo's patented technology.

02:56PM  22             If they could show that they had

02:56PM  23  independently developed TiVo's patented technology, the

02:56PM  24  Time Warp patent and Trick Play, that would be a

02:56PM  25  different story.  It would be part of their invalidity

02:56PM   1   case.  It would be an independent derivation.

02:56PM   2              That's not what's going on here.  He's

02:56PM   3   illustrating the example on his argument to the Court.

02:56PM   4   He's going to make the same argument to the Jury that

02:56PM   5   they independently developed the DVR technology when

02:56PM   6   these patents don't show that.  So what TiVo's going to

02:56PM   7   have to do is go through and show that each of these

02:56PM   8   patents is not TiVo's patented technology.  We're going

02:56PM   9   to have to go through and do a comparison of these

02:56PM  10   patents to TiVo's claims and show all the differences

02:56PM  11   and determine what the scope of these patents and these

02:56PM  12   patent claims are.

02:56PM  13              It's going to be a huge burden.

02:57PM  14              MR. WILSON:  Your Honor, if I may respond

         15   briefly?

         16              THE COURT:  All right.  One more time.

         17              MR. WILSON:  Thank you.

         18              THE COURT:  Then we're going to move on.

         19              MR. WILSON:  Yes, Your Honor.  With

02:57PM  20   respect, Counsel did not identify some of the names of

02:57PM  21   the patents such as Method And Apparatus For Providing

02:57PM  22   VCR-like Trick Mode Functions For Viewing Distributed

02:57PM  23   Video Data; Method And Apparatus For Encoding And

02:57PM  24   Formatting Data Representing A Video Program To Provide

02:57PM  25   Multiple Overlapping Presentations Of The Video

02:57PM 1    Program; and Adaptive Compression Of Digital Video Data

02:57PM 2    Using Different Modes Such As PCM And DCPM.

02:57PM 3              Your Honor, again, this is not going to

02:57PM 4    create an issue where because it was related to intent,

02:57PM 5    it is not as -- as to -- it's not going to create an

02:57PM 6    issue as to whether the scope of this claim is

02:57PM 7    coextensive with the scope of this claim or not.  This

02:57PM 8    is about what Motorola thought at the time it was

02:57PM 9    developing the technologies in its product.

02:57PM 10             And so these goes to their subjective

02:57PM 11   intent, not to whether the experts are looking at this

02:58PM 12   and saying, oh, this technology is exactly that or this

02:58PM 13   technology is exactly that.  What did Motorola do when

02:58PM 14   it developed its products, what was it thinking when it

02:58PM 15   was developing its products and what technology.

02:58PM 16             MR. WELLS:  One point, Your Honor.

02:58PM 17             THE COURT:   Final one.

02:58PM 18             MR. WELLS:  The three patents that he

02:58PM 19   just cited with the titles, if those really were

02:58PM 20   coextensive with TiVo's patents, why aren't they in the

02:58PM 21   invalidity side of this case?  They're not.  They cover

02:58PM 22   different technologies.

02:58PM 23             THE COURT:   All right.  Consistent with

02:58PM 24   my ruling on Motion In Limine No. 13, I'm going to

02:58PM 25   overrule the objections to these exhibits that are not

02:58PM 1   withdrawn under objection category 10.

02:58PM 2           All right, Counsel, we're going to take a

02:58PM 3   brief recess.  Be back in a few minutes and we'll pick

02:58PM 4   up where we left off.  The Court stands in recess.

02:58PM 5           COURT SECURITY OFFICER:  All rise.

02:58PM 6           (Recess.)

03:25PM 7           COURT SECURITY OFFICER:  All rise.

03:25PM 8           THE COURT:  Be seated, please.  All

03:25PM 9   right.  Where were we?  Are we to objection category

03:25PM 10  11; is that correct?

03:25PM 11          MS. DUCCA:  That is correct, Your Honor.

03:25PM 12  For objection category 11, Motorola and Time Warner

03:25PM 13  Cable have withdrawn both Plaintiffs' Exhibits 61 and

03:26PM 14  1676.  So objection category 11 should be moot.

03:26PM 15          MR. WERNER:  Agreed.

03:26PM 16          THE COURT:  All right.  Good.  Then let's

03:26PM 17  go to 12.

03:26PM 18          MS. DUCCA:  Objection category 12, we

03:26PM 19  have also withdrawn Exhibit 1675 and 2669.  So it's our

03:26PM 20  understanding that objection category 12 is also moot.

03:26PM 21          THE COURT:  Agreed?

03:26PM 22          MR. WERNER:  Agreed.

03:26PM 23          THE COURT:  All right.  13?  You're on a

03:26PM 24  roll, keep going.

03:26PM 25          MS. DUCCA:  Unfortunately --

03:26PM   1   unfortunately it stops here.  With objection category

03:26PM   2   13, Motorola and Time Warner Cable have withdrawn

03:26PM   3   Exhibits 64 and 66; however, we have not withdrawn

03:26PM   4   Exhibits 1699, 2648 or 2650 and it's my understanding

03:26PM   5   that those are still at issue.

03:26PM   6            THE COURT:   All right.   Then I'll hear

03:26PM   7   from TiVo on those nonwithdrawn exhibits under category

03:26PM   8   13.

03:26PM   9            MR. WERNER:   Thank you, Your Honor.   I

03:27PM  10   believe 1699 is the PDR200 device.

03:27PM  11            THE COURT:   I've already ruled on that.

03:27PM  12            MR. WERNER:   That's correct, Your Honor.

03:27PM  13            THE COURT:   1699 is out.   So I'll hear

03:27PM  14   on 2648, 2650.

03:27PM  15            MR. WERNER:   Thank you, Your Honor.   On

03:27PM  16   March 28th under the docket control order of -- 2013

03:27PM  17   under the docket control order, the parties were

03:27PM  18   obligated to exchange disclosures, pretrial

03:27PM  19   disclosures, including the trial exhibit lists.  The

03:27PM  20   parties did serve lists on those days.  PX-2648 and

03:27PM  21   PX-2650 were not on Motorola, Time Warner's

03:27PM  22   disclosures.

03:27PM  23            If Your Honor has reference to the

03:27PM  24   parties' joint notice, Motorola and Time Warner Cable

03:27PM  25   make reference to TX, TiVo's Trial Exhibit 2539.  That

03:27PM 1  is an entry for TiVo products, two TiVo DVRs that were

03:28PM 2  offered for inspection during the fact period.

03:28PM 3              Motorola and Time Warner Cable then

03:28PM 4  responded after March 28th by putting two entries on

03:28PM 5  their trial exhibit list, those entities being PX-2648

03:28PM 6  and 2650, mirroring TiVo's but with respect to their

03:28PM 7  own products; 2648 being Motorola products, 2650 being

03:28PM 8  Time Warner Cable products.  Now we're here with

03:28PM 9  Motorola and Time Warner Cable offering a deal that

03:28PM 10 they will drop these entries, which they did not

03:28PM 11 initially disclose, if TiVo will drop its entry, which

03:28PM 12 it did initially disclose.

03:28PM 13             TiVo offered these devices, the TiVo

03:28PM 14 devices, corresponding to 2539, during discovery.

03:28PM 15 Motorola and Time Warner Cable conducted an inspection.

03:29PM 16 They were able to power the devices on, use the

03:29PM 17 devices.  The only restriction placed was we did not

03:29PM 18 allow them to cut the devices open and take a look at

03:29PM 19 the insides.

03:29PM 20             THE COURT:  Well, let's talk about your

03:29PM 21 devices when we get to your exhibits.  Let's talk about

03:29PM 22 their exhibits now and your objections to those.

03:29PM 23             MR. WERNER:  Very well.

03:29PM 24             THE COURT:  And basically that 2648 and

03:29PM 25 2650 were never disclosed or produced.

03:29PM  1              MR. WERNER:  Never offered for

03:29PM  2   inspection.  We have no idea what they are.  We served

03:29PM  3   request for inspection; nothing was ever offered.

03:29PM  4              THE COURT:   All right.  Let me have a

03:29PM  5   response.

03:29PM  6              MR. CUNNINGHAM:   Your Honor, Sean

03:29PM  7   Cunningham.

03:29PM  8              It is correct that these two exhibits

03:29PM  9   were added to the exhibit list as a result of TiVo's

03:29PM  10  having sought to add certain products that were not

03:30PM  11  offered for inspection or not offered for inspection in

03:30PM  12  working form by TiVo.  These two exhibits constitute

03:30PM  13  off-the-shelf Motorola and Time Warner Cable DVR

03:30PM  14  set-top boxes that would be offered for demonstration

03:30PM  15  purposes at trial if and only if TiVo were permitted to

03:30PM  16  offer its previously nonoperational products for

03:30PM  17  demonstration purposes.

03:30PM  18              So I think it's bound up in our objection

03:30PM  19  to those devices that that is if -- if those devices

03:30PM  20  are not going to come in at trial and be used for

03:30PM  21  demonstration purposes, we would withdraw these

03:30PM  22  exhibits and not offer our own demonstration devices.

03:30PM  23              THE COURT:   Well, I'm not concerned what

03:30PM  24  deal you and TiVo had with each other.  I'm concerned

03:30PM  25  were these timely disclosed and were they produced for

| | | |
|---|---|---|
| 03:30PM | 1 | inspection in operating form. |
| 03:30PM | 2 | MR. CUNNINGHAM:  To my knowledge, they |
| 03:30PM | 3 | were never offered for inspection, Your Honor. |
| 03:30PM | 4 | THE COURT:  Then the objection is |
| 03:30PM | 5 | sustained. |
| 03:30PM | 6 | Category 15. |
| 03:31PM | 7 | MS. DUCCA:  Your Honor, with respect to |
| 03:31PM | 8 | category 15, we have a different situation upon |
| 03:31PM | 9 | investigation of TiVo's objections, we realize it was |
| 03:31PM | 10 | an inadvertent error that caused the wrong file to be |
| 03:31PM | 11 | served as Exhibit 1673.  We have since corrected that |
| 03:31PM | 12 | error; therefore, Motorola and Time Warner Cable |
| 03:31PM | 13 | believe that this issue is moot.  We have not heard an |
| 03:31PM | 14 | objection to the current version of PX-1673, which is |
| 03:31PM | 15 | the proper -- the proper document. |
| 03:31PM | 16 | THE COURT:  So the same number went on |
| 03:31PM | 17 | two different files; is that right? |
| 03:31PM | 18 | MS. DUCCA:  Well, what -- what happened |
| 03:31PM | 19 | was an e-mail that was not supposed to be this |
| 03:31PM | 20 | particular document got stamped with PX-1673.  However, |
| 03:31PM | 21 | on the exhibit list, it was properly labeled as the |
| 03:31PM | 22 | National Academy of Television Arts and Sciences:  The |
| 03:31PM | 23 | 64th Annual Technology & Engineering Emmy Awards.  The |
| 03:32PM | 24 | proper Bates numbers were also on the exhibit list and |
| 03:32PM | 25 | that's M-GI 1631189 to M-GI 1631219. |

| | | |
|---|---|---|
| 03:32PM | 1 | THE COURT:   All right.  I may be |
| 03:32PM | 2 | confused, Counsel.  We just finished objection category |
| 03:32PM | 3 | 13 where I sustained TiVo's objection to PX-2648 and |
| 03:32PM | 4 | 2650. |
| 03:32PM | 5 | MS. DUCCA:   Yes, Your Honor. |
| 03:32PM | 6 | THE COURT:   The next item I have on my |
| 03:32PM | 7 | list is objection category 14 -- 15.  Am I missing -- |
| 03:32PM | 8 | MR. WERNER:   If I may -- |
| 03:32PM | 9 | THE COURT:   -- 14? |
| 03:32PM | 10 | MR. WERNER:   14 was resolved prior to the |
| 03:32PM | 11 | filing -- |
| 03:32PM | 12 | THE COURT:   All right. |
| 03:32PM | 13 | MR. WERNER:   -- pursuant to the parties' |
| 03:32PM | 14 | meet and confer. |
| 03:32PM | 15 | THE COURT:   So 15 is where we are? |
| 03:32PM | 16 | MR. WERNER:   Correct. |
| 03:32PM | 17 | MS. DUCCA:   That is correct -- |
| 03:32PM | 18 | THE COURT:   And -- |
| 03:32PM | 19 | MS. DUCCA:   -- Your Honor. |
| 03:32PM | 20 | THE COURT:   -- PX-1673 is what you're |
| 03:32PM | 21 | talking about? |
| 03:32PM | 22 | MS. DUCCA:   That is correct, Your Honor. |
| 03:32PM | 23 | THE COURT:   All right.  And so your |
| 03:32PM | 24 | position is Time Warner and Motorola produced the wrong |
| 03:32PM | 25 | or the -- they produced something that they didn't |

03:32PM 1    intend to produce, they found it and produced what they

03:33PM 2    did intend to produce?

03:33PM 3              MS. DUCCA:   Well, both documents, both

03:33PM 4    the original document that was stamped as PX-1673 and

03:33PM 5    the, what I'll call, the real PX-1673 were all

03:33PM 6    produced, they were just wrongly stamped.  And when we

03:33PM 7    served our exhibits on to TiVo, there was an

03:33PM 8    inadvertent error that caused this other e-mail to be

03:33PM 9    produced to TiVo as the exhibit.

03:33PM 10             When we learned about that through these

03:33PM 11   exhibit objections, we quickly served the corrected

03:33PM 12   PX-1673 and so to -- to our understanding, the

03:33PM 13   objection is moot.  We have not heard any other

03:33PM 14   objection to PX-1673.

03:33PM 15             THE COURT:   All right.  Does TiVo have

03:33PM 16   an objection based on what I've just been told?

03:33PM 17             MR. WERNER:   Yes, Your Honor.  Why don't

03:33PM 18   the -- basically TiVo informed Motorola and Time Warner

03:33PM 19   Cable about the discrepancy between the description

03:34PM 20   which listed the title of the document, we'll call it

03:34PM 21   the real 1673, relating to an Emmy award.  TiVo advised

03:34PM 22   Motorola and Time Warner Cable on at least one

03:34PM 23   occasion; I believe on two occasions I noted this

03:34PM 24   discrepancy between the description and the document.

03:34PM 25   Multiple -- TiVo -- Motorola and Time Warner Cable

03:34PM  1    repeatedly served the same wrong copy of 1673.

03:34PM  2            I've asked Counsel to represent that that

03:34PM  3    e-mail, which is an irrelevant and prejudicial e-mail

03:34PM  4    between the -- Mr. Anthony Wood, formerly of ReplayTV,

03:34PM  5    I've asked them to confirm that it is no where else on

03:34PM  6    their list through some similar error.  They're not

03:35PM  7    able to do that.

03:35PM  8            I basically would like to reserve our

03:35PM  9    right, should that e-mail somehow surface through this

03:35PM 10    process.  Our objections were lodged based on that

03:35PM 11    document.

03:35PM 12            THE COURT:  All right.  Well, if we can

03:35PM 13    get this straight, we don't have to wait until

03:35PM 14    something is preserved until a later date.  We've got

03:35PM 15    the Anthony Wood e-mail and we've got the Emmy award

03:35PM 16    e-mail.  And which one should have been 1673?

03:35PM 17            MR. WERNER:  The Emmy.

03:35PM 18            THE COURT:  Okay.  And the one that

03:35PM 19    produced was the Anthony Wood e-mail?

03:35PM 20            MR. WERNER:  That's correct, up until

03:35PM 21    Friday the 31st it was the Wood e-mail.

03:35PM 22            THE COURT:  Okay.  And Friday you got

03:35PM 23    the Emmy e-mail that should have been 1673?

03:35PM 24            MR. WERNER:  The Emmy document was --

03:35PM 25    was provided to us.  I was unaware -- it was provided

| | | |
|---|---|---|
| 03:35PM | 1 | in a large set of the entire exhibit.  I was unaware it |
| 03:35PM | 2 | was there.  In any event, we now have this document and |
| 03:35PM | 3 | we do object to this document on relevance and hearsay |
| 03:35PM | 4 | grounds. |
| 03:36PM | 5 | Josh, if you could put up 1673 and a PDF |
| 03:36PM | 6 | page 6? |
| 03:36PM | 7 | It's not clear what this document is |
| 03:36PM | 8 | being offered for, but we can take a guess.  PDF page |
| 03:36PM | 9 | 6, please.  This is it. |
| 03:36PM | 10 | So what we have is apparently Time Warner |
| 03:36PM | 11 | Cable got an award for pioneering development a |
| 03:36PM | 12 | multi-room DVR.  Not clear how this is relevant. |
| 03:36PM | 13 | Perhaps they got the award because they infringed |
| 03:36PM | 14 | TiVo's patent.  In any event, if you read -- if we can |
| 03:36PM | 15 | zoom in on the first paragraph under pioneering |
| 03:36PM | 16 | development?  Correct.  Good. |
| 03:36PM | 17 | We see that this has to do with Time |
| 03:36PM | 18 | Warner Cable Cisco's -- Cisco products.  Not clear how |
| 03:36PM | 19 | this is relevant to this case. |
| 03:36PM | 20 | THE COURT:  Okay.  So your objection is |
| 03:37PM | 21 | on relevance grounds.  Anything else? |
| 03:37PM | 22 | MR. WERNER:  Hearsay being offered to |
| 03:37PM | 23 | prove the -- to basically praise Time Warner Cable's |
| 03:37PM | 24 | products that Time Warner's Cable -- Cable's products |
| 03:37PM | 25 | are worthy of praise. |

| | | |
|---|---|---|
| 03:37PM | 1 | THE COURT:   All right.  Let me hear a |
| 03:37PM | 2 | response on those two substantive objections. |
| 03:37PM | 3 | MS. DUCCA:   Your Honor, this is |
| 03:37PM | 4 | basically a handout at the 64th Annual Technology & |
| 03:37PM | 5 | Engineering Emmy Awards and if we can turn to page 11 |
| 03:37PM | 6 | of the document? |
| 03:37PM | 7 | MR. WERNER:  Which exhibit? |
| 03:37PM | 8 | MS. DUCCA:  Of Exhibit 1673.  And as you |
| 03:37PM | 9 | can see here, this document explains why the Academy |
| 03:38PM | 10 | gave an Emmy award to Grass Valley.  This is neither |
| 03:38PM | 11 | irrelevant nor is it hearsay.  We're not offering it |
| 03:38PM | 12 | for the truth of the matter asserted.  We're not |
| 03:38PM | 13 | offering it to -- to say that Grass Valley won the Emmy |
| 03:38PM | 14 | award.  Niall McDonnell will actually be here to |
| 03:38PM | 15 | testify that he won an Emmy award for his work on Grass |
| 03:38PM | 16 | Valley. |
| 03:38PM | 17 | However, what this shows is why Grass |
| 03:38PM | 18 | Valley won that award.  So if it is deemed to be |
| 03:38PM | 19 | hearsay, it's actually a present sense of the Academy |
| 03:38PM | 20 | as to why they were giving the -- the award.  So it's |
| 03:38PM | 21 | neither hearsay nor is it irrelevant. |
| 03:38PM | 22 | THE COURT:  So in effect, you're |
| 03:38PM | 23 | interested in page 12 and -- page 11 and I guess the |
| 03:38PM | 24 | continuation of this article on page 12? |
| 03:38PM | 25 | MS. DUCCA:  That is your -- that is |

03:38PM  1   correct, Your Honor, as well as --

03:38PM  2              THE COURT:   You're not interested in the

03:38PM  3   rest of it?

03:38PM  4              MS. DUCCA:   -- the -- as well as the

03:38PM  5   cover, Your Honor.

03:38PM  6              THE COURT:   Okay.  You're not interested

03:38PM  7   in page 6, then?

03:38PM  8              MS. DUCCA:   We are not interested in page

03:39PM  9   6.

03:39PM  10             THE COURT:   All right.  Well, then I'll

03:39PM  11  sustain TiVo's objection to page 6 and I'll see if they

03:39PM  12  have an objection to page 11 and 12.

03:39PM  13             MR. WERNER:   Much obliged, Your Honor.

03:39PM  14  There's no explanation in their response as to why this

03:39PM  15  document was relevant.  I think if we take a quick look

03:39PM  16  at this document, pioneering development --

03:39PM  17             COURT CLERK:   Well, I'm sorry --

03:39PM  18             MR. WERNER:   -- there you go, pioneering

03:39PM  19  development of event driven control room automation

03:39PM  20  systems for production of television shows in which

03:39PM  21  full control or robotic cameras, I don't know is there

03:39PM  22  -- I don't see any reference to PDR, the asserted prior

03:39PM  23  request.  In any event -- in any event, Your Honor, we

03:39PM  24  have an objection, objection 22 directed to similar

03:39PM  25  documents that were recently produced and added to

03:39PM 1   Motorola and Time Warner Cable's trial exhibit list

03:39PM 2   that we can take up now or --

03:39PM 3                THE COURT:   No, we'll take them up

03:40PM 4   later.  We're going to have to do this in order and

03:40PM 5   it's a little late to be explaining, but you know,

03:40PM 6   putting an objection to the same instrument in five or

03:40PM 7   six different categories looks like we're trying to get

03:40PM 8   five or six bites of the same apple.

03:40PM 9                The objections as to exhibits need to be

03:40PM 10  focused by exhibit, not by type of objection.  But

03:40PM 11  nonetheless, let's look at page 12 of this.  Let's see

03:40PM 12  what's on the next page.

03:40PM 13               All right.  Motorola, tell me again the

03:40PM 14  relevance here.

03:40PM 15               MS. DUCCA:   As you know from Mr.

03:40PM 16  Traupman's argument earlier, we are offering the Grass

03:41PM 17  Valley devices for an -- in part as an obviousness

03:41PM 18  argument.  One thing that TiVo will do is they will

03:41PM 19  make secondary considerations arguments.  As part of

03:41PM 20  their secondary considerations, they're arguing that

03:41PM 21  TiVo created the first commercially successful DVR.

03:41PM 22  They also will make arguments such as the fact that

03:41PM 23  there was long felt need when TiVo's DVR was released.

03:41PM 24               This shows that the Grass Valley device,

03:41PM 25  which is prior art to the TiVo DVR, was also

03:41PM 1  successful, was also recognized, which shows that there

03:41PM 2  was a -- there was a specific reason that it was given

03:41PM 3  an Emmy award.  So for that reason, it's relevant.

03:41PM 4           TiVo is also arguing that TiVo was, in

03:41PM 5  general, this innovative company that came up with the

03:41PM 6  DVR first; that everybody recognized TiVo.  There are

03:41PM 7  hundreds upon hundreds of documents on TiVo's exhibit

03:41PM 8  list that just tout the innovation that TiVo has.  This

03:42PM 9  is going to show that there were -- there were

03:42PM 10 innovators that came before TiVo.  They weren't first.

03:42PM 11 So it's relevant to rebut both of those items.

03:42PM 12          THE COURT:   All right.  Anything further

03:42PM 13 from TiVo?

03:42PM 14          MR. WERNER:   Please, Your Honor.  My

03:42PM 15 apologies for the -- the confusion here.  We -- we

03:42PM 16 attempted by -- to categorize our objections to the

03:42PM 17 extent that they applied to multiple exhibits to

03:42PM 18 streamline the process so that we were talking about

03:42PM 19 one objection about one kind of document at a --

03:42PM 20 several kinds of documents at a time.  We were not

03:42PM 21 aware when we lodged our objection that this was the

03:42PM 22 real 1673 exhibit --

03:42PM 23          THE COURT:   It's all right.  We're beyond

03:42PM 24 all that right now.

03:42PM 25          MR. WERNER:   So we have similar

03:42PM   1   objections with respect to other documents that

03:42PM   2   grant -- that -- that reflect that Grass Valley

03:42PM   3   allegedly won certain awards.  Our --

03:42PM   4                    (Cell phone rings.)

03:42PM   5                    MR. WERNER:  -- my arguments may apply

03:42PM   6   later and the bottom line here is that I was not aware

03:43PM   7   that Ms. Ducca represented TiVo and -- but all of the

03:43PM   8   representations she was making about what we were

03:43PM   9   arguing to correct Ms. Ducca, we -- what TiVo invented

03:43PM  10   the first --

03:43PM  11                    THE COURT:  Let me stop you a minute.

03:43PM  12   Did we have a cell phone go off?

03:43PM  13                    MS. DOAN:  Yes, Your Honor, it was mine.

03:43PM  14   I'm terribly sorry.  I thought I'd turned it back off

03:43PM  15   on a break.

03:43PM  16                    THE COURT:  All right.  Let me just

03:43PM  17   remind everybody.  The Jury is not going to have a cell

03:43PM  18   phone.  If I hear a cell phone go off during the trial,

03:43PM  19   I'm going to confiscate it.

03:43PM  20                    MS. DOAN:  It won't happen again.

03:43PM  21                    THE COURT:  Well, that's all right, Ms.

03:43PM  22   Doan.  And this not -- this is not the same

03:43PM  23   circumstance.  It's not as egregious without the Jury

03:43PM  24   here, but nonetheless, I just want to put everybody on

03:43PM  25   notice, that's -- that's your staff, that's your

03:43PM 1     paralegals, if it -- if it interrupts the proceeding

03:43PM 2     once we start the trial, it will be confiscated.

03:43PM 3                     All right.  Go ahead, Counsel.

03:43PM 4                     MR. WERNER:   Thank you, Your Honor.

03:43PM 5     What TiVo invented was the first commercially viable

03:44PM 6     consumer DVR.  If we could go back to page 11.  TiVo

03:44PM 7     does not assert that it invited -- invented the first

03:44PM 8     commercially viable event driven control room

03:44PM 9     automation system for production of live television,

03:44PM 10    etcetera.

03:44PM 11                    THE COURT:  Now, how is my court reporter

03:44PM 12    supposed to get that down?

03:44PM 13                    MR. WERNER:  My apologies.  I'm trying to

03:44PM 14    not take up so much time.  I feel --

03:44PM 15                    THE COURT:  Okay.

03:44PM 16                    MR. WERNER:  -- that I'm being

03:44PM 17    long-winded.  What is described here, this control room

03:44PM 18    automation, this is not a consumer DVR, this is a point

03:44PM 19    that will certainly be drawn out with the Jury.  But

03:44PM 20    what's happening here is that Motorola and TWC want to

03:44PM 21    mislead the Jury to believe that because Grass Valley

03:44PM 22    won an award, it's a better candidate for prior art.

03:44PM 23                    THE COURT:  Well --

03:44PM 24                    MR. WERNER:  It has --

03:44PM 25                    THE COURT:  -- I've -- I've heard enough.

03:44PM 1   I think this is -- I think this is clearly hearsay and

03:44PM 2   I don't find that it falls within any of the

03:45PM 3   exceptions.  I'm going to sustain the objection to

03:45PM 4   1673, the real 1673.

03:45PM 5               And let's go on to the next category,

03:45PM 6   which is 16.

03:45PM 7               MS. DUCCA:   Your Honor, a little bit

03:45PM 8   better news with objection 16.  Motorola and Time

03:45PM 9   Warner Cable have withdrawn all of the exhibits that

03:45PM 10  were subject to exhibit -- objection 16.  So it's our

03:45PM 11  understanding that this objection category is moot.

03:45PM 12              Would you like me to read the exhibits

03:45PM 13  into the record?

03:45PM 14              THE COURT:   Let me ask TiVo to confirm

03:45PM 15  that's correct.

03:45PM 16              MR. WERNER:   I'm sorry?

03:45PM 17              THE COURT:   Is that correct, Counsel?

03:45PM 18              MR. WERNER:   That's correct, they've all

03:45PM 19  been withdrawn.  Yes, Your Honor.

03:45PM 20              THE COURT:   All right.  Then for the

03:45PM 21  record, Counsel, just read the numbers, get them into

03:45PM 22  the record as withdrawn.

03:45PM 23              MS. DUCCA:   Okay.  Exhibits 24, 30, 31,

03:45PM 24  32, 33, 825, 829, 1010, 1409, 1452, 1453, 1458, 1459,

03:46PM 25  1679, 1691, 1822, and 2529.

03:46PM 1        THE COURT:   All right.   Those are all PX

03:46PM 2   and then the appropriate numbers.

03:46PM 3        MS. DUCCA:   That is correct, Your Honor.

03:46PM 4        THE COURT:   Good.   All right.   Those are

03:46PM 5   noted as being withdrawn.

03:46PM 6        We'll go on to category 17.   What's the

03:46PM 7   status on that?

03:46PM 8        MS. DUCCA:   With respect to TiVo's

03:46PM 9   objection 17, Motorola and Time Warner Cable have

03:46PM 10  withdrawn Plaintiffs' Exhibits 266, 272, 275, 276, 277,

03:46PM 11  279, 286, 287, 289, 295, 296, 297, 298, 299, 300, and

03:47PM 12  Exhibit 692.

03:47PM 13       Motorola and Time Warner Cable have not

03:47PM 14  withdrawn Exhibits 252, 257, 260, 265, 267, 270, 273,

03:47PM 15  282, 283, 284, 290, 291, 294, 1672, 1739, 1927, 1928,

03:47PM 16  2625, and 2653.

03:47PM 17       THE COURT:   All right.   Then let me hear

03:47PM 18  from TiVo on their remaining objections to the

03:48PM 19  nonwithdrawn exhibits in this category.

03:48PM 20       MR. BIRNHOLZ:   Thank you, Your Honor.

03:48PM 21  Richard Birnholz for TiVo.

03:48PM 22       The documents that are subject to this

03:48PM 23  objection, they're -- they're largely in two

03:48PM 24  categories; one is just 2653, which is the code that we

03:48PM 25  were talking about earlier, which I believe Your Honor

03:48PM  1  was interested in discussing that in the context of the

03:48PM  2  foundation objection.  And so this is the

03:48PM  3  nonoperational, incomplete, partial code and putting

03:48PM  4  aside any issues about its significance under 102(g)

03:48PM  5  for abandonment or whatever, talking about just

03:48PM  6  foundation and authentication given that we have an

03:48PM  7  incomplete nonoperational code, there's no

03:48PM  8  authentication that it worked in a way that makes it

03:48PM  9  relevant prior art or that it worked in any way.  And

03:48PM  10  so it's like putting source code in front of the Jury

03:48PM  11  without a basis that it's relevant.  So we'd object to

03:49PM  12  2653 on that basis.

03:49PM  13          The remaining exhibits, they bear

03:49PM  14  Motorola production numbers in the case, but it is not

03:49PM  15  clear where they came from.  We think they were printed

03:49PM  16  off of a computer that may have remained in the custody

03:49PM  17  of one of the former iMedia employees in his personal

03:49PM  18  capacity.  And so these are just printouts off of a

03:49PM  19  computer and that's why we have a whole bunch of

03:49PM  20  unsigned documents that we don't know what they are.

03:49PM  21          And so they're not from iMedia.  We don't

03:49PM  22  know where they came from and so there's no basis to

03:49PM  23  say that these were business records of iMedia when

03:49PM  24  they're not ever produced to us from iMedia's files or

03:49PM  25  in the manner in which they were maintained in the

03:49PM   1    ordinary course of business and that showing, I don't

03:49PM   2    think, can ever be made.  They're --

03:49PM   3                    THE COURT:   So far as -- so far as you

03:49PM   4    know, does Motorola have a sponsoring witness for these

03:50PM   5    documents?

03:50PM   6                    MR. BIRNHOLZ:   I -- from as far as I

03:50PM   7    know, I believe, based on what I've heard today, is

03:50PM   8    that they intend to try to have Mr. Adam Tom or one of

03:50PM   9    the iMedia folks testify about these documents.  But

03:50PM  10    given that they're literally printouts of files from a

03:50PM  11    computer decades later that we have no basis to know

03:50PM  12    whether it was a draft, whether it was in a file,

03:50PM  13    whether it was -- we don't know anything about it.  And

03:50PM  14    so we object on the grounds that they're not

03:50PM  15    sufficiently authenticated, that they're hearsay and

03:50PM  16    not admissible.

03:50PM  17                    THE COURT:   All right.  Response?

03:50PM  18                    MR. WHITEHURST:   Good afternoon, Your

03:50PM  19    Honor.  Alan Whitehurst.  I apologize, but we are

03:50PM  20    addressing documents that we already addressed earlier.

03:50PM  21    Most of -- a lot of these exhibits were the same

03:50PM  22    exhibits that we looked at earlier.  These are, for

03:51PM  23    examples, letters from Mr. Tom to Mr. Yang.

03:51PM  24                    And if I could put up a deposition

03:51PM  25    transcript from the deposition of Mr. Tom.

03:51PM 1      You asked me earlier today whether Mr.

03:51PM 2 Tom was going to have an epiphany.  I was able to check

03:51PM 3 the transcript, Mr. Tom testimony -- testified at

03:51PM 4 length about PX-252, the first document.

03:51PM 5      And if we could put the transcript up,

03:51PM 6 please.

03:51PM 7      And you'll see that he was handed during

03:51PM 8 his deposition PX-252.  This was the document that Mr.

03:51PM 9 Birnholz addressed earlier today.  Said that Mr. Tom

03:51PM 10 never remembered seeing this document.  If you look at

03:51PM 11 the deposition here, he testified at length about

03:51PM 12 PX-252.  Mr. Birnholz objected numerous times, even

03:51PM 13 moved to strike Mr. Tom's testimony.

03:51PM 14      And the same is true for most of the

03:51PM 15 other exhibits that you see here, listed here on

03:52PM 16 objective seven -- objection 17.  These were documents

03:52PM 17 that were introduced during the deposition of Mr. Tom,

03:52PM 18 Mr. -- Dr. Krause, Mr. Shen, and Dr. Heller, the

03:52PM 19 inventor of -- of the iMedia patents and that worked at

03:52PM 20 iMedia.  So we do have a sponsoring witness for all of

03:52PM 21 these documents and they will be testifying to the

03:52PM 22 extent possible, assuming they're available for trial,

03:52PM 23 to authenticate each and every one of these documents.

03:52PM 24      Now, we have a very different view of the

03:52PM 25 source code, 2653.  Mr. Krause testified during his

03:52PM 1  deposition about a demonstration.  I'll explain how the

03:52PM 2  source code in question was used in this demonstration.

03:52PM 3          Also, Mr. Birnholz said that he had no

03:52PM 4  idea where these documents came from.  Mr. Shen

03:53PM 5  testified at length during his deposition that these

03:53PM 6  documents were found on backup tapes from iMedia.

03:53PM 7          THE COURT:   All right.  Well, with

03:53PM 8  regard to the nonwithdrawn exhibits in this category

03:53PM 9  except 2653, I'm going to defer any ruling until I hear

03:53PM 10 a foundation laid at trial and I'll take any foundation

03:53PM 11 or hearsay objections up at that time.  I'm not

03:53PM 12 comfortable looking at a flash on a screen of a

03:53PM 13 deposition I didn't know anything about and saying yes,

03:53PM 14 that means there's a foundation or no, there's not.  So

03:53PM 15 you're going to have to lay it out at the time you

03:53PM 16 offer them and offer them during the trial and I'll

03:53PM 17 take up the objection at that time.

03:53PM 18          MR. WHITEHURST:  Yes, and Your Honor,

03:53PM 19 there is one other issue I'd like to flag for -- for

03:53PM 20 the Court.  We are trying to streamline our

03:53PM 21 presentation at trial.  There are four inventors of the

03:54PM 22 '714 patent.  When we -- if possible, we would like to

03:54PM 23 avoid having to put all four of these inventors on the

03:54PM 24 stand.

03:54PM 25          As I mentioned before, Mr. Shen testified

03:54PM  1   during his deposition that these documents came from

03:54PM  2   the back of archives that he was responsible for

03:54PM  3   keeping.  We would hope that if Mr. Krause -- excuse

03:54PM  4   me, Dr. Krause, Dr. Tom, and the other individuals can

03:54PM  5   testify as to these documents, that we wouldn't also be

03:54PM  6   required to fly in Mr. Shen all the way from California

03:54PM  7   to, in essence, authenticate a second time documents

03:54PM  8   that the other inventors have already testified to.

03:54PM  9            THE COURT:   Why would they need to be

03:54PM 10   authenticated more than once?

03:54PM 11            MR. WHITEHURST:   That's our point exactly

03:54PM 12   and that's something that, if possible, we'd like to

03:54PM 13   resolve during today's hearing.  To the extent Dr.

03:55PM 14   Krause, Dr. Tom, the other inventors have firsthand

03:55PM 15   knowledge, we would hope that we would not have to also

03:55PM 16   put on the stand Mr. Shen to testify how these

03:55PM 17   documents came from the back of archives if the other

03:55PM 18   individuals have already authenticated and testified as

03:55PM 19   to these documents.  It would -- it would help us

03:55PM 20   eliminate an entire witness and to help streamline the

03:55PM 21   case.

03:55PM 22            THE COURT:   Well, have you had a

03:55PM 23   discussion with opposing Counsel about that?

03:55PM 24            MR. WHITEHURST:   We can certainly meet

03:55PM 25   and confer with them on this point.

03:55PM  1          THE COURT:   Well, talk with each other.

03:55PM  2  I'm going to be honest, I'm a little confused why you

03:55PM  3  think there's going to need to be multiple

03:55PM  4  authentications of the same documents.  Once a document

03:55PM  5  is authenticated and admitted into evidence, it's in --

03:55PM  6  it's in evidence.

03:55PM  7          But if you think you can streamline

03:55PM  8  things now, fine.  But I'm not -- I'm not going to tell

03:56PM  9  you from the bench today, yes, you can do that or no

03:56PM  10  you can't.  Discuss it with the other side and then let

03:56PM  11  me know where you stand.

03:56PM  12          MR. WHITEHURST:  Thank you, Your Honor.

03:56PM  13          MR. BIRNHOLZ:   And where things stand

03:56PM  14  apart from that is that they need to lay the foundation

03:56PM  15  and -- and prove up the --

03:56PM  16          THE COURT:  Yes.

03:56PM  17          MR. BIRNHOLZ:  -- admissibility?  Thank

03:56PM  18  you, Your Honor.

03:56PM  19          MR. WHITEHURST:  For the -- the one

03:56PM  20  source code, correct?

03:56PM  21          MR. BIRNHOLZ:  No.

03:56PM  22          THE COURT:   No.  My ruling is you're

03:56PM  23  going to have to lay the foundation for every one of

03:56PM  24  these.

03:56PM  25          MR. WHITEHURST:  Thank -- thank you, Your

03:56PM  1   Honor.

03:56PM  2              THE COURT:   All right.  Does that bring

03:56PM  3   us to category 18?

03:56PM  4              MS. DUCCA:   Yes, it does, Your Honor.

03:56PM  5   With respect to category 18, Motorola and Time Warner

03:56PM  6   Cable have withdrawn Exhibits PX-971 and Exhibit 1030

03:56PM  7   and therefore I believe that this one is moot.

         8              MR. BIRNHOLZ:  That's correct, Your

         9   Honor.

        10              THE COURT:  All right.  Let's go --

        11              MS. DUCCA:  With respect to objection 19,

        12   I believe we have an agreement.

03:57PM 13              MR. BIRNHOLZ:  We -- TiVo withdraws

03:57PM 14   objection 19.

03:57PM 15              THE COURT:  All right.  The objection to

03:57PM 16   category 19 is withdrawn and therefore the exhibit at

03:57PM 17   issue, PX-294 is deemed preadmitted.

03:57PM 18              MS. DUCCA:   Thank you, Your Honor.

03:57PM 19              THE COURT:   That brings us to category or

03:57PM 20   objection 20.

03:57PM 21              MR. BIRNHOLZ:  My apologies for the

03:57PM 22   interruption, but I have one question about Exhibit

03:57PM 23   2653, Your Honor, which was the source code exhibit.

03:57PM 24   I -- I heard Your Honor say that the foundation needed

03:57PM 25   to be laid, but before Your Honor issued the -- the

03:57PM  1    ruling, I -- it sounded as if you had a different

03:57PM  2    ruling for the source code and I wanted to follow up on

03:57PM  3    whether that was the case.

03:57PM  4            THE COURT:   No, Counsel, you had raised

03:57PM  5    an objection as to relevance and incompleteness.  Then

03:57PM  6    we got into a discussion of foundation and hearsay.

03:58PM  7    Obviously, if -- if Motorola can't lay a foundation

03:58PM  8    adequate to support admission, we don't get to the

03:58PM  9    issue of relevance and incompleteness.

03:58PM  10           So I've deferred ruling on all of these

03:58PM  11   until we take up the foundation issue.  If they can

03:58PM  12   produce a witness that can lay a proper foundation for

03:58PM  13   2653, since it is otherwise admission -- admitted, then

03:58PM  14   you can argue your relevance objection at that point.

03:58PM  15           MR. BIRNHOLZ:   Thank you --

03:58PM  16           THE COURT:  All right?

03:58PM  17           MR. BIRNHOLZ:   -- for clearing that up.

03:58PM  18   I appreciate it.

03:58PM  19           THE COURT:   Now, back to -- okay.

03:58PM  20   PX-294 is preadmitted.  That brings us to category 20.

03:58PM  21           MS. DUCCA:   For category 20, Motorola

03:58PM  22   and Time Warner Cable have withdrawn PX-37, PX-38, 39,

03:58PM  23   40, 41, 42, 974, 1960, 1961, 19 -- 1962, 1967, 1968,

03:59PM  24   1970, 1971, and 2654.

03:59PM  25           That leaves Exhibits 43, 70 -- 764, 855,

03:59PM  1   857, 973, 1673, and Exhibit 1707.  It's my

03:59PM  2   understanding that those objections are still pending.

03:59PM  3               MR. WERNER:   Your Honor, 1673 was

03:59PM  4   subject to your ruling of several minutes ago.

03:59PM  5               THE COURT:   Then it should be disposed

03:59PM  6   off.

03:59PM  7               All right.  What's TiVo's position with

03:59PM  8   regard to the nonwithdrawn exhibits under this

03:59PM  9   category?

03:59PM  10              MR. WERNER:  We have a situation here,

03:59PM  11  Your Honor, that is very similar to the situation with

03:59PM  12  the iMedia documents that Mr. Birnholz just finished

04:00PM  13  discussing with you, except here we have some

04:00PM  14  problem -- very -- very similar and to an extent more

04:00PM  15  so.

04:00PM  16              The documents that are subject to this

04:00PM  17  objection have been held out as ReplayTV documents.

04:00PM  18  There is the -- the company that was ReplayTV on its

04:00PM  19  way to bankruptcy was acquired by a company called

04:00PM  20  SONICblue, which was eventually acquired by DIRECTV.

04:00PM  21  DIRECTV is the successor in interest to the company

04:00PM  22  that was ReplayTV.

04:00PM  23              If we could put, Joshua, F-7?

04:00PM  24              DIRECTV has produced documents in

04:00PM  25  response to subpoenas in prior cases, not in this case,

04:00PM 1   but in the AT&T case, that are ReplayTV documents, the

04:01PM 2   documents that DIRECTV -- that are in the possession,

04:01PM 3   custody, and control of DIRECTV that are ReplayTV

04:01PM 4   documents.  These ReplayTV documents, the documents

04:01PM 5   subject to objection 20, were not produced by DIRECTV.

04:01PM 6          Here is an e-mail, and Counsel for

04:01PM 7   Motorola, at the time only DNL Piper was in the case,

04:01PM 8   was copied on this e-mail.  And through the process of

04:01PM 9   seeking consent to produce these documents that were

04:01PM 10  subject to other protective orders in this case, these

04:01PM 11  ReplayTV documents, the documents subject to objection

04:01PM 12  20, RPTV and RPTV SC documents, came up in the

04:01PM 13  conversation with DIRECTV with respect to the DIRECTV

04:01PM 14  -- the documents that DIRECTV produced as the successor

04:02PM 15  in interest to ReplayTV.

04:02PM 16         It's not clear where these RPTV and RPTV

04:02PM 17  SC documents came from.  They appeared in the AT&T

04:02PM 18  case; some of them produced in response to a subpoena

04:02PM 19  to Mr. Anthony Wood, formerly of ReplayTV; some of them

04:02PM 20  produced by Microsoft.  And our consent requests always

04:02PM 21  go back to Microsoft on that score.

04:02PM 22         It appears that those -- the two

04:02PM 23  individuals that -- at least Mr. Wood and it's been

04:02PM 24  suggested that Mr. Shanson, another former ReplayTV

04:02PM 25  employee, took these documents with them when ReplayTV

04:02PM  1   went under.  In any event, they did not continue on and

04:02PM  2   remain in the possession of the series of companies and

04:02PM  3   are not currently in the possession of DIRECTV, at

04:02PM  4   least DIRECTV is not -- we -- we're not sure -- we're

04:03PM  5   not -- and we aren't entirely sure which documents

04:03PM  6   these are.  Subpoenas directed to DIRECTV have not

04:03PM  7   resulted in the production of any of these documents.

04:03PM  8              So we have a serious question about the

04:03PM  9   authenticity of these documents.  Foundational

04:03PM 10   predicate, where do they come from?  What are they?

04:03PM 11   Were they modified?

04:03PM 12              There's also a lot of animosity between

04:03PM 13   TiVo and ReplayTV and Mr. Wood, perhaps they were

04:03PM 14   modified before being produced.  In any event, the

04:03PM 15   necessary foundational predicate to establish these

04:03PM 16   documents as admissible and not hearsay have not been

04:03PM 17   established and the documents should not be

04:03PM 18   preadmitted.

04:03PM 19              THE COURT:  So you're saying they're not

04:03PM 20   business records of DIRECTV because they're no longer

04:03PM 21   in their care, custody or control?

04:03PM 22              MR. WERNER:  That is correct.  And

04:03PM 23   because they're not in the possession, custody, and

04:03PM 24   control of DIRECTV, they're not in possession, custody,

04:03PM 25   and control of ReplayTV because DIRECTV is a successor

04:03PM  1  in interest.  They came from someplace else.  Where,

04:03PM  2  not really sure.

04:03PM  3          THE COURT:   Is there a sponsoring

04:04PM  4  witness who will step up and say these are my

04:04PM  5  documents, this is where they came from and this is how

04:04PM  6  long I've had them?  This is where I've kept them.

04:04PM  7  This is where they were -- when they were generated.

04:04PM  8          MR. WERNER:   Not that we're -- certainly

04:04PM  9  not any witness that we intend to call in our

04:04PM 10  affirmative case.

04:04PM 11          THE COURT:   Motorola, do you have a

04:04PM 12  sponsoring witness?

04:04PM 13          MR. TRAUPMAN:  Matt Traupman on behalf of

04:04PM 14  Motorola, Your Honor.

04:04PM 15          Yes, we do.  We have two sponsoring

04:04PM 16  witnesses who are going to testify via deposition.

04:04PM 17  They are Mr. Anthony Wood, who is the founder of

04:04PM 18  ReplayTV, and Mr. Spencer Shanson, who he's

04:04PM 19  self-described as employee number three of Replay,

04:04PM 20  essentially the first software engineer at -- at

04:04PM 21  ReplayTV and --

04:04PM 22          THE COURT:   They're going to offer these

04:04PM 23  as business records of ReplayTV?

04:04PM 24          MR. TRAUPMAN:  Yes, Your Honor.  In fact,

04:04PM 25  we submitted the designated deposition testimony this

04:04PM   1    morning.

04:04PM   2              THE COURT:   How do those -- how do those

04:04PM   3    gentlemen qualify as a custodian?

04:05PM   4              MR. TRAUPMAN:   Well, so Mr. Shanson

04:05PM   5    for -- for -- so just take an example, PX-855 is a

04:05PM   6    software specification, a ReplayTV software

04:05PM   7    specification.  Mr. Shanson said I wrote this myself.

04:05PM   8    I recognize it.  This is what I did.  This is my work.

04:05PM   9    I created this as my first -- essentially my first

04:05PM  10    assignment at ReplayTV.

04:05PM  11              THE COURT:   Well --

04:05PM  12              MR. TRAUPMAN:   And so --

04:05PM  13              THE COURT:   -- if you're offering it as a

04:05PM  14    business record of DIRECTV or DIRECTV as successor in

04:05PM  15    interest to ReplayTV, then you need a custodian of

04:05PM  16    those records, not an author if you're going to -- if

04:05PM  17    you're going to comply with the business records

04:05PM  18    exception.  Custodian doesn't need to know what they

04:05PM  19    say or what they mean.  The custodian needs to know

04:05PM  20    they've been in our care and custody and control and

04:05PM  21    they were made at or about the time of the events

04:05PM  22    reflected therein.

04:06PM  23              MR. TRAUPMAN:   Yes, Your Honor.  So

04:06PM  24    just -- I think the corporate -- the corporate -- the

04:06PM  25    designation of -- of DIRECTV as the corporate successor

04:06PM  1    of ReplayTV is not as clean, I think, as what Counsel

04:06PM  2    for TiVo might have said.  I mean, so Mr. Wood, as I

04:06PM  3    said, was the original founder and CEO of -- of

04:06PM  4    ReplayTV.  He had documents in his possession, as being

04:06PM  5    the CEO of the company.  There's a subpoena served on

04:06PM  6    him that he produced these documents in response to

04:06PM  7    that subpoena.  As CEO he would -- he's able to say

04:06PM  8    yes, these are ReplayTV documents that I had in my

04:06PM  9    possession.

04:06PM  10            They didn't -- they were in the

04:06PM  11   possession of -- of the successor in interest because

04:06PM  12   Mr. Wood had them.  Now Mr. Wood's moved on to another

04:06PM  13   company, but that doesn't mean they're not business

04:06PM  14   records of ReplayTV that the CEO of ReplayTV had in his

04:06PM  15   possession.

04:06PM  16            THE COURT:  But he's not the CEO of

04:06PM  17   ReplayTV anymore, is he?

04:06PM  18            MR. TRAUPMAN:  Well, ReplayTV doesn't

04:06PM  19   exist anymore.

04:07PM  20            THE COURT:  Right.  And it has a

04:07PM  21   successor in interest, which is DIRECTV and DIRECTV

04:07PM  22   acquired the assets of ReplayTV.  And if they're

04:07PM  23   business records of DIRECTV, there needs to be a

04:07PM  24   custodian from DIRECTV that can testify to the business

04:07PM  25   records exception if you're offering them as business

04:07PM   1   records of ReplayTV, which is what you've told me.

04:07PM   2            MR. TRAUPMAN:  Well, they also

04:07PM   3   corroborate Mr. Shanson's just testimony that how he --

04:07PM   4   how he -- how he developed the ReplayTV device, so

04:07PM   5   they're not even necessarily offered for the truth of

04:07PM   6   the matter it's serving, they just provide

04:07PM   7   corroboration to his oral testimony, which is also --

04:07PM   8   another requirement under Section 102(g).  So they're

04:07PM   9   authentic because Mr. Shanson says I wrote this and

04:07PM  10   they provide corroboration to his oral testimony.

04:07PM  11            THE COURT:  How in the world could they

04:07PM  12   corroborate something without being offered for the

04:07PM  13   truth of what they're -- what they assert?

04:07PM  14            MR. TRAUPMAN:  It's a contemporaneous

04:07PM  15   record, Your Honor.

04:07PM  16            THE COURT:  Well, to the extent -- you

04:08PM  17   know, to the extent the witness has personal knowledge

04:08PM  18   what's in the record, the witness can testify what

04:08PM  19   their personal knowledge is.  To the extent you're

04:08PM  20   offering them as a business record of ReplayTV, you've

04:08PM  21   told me nothing that makes me satisfied you can meet

04:08PM  22   the business records exception to the hearsay rule.

04:08PM  23            So if they're a business record of

04:08PM  24   ReplayTV, I'm going to sustain the objection.  That

04:08PM  25   doesn't mean if somebody says this is my work, I wrote

| | | |
|---|---|---|
| 04:08PM | 1 | it, can't talk about what they did and what their work |
| 04:08PM | 2 | is, whether it's reflected in that document or they're |
| 04:08PM | 3 | talking off the top of their head.  But to offer |
| 04:08PM | 4 | that -- the document itself into evidence as a business |
| 04:08PM | 5 | record of ReplayTV, you've got to have a custodian or |
| 04:08PM | 6 | the successor entity who can testify to the business |
| 04:08PM | 7 | records exception.  And unless I'm missing something, |
| 04:08PM | 8 | you -- you don't have one. |
| 04:08PM | 9 | So I'm going to grant the objection to |
| 04:08PM | 10 | the business records exception -- I'm going to grant |
| 04:08PM | 11 | the objection to the hear -- I'm going to grant the |
| 04:08PM | 12 | hearsay objection.  All right? |
| 04:08PM | 13 | MR. TRAUPMAN:  Understood. |
| 04:09PM | 14 | THE COURT:  All right.  Let's go to |
| 04:09PM | 15 | category 21, unless I've missed something. |
| 04:09PM | 16 | MS. DOAN:  Your Honor, if at trial we |
| 04:09PM | 17 | can -- we can go around the hearsay exception through a |
| 04:09PM | 18 | witness, can we reoffer the document? |
| 04:09PM | 19 | THE COURT:  I'm not precluding some |
| 04:09PM | 20 | other basis, but they've been offered as a business |
| 04:09PM | 21 | record and I'm finding that you don't meet the business |
| 04:09PM | 22 | records exception. |
| 04:09PM | 23 | MS. DOAN:  Thank you, Your Honor. |
| 04:09PM | 24 | THE COURT:  But by the same token -- |
| 04:09PM | 25 | well, never mind.  Go ahead. |

04:09PM  1          MS. DUCCA:   Your Honor, with respect to

04:09PM  2    exhibit category 21, Motorola and Time Warner Cable

04:09PM  3    have withdrawn the following exhibits:  Plaintiffs'

04:09PM  4    Exhibit 72, 73, 77, 1660, 1719, 1977, 1978, 1979, 1981,

04:10PM  5    1982, 1984, 1985, 1986, and 1987.

04:10PM  6          We have not withdrawn Exhibits 74, 75,

04:10PM  7    76, 78, 80, 81, 1652, 1653, 1654, 1655, 1656, 1657,

04:10PM  8    1658, 1659, 1674, 1698, 1699, 1700, 1701, 1703, 1704,

04:10PM  9    1705, 1706, 2663, and 2673.

04:11PM 10          THE COURT:   All right.  Let me hear

04:11PM 11    TiVo's objections to the nonwithdrawn exhibits.

04:11PM 12          MR. WERNER:  Thank you, Your Honor.  We

04:11PM 13    have a similar situation again with respect to Grass

04:11PM 14    Valley as we did with Replay and with iMedia.  And TiVo

04:11PM 15    lodges a similar objection with respect to these

04:11PM 16    documents, the necessary foundation of predicate needs

04:11PM 17    to be established before they can be admitted,

04:11PM 18    documents need to be proved up.

04:11PM 19          There's a particular problem within this

04:11PM 20    category, this objection category, that we'd like to

04:11PM 21    address with Your Honor.

04:11PM 22          Josh, if you could pull up PX-1660.

04:11PM 23          THE COURT:   Was this not withdrawn?  I

04:11PM 24    have that marked as withdrawn.

04:12PM 25          MS. DUCCA:  Your Honor, this exhibit has

04:12PM   1    been withdrawn.

04:12PM   2                    MR. WERNER:   It has?  My apologies.

04:12PM   3                    THE COURT:   That particular problem has

04:12PM   4    been dealt with.

04:12PM   5                    MR. WERNER:   My record today is

04:12PM   6    excellent.

04:12PM   7                    THE COURT:   All right.  So your

04:12PM   8    objection, Counsel, is lack of foundation and hearsay?

04:12PM   9                    MR. WERNER:   That is correct, Your

04:12PM   10   Honor.

04:12PM   11                   THE COURT:   Response?

04:12PM   12                   MR. TRAUPMAN:  Your Honor, these

04:12PM   13   documents were produced in response to the subpoena to

04:12PM   14   Grass Valley.  We are planning on having a Grass Valley

04:12PM   15   witness come and testify to authenticate these

04:12PM   16   documents.  They are largely, and generalizing here,

04:12PM   17   but most of these documents are user manuals,

04:12PM   18   installation manuals, service manuals, that type of

04:12PM   19   thing for -- related to the PDR200 prior art device.

04:12PM   20                   They clearly are business records that

04:12PM   21   were created in the course of Grass Valley's business.

04:12PM   22   They've given them to customers along with, you know,

04:13PM   23   Grass Valley devices as they were purchased.  Again,

04:13PM   24   our witness is going to confirm all these facts on the

04:13PM   25   witness stand.  We believe that they are -- all these

04:13PM  1    exhibits are admissible.

04:13PM  2             THE COURT:   Well you know, in most

04:13PM  3    trials, Counsel, the lawyers get together, they know

04:13PM  4    the business records exception, they look at what the

04:13PM  5    other side's got and if they meet the exception, the

04:13PM  6    objection goes away, you don't have to bring the

04:13PM  7    authenticating witness, they're preadmitted and you use

04:13PM  8    them in trial and you both save a lot of time.   It

04:13PM  9    doesn't look like that's going to happen in this trial.

04:13PM  10            MR. TRAUPMAN:   We --

04:13PM  11            THE COURT:   So I mean, if you want to lay

04:13PM  12   a predicate and bring the witness, I'll take it up

04:13PM  13   as -- in due course during the trial.   But otherwise,

04:13PM  14   I'm in no position to say whether you can or can't meet

04:13PM  15   that exception with what you've just represented to me.

04:13PM  16            MR. TRAUPMAN:   Okay, Your Honor.   We --

04:13PM  17   I mean, we will bring a witness to authenticate these

04:13PM  18   at trial and -- and prove the business exception.   They

04:13PM  19   were also testimony, deposition testimony was also

04:13PM  20   given that these were exactly as I just represented.

04:14PM  21   Again, documents that were created 20 years ago almost,

04:14PM  22   15 years ago, in the ordinary course of Grass Valley's

04:14PM  23   business in supporting their drafts of that PDR200

04:14PM  24   device.

04:14PM  25            THE COURT:   I guess what I'm saying,

04:14PM    1    Counsel, is you're y'all capable lawyers.  You all know

04:14PM    2    what the business records exception to the hearsay rule

04:14PM    3    is.  Why haven't you gone through this and come to a

04:14PM    4    reasonable conclusion that you can both agree to and

04:14PM    5    why am I not having these matters already taken care

04:14PM    6    of?

04:14PM    7             I mean, that -- I don't know the answer

04:14PM    8    to that, but obviously you haven't done it and we're

04:14PM    9    not going to do it today.  I can't rule on the

04:14PM   10    admissibility based on that exception, based on what

04:14PM   11    you're representing did or didn't happen or what

04:14PM   12    somebody is or isn't going to say when they come to

04:14PM   13    testify.  So we'll just carry these to the trial.

04:14PM   14             But I remind everybody, there's a finite

04:14PM   15    amount of time the Court's allowed for presentation of

04:14PM   16    evidence and it's not going to be extended because the

04:14PM   17    parties haven't met and conferred and streamlined the

04:15PM   18    evidence process.  If it eats up your time, that's not

04:15PM   19    my fault.  Understood?

04:15PM   20             MR. TRAUPMAN:  Yes, Your Honor.

04:15PM   21             THE COURT:  All right.  I'll carry the

04:15PM   22    objections based on hearsay and the business records

04:15PM   23    exception until a sponsoring witness is presented who

04:15PM   24    can be evaluated by the Court.

04:15PM   25             Category 22.

04:15PM  1          MS. DUCCA:   Your Honor, I do not believe

04:15PM  2  we have any agreements with respect to category 22.   We

04:15PM  3  have not withdrawn any exhibits and TiVo has not

04:15PM  4  withdrawn any objections.

04:15PM  5          THE COURT:   All right.  TiVo, what's the

04:15PM  6  basis of your objection to these three exhibits?

04:15PM  7          MR. WERNER:   Thank you, Your Honor.

04:15PM  8  Category 22 reflects several documents.  I refer to the

04:15PM  9  Court earlier, I noted that we had an objection similar

04:15PM 10  to the real 1673, these are those documents.  Similar

04:16PM 11  to what we discussed before with the Emmy present --

04:16PM 12  the Emmy document, these are documents about Replay --

04:16PM 13  sorry, Grass Valley having allegedly received awards

04:16PM 14  for its products.

04:16PM 15          TiVo objects to these documents as

04:16PM 16  irrelevant, prejudicial, and reflecting hearsay that is

04:16PM 17  inadmissible under any exception.

04:16PM 18          THE COURT:   Well, your irrelevant --

04:16PM 19  irrelevance objection is overruled.

04:16PM 20          What's the basis of your hearsay

04:16PM 21  objection?

04:16PM 22          MR. WERNER:   These documents reflect

04:16PM 23  websites and similar -- why don't we pull up PX-828?

04:16PM 24          MR. TRAUPMAN:   Pull up what?

04:17PM 25          MR. WERNER:   828.  This is a press

04:17PM  1    release, what appears to be a press release.  You'll

04:17PM  2    see the Bates numbers at the bottom.

04:17PM  3                    Actually, if you could zoom back out.

04:17PM  4                    Bates numbers at the bottom show this

04:17PM  5    document was produced by Microsoft, so we're not sure

04:17PM  6    where this document came from.  Microsoft found it

04:17PM  7    someplace.  There's nothing to indicate whether this

04:17PM  8    document was actually published and to be --

04:17PM  9                    THE COURT:   What's the -- what's the

04:17PM 10    reference to PR News Wire up there at the top?

04:17PM 11                    MR. WERNER:  I'm not sure.  I believe PR

04:17PM 12    News Wire is some form of service that offers press

04:17PM 13    releases for access to the public.

04:17PM 14                    THE COURT:   All right.  Motorola, how do

04:17PM 15    you propose to show that this is not hearsay or meets

04:18PM 16    an exception?

04:18PM 17                    MR. TRAUPMAN:   Your Honor, PR News Wire

04:18PM 18    is a well-known organization that publishes news

04:18PM 19    releases that fits within a hear -- the exception to

04:18PM 20    the hearsay rule.  It -- you know, the newspaper

04:18PM 21    exception to the hearsay rule, it's well-known that,

04:18PM 22    you know, these sort of press releases that PR News

04:18PM 23    Wire deals -- you know, publishes these sort of press

04:18PM 24    releases.  Moreover, they're business record -- these

04:18PM 25    press releases are created by Grass Valley and sent out

04:18PM 1   over the wire service; that's how press releases work.

04:18PM 2   They're business records.

04:18PM 3           Again, we're going to have a witness come

04:18PM 4   and testify we've -- and to establish these as business

04:18PM 5   records, something that would have been created in the

04:18PM 6   ordinary course of Grass Valley's business.  They issue

04:18PM 7   a press release when they come out with a new version

04:18PM 8   of the product.

04:19PM 9           THE COURT:   So your position is this is

04:19PM 10  not a new story from PR Wire -- News Wire, this is a

04:19PM 11  press release Grass Valley generated and sent to PR

04:19PM 12  News Wire for their use?

04:19PM 13          MR. TRAUPMAN:   Well, the way press

04:19PM 14  releases work, Your Honor, typically, and this is what

04:19PM 15  our witness will confirm, is you know, that they -- a

04:19PM 16  company issues a press release, it sends it to the wire

04:19PM 17  services.  You may have heard the wire services -- the

04:19PM 18  wire services are, for instance, PR News Wire.  They

04:19PM 19  then publish it as part of an aggregating type of --

04:19PM 20  you know, it's kind of like sending a story to the

04:19PM 21  newspaper and then it's published and, you know, for

04:19PM 22  instance, you can go on to Grass -- you could on to

04:19PM 23  financial web pages for Grass Valley.  You know,

04:19PM 24  they'll have the PR News Wire feed for Grass Valley, so

04:19PM 25  you can learn what Grass Valley is doing.

04:19PM  1        So it's originally draft -- this is

04:19PM  2    drafted by Grass Valley, sent to the news wire and then

04:19PM  3    published by the news wire.  So we think it actually

04:19PM  4    fits into two separate hearsay exceptions, Your Honor.

04:20PM  5        THE COURT:   And so you're telling me

04:20PM  6    that there will be a Grass Valley witness who will

04:20PM  7    testify that this was a record of that company,

04:20PM  8    prepared in the normal course of business and

04:20PM  9    maintained by them?

04:20PM 10        MR. TRAUPMAN:   Yes, Your Honor.

04:20PM 11        THE COURT:   All right.  TiVo, how is

04:20PM 12    that not an exception to the hearsay rule?  Assuming

04:20PM 13    that they can produce what they say they can.

04:21PM 14        MR. WERNER:   Thank you, Your Honor.

04:21PM 15    This is not a Grass Valley document.  There is no

04:21PM 16    evidence in the record about the history of the

04:21PM 17    document.  It's been alleged that it was authored by

04:21PM 18    Grass Valley and went through a series of steps to get

04:21PM 19    to PR News Wire and then allegedly published.  There's

04:21PM 20    nothing in the record to indicate that it hasn't been

04:21PM 21    modified, that it is exactly as it was authored

04:21PM 22    originally and it's -- it's -- it's pure hearsay.

04:21PM 23        THE COURT:   Well, if they produce a

04:21PM 24    witness at trial who says this is exactly as it was

04:21PM 25    originally generated.  It was generated by Grass Valley

04:21PM  1  as a part of their business operations, maintained by

04:21PM  2  them and I have care and custody of the business

04:21PM  3  records of Grass Valley and this is among them, then I

04:21PM  4  think it meets the exception to the hearsay rule.  But

04:21PM  5  you telling me there's nothing in the record to do that

04:21PM  6  today may well be the case.  But if they can -- if they

04:21PM  7  can substantiate it at trial, fine.

04:22PM  8           Again, this is one of the things that

04:22PM  9  usually is disclosed between Counsel and you'll save

04:22PM  10  bringing the person in just to authenticate a document.

04:22PM  11  But we obviously have a disagreement about what is or

04:22PM  12  isn't going to be said about this document, so I guess

04:22PM  13  I'll have to wait and hear what the sworn testimony is

04:22PM  14  when it's offered at trial.  I don't see that you-all

04:22PM  15  have given me any other alternative.

04:22PM  16           And if it can meet the exception, it'll

04:22PM  17  come in; if it can't, it won't.  But for you to say

04:22PM  18  we've got a person who will say this and you say no,

04:22PM  19  they can't have a person that says that, I don't know

04:22PM  20  how I can fairly sit here and take sides without

04:22PM  21  hearing sworn testimony from somebody.

04:23PM  22           We're going to waste an awful lot of

04:23PM  23  this -- of trial time on business records prove ups if

04:23PM  24  we keep doing it this way, though.  That's not going to

04:23PM  25  bother me.  The same amount of time is going to apply

04:23PM 1  for me sitting on the bench, but it may bother you-all

04:23PM 2  and your clients, so I want you to consider that.  But

04:23PM 3  unless you reach some agreement to the contrary, I'll

04:23PM 4  carry this until I hear the predicate laid at trial.

04:23PM 5          MR. WERNER:   There are, Your Honor, two

04:23PM 6  other documents in this category.

04:23PM 7          THE COURT:  I assume they're of a similar

04:23PM 8  nature?

04:23PM 9          MR. WERNER:   That's correct, Your Honor.

04:23PM 10         THE COURT:   Then the ruling will apply

04:23PM 11 to all three of them.

04:23PM 12         MR. WERNER:  Thank you, Your Honor.

04:23PM 13         THE COURT:  All right.  Objection

04:23PM 14 category 23.

04:23PM 15         MS. DUCCA:   Your Honor, I have some good

04:23PM 16 news with respect to the next two categories.  For

04:23PM 17 category 23, Motorola and Time Warner Cable have

04:23PM 18 withdrawn Exhibits 940, 2624, 2627, 2630, and 2631.  So

04:24PM 19 it is my understanding that this objection is moot.

04:24PM 20         THE COURT:   Is that correct, TiVo?

04:24PM 21         MR. WERNER:   That's correct, Your Honor.

04:24PM 22         THE COURT:  All right.

04:24PM 23         MS. DUCCA:   With respect to objection

04:24PM 24 category 24, Motorola and Time Warner Cable have

04:24PM 25 withdrawn Exhibits 962, 1668, 1669, 1713, and 1719.

04:24PM 1   That's all of the exhibits that were objected to, so

04:24PM 2   it's my understanding that this is also moot.

04:24PM 3                   MR. WERNER:  That's correct, Your Honor.

04:24PM 4                   THE COURT:   All right.  Objection

04:24PM 5   category number 25?

04:24PM 6                   MS. DUCCA:  Okay.  Objection category 25,

04:24PM 7   Motorola and Time Warner Cable have withdrawn Exhibits

04:24PM 8   1490 and 2019.

04:24PM 9                   It's my understanding that we have an

04:24PM 10  agreement with respect to the following exhibit

04:24PM 11  numbers:  PX-1721, 1722, 1723, 1997, 1998, 1999, 2003,

04:25PM 12  2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012,

04:25PM 13  2013, and 2014.  It's my understanding that by mutual

04:25PM 14  agreement, the exhibit objection is withdrawn with

04:25PM 15  respect to those exhibits.

04:25PM 16                  THE COURT:  Is that correct, TiVo?

04:25PM 17                  MR. WERNER:  We are on category 25?

04:25PM 18                  THE COURT:  25, correct.

04:25PM 19                  MR. WERNER:  I was under the impression

04:25PM 20  that we had reached an agreement on those and that --

04:25PM 21                  THE COURT:  Well, she says you have, too,

04:25PM 22  but we don't know if it's the same agreement.

04:25PM 23                  MR. WERNER:  Okay.  And that's what I

04:25PM 24  was trying to -- Your Honor, I was trying to confirm

04:25PM 25  what the -- what our position was on those two and

| | | |
|---|---|---|
| 04:26PM | 1 | if -- I'm very sorry, the two that are remaining are? |
| 04:26PM | 2 | MS. DUCCA:   There are three remaining. |
| 04:26PM | 3 | It's Exhibits 944, 1720, and 1995. |
| 04:26PM | 4 | MR. WILSON:   So Your Honor, we spoke |
| 04:26PM | 5 | about these at the meet and confer.  I think we were |
| 04:26PM | 6 | close to reaching an agreement here, so I don't want to |
| 04:26PM | 7 | take too much of the Court's time.  For 9 -- PX-944, I |
| 04:26PM | 8 | was informed after we met and conferred that this was |
| 04:26PM | 9 | originally included on our exhibit list with a note |
| 04:26PM | 10 | that it was for impeachment purposes. |
| 04:26PM | 11 | This is an expert report of Dr. |
| 04:26PM | 12 | Villasenor in an earlier case and when we met and |
| 04:26PM | 13 | conferred, I wasn't aware of that note.  So we're not |
| 04:26PM | 14 | offering this expert report in as evidence, but we |
| 04:26PM | 15 | understood at the time that we needed to identify |
| 04:26PM | 16 | potential impeachment exhibits and so this was for |
| 04:26PM | 17 | impeachment purposes. |
| 04:26PM | 18 | THE COURT:   Well, with that |
| 04:26PM | 19 | clarification, does TiVo still lodge an objection to |
| 04:27PM | 20 | 944? |
| 04:27PM | 21 | MR. WERNER:   I believe we lodge an |
| 04:27PM | 22 | objection with the understanding that it is not being |
| 04:27PM | 23 | offered into evidence as a trial exhibit.  I think it |
| 04:27PM | 24 | is our position that we withdraw our objection -- we do |
| 04:27PM | 25 | not object to the document as impeachment. |

04:27PM  1              THE COURT:   All right.  Sounds like

04:27PM  2  there's no live dispute as to this one, then?

04:27PM  3              MR. WILSON:   Assuming it is appropriate

04:27PM  4  impeachment evidence.

04:27PM  5              MR. WERNER:   Our objection is to

04:27PM  6  admission of that document into evidence.  We object to

04:27PM  7  that.

04:27PM  8              THE COURT:   All right.  Motorola's

04:27PM  9  telling me that you're not going to use this except to

04:27PM  10  impeach somebody.

04:27PM  11              MR. WILSON:   We intend to use it on

04:27PM  12  cross-examination for impeachment purposes.

04:27PM  13              THE COURT:   Well, based on what you've

04:27PM  14  told me, I will not preadmit 944.  I'll allow its use

04:28PM  15  for impeachment and that should resolve it, so far as I

04:28PM  16  can see.

04:28PM  17              MR. WILSON:   And I believe it would,

04:28PM  18  Your Honor.

04:28PM  19              THE COURT:   Okay.

04:28PM  20              MR. WILSON:   Then the other two

04:28PM  21  exhibits, PX-1995 and PX-1720 are simply CVs of our

04:28PM  22  experts that they have prepared in the ordinary course

04:28PM  23  of their business that summarize their qualifications

04:28PM  24  and we had included them in the exhibit list as a way

04:28PM  25  to provide the Jury with additional information

04:28PM 1    regarding the qualifications.  But we've discussed with

04:28PM 2    the other side potentially using demonstrative exhibits

04:28PM 3    that the experts can testify about with their -- their

04:28PM 4    background, if there's no objection from the other side

04:28PM 5    as to demonstrative exhibits, then we would just

04:28PM 6    withdraw these on the exhibit list as evidence, Your

04:29PM 7    Honor.

04:29PM 8                 THE COURT:   Is there objection to their

04:29PM 9    use as a Jury aid or demonstrative?

04:29PM 10                MR. WERNER:   No, Your Honor, so long as

04:29PM 11   they're not admitted as trial exhibits.

04:29PM 12                THE COURT:   All right.  Well, if they're

04:29PM 13   a demonstrative or a Jury aid, they're not -- they're

04:29PM 14   not exhibits.

04:29PM 15                MR. WERNER:   Thank you, Your Honor.

04:29PM 16                THE COURT:   All right.  So they're

04:29PM 17   withdrawn.  15 -- 1995 and 1720 are withdrawn by

04:29PM 18   Motorola, but TiVo waives any objection to the use of

04:29PM 19   the same as a Jury aid or demonstrative before the

04:29PM 20   Jury.

04:29PM 21                MR. WERNER:   That's correct, Your Honor.

04:29PM 22                THE COURT:   Okay.  Category 26.

04:29PM 23                And for the record, the -- backing up

04:29PM 24   just a minute, the exhibits identified under objection

04:29PM 25   category 25, other than those three, are the exhibits

04:29PM 1  withdrawn or the objection withdrawn?

04:29PM 2           MS. DUCCA:   The exhibits are not

04:29PM 3  withdrawn.  It's my understanding that the objections

04:29PM 4  are withdrawn.

04:29PM 5           MR. WERNER:   On the condition that we

04:29PM 6  have an agreement, both parties sought and seek

04:30PM 7  admission of exhibits to expert reports.  Motorola and

04:30PM 8  Time Warner Cable have lodged a similar objection to

04:30PM 9  similar exhibits on TiVo's list.  With the

04:30PM 10 understanding that those objections are also withdrawn,

04:30PM 11 TiVo withdraws its objections to these.

04:30PM 12          THE COURT:   Well, if they renege when we

04:30PM 13 get to theirs, I'll let you withdraw your agreement on

04:30PM 14 these.

04:30PM 15          MR. WERNER:  Thank you, Your Honor.

04:30PM 16          THE COURT:  I'm assuming they're not

04:30PM 17 going to do that, then the objection is withdrawn as to

04:30PM 18 everything but 1995, 1720, and 944.

04:30PM 19          Now with that clarification, on to

04:30PM 20 category 26.

04:30PM 21          MS. DUCCA:  Thank you, Your Honor.  With

04:30PM 22 respect to category 26, Motorola and Time Warner Cable

04:30PM 23 have withdrawn Exhibits 964, 965, 1632, 1671, and 1718.

04:30PM 24          We have not withdrawn the Exhibits 656,

04:30PM 25 1064, 1629, 1630, 1994 or 2677.  I understand those are

04:31PM 1    still at issue.

04:31PM 2              THE COURT:    All right.   What's the

04:31PM 3    objection as to these nonwithdrawn exhibits in this

04:31PM 4    category?

04:31PM 5              MR. WERNER:   I have four exhibits, 656,

04:31PM 6    1629, 1630 and 2677.   TiVo's withdrawn its objections

04:31PM 7    to 1064 and 1994.

04:31PM 8              THE COURT:   So that 1064 and 1994 are

04:31PM 9    preadmitted.   That leaves us with 656, 1629, 1630, and

04:31PM 10   2677.

04:31PM 11             MR. WERNER:   That's what I have, Your

04:31PM 12   Honor.

04:31PM 13             THE COURT:   What's the -- what's your

04:31PM 14   objection on those?

04:31PM 15             MR. WERNER:   Thank you, Your Honor. 1629

04:31PM 16   and 1630, all are highly prejudicial pseudo expert

04:31PM 17   opinion documents.

04:31PM 18             If we could put 1629 on the screen?

04:32PM 19             It's an MITV Technology review titled The

04:32PM 20   Starving Actor, Why TiVo Has Never Turned A Profit.   If

04:32PM 21   you'll recall, Your Honor granted a Motion In Limine

04:32PM 22   that Motorola filed seeking to exclude this very sort

04:32PM 23   of evidence, the overall profitability of the company,

04:32PM 24   total revenues, relative size, this sort of

04:32PM 25   information.   Not only that, the document is authored

| | | |
|---|---|---|
| 04:32PM | 1 | by Mr. Gardner, I'm not sure what his position or |
| 04:32PM | 2 | stature is.  Is he an economist?  Is he just a |
| 04:32PM | 3 | technical commentator?  It's not clear. |
| 04:32PM | 4 | This what's been called a business case |
| 04:32PM | 5 | document is just this gentleman's opinion of certain |
| 04:32PM | 6 | aspects of TiVo, mainly TiVo's business, and obviously |
| 04:32PM | 7 | the entire article is about its profitability.  We |
| 04:32PM | 8 | argue it is irrelevant and to the extent it bears any |
| 04:32PM | 9 | probative value, that probative value is substantially |
| 04:32PM | 10 | outweighed by its prejudicial effect. |
| 04:32PM | 11 | THE COURT:   Objection sustained. |
| 04:33PM | 12 | MR. WERNER:   Turning to -- |
| 04:33PM | 13 | THE COURT:   We're not going do slander |
| 04:33PM | 14 | each other in this trial, Counsel. |
| 04:33PM | 15 | Go ahead. |
| 04:33PM | 16 | MR. WERNER:   Thank you, Your Honor. |
| 04:33PM | 17 | Turning to -- on that note, Your Honor, I -- I have to |
| 04:33PM | 18 | backtrack just a little bit. |
| 04:33PM | 19 | Could you put PX-1632 up on the screen? |
| 04:33PM | 20 | This is one of the exhibits that's been |
| 04:33PM | 21 | withdrawn.  If TiVo thinks your gay, here's how to set |
| 04:33PM | 22 | it straight.  I think it's obvious why this exhibit was |
| 04:33PM | 23 | withdrawn.  The issue is that Motorola's expert, Dr. |
| 04:33PM | 24 | Scott, relies on this exhibit and we're concerned that |
| 04:33PM | 25 | this exhibit might see the light of day through Dr. |

04:33PM  1   Scott and we would ask the Court, because of the

04:33PM  2   extremely prejudicial nature of this document, to issue

04:33PM  3   an order that it not be used in this trial in any way.

04:33PM  4                 THE COURT:   Does Motorola expect this to

04:34PM  5   be used by their expert?  And if so, how?

04:34PM  6                 MR. WILSON:  Your Honor, this exhibit is

04:34PM  7   withdrawn.  We do not intend to have Dr. Scott testify

04:34PM  8   about the substance of this exhibit.  It's something

04:34PM  9   she reviewed in forming her opinions, but it's not

04:34PM 10   going to be used at trial.

04:34PM 11                 THE COURT:   All right.  I'm going to

04:34PM 12   instruct you to advise your witness, Dr. Scott, not to

04:34PM 13   make reference to this article directly during her

04:34PM 14   testimony.

04:34PM 15                 MR. WILSON:   That's fine, Your Honor.

04:34PM 16   We weren't intending to do that --

04:34PM 17                 THE COURT:  I understand that.

04:34PM 18                 MR. WILSON:  -- and I'm not sure why

04:34PM 19   we're going back to this after it was withdrawn.

04:34PM 20                 THE COURT:   Well, that should put a

04:34PM 21   final nail in that coffin.

04:34PM 22                 Let's go back to --

04:34PM 23                 MR. WILSON:  I understand.

04:34PM 24                 THE COURT:  -- what objections we have

04:34PM 25   that are live about exhibits that haven't been

04:34PM  1    withdrawn.

04:34PM  2              MR. WERNER:  Thank you, Your Honor.

04:34PM  3              Could you put 656 up on the board?

04:35PM  4              So what we have here is a -- and it's

04:35PM  5    sort of an odd document, Motorola has withdrawn some of

04:35PM  6    the other exhibits in this category very similar to

04:35PM  7    this.  There -- they are stock analyst reports

04:35PM  8    predicting TiVo's performance, its stock performance,

04:35PM  9    its future revenue potential, growth possibilities,

04:35PM  10   this sort of thing.  The rest of the exhibits were

04:35PM  11   withdrawn.

04:35PM  12             I believe we have an agreement that this

04:35PM  13   portion of this exhibit would be redacted.

04:35PM  14             MR. WILSON:  So we met and conferred

04:35PM  15   with the other side on this, Your Honor, and

04:35PM  16   specifically pointed out the article that we were

04:35PM  17   interested in, which is part of this overall report for

04:35PM  18   TiVo.  We weren't intending to introduce this

04:35PM  19   particular page.  What we were looking at, if you would

04:35PM  20   put up 1866 --

04:36PM  21             THE COURT:  Is 656 that one page that

04:36PM  22   you showed or is it multiple pages?

04:36PM  23             MR. WILSON:  No, it's a multiple page

04:36PM  24   document.

04:36PM  25             Sorry, Ryan, we have the wrong document

| | | |
|---|---|---|
| 04:36PM | 1 | there.  If you could put up PX-656 and I'll give you |
| 04:36PM | 2 | the page number.  Great.  And so the pages MOT 1866. |
| 04:36PM | 3 | There you go. |
| 04:36PM | 4 | So when we met and conferred with |
| 04:36PM | 5 | Counsel, we identified this article as a part of the |
| 04:36PM | 6 | exhibit that we were -- that we were talking about and |
| 04:36PM | 7 | this is an article that discusses ReplayTV and in this |
| 04:36PM | 8 | particular article it's about getting an award.  Now, |
| 04:36PM | 9 | TiVo has identified many articles about ReplayTV on its |
| 04:37PM | 10 | exhibit list that talk about how ReplayTV failed as a |
| 04:37PM | 11 | business entity and how they were sold at the time from |
| 04:37PM | 12 | company to company.  And this directly rebuts that |
| 04:37PM | 13 | evidence. |
| 04:37PM | 14 | TiVo, it appears, is going to say, well, |
| 04:37PM | 15 | that shows that our inventions were nonobvious. |
| 04:37PM | 16 | Basically they're using the ReplayTV article they've |
| 04:37PM | 17 | identified as evidence of secondary considerations. |
| 04:37PM | 18 | This directly rebuts that.  It is an article talking |
| 04:37PM | 19 | about ReplayTV being given an award for its technology |
| 04:37PM | 20 | and it is plainly relevant to rebut their contentions |
| 04:37PM | 21 | and it's not hearsay.  It's not being admitted for the |
| 04:37PM | 22 | truth of the nature of the substances of the award, but |
| 04:37PM | 23 | the fact that the award was given. |
| 04:37PM | 24 | THE COURT:  Response? |
| 04:37PM | 25 | MR. WERNER:  Thank you, Your Honor.  I |

04:37PM 1  see the date on this document as January 28th, 1999.

04:38PM 2  TiVo launched its product March 31st, 1999.  This is

04:38PM 3  prelaunch some form of review and an award given.  It's

04:38PM 4  just hearsay.  This Mr. Corsey apparently had some

04:38PM 5  opinion that in a head-to-head shootout, Replay was

04:38PM 6  better.  That hearsay opinion is of no value to this

04:38PM 7  case.

04:38PM 8          THE COURT:  Well, I differ with Motorola

04:38PM 9  on the fact that it's not being offered for the truth

04:38PM 10  of the matter asserted.  It may not be offered to prove

04:38PM 11  that the award was warranted, but it is certainly

04:38PM 12  offered to prove the award was given and that's the

04:38PM 13  matter asserted, so it's offered for the truth of the

04:38PM 14  matter asserted.  So unless there's an applicable

04:39PM 15  exception, I'm going to find that it is hearsay.

04:39PM 16          Hearing none, I'm going to find that it

04:39PM 17  is hearsay and I grant the objection to 656.

04:39PM 18          MR. WILSON:  Well, Your Honor, I mean --

04:39PM 19  guess I would say in addition this is a -- the -- you

04:39PM 20  know, this is a publication that is from the --

04:39PM 21          THE COURT:  Well, I asked if there was an

04:39PM 22  exception and I didn't hear anything.

04:39PM 23          MR. WILSON:  It's a business record,

04:39PM 24  Your Honor as well.  I mean, I don't believe it is

04:39PM 25  being offered for the truth as far as the issue as far

04:39PM  1    as whether ReplayTV's technology was a failure.  But in

04:39PM  2    the alternative, it's a business record.  It's a --

04:39PM  3                    THE COURT:   Well, it's offered --

04:39PM  4                    MR. WILSON:  -- it's a news --

04:39PM  5                    THE COURT:  -- for the truth of the

04:39PM  6    matter asserted and the matter asserted is that it got

04:39PM  7    the award.  So I find that it's offered for the truth

04:39PM  8    of the matter asserted.  You're saying it's a business

04:39PM  9    record of whom?

04:40PM  10                   MR. WILSON:  It's a news alert story.

04:40PM  11   It's a -- on the web, a news alert and it is in

04:40PM  12   their -- that is their business to report these types

04:40PM  13   of stories and to do it accurately and in the course of

04:40PM  14   their business.

04:40PM  15                   THE COURT:  All right.  Bear with me

04:40PM  16   just a minute.

04:40PM  17                   MR. WILSON:  Of course, Your Honor.  All

04:41PM  18   right.  I'd also point to 803 (17), Your Honor, as a

04:41PM  19   market report or a commercial publication which

04:41PM  20   compiles facts or data used by the general public or by

04:41PM  21   particular professions.

04:41PM  22                   MR. WERNER:  Is that -- Your Honor --

04:41PM  23   Your Honor, 803 (17), market reports and similar

04:41PM  24   commercial publications, refers to publications, market

04:41PM  25   quotations, lists, directories, or other compilations

| | | |
|---|---|---|
| 04:41PM | 1 | generally relied on by the public or persons in |
| 04:41PM | 2 | particular occupations, that's the Rule that we are |
| 04:42PM | 3 | discussing. |
| 04:42PM | 4 | THE COURT:  I have it right in front of |
| 04:42PM | 5 | me, Counsel. |
| 04:42PM | 6 | MR. WERNER:  This is -- there's no |
| 04:42PM | 7 | indication on this document of an author.  That's -- |
| 04:42PM | 8 | there's no evidence there is a -- it's not a business |
| 04:42PM | 9 | record.  There's no foundation that it is a business |
| 04:42PM | 10 | record, what -- what news alert is. |
| 04:42PM | 11 | THE COURT:   All right. |
| 04:42PM | 12 | MR. WERNER:   It's hearsay. |
| 04:42PM | 13 | THE COURT:   I agree it's not a business |
| 04:42PM | 14 | record of anybody that's going to testify in this |
| 04:42PM | 15 | trial, but I do find it meets Exception 17 under Rule |
| 04:42PM | 16 | 803.  I do think it is a market report, similar |
| 04:42PM | 17 | commercial publication.  I think this is a news release |
| 04:42PM | 18 | that's typically carried on a financial page.  It's got |
| 04:42PM | 19 | market quotations at the top.  There's no indication |
| 04:42PM | 20 | that it's otherwise unreliable or untrustworthy. |
| 04:43PM | 21 | I think that exception is met, so for |
| 04:43PM | 22 | that reason I'll -- I'll deny the objection, reverse my |
| 04:43PM | 23 | earlier ruling based on the exception that's been |
| 04:43PM | 24 | presented. |
| 04:43PM | 25 | MR. WILSON:   Thank you, Your Honor. |

| | |
|---|---|
| 04:43PM | 1 |
| 04:43PM | 2 |
| 04:43PM | 3 |
| 04:43PM | 4 |
| 04:43PM | 5 |
| 04:43PM | 6 |
| 04:43PM | 7 |

04:43PM 1          THE COURT:   Okay.  That is 656.  What

04:43PM 2 does that leave us, 1630 and 2677?

04:43PM 3          MR. WERNER:  Your Honor, I'm sorry, I did

04:43PM 4 want to clarify that we could get agreement that that

04:43PM 5 exhibit -- we have agreement that that portion of the

04:43PM 6 exhibit is -- is what is being sought to be admitted

04:43PM 7 and not the rest of the document, 656.

04:44PM 8          THE COURT:   Well, you've shown me one

04:44PM 9 page.  My ruling applies to that one page.

04:44PM 10          MR. WILSON:   Right.  Well, I -- the --

04:44PM 11 this article itself, it's actually a two-page article,

04:44PM 12 so I mean, it's the same -- it's the same alert

04:44PM 13 article, but it does carry over onto the second page

04:44PM 14 and we can show it does easily.

04:44PM 15          THE COURT:   But there's not more than

04:44PM 16 those two pages?

04:44PM 17          MR. WILSON:   Well, there's more in the

04:44PM 18 exhibit, but this is what we are attempting to admit,

04:44PM 19 so it would be those two pages, Your Honor.

04:44PM 20          THE COURT:   Those two pages are

04:44PM 21 preadmitted.  The rest of the document is not.

04:44PM 22          MR. WILSON:   Thank you, Your Honor.

04:44PM 23          THE COURT:   All right.  What else under

04:44PM 24 category 26, Counsel?

04:44PM 25          MR. WILSON:  The next exhibit is 2677,

04:44PM 1   which is similar, and this is actually -- if we could

04:44PM 2   put up 2677.

04:44PM 3                   THE COURT:   Well, you know, before you

04:44PM 4   respond to their objection, maybe I ought to hear it.

04:44PM 5                   MR. WILSON:  All right.

04:44PM 6                   THE COURT:  What's TiVo's objection?

04:45PM 7                   MR. WERNER:   Appreciate that, Your

04:45PM 8   Honor.

04:45PM 9                   Your Honor, our objection to this

04:45PM 10  document goes to the content.  There are aspects of

04:45PM 11  this document that reference the overall profitability

04:45PM 12  and growth prospects of TiVo.

04:45PM 13                  If you'll go down I believe it's two more

04:45PM 14  pages, right in the middle.

04:45PM 15                  The stock has fallen from about 47.  TiVo

04:45PM 16  lost $80.6 million.  These sorts of reports of TiVo's

04:45PM 17  financial health are -- were subjects that Motorola and

04:45PM 18  TWC sought to move in limine to exclude from this case

04:46PM 19  and from -- with respect to TiVo's relevance argument,

04:46PM 20  we lodged the same objection to this document.  The

04:46PM 21  document's also hearsay.  It's not a business record.

04:46PM 22                  THE COURT:   All right.  Let me hear from

04:46PM 23  Motorola.  What's the probative value of this?

04:46PM 24                  MR. WILSON:  All right.  Several things,

04:46PM 25  Your Honor.  Your Honor, Motion In Limine 2 did not

04:46PM 1  encompass TiVo profitability for its DVRs and its

04:46PM 2  subscription service.  When we talked about Motion In

04:46PM 3  Limine 2, we were talking about overall profits of

04:46PM 4  things that weren't accused or involved in the case.

04:46PM 5          So we strenuously object to the

04:46PM 6  characterization of Motion In Limine 2 as encompassing

04:46PM 7  TiVo's profitability on the products that are accused

04:46PM 8  in this case, which are its DVRs and subscription

04:47PM 9  services and the problem extended is basing its damages

04:47PM 10 calculations on as well as Motorola is basing its

04:47PM 11 damages calculations on.

04:47PM 12         To address the objections here, this is

04:47PM 13 a --

04:47PM 14         THE COURT:  I don't hear TiVo's Counsel

04:47PM 15 saying this is precluded by a previous ruling on a

04:47PM 16 Motion In Limine.  My understanding is they're

04:47PM 17 objecting on the basis of the instrument itself.

04:47PM 18         MR. WILSON:  All right.  I -- I heard an

04:47PM 19 objection as far as the -- some portions of this based

04:47PM 20 on Motion In Limine 2.  If I'm mistaken -- I may be

04:47PM 21 mistaken, Your Honor.

04:47PM 22         THE COURT:  Well, speak to the

04:47PM 23 substantive objections.

04:47PM 24         MR. WILSON:  Yes.  So this talks about

04:47PM 25 TiVo's business plan, its business model, and its

04:47PM 1   position in the market, which goes to damages issues.

04:47PM 2   It is an interview with TiVo's former CEO, Mr. Ramsay,

04:47PM 3   and so it fits within hearsay exceptions as being

04:47PM 4   admissions, as admissions of TiVo as well as a business

04:47PM 5   wire publication under the hearsay exception that we

04:47PM 6   just reviewed.  So there's a couple of reasons why this

04:48PM 7   isn't hearsay.

04:48PM 8                   THE COURT:   Can you pull it up to the

04:48PM 9   particular section that's at issue?

04:48PM 10                  MR. WILSON:   It's -- this is a multipage

04:48PM 11  article.  The interview extends for -- for several

04:48PM 12  pages talking about TiVo's market plans and its

04:48PM 13  position in the market in the past.

04:48PM 14                  THE COURT:   What's the date of this

04:48PM 15  article?

04:48PM 16                  MR. WILSON:   It is on the front.  It is

04:48PM 17  8/7 -- I believe that's 8/7/2000 -- 2003.  Sorry,

04:48PM 18  5/7/2003.

04:48PM 19                  THE COURT:   Yeah, May the 6th.

04:49PM 20                  TiVo, let me hear a response.

04:49PM 21                  MR. WERNER:   What I didn't hear there

04:49PM 22  was what -- what this article was particularly relevant

04:49PM 23  to.  There is the reference in the -- in the middle of

04:49PM 24  the document, if we can go down a page again to the --

04:49PM 25  one more page, please.  And one more page.  There you

04:49PM  1    go.  Sorry, one more.

04:49PM  2                   References to its stock price and overall

04:49PM  3    business prospects, perhaps it's the last page.  Okay.

04:49PM  4    It's in there.

04:49PM  5                   THE COURT:  I saw it on page 2.  Go back

04:49PM  6    to --

04:50PM  7                   MR. WERNER:  Was it 2?

04:50PM  8                   THE COURT:  -- page 2.  There you go.

04:50PM  9    Right in the middle.

04:50PM  10                  MR. WERNER:  Right.  Stock price,

04:50PM  11   overall profitability, revenues, these are the sorts of

04:50PM  12   -- this is precisely the same information that Motorola

04:50PM  13   sought to exclude from this case and that Your Honor

04:50PM  14   agreed and ruled, that the overall revenues of the

04:50PM  15   company are -- are not relevant.  Further, the document

04:50PM  16   is hearsay.  It's not a business record.  It's not a

04:50PM  17   compilation.

04:50PM  18                  THE COURT:  All right.  Motorola?

04:50PM  19                  MR. WILSON:  Yes, Your Honor.

04:50PM  20                  THE COURT:  Final word.

04:50PM  21                  MR. WILSON:  If I jumped the gun, I

04:50PM  22   apologize.  I may have jumped to hearsay.

04:50PM  23                  TiVo is asserting lost profits in this

04:50PM  24   case.  I mean, that's one of its principal bases for

04:50PM  25   damages.  So the profitability, the amount of profit

04:50PM  1    that TiVo would have made for its alleged loss of sales

04:51PM  2    is central to their damages case and it's one of the

04:51PM  3    most important issues with respect to that aspect of --

04:51PM  4    of damages.  So it's highly relevant as the, really,

04:51PM  5    the fourth prong of the overall Panduit Factor, the

04:51PM  6    four factor Panduit test that they had to show in order

04:51PM  7    to establish lost profits, it's the amount of

04:51PM  8    profitability.  So it goes directly to that, Your

04:51PM  9    Honor.

04:51PM  10              THE COURT:   As relates to 2003?

04:51PM  11              MR. WILSON:   Yes, as it relates to the

04:51PM  12   entire damages period.  This talks from 2003 going

04:51PM  13   backward about TiVo having problems and having

04:51PM  14   difficulties with its profitability and what it is

04:51PM  15   intending to do to try and correct that.  But we're

04:51PM  16   talking about an entire damages period that, you know,

04:51PM  17   through -- through trial and so it's all -- it's

04:51PM  18   relevant to their lost profits case in that respect.

04:51PM  19              THE COURT:   What's your response to the

04:51PM  20   hearsay objection?

04:51PM  21              MR. WILSON:   Well again, two -- two

04:51PM  22   responses.  One, it's not hearsay because it's

04:52PM  23   admissions of their CEO.  This is an interview with Mr.

04:52PM  24   Ramsay, who is the former CEO of TiVo.  And two, that

04:52PM  25   it fits into the market analysis exception that we

04:52PM 1    talked about under 803 (17).  This is a today.com

04:52PM 2    analysis that -- that -- or interview that came out

04:52PM 3    on -- on the web of its money media section.

04:52PM 4                MR. WERNER:   Your Honor, the -- this

04:52PM 5    article is about the -- the -- how investors feel about

04:52PM 6    TiVo's stock.  There's reports of, I believe it's on

04:52PM 7    the previous page, about where TiVo's stock price is.

04:52PM 8                All right.  So then down one page.

04:52PM 9                Was at $47 to $6.75, and it's -- it's --

04:52PM 10   it's not relevant.

04:52PM 11               THE COURT:   Where is the -- where is the

04:52PM 12   quotation from the TiVo CEO?

04:53PM 13               MR. WILSON:   Oh, there's several, Your

04:53PM 14   Honor.  So as you can see if you go up to the first

04:53PM 15   page and it says an interview with Mr. Ramsay.  And at

04:53PM 16   the top here, Mr. Ramsay has been trying to convince

04:53PM 17   them that TiVo actually will let advertisers grab

04:53PM 18   viewers' attention.

04:53PM 19               Then go down -- all right.  If you go to

04:53PM 20   the earlier page.

04:53PM 21               MR. WERNER:   The part that said --

04:53PM 22               MR. WILSON:   Yeah, right up here.  Let

04:53PM 23   me just point out.  We felt from day one that what we

04:53PM 24   were doing goes beyond DVR, as Ramsay says.  We're

04:53PM 25   revolutionary -- revolutionizing TV.  And it goes down

04:53PM   1   and discusses TiVo's past performance and its

04:53PM   2   discussions in -- in the market.

04:53PM   3            THE COURT:   All right.   To the extent

04:53PM   4   there's a direct quote from the CEO of TiVo, I'll admit

04:54PM   5   it as an admission; otherwise, except an exact -- a

04:54PM   6   direct quote out of the article, I'll sustain the

04:54PM   7   objection for the balance of it.

04:54PM   8            The writer's characterizations of what

04:54PM   9   the interview said are not within that exception.   Is

04:54PM  10   that --

04:54PM  11            MR. WILSON:   Thank you, Your Honor.

04:54PM  12            MR. WERNER:   Yes.

04:54PM  13            THE COURT:   What else under this

04:54PM  14   category, Counsel?

04:54PM  15            MR. WERNER:   I believe that disposes of

04:54PM  16   this category.

04:54PM  17            MR. WILSON:   I believe there's one more.

04:54PM  18   I believe there's one more, PX-1630.

04:54PM  19            MR. WERNER:   I addressed 1629 and 16 --

04:54PM  20   oh, that's right.   Sorry.   I backtracked to 1632.   My

04:54PM  21   apologies.

04:54PM  22            THE COURT:   1630.

04:54PM  23            MR. WERNER:   Will you pull up 1630?

04:54PM  24            Similar to the MIT starving actor, this

04:54PM  25   is another business case analysis by -- somehow

04:54PM  1   affiliated with Harvard.  So we have a risk that -- of

04:54PM  2   the Jury assigning this document excessive weight.  In

04:55PM  3   the end, this business case analysis is no evidence in

04:55PM  4   the record of why this document was created.

04:55PM  5          It's got the TiVo logo in it, which would

04:55PM  6   lead Jurors to believe it's actually a TiVo document,

04:55PM  7   but it's clearly not, expressing various opinions about

04:55PM  8   TiVo's business prospects and its potential for the

04:55PM  9   future.  And it is a hearsay document that is not a

04:55PM  10  business record, will not be offered up through any

04:55PM  11  witness, and it's strictly being offered to present

04:55PM  12  what a Juror might consider to be an impressive pseudo

04:55PM  13  expert opinion that is negative towards TiVo.

04:55PM  14          THE COURT:  Response?

04:55PM  15          MR. WILSON:  Yes, Your Honor.  This is a

04:56PM  16  Harvard business school case study and by way of

04:56PM  17  background, these case studies are what business

04:56PM  18  schools do when they are training and teaching their

04:56PM  19  students.  So instead of having a textbook, this is

04:56PM  20  what is produced at the various business schools.  So

04:56PM  21  it is a learned treatise, if you will, just like a

04:56PM  22  textbook would be in the context of the Professors at

04:56PM  23  the business school.

04:56PM  24          This is a case study that is published by

04:56PM  25  the business school.  It's authored by the business

04:56PM  1   school Professors and it has sufficient indicia of

04:56PM  2   reliability as far as the analysis that's put forth in

04:56PM  3   the business school case study to be admissible under

04:57PM  4   that exception, Your Honor.

04:57PM  5                   MR. WERNER:   Your Honor, you know,

04:57PM  6   I'm --

04:57PM  7                   THE COURT:   Now, I'm going to sustain

04:57PM  8   the objection.  I don't believe it falls from that

04:57PM  9   exception and I don't --

04:57PM 10                   MR. WILSON:   Thank you, Your Honor.

04:57PM 11                   THE COURT:   -- believe it has any real

04:57PM 12   substantive, probative value.

04:57PM 13                   MR. WERNER:   Thank you, Your Honor.

04:57PM 14                   THE COURT:   I'm going to grant the

04:57PM 15   objection to 1630.  That should bring us to category

04:57PM 16   27.

04:57PM 17                   MS. DUCCA:   Your Honor, with respect to

04:57PM 18   category 27, Motorola and Time Warner Cable have

04:57PM 19   withdrawn Exhibits 859 and 1274, leaving only Exhibit

04:57PM 20   1210.

04:57PM 21                   THE COURT:   All right.  TiVo, assuming

04:57PM 22   you agree with that, what's the basis for your

04:57PM 23   objection to Exhibit 1210?

04:57PM 24                   MS. RABBANI:   Good afternoon, Your Honor.

04:57PM 25   Melissa Rabbani with Irell & Manella for TiVo.

04:57PM  1          Could you please pull up 1210?

04:58PM  2          Your Honor, Exhibit 1210, here it is,

04:58PM  3  it's a two-page e-mail chain.  It's an entirely

04:58PM  4  internal Time Warner Cable communications and these are

04:58PM  5  all communications among Time Warner Cable employees

04:58PM  6  relating to and describing business negotiations with

04:58PM  7  TiVo.

04:58PM  8          Where they get into trouble from a

04:58PM  9  hearsay perspective, if we can just blow up the middle

04:58PM 10  e-mail there from Peter Stern.  It's -- in this e-mail

04:58PM 11  and actually throughout this document, there are a

04:58PM 12  number of slanted, to say the least, and inaccurate

04:58PM 13  statements characterizing what TiVo said and did during

04:58PM 14  negotiations.

04:58PM 15          And I'll read in the middle here.  It

04:58PM 16  says:  TiVo's claimed its business model didn't close

04:58PM 17  without them getting access to our advertising upset

04:58PM 18  and without us funding their development.

04:59PM 19          Again as to TiVo, this is hearsay.  This

04:59PM 20  is a self-serving, slanted statement.  It's inaccurate

04:59PM 21  and TiVo doesn't have a chance to respond here.

04:59PM 22          To the extent that this document isn't

04:59PM 23  covered by hearsay, you know, these are very well

04:59PM 24  papered negotiations between TiVo and Time Warner

04:59PM 25  Cable.  If they want to introduce evidence about TiVo's

04:59PM 1 statements or TiVo's conduct during negotiations, they

04:59PM 2 have plenty of documents that were actually sent by

04:59PM 3 TiVo.  They could put testimony of TiVo witnesses and

04:59PM 4 we would submit that this should be excluded under 403.

04:59PM 5 　　　　　　　THE COURT:   Response?

04:59PM 6 　　　　　　　MS. DUCCA:   All right.  So Your Honor,

04:59PM 7 as I understand it, this is a pure hearsay objection

04:59PM 8 and I would submit that this is not hearsay.  We're not

04:59PM 9 offering it for the truth of the matter asserted.  This

04:59PM 10 is a -- and if you, Ryan, if you can pull up Exhibit

04:59PM 11 1210?

05:00PM 12 　　　　　　　And if -- if you notice and you can

05:00PM 13 scroll through, this is just communications between

05:00PM 14 individuals at Time Warner Cable describing their state

05:00PM 15 of mind with respect to the negotiations at -- with

05:00PM 16 TiVo.  We're not offering these for what TiVo said.

05:00PM 17 We're not offering these for -- to try to represent

05:00PM 18 that TiVo said a certain thing or made a certain

05:00PM 19 representation, but we are offering this communication

05:00PM 20 chain to show that TiVo, individuals at TiVo were

05:00PM 21 negotiating in good faith.  And this is part of our

05:00PM 22 defense to TiVo's willfulness allegations and it's

05:00PM 23 clearly relevant.  It's not hearsay.

05:00PM 24 　　　　　　　THE COURT:   All right.  Notwithstanding

05:00PM 25 the hearsay objection, I do find under 403 that the

| | | |
|---|---|---|
| 05:00PM | 1 | risk of prejudice outweighs the probative value, which |
| 05:00PM | 2 | is questionable with regard to this document. |
| 05:01PM | 3 | I'll sustain the 403 objection. |
| 05:01PM | 4 | MS. DUCCA:   Your Honor, may I address |
| 05:01PM | 5 | the 403 objection, please? |
| 05:01PM | 6 | THE COURT:   Well, you're going to tell |
| 05:01PM | 7 | me that I misconstrued it and didn't read it the right |
| 05:01PM | 8 | way and it was on the screen. |
| 05:01PM | 9 | MS. DUCCA:   I'm -- |
| 05:01PM | 10 | THE COURT:   What can you tell me that I |
| 05:01PM | 11 | haven't just looked at? |
| 05:01PM | 12 | MS. DUCCA:   I'm not, Your Honor, but one |
| 05:01PM | 13 | thing that's important when you're looking at the state |
| 05:01PM | 14 | of the mind of the individuals that are involved in the |
| 05:01PM | 15 | negotiations is their impressions of what was |
| 05:01PM | 16 | represented to them.  So it's important to understand |
| 05:01PM | 17 | what -- how they understood the communications to them. |
| 05:01PM | 18 | And to that extent, it's -- it's a -- the document |
| 05:01PM | 19 | explains that they -- this is -- this is what they |
| 05:01PM | 20 | understood during their state of mind.  They understood |
| 05:01PM | 21 | that they were being alleged to be negotiating in bad |
| 05:01PM | 22 | faith.  Well, their response to that is that they're |
| 05:01PM | 23 | not negotiating in bad faith.  They're negotiating in |
| 05:01PM | 24 | good faith and -- |
| 05:01PM | 25 | THE COURT:   And you're telling me you |

05:01PM   1    don't have other live witnesses or other evidence to

05:02PM   2    show what Motorola's state of mind was, Time Warner's

05:02PM   3    state of mind?

05:02PM   4              MS. DUCCA:   Well, I'm -- we do -- we do

05:02PM   5    have -- we do have witnesses that will be there;

05:02PM   6    however, this is a -- this is a good indication and

05:02PM   7    this document really explains how the representations

05:02PM   8    between the employees and what the state of mind

05:02PM   9    between the employees with respect to the

05:02PM  10    communications are.

05:02PM  11              THE COURT:   Well, my ruling stands.

05:02PM  12    It's excluded.

05:02PM  13              All right.   Category 28.

05:02PM  14              MS. DUCCA:   With respect to objection 28,

05:02PM  15    Motorola and Time Warner Cable have withdrawn Exhibit

05:02PM  16    1633.   Exhibits 819 and 820 still remain.

05:02PM  17              THE COURT:   All right.   What's TiVo's

05:02PM  18    position as to 820, PX-820?

05:02PM  19              MR. WERNER:   Can you pull up PX-820,

05:02PM  20    please?

05:03PM  21              We have this license agreement.   This

05:03PM  22    agreement entered into between Replay and Motorola,

05:03PM  23    same agreement that was subject to Your Honor's ruling

05:03PM  24    on MIL 8.   Motorola is going to offer this agreement to

05:03PM  25    suggest, as was discussed previously, that Motorola

05:03PM 1   practices the prior art, this sort of argument to

05:03PM 2   suggest to the Jury that the Jury should find that

05:03PM 3   Motorola doesn't infringe because the practice is

05:03PM 4   something that -- the practice is technology that TiVo

05:03PM 5   has acknowledged does not practice TiVo's patents.

05:04PM 6          Still disputed that automatic flow

05:04PM 7   control, the replay at the time of the -- during the

05:04PM 8   relevant time period, at least based on the evidence

05:04PM 9   that's been introduced in the case, Replay didn't

05:04PM 10  practice automatic flow control.  Nonetheless, Motorola

05:04PM 11  wants to offer this, put this in front of the Jury to

05:04PM 12  suggest that there is some sort of core DVR

05:04PM 13  functionality that Motorola acquired from Replay and

05:04PM 14  put into its DVRs.

05:04PM 15         First of all, there's nothing in the

05:04PM 16  record, be it expert testimony or otherwise, that

05:04PM 17  establishes that Motorola's products actually

05:04PM 18  incorporate this ReplayTV technology.

05:05PM 19         Second, there is documents produced by

05:05PM 20  Motorola, show that even contemporaneous with the task

05:05PM 21  of allegedly incorporating this solid technology into

05:05PM 22  Motorola's products -- I'm sorry, Your Honor, my

05:05PM 23  exhibit is not here.  I'm going to have to refer, Your

05:05PM 24  Honor, to my briefing, my briefing on this motion.

05:05PM 25         THE COURT:   Are you talking about the

| | | |
|---|---|---|
| 05:05PM | 1 | exhibit that's on the screen? |
| 05:05PM | 2 | MR. WERNER:   The exhibit is the |
| 05:05PM | 3 | agreement itself.   Motorola produced a document |
| 05:06PM | 4 | contemporaneous with the entry -- with the execution of |
| 05:06PM | 5 | this agreement around about the same time. |
| 05:06PM | 6 | I'm sorry, can you pull up TX-1234, |
| 05:06PM | 7 | please?  My sincere apologies, Your Honor.  I thought |
| 05:06PM | 8 | it was attached as an exhibit.  1234, please. |
| 05:06PM | 9 | So we have this agreement.  We have |
| 05:06PM | 10 | Motorola allegedly incorporating Replay's technology |
| 05:06PM | 11 | into its products and then Motorola is going to put |
| 05:06PM | 12 | that in front of the Jury here and lead the Jury to |
| 05:06PM | 13 | believe that Motorola has taken all of -- |
| 05:06PM | 14 | Were you able to pull up 1234, Josh, |
| 05:06PM | 15 | Exhibit 1234. |
| 05:06PM | 16 | It -- it doesn't matter that Motorola |
| 05:07PM | 17 | licensed Replay.  It's irrelevant, has nothing to do |
| 05:07PM | 18 | with anything in this case.  And what we have here are |
| 05:07PM | 19 | employees of Motorola at the time -- can we go down -- |
| 05:07PM | 20 | go down one page, please?  Highlight the first full |
| 05:07PM | 21 | paragraph at the top. |
| 05:07PM | 22 | We have that this is a -- Jack Surline is |
| 05:07PM | 23 | a Motorola employee, still a Motorola employee.  He's |
| 05:07PM | 24 | been deposed multiple times in these cases.  Jack |
| 05:07PM | 25 | Surline, Mr. Surline writes about how he's been working |

05:07PM 1  with ReplayTV, RTV abbreviated.  He describes it there

05:07PM 2  in the last two sentences.  Says:  Motorola has paid a

05:07PM 3  lot of money, what essentially is a file system port

05:07PM 4  and an IDE driver development effort.  File systems,

05:07PM 5  IDE drivers, these are not DVR specific

05:08PM 6  functionalities, technologies.  Every personal computer

05:08PM 7  has IDE and has a file system.

05:08PM 8          In response to this e-mail, if we go up

05:08PM 9  one page, another Jack, we have Jack writing Jack.

05:08PM 10 Jack Birnbaum writes back:  Please try to separate the

05:08PM 11 money from the work.  The Replay deal was more of a

05:08PM 12 business deal to give instant credibility to our DVR

05:08PM 13 solution, right or wrong.  The money were more for the

05:08PM 14 ability to make a press release, generate discussion

05:08PM 15 with our customers.

05:08PM 16         Motorola's own employees had a very low

05:08PM 17 opinion of this agreement, of this deal.  The rest of

05:08PM 18 the document also describes how ReplayTV was not very

05:08PM 19 cooperative in whatever efforts they made to work with

05:09PM 20 Motorola.  In any event, as noted there is no evidence

05:09PM 21 that this alleged ReplayTV technology which is just a

05:09PM 22 file system report, was ever actually implemented.

05:09PM 23 This is the only document that we can find where --

05:09PM 24 production on that subject.  There's been no deposition

05:09PM 25 testimony on this and it's strictly the subject of

05:09PM   1   conjecture by experts, unsubstantiated.

05:09PM   2           THE COURT:   What's the relevance,

05:09PM   3   Motorola?

05:09PM   4           MR. WILSON:   Yes, Your Honor.   This is

05:09PM   5   relevant to damages in the case, Georgia-Pacific Factor

05:09PM   6   2 talks about licenses for comparable technologies and

05:09PM   7   both experts have relied on various Motorola and TiVo

05:09PM   8   agreements in reaching their conclusions about what a

05:09PM   9   comparable license deal would have been to the license

05:09PM  10   that would be negotiated at the hypothetical

05:10PM  11   negotiation.

05:10PM  12           So this is not an issue of whether or not

05:10PM  13   Motorola is using this particular technology in the

05:10PM  14   asserted -- or in the accused products.   This is an

05:10PM  15   issue of whether the economics of this deal and the

05:10PM  16   technology disclosed in the deal are comparable to be

05:10PM  17   what would be considered at the hypothetical

05:10PM  18   negotiation by the parties when assessing the amount of

05:10PM  19   a reasonable royalty.

05:10PM  20           And Mr. -- Dr. Sullivan, TiVo's expert,

05:10PM  21   has identified a series of license agreements that he

05:10PM  22   believes are comparable.   Mr. Hosfield has identified

05:10PM  23   license agreements that he believes are comparable.

05:10PM  24   They explain the reasons.   Mr. Hosfield goes into an

05:10PM  25   analysis of the economics of the hypothetical

05:10PM 1 negotiation and why he believes this license agreement

05:10PM 2 as well as other Motorola and TiVo license agreements

05:10PM 3 are comparable license agreements for him to use as a

05:10PM 4 framework or benchmark with respect to considering the

05:11PM 5 Georgia-Pacific factors of the other Georgia-Pacific

05:11PM 6 factors for his damages analysis.

05:11PM 7 　　　　　THE COURT:   Your expert has included

05:11PM 8 this as a comparable agreement in its -- in his damages

05:11PM 9 analysis?

05:11PM 10 　　　　　MR. WILSON:   He has, Your Honor, for

05:11PM 11 both the asserted Motorola patents as well as the

05:11PM 12 asserted TiVo patents.  And he, as I said, he explains

05:11PM 13 his bases for why he believes it's comparable from both

05:11PM 14 a technical and a financial or economic perspective and

05:11PM 15 his reliance on our technical experts to explain some

05:11PM 16 of this technology to him as well as the asserted

05:11PM 17 technology.  So he has -- he has included this in his

05:11PM 18 expert reports, disclosed his opinions, was deposed

05:11PM 19 upon that and that's -- forms part of the basis for his

05:11PM 20 reasonable royalty conclusions.

05:11PM 21 　　　　　THE COURT:   All right.  Let me hear a

05:11PM 22 response from TiVo.

05:11PM 23 　　　　　MR. WERNER:   Thank you, Your Honor.

05:11PM 24 TiVo has moved to strike that analysis.  This agreement

05:11PM 25 is not comparable.  TiVo filed a motion to strike Dr.

05:11PM   1   Hosfield's opinion on this because, including for the

05:11PM   2   reasons explained here today, the agreement is not

05:12PM   3   comparable, the -- the technology is not comparable to

05:12PM   4   DVRs -- to TiVo's core DVR technology.

05:12PM   5                THE COURT:   All right.  With regard to

05:12PM   6   PX-820, I'll carry the objection until I hear the

05:12PM   7   argument and rule on the motion to strike.  If I strike

05:12PM   8   that portion of Motorola's expert report, obviously the

05:12PM   9   exhibit will be kept out.  If I overrule that objection

05:12PM   10  as to -- if I overrule that motion to strike, then it

05:12PM   11  will come in.  But this will rise and fall with the

05:12PM   12  expert's report and testimony.

05:12PM   13                MR. WERNER:   Thank you, Your Honor.

05:12PM   14                MR. WILSON:   Thank you, Your Honor.

05:12PM   15                THE COURT:   All right.  Category 29.

05:12PM   16                MS. DUCCA:   Your Honor, with respect to

05:12PM   17  category 29, Motorola and Time Warner Cable have

05:12PM   18  withdrawn Exhibits 2674, 2675, and 2676.  The only

05:12PM   19  remaining exhibit in this category is Exhibit 869.

05:13PM   20                THE COURT:   All right.  What's TiVo's

05:13PM   21  objection as to PX-869?

05:13PM   22                MR. WERNER:   Relevance, Your Honor.

05:13PM   23  This litigation between SONICblue and TiVo is entirely

05:13PM   24  irrelevant.  To the extent that a Jury would be exposed

05:13PM   25  to this the -- this evidence, the Jurors would be

05:13PM  1  unduly prejudiced to conclude because ReplayTV,

05:13PM  2  SONICblue being the intermediate successor in interest

05:13PM  3  before DIRECTV of ReplayTV, that because these parties

05:13PM  4  were engaged in litigation, that it would be -- it's

05:13PM  5  more likely that Replay invalidates TiVo, TiVo's

05:13PM  6  patents.

05:13PM  7              In particular, if we can call up 869.  A

05:13PM  8  provision of this agreement that -- on which Motorola

05:14PM  9  relies is Section 2.  Can you zoom in on Section 2?

05:14PM  10             Motorola quotes this selectively in their

05:14PM  11  briefing.  What they leave off is the first part, no

05:14PM  12  admission.  In any event, the -- the text that they

05:14PM  13  quote is self-evident.  This agreement is not and shall

05:14PM  14  never be construed or deemed to be an admission or

05:14PM  15  concession of liability or culpability by the parties.

05:14PM  16  To quote Motorola's filing, Motorola asserts that this

05:14PM  17  is evidence that, quote, and I'm quoting Motorola's

05:14PM  18  Counsel, TiVo itself concluded that the ReplayTV

05:14PM  19  products do not infringe the '389 patent.  There is no

05:14PM  20  connection between those two things.

05:14PM  21             Motorola wants to introduce this to

05:14PM  22  suggest that TiVo believed that Replay -- I'm sorry, to

05:14PM  23  suggest that Replay did, in fact, infringe TiVo's

05:15PM  24  patent; that there is overlap between the claims of

05:15PM  25  Replay and TiVo's patents.  That TiVo's assertion,

05:15PM  1    based on a good faith belief that at a time 10 years

05:15PM  2    ago TiVo had a -- may have concluded that Replay

05:15PM  3    infringed, that that means that it, in fact, does.

05:15PM  4              A Juror would be misled to believe that

05:15PM  5    the prior art case is somehow stronger because TiVo had

05:15PM  6    accused Replay of infringing the '389 patent.  That

05:15PM  7    assertion, the two are not related.  One has nothing to

05:15PM  8    do with the other.

05:15PM  9              THE COURT:  Motorola?

05:16PM 10              MR. ANDERSON:   Your Honor, Carl Anderson

05:16PM 11    of Quinn, Emanuel for Motorola.

05:16PM 12              To start where we ended off, TiVo's

05:16PM 13    accusation that ReplayTV infringed, part of the

05:16PM 14    admission and it certainly is relevant to --

05:16PM 15    potentially relevant to a number of issues.  It's

05:16PM 16    relevant to potential noninfringing alternatives as

05:16PM 17    well as issues in invalidity and noninfringement and

05:16PM 18    I'm happy to -- I'm happy to talk about that.  I think

05:16PM 19    it's quite clear TiVo at one time did say that ReplayTV

05:16PM 20    infringed when they filed the lawsuit and then settled

05:16PM 21    it.

05:16PM 22              The second reason that this is relevant

05:16PM 23    is that to the extent that TiVo wants to introduce its

05:16PM 24    settlement agreements with Verizon and AT&T, which have

05:16PM 25    been subject to previous motion practice, Motorola

05:17PM 1    should be allowed to introduce the settlement agreement

05:17PM 2    with ReplayTV.  It has probative value.  We believe it

05:17PM 3    can be used to rebut what TiVo contends is the

05:17PM 4    probative value of AT&T and Verizon settlements.

05:17PM 5              So one -- on a point of basic fairness,

05:17PM 6    if they're going to talk about the settlement

05:17PM 7    agreements they like, we should be able to talk about

05:17PM 8    the settlement agreements TiVo -- TiVo has signed that

05:17PM 9    TiVo doesn't like so much.

05:17PM 10             THE COURT:   How many pages are there in

05:17PM 11   the settlement agreement?

05:17PM 12             MR. ANDERSON:   There's two pages.

05:17PM 13   There's a signature block on the third page.

05:17PM 14             THE COURT:   All right.  Go back to the

05:17PM 15   first page of the -- I see.  Go to the second page,

05:17PM 16   please.  And go back to the first page.

05:18PM 17             Is there a recital of what the actual

05:18PM 18   terms of the settlement are in here?  Is there money

05:18PM 19   paid?

05:18PM 20             MR. ANDERSON:   Roughly speaking, Your

05:18PM 21   Honor, it's a walk away.

05:18PM 22             MR. WERNER:   Correct, without -- without

05:18PM 23   prejudice.  The parties decided to walk away.  This

05:18PM 24   litigation went no where.  It went on for a year and

05:18PM 25   then it -- they decided, you know, let's just drop it.

| | | |
|---|---|---|
| 05:18PM | 1 | This isn't a comparable license.  I don't -- I believe |
| 05:18PM | 2 | that Mr. Hosfield does not rely on this as a comparable |
| 05:18PM | 3 | license.  The -- and with respect to the Verizon and |
| 05:18PM | 4 | AT&T agreement, Your Honor did a -- did an analysis |
| 05:18PM | 5 | under ResQNet in relevant case law to determine that |
| 05:18PM | 6 | those were admissible. |
| 05:18PM | 7 | This is completely different and would |
| 05:18PM | 8 | not satisfy the requirements to the case law. |
| 05:18PM | 9 | MR. ANDERSON:  Your Honor, may I respond |
| 05:18PM | 10 | to that? |
| 05:18PM | 11 | THE COURT:  You may. |
| 05:18PM | 12 | MR. WERNER:  Additionally, I'm sorry, |
| 05:18PM | 13 | Your Honor -- |
| 05:19PM | 14 | THE COURT:  You'll get a chance in a |
| 05:19PM | 15 | minute.  Let me hear from Motorola. |
| 05:19PM | 16 | MR. ANDERSON:   The question that -- the |
| 05:19PM | 17 | question -- Motorola's -- sorry.  Let me start again. |
| 05:19PM | 18 | Motorola's position is going to be that |
| 05:19PM | 19 | the Verizon and AT&T settlement agreements do not have |
| 05:19PM | 20 | probative value.  That's going to be Motorola's |
| 05:19PM | 21 | position.  Now, Motorola is entitled to use this |
| 05:19PM | 22 | settlement agreement to show exactly why settlement |
| 05:19PM | 23 | agreements don't have probative value.  Why if TiVo |
| 05:19PM | 24 | wants to contend that the Verizon and AT&T agreements |
| 05:19PM | 25 | are probative, they have to address why this one isn't. |

05:19PM   1   That's what we're going to use it for.

05:19PM   2             So we're not advocating that this has

05:19PM   3   probative value, Your Honor.  We're using it to say

05:19PM   4   that TiVo is picking and choosing what it thinks is

05:19PM   5   probative about settlement agreements.

05:19PM   6             THE COURT:  All right.  Anything else

05:19PM   7   from TiVo?

05:19PM   8             MR. WERNER:  Thank you, Your Honor.  Yes,

05:19PM   9   TiVo is picking and choosing relevant over irrelevant

05:20PM  10   agreements.  This is not a license.  This is classic

05:20PM  11   Rule 403.  This -- the sole purpose for introducing

05:20PM  12   this document is to mislead the Jury about the

05:20PM  13   significance of this agreement.  It has no

05:20PM  14   significance.  It is a walk away.

05:20PM  15             SONICblue was headed into bankruptcy.

05:20PM  16   ReplayTV had failed.  And it was -- this was an

05:20PM  17   agreement to dismiss the litigation which had gone no

05:20PM  18   where, lasted for a year, no discovery was taken, no

05:20PM  19   contentions were served, there's nothing that happened

05:20PM  20   in this case before it was dismissed without prejudice

05:20PM  21   by agreement of the parties.  It is not a license.

05:20PM  22             THE COURT:  All right.  Motorola, final

05:20PM  23   word.

05:20PM  24             MR. ANDERSON:  Your Honor, what you just

05:20PM  25   heard goes to the weight.  They're welcome to argue

05:20PM  1   about what makes a settlement agreement probative and

05:20PM  2   what doesn't.  That goes to the weight.  It doesn't go

05:20PM  3   to the relevance.

05:20PM  4            The relevance here is TiVo sued ReplayTV.

05:20PM  5   We're going to hear about ReplayTV in this trial.

05:21PM  6   They'd sued them because SONICblue had sued TiVo

05:21PM  7   before.  And the reason it's a walk away is because

05:21PM  8   both sides asserted their patents against each other;

05:21PM  9   both sides walked away.  As to how much weight that

05:21PM 10   should be given, that's a question for the Jury.

05:21PM 11            THE COURT:   All right.  I'm going to

05:21PM 12   sustain the objection.  I don't see that there's any

05:21PM 13   real probative value here.  I do think there is a

05:21PM 14   likelihood of Jury confusion.  The fact that a

05:21PM 15   settlement agreement is introduced elsewhere doesn't

05:21PM 16   open the door to every settlement agreement.  There are

05:21PM 17   a lot of settlement agreements that are not --

05:21PM 18   settlement agreements that are not coming in.  I just

05:21PM 19   don't think under 403 it serves any purpose, but to

05:21PM 20   potentially confuse the Jury.

05:21PM 21            So I'm going to sustain the objection to

05:21PM 22   PX-869.

05:21PM 23            MR. WERNER:  Thank you, Your Honor.

05:21PM 24            THE COURT:   All right.  Category 31,

05:21PM 25   which appears to be the last category of TiVo's

05:21PM 1 objections to proposed exhibits from Motorola, Time

05:22PM 2 Warner.

05:22PM 3          MS. DUCCA:   It is true that it's the

05:22PM 4 last category; however, there are still some straggler

05:22PM 5 individual exhibits after that.

05:22PM 6          THE COURT:   Just trying to make my day,

05:22PM 7 aren't you?

05:22PM 8          MS. DUCCA:   I'm sorry, Your Honor.   I

05:22PM 9 do --

05:22PM 10          THE COURT:   Let's -- let's take up 31.

05:22PM 11          MS. DUCCA:   But I do have good news with

05:22PM 12 respect to Exhibit (sic) 31.  I believe we have reached

05:22PM 13 an agreement.  As I understand this -- this -- this

05:22PM 14 objection is TiVo was -- was confused as to whether

05:22PM 15 time -- Motorola and Time Warner Cable intended to

05:22PM 16 bring the secure source code that we had produced

05:22PM 17 during the litigation.  We had agreed that Motorola and

05:22PM 18 Time Warner Cable will be bringing the secure -- the

05:22PM 19 secure source code and a computer.  It's going to

05:22PM 20 include that Motorola produce code, that Time Warner

05:22PM 21 Cable produce code, as well as all the iMedia code that

05:22PM 22 we relied on and used during discovery and so --

05:22PM 23          THE COURT:   Is it coming in an armored

05:22PM 24 car with guards on either side of it?

05:22PM 25          MS. DUCCA:   We -- very, yes, that's

05:22PM  1    precisely what's going to happen.  It comes on a little

05:23PM  2    hard drive.

05:23PM  3                  THE COURT:   Okay.

05:23PM  4                  MS. DUCCA:  It's a secure hard drive.

05:23PM  5                  THE COURT:  So you're telling me that the

05:23PM  6    dispute here has been resolved?

05:23PM  7                  MS. DUCCA:  Yes, that is my

05:23PM  8    understanding, although I -- I anticipate that Mr.

05:23PM  9    Werner will have a statement to say with regard to

05:23PM  10   that.

05:23PM  11                 MR. WERNER:   That's correct, Your Honor.

05:23PM  12   The agreement relates to the -- the agreement relates

05:23PM  13   to Motorola source code, Time Warner Cable source code,

05:23PM  14   and TiVo source code and only that source code.  iMedia

05:23PM  15   source code was also made available on the same

05:23PM  16   computer and we would like them to bring that source

05:23PM  17   code to trial.  But this agreement regarding the

05:23PM  18   admission of that source code and the admissibility of

05:23PM  19   that source code does not apply to the iMedia source

05:23PM  20   code.

05:23PM  21                 There are also other exhibits on

05:23PM  22   Motorola's trial exhibit list that incorporate other

05:23PM  23   prior art source code, these placeholder exhibit --

05:23PM  24   exhibits referring to all source code cited by Mr.

05:24PM  25   Gray, all source codes cited by Mr. Rodriguez.  So

| 05:24PM | 1 | those exhibits are not subject to this agreement. |

05:24PM 1    those exhibits are not subject to this agreement.

05:24PM 2              The exhibits subject to the agreement are

05:24PM 3    PX-2647, PX-2649, and PX-2651.  All of TiVo's other

05:24PM 4    objections regarding PX-2653, 2645, and 2644 are

05:24PM 5    reserved.

05:24PM 6              MS. DUCCA:   Your Honor, just to -- to

05:24PM 7    clarify, and I'm sure Mr. Werner will -- will correct

05:24PM 8    me if I'm wrong, the exhibit lodged with -- with

05:24PM 9    Exhibit (sic) 31, as I understand it is withdrawn.

05:24PM 10   However, what Mr. Werner is saying is that to the

05:24PM 11   extent his -- to the extent any of the source code in

05:24PM 12   these exhibits is subject to any of their other

05:24PM 13   objections that we have been addressing throughout the

05:25PM 14   day; for example, the Grass Valley source code, iMedia

05:25PM 15   source code, source code that they have objected to

05:25PM 16   authenticity and hearsay, that they are still

05:25PM 17   maintaining those objections.  Hopefully that makes

05:25PM 18   this objection a little bit easier.

05:25PM 19              MR. WERNER:   I appreciate Ms. Ducca's

05:25PM 20   representation regarding TiVo's position; it is

05:25PM 21   accurate.

05:25PM 22              THE COURT:   All right.  Then in very

05:25PM 23   simple terms, do we have something left to argue about

05:25PM 24   under category 31?

05:25PM 25              MS. DUCCA:   It's my understanding that

05:25PM 1   we do not.  That the exhibit with respect to -- or the

05:25PM 2   objections with respect to objection 31 are withdrawn

05:25PM 3   and I would appreciate it if Mr. Werner would confirm

05:25PM 4   that.

05:25PM 5                MR. WERNER:  The issue is that certain of

05:25PM 6   these exhibits are only identified -- are objectionable

05:25PM 7   and only identified in connection with this Exhibit.

05:25PM 8   I'll have to confirm that.

05:25PM 9                MS. DUCCA:  We're unaware of those

05:25PM 10  objections.

05:26PM 11               THE COURT:  I'm trying to finish up,

05:26PM 12  Counsel.  If you need --

05:26PM 13               MR. WERNER:  I hear you.  That's what I

05:26PM 14  was trying to do.  I want to -- I -- just to make the

05:26PM 15  record clear, I believe that objection 31 is resolved.

05:26PM 16  And our objections with respect to the other exhibits

05:26PM 17  that I didn't call out are reserved.

05:26PM 18               THE COURT:  All right.

05:26PM 19               MS. DUCCA:   All right.

05:26PM 20               THE COURT:  Now, what additional

05:26PM 21  straggling exhibit objections do we have?

05:26PM 22               MS. DUCCA:  So I believe the next

05:26PM 23  category has to do with PX-747 and I do not believe

05:26PM 24  that that is resolved.

05:26PM 25               MR. WELLS:  That is correct, Your Honor.

05:26PM 1    Maclain Wells on behalf of TiVo.  PX-747 is a summary

05:27PM 2    of royalties that Motorola pays for different licenses.

05:27PM 3    It's our contention that these are noncomparable

05:27PM 4    licenses in many cases and this objection rises and

05:27PM 5    falls with our motion to strike Hosfield on the same

05:27PM 6    basis.  So with that, I will turn it over.

05:27PM 7                THE COURT:   All right.  Do we agree that

05:27PM 8    the Daubert motion is going to control on this exhibit

05:27PM 9    objection?  If so, we'll postpone it, take it up as a

05:27PM 10   part of the Daubert argument.

05:27PM 11               MR. WILSON:   I'm not sure that this

05:27PM 12   exhibit was specifically addressed in the Daubert

05:27PM 13   motion, Your Honor.  It relates to royalty payments

05:27PM 14   made by Motorola for its DVR products.  It is a

05:27PM 15   compilation based on license agreements that have been

05:27PM 16   produced in the case and so it is a little 1006

05:27PM 17   compilation.

05:27PM 18               They've had an opportunity to depose

05:28PM 19   Motorola's witness on this exhibit and it has been

05:28PM 20   relied on by Mr. Hosfield as well as the actual

05:28PM 21   licenses themselves in connection with his reasonable

05:28PM 22   royalty analysis for both sets of patents.  So it's

05:28PM 23   certainly something that he relies on.

05:28PM 24               THE COURT:   Why is this not a

05:28PM 25   demonstrative?  Why does this need to be an admitted

05:28PM  1  exhibit?

05:28PM  2                MR. WILSON:  Well, because these are

05:28PM  3  the -- I mean, it's essentially a compilation of

05:28PM  4  information from the license agreements themselves

05:28PM  5  specifically with respect to the royalty rates.  So

05:28PM  6  it's a compilation of a lot of business records, Your

05:28PM  7  Honor, and --

05:28PM  8                THE COURT:  And if it's a summary you're

05:28PM  9  going to show the Jury of what's been paid by

05:28PM 10  Motorola --

05:28PM 11                MR. WILSON:  Yes, Your Honor.

05:28PM 12                THE COURT:  -- it would seem to me that

05:28PM 13  it -- it would seem to me that a demonstrative might be

05:28PM 14  adequate.  But if you want to -- if it's -- if it's

05:28PM 15  offered as an exhibit, you certainly have the right to

05:28PM 16  offer it for that and I'll rule on its admissibility.

05:29PM 17                MR. WILSON:  All right.

05:29PM 18                THE COURT:  What's the response to the

05:29PM 19  Rule 106 argument that it's a summary of proven

05:29PM 20  content?

05:29PM 21                MR. WELLS:  Your Honor, that doesn't --

05:29PM 22                THE COURT:  Or proved content?

05:29PM 23                MR. WELLS:  -- I'm sorry, Your Honor.

05:29PM 24  That doesn't address our noncomparable license

05:29PM 25  agreement.  It's a summary of royalties paid on

05:29PM 1    noncomparable licenses.  And so if their expert is,

05:29PM 2    Hosfield, is stricken as reports on -- on this, then

05:29PM 3    this is no longer useful or relevant, talking about

05:29PM 4    royalties paid on those licenses that we've sought --

05:29PM 5              THE COURT:  So we're really -- we're not

05:29PM 6    object -- we're not arguing over the exhibit, we're

05:29PM 7    arguing over the substance of it and whether the

05:29PM 8    licenses reflected therein, the payments made under

05:29PM 9    those license are comparable or not?

05:29PM 10             MR. WELLS:  That's why we want -- and we

05:29PM 11   think it rises and falls with the motion to strike

05:29PM 12   Hosfield.

05:29PM 13             THE COURT:  Well, I'll defer ruling on

05:29PM 14   this until we take up the motion to strike this

05:29PM 15   exhibit -- this expert's testimony.  If -- if the Court

05:29PM 16   should not specifically return to this and deal with

05:30PM 17   this after hearing that and ruling on it, then call it

05:30PM 18   to my attention, all right?

05:30PM 19             MR. WELLS:  Thank you, Your Honor.

05:30PM 20             THE COURT:  Do we have other exhibits

05:30PM 21   from Motorola that TiVo is objecting to?

05:30PM 22             MS. DUCCA:  Your Honor, I think TiVo has

05:30PM 23   three more objections, PX-2626, PX-1003, and PX-2636.

05:30PM 24   Motorola and Time Warner Cable have withdrawn PX-2636,

05:30PM 25   so that issue should be moot.  And that leaves 2626 and

05:30PM   1   1003.

05:30PM   2              MR. WERNER:  TiVo withdraws its objection

05:30PM   3   to 1003.  That leaves 2626.

05:30PM   4              THE COURT:  All right.  2626 is the last

05:30PM   5   train out of Dodge.  Let's hear about it.

05:30PM   6              MR. WERNER:  2626 is a Motorola document

05:30PM   7   ████████ ██ ████ ████████ █████████ ████ █████ █████

**REDACTED BY ORDER OF THE COURT**

05:31PM   8   ██████ ████ ████ ██████ ██████ ███ █████ ████ ███████

05:31PM   9   are at issue in this case.  This document is of

05:31PM  10   questionable relevance and it's further potentially --

05:31PM  11   it is an irrelevant document.  It has nothing to do

05:31PM  12   with any issue in this case because it doesn't apply to

05:31PM  13   any of the products that are accused in this case or

05:31PM  14   any prior art or any other technology.

05:31PM  15              Further, Mr. Gray in his rebuttal expert

05:31PM  16   report notes that Mr. Rosenblum, a Motorola employee,

05:31PM  17   confirmed that this technology has not yet been

05:31PM  18   implemented in a released product, at least at the --

05:31PM  19   and the -- it is a technology that is in development.

05:31PM  20   There is no detailed analysis beyond the face of this

05:32PM  21   document showing how this technology works and it -- it

05:32PM  22   is irrelevant.  It doesn't bear any relationship to any

05:32PM  23   issue in this case and it should be excluded as

05:32PM  24   irrelevant.  The report --

05:32PM  25              THE COURT:  All right.  Sounds like we

05:32PM   1    have a relevance objection.  What's the response?

05:32PM   2              MS. DUCCA:   Your Honor, this document is

05:32PM   3    clearly relevant as it pertains to Mr. Gray's opinions

05:32PM   4    regarding noninfringement of the '389 patent.  Mr. Gray

05:32PM   5    has rendered an opinion that the Motorola set-top box

05:32PM   6    has a void flow control at the source object by a

05:32PM   7    transform object.  As a part of that opinion, he has

05:32PM   8    included different technologies that the set-top box --

05:32PM   9    the Motorola set-top box -- boxes are capable of

05:32PM  10    implementing and it is his opinion that because they

05:32PM  11    can implement these other technologies using the same

05:33PM  12    parts and circuitry, that they cannot -- they can't

05:33PM  13    have full control of the source object by a transform

05:33PM  14    object.

05:33PM  15              One of those technologies is the life

**REDACTED BY ORDER OF THE COURT**

05:33PM  16    ██████████ ███ ██ ██ ███ ██████ ██ █████████ ██ █

05:33PM  17    Mr. Gray has rendered about, I would say, two pages

05:33PM  18    worth of expert report opinions on this technology and

05:33PM  19    how it applies to his noninfringement opinions.  I'm

05:33PM  20    happy to show that to Your Honor if you would like.

05:33PM  21              This seems to me that it's not so much a

05:33PM  22    dispute of relevance, but it's more a dispute of they

05:33PM  23    just don't like Mr. Gray's argument.  And if they don't

05:33PM  24    think it's a credible argument, they can always

05:33PM  25    cross-examine him at trial.

| | | |
|---|---|---|
| 05:33PM | 1 | THE COURT:   So you're telling me Mr. |
| 05:33PM | 2 | Gray has opined about this particular item and has |
| 05:33PM | 3 | cited it in his report? |
| 05:33PM | 4 | MS. DUCCA:   Yes, I am, Your Honor.   I |
| 05:33PM | 5 | can show you the portions of the expert report. |
| 05:33PM | 6 | Ryan, if you can pull up Mr. Gray's |
| 05:34PM | 7 | rebuttal report? |
| 05:34PM | 8 | THE COURT:   Does TiVo dispute that? |
| 05:34PM | 9 | Does TiVo dispute that Mr. Gray's cited this particular |
| 05:34PM | 10 | exhibit and opined about it in his report? |
| 05:34PM | 11 | MR. WERNER:   I -- my understanding is |
| 05:34PM | 12 | there's a single line in which he concludes that -- |
| 05:34PM | 13 | that it has no bearing on issues in this case. |
| 05:34PM | 14 | MS. DUCCA:   That's not accurate, Your |
| 05:34PM | 15 | Honor.   There is an entire paragraph where he cites |
| 05:34PM | 16 | several different parts of the document. |
| 05:34PM | 17 | THE COURT:   All right.   Show me, Counsel. |
| 05:34PM | 18 | MS. DUCCA:   Okay.   Ryan, if you would |
| 05:34PM | 19 | pull up the -- this is a rebuttal report.   If you go to |
| 05:34PM | 20 | pages -- well, page 185.   Beginning at the bottom of |
| 05:34PM | 21 | page 185.   So at the bottom Mr. Gray renders an opinion |
| 05:34PM | 22 | **REDACTED BY ORDER OF THE COURT** ██████████████████████████████ |
| 05:35PM | 23 | object by a transform object, not only because such |
| 05:35PM | 24 | flow control would result in the loss of data, but |
| 05:35PM | 25 | because any such flow control would interfere with |

05:35PM  1  ████████████████████████████████████████████
05:35PM  2  ████  ████           **REDACTED BY ORDER OF THE COURT**

05:35PM  3           If you go down to paragraph 510, you'll

05:35PM  4  see that he cites M-GI0314504 and there are several

05:35PM  5  additional cites to that document.  That is Exhibit

05:35PM  6  PX-2626 that is the subject of this objection.

05:35PM  7           THE COURT:   All right.  Anything

05:35PM  8  further?

05:35PM  9           MR. WERNER:  If we could keep going down

05:35PM 10  a few paragraphs to 513, please?  And 513 based on my

05:35PM 11  ████████████████████████████████████████████
05:35PM 12  ████████████  **REDACTED BY ORDER OF THE COURT**
05:35PM 13  ████████████████████████████████████████████

05:35PM 14  rendered about products that are not accused of

05:35PM 15  infringement in this case.  It is -- we've not accused

05:35PM 16  products that are not commercially deployed and this

05:36PM 17  opinion is about products that are not commercially

05:36PM 18  deployed.

05:36PM 19           And I'm not sure that there -- it's about

05:36PM 20  products that are not commercially deployed.  There may

05:36PM 21  be a piece of software or something that hasn't been

05:36PM 22  deployed on a product yet that is not at issue in this

05:36PM 23  case, to which Mr. Gray may be referring, but it is

05:36PM 24  irrelevant to this case.  The document should be

05:36PM 25  excluded, Rule 402.

05:36PM   1                    THE COURT:   Well, I'm going to

05:36PM   2     sustain -- I'm going to deny the objection.   I think

05:36PM   3     paragraph 513 is perfect basis for cross-examination,

05:36PM   4     but the expert has cited it and it's in his report.

05:36PM   5     And to the extent you don't think it's sufficient, that

05:36PM   6     should have been a Daubert motion and not an exhibit

05:36PM   7     objection.   But clearly, clearly I don't think your

05:36PM   8     relevance objection stands, so I'm going to overrule

05:36PM   9     the objection to 2626.

05:36PM  10                    MS. DUCCA:   Thank you, Your Honor.   I

05:36PM  11     think we have some news back about No. 4.

05:36PM  12                    THE COURT:   Is that our category to

05:37PM  13     return to?

05:37PM  14                    MR. LIPNER:   It is, Your Honor, and

05:37PM  15     maybe we can end this discussion on a high note.

05:37PM  16                    THE COURT:   That'd be nice.

05:37PM  17                    MR. LIPNER:   I believe we have agreement,

05:37PM  18     and although this may come as some news to opposing

05:37PM  19     Counsel on all of the remaining documents from that

05:37PM  20     objection, so to recite what they are, PX-719, we have

05:37PM  21     an agreement that Motorola wishes to introduce the

05:37PM  22     cover page and the signature page of that document and

05:37PM  23     TiVo has no objection to that.   And TiVo withdraws its

05:37PM  24     objection to PX-935, 897, 742, and 739, after meeting

05:37PM  25     and conferring, as Your Honor suggested and ordered.

05:37PM  1            THE COURT:   All right.  So everything in

05:37PM  2    this category is withdrawn except 719 and 719 is

05:37PM  3    limited by agreement to the first page of the signature

05:37PM  4    page; is that correct?

05:38PM  5            MR. LIPNER:   The -- Motorola withdrew a

05:38PM  6    number of exhibits, which we have on the record before.

05:38PM  7            THE COURT:   Yes.

05:38PM  8            MR. LIPNER:   And as to these five

05:38PM  9    exhibits, TiVo has withdrawn its objections --

05:38PM  10            THE COURT:   Oh.

05:38PM  11            MR. LIPNER:   -- and we have the agreement

05:38PM  12    as to Exhibit --

05:38PM  13            THE COURT:   Okay.

05:38PM  14            MR. LIPNER:   -- 719.

05:38PM  15            THE COURT:   Okay.

05:38PM  16            MR. CUNNINGHAM:   That's all correct,

05:38PM  17    Your Honor.

05:38PM  18            THE COURT:   So the objection is

05:38PM  19    withdrawn by TiVo, allow the documents to be

05:38PM  20    preadmitted.  The documents earlier withdrawn by

05:38PM  21    Motorola, Time Warner are withdrawn.  And with regard

05:38PM  22    to 719, it's the first page and the last page?

05:38PM  23            MR. LIPNER:   Correct.  Thank you, your

05:38PM  24    Honor.

05:38PM  25            THE COURT:   All right.

05:38PM 1        MS. DOAN:  Your Honor, we have one more

05:38PM 2   30 second issue to take up.  It's also by agreement.

05:38PM 3   There's some third-party source code that's going to be

05:38PM 4   produced and that -- or going to be discussed in this

05:38PM 5   case.  They've agreed to bring it to trial.  They want

05:38PM 6   to make sure that it'll be sealed so that just by using

05:38PM 7   this source code for relevance doesn't all of a sudden

05:38PM 8   release it to the public.  My understanding that Mr.

05:38PM 9   Birnholz has reached an agreement with Matt Traupman

05:38PM 10  and that is not opposed by TiVo.

05:39PM 11       THE COURT:  Is that correct, TiVo?

05:39PM 12       MR. BIRNHOLZ:   That's correct, Your

05:39PM 13  Honor.  We have no objection to sealing the -- the

05:39PM 14  source code except for third parties asserting

05:39PM 15  confidentiality.

05:39PM 16       MS. DOAN:  I imagine that's -- that's

05:39PM 17  Grass Valley, Your Honor.

05:39PM 18       THE COURT:  All right.  Well, let the --

05:39PM 19  I have no problem honoring that agreement.  I don't

05:39PM 20  think I can seal it until I'm presented with it.  At

05:39PM 21  the time it's presented, remind me of the agreement and

05:39PM 22  I'll enter an order sealing it.

05:39PM 23       MS. DOAN:  Thank you, Your Honor.

05:39PM 24       THE COURT:   All right.  It appears that

05:39PM 25  we've worked our way through TiVo's objections to

05:39PM 1   Motorola's exhibits.  We have yet to work our way

05:39PM 2   through Motorola's objections to TiVo's exhibits.

05:39PM 3                I indicated earlier this morning when I

05:39PM 4   met with Counsel in chambers that Friday would be

05:39PM 5   available for additional pretrial.  It is very clear

05:39PM 6   we're going to need that.  So we'll reconvene here

05:39PM 7   Friday morning at nine o'clock, unless I should order

05:40PM 8   otherwise, and we'll continue with the outstanding

05:40PM 9   pretrial issues, including those exhibit objections,

05:40PM 10  the Daubert motions and motions for summary judgment,

05:40PM 11  anything else of a pretrial nature.

05:40PM 12               We're going to have to move quicker on

05:40PM 13  Friday than we moved today.  We'll never get through.

05:40PM 14  So come prepared to pick up the pace, as they say.

05:40PM 15               MR. VERHOEVEN:  I propose that, Your

05:40PM 16  Honor, if I could just note, we've been negotiating,

05:40PM 17  we're talk -- on Friday morning we'll be addressing the

05:40PM 18  other side and we've been trying to get TiVo to reduce

05:40PM 19  its exhibit lists.  It's at a thousand exhibits right

05:40PM 20  now.  We're three times the number of exhibits that we

05:40PM 21  have, about one exhibit per minute if we're actually

05:40PM 22  going to go to trial on this.

05:40PM 23               We don't -- we don't believe they're

05:40PM 24  actually going to really intend to use all those

05:40PM 25  exhibits, but be that as it may, Your Honor, it would

| | | |
|---|---|---|
| 05:40PM | 1 | really streamline, help us streamline the process on |
| 05:41PM | 2 | Friday if we could get them to reduce their exhibits |
| 05:41PM | 3 | down to something that they're actually intending to |
| 05:41PM | 4 | use instead of a thousand exhibits.  It would help us |
| 05:41PM | 5 | meet and confer with them and make the process a lot |
| 05:41PM | 6 | more streamlined, Your Honor. |
| 05:41PM | 7 | THE COURT:  Well, I'm going to direct, |
| 05:41PM | 8 | and I think this goes without saying, but I'll say it |
| 05:41PM | 9 | anyway, I'm going to direct all parties to continuously |
| 05:41PM | 10 | meet and confer with an eye toward streamlining the |
| 05:41PM | 11 | pretrial matters that survive until Friday.  That |
| 05:41PM | 12 | doesn't mean around the clock, but I expect you all to |
| 05:41PM | 13 | be in more or less constant contact between now and |
| 05:41PM | 14 | Friday morning, so that hopefully some constructive, |
| 05:41PM | 15 | mutual effort will limit what we have to take up |
| 05:41PM | 16 | Friday. |
| 05:41PM | 17 | MR. WERNER:  If I -- |
| 05:41PM | 18 | MR. VERHOEVEN:  Every item -- |
| 05:41PM | 19 | MR. WERNER:  -- may -- if I may, Your |
| 05:41PM | 20 | Honor?  One of the issues that we've run into with |
| 05:41PM | 21 | trying to reduce our trial exhibit list is that when we |
| 05:41PM | 22 | look at the witness list that opposing Counsel has |
| 05:41PM | 23 | served, there's an extremely large number of witnesses |
| 05:41PM | 24 | that are either will call live or may call live, on the |
| 05:42PM | 25 | order of 32, I believe is the number. |

05:42PM    1                    THE COURT:   So it's clear that there's

05:42PM    2    area for both sides to be constructive --

05:42PM    3                    MR. WERNER:   Thank you, Your Honor.

05:42PM    4                    THE COURT:   -- and I expect both sides to

05:42PM    5    be constructive.

05:42PM    6                    All right.   That will complete today's

05:42PM    7    pretrial hearing, Counsel.   We stand in recess until

05:42PM    8    Friday morning.

05:42PM    9                    COURT SECURITY OFFICER:   All rise.

           10                    (Hearing Recessed.)

           11

           12

           13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

1          **Certification**

2

3          **I HEREBY CERTIFY** that the foregoing is a true

4    and correct transcript from the stenographic notes of

5    the proceedings in the above-entitled matter to the

6    best of my ability.

7

8

9

10   _____          _____

**MELISSA J. CARSON**                        **DATE**

11   Deputy Official Reporter
State of Texas No.: 1737

12   Expiration Date:  12/31/13

13

14

15

16

17

18

19

20

21

22

23

24

25